UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Central Division)

|  |  |
|---|---|
| In re: | ) |
|  | ) |
|  | ) Chapter 11 |
| SOUTHERN SKY AIR & TOURS, LLC, | ) Case No. 12-40944-MSH |
| d/b/a DIRECT AIR, | ) |
| Debtor | ) |
|  | ) |

**EMERGENCY MOTION OF JETPAY MERCHANT SERVICES, LLC FOR RELIEF FROM STAY TO CONTINUE PROCESSING CUSTOMER CHARGEBACKS FROM NON-ESTATE PROPERTY ESCROW ACCOUNT IN THE ORDINARY COURSE (TO THE EXTENT ANY SUCH RELIEF IS REQUIRED)**

To the Honorable Melvin S. Hoffman, United States Bankruptcy Judge:

Pursuant to Section 362 of the Bankruptcy Code and MLBR 9013-1(g), JetPay Merchant Services, LLC ("JetPay"), by its attorneys, hereby moves on an emergency basis for the entry of an order granting relief from stay to the extent any such relief is or may be required to permit certain affected parties to a customer escrow account to continue processing customer chargebacks and refunds in the ordinary course of business consistent with the terms of a certain escrow arrangement established and entered into pursuant to applicable regulations of the Department of Transportation for the protection of consumers, and a five-year course of dealings of the parties. In support hereof, JetPay has also filed herewith the Affidavit of David Chester, Chief Operating Officer of JetPay ("Chester Affidavit").

This is an emergency because, absent such an order, the current escrow agent, Valley National Bank, apparently acting out of an abundance of caution in view of commencement of these proceedings, has declined to release funds to JetPay from its customer escrow account in connection with customer chargebacks and refunds. Acting as a credit card processor, JetPay has funded the escrow from its own bank and has continuing liability to the credit card issuing banks

for customer chargebacks and refunds. Without access to funds in the escrow account, JetPay is currently suffering a cash shortfall. In a matter of weeks, the cash shortfall may reach several million dollars and jeopardize the ability of JetPay to continue business.

JetPay requests that this Court enter an order substantially in the form of the proposed order attached hereto to clarify that it and Valley National Bank have whatever relief from stay might be required to continue processing credit card chargebacks and refunds in the ordinary course, including remitting to JetPay funds from the escrow account arising from any recognized customer chargeback or refund.

1.  On or about March 15, 2012, the within debtor, Southern Sky Air & Tours, LLC d/b/a Direct Air ("Debtor" or "Direct Air"), filed a voluntary petition for relief pursuant to chapter 11 of title 11, 11 U.S.C. §§ 101, et seq. ("Bankruptcy Code"), thereby commencing the within Proceedings.

2.  Direct Air was a low-cost, discount charter airline, that flew various routes in the United States, including, without limitation, direct flights between Worcester and Myrtle Beach. As a charterer, Direct Air's operations are governed by, among other things, regulations promulgated by the United States Department of Transportation ("DOT"), 14 CFR 212, et seq.

3.  On information and belief, immediately prior to the Petition Date, Direct Air ceased all flights and related operations without prior warning to its customers. Based on a recent publication by DOT, attached hereto as Exhibit A ("Transportation Facts"), the Debtor has ceased all operations and, despite public pronouncements by the Debtor to the contrary, the Debtor has no authority to resume operations.

4.  Pursuant to 14 CFR 212.8, as a charter air carrier, the Debtor was required to and did in fact maintain an escrow account with a bank for the protection of consumers ("Escrow

Account"). A copy of the applicable regulation is attached hereto as Exhibit B. Pursuant to the regulation, all customer payments for charter flights are required to be placed in an escrow account. When and only when the carrier certifies that the charter has been completed, the escrow agent-bank is authorized to pay the funds for that charter to the carrier. If the charter is not completed and/or cancelled, the escrow agent-bank is required to remit the funds to the person who paid them. The regulation makes clear that the escrow requirement is to protect airline consumers, who invariably pay for charters in advance of flight, from cancellation of such flights by the charter carrier.

5. In the present case, the escrow agent was Valley National Bank (sometimes hereinafter, the "Bank") pursuant to three principal contracts. One is the Direct Air Carrier Depository Agreement between the Bank and Direct Air (or its carrier) ("Depository Agreement"), an unsigned form of was made public by DOT and is attached hereto as Exhibit C.[1] The Depository Agreement expressly provides that it is entered into for the purpose of satisfying the requirement of maintaining an escrow account pursuant to 14 CFR 212.8. It contains language expressly providing that the Bank shall remit to Direct Air deposits designated for a charter trip only upon certification that the charter has been completed. Depository Agreement, ¶6. Upon certification that the charter is cancelled, the Bank "shall refund all payments ... received and held by [the Bank] to the [b]ank from which payments were received, to the extent of availability of funds in such account." Id., ¶8. In this way, the Bank functions as an escrow agent with respect to an escrow account, funds from which are payable to Direct Air only upon certain conditions, and funds from which are payable to the source of such deposits upon certain conditions.

---

[1] JetPay is attempting to obtain the signed copy from DOT but has not done so at this point. During the past five years, the course of dealings of the parties, including Valley National Bank, JetPay and Direct Air, as discussed further below, have been entirely consistent with the provisions of the Depository Agreement and 14 CFR 212.8.

1346980v2/999-213                    3

6. JetPay is a "credit card processor" for numerous industries and retailers, and was the credit card processing agent for Direct Air pursuant to certain contractual arrangements. The arrangement with Direct Air and the Bank was embodied in a standard form "Merchant Contract." A copy of the signed Merchant Contract followed by an unsigned more legible version are attached hereto collectively as Exhibit D. Under the terms of the Merchant Contract, consistent with the Depository Agreement, the Bank was designated "depository bank." This was further confirmed in correspondence to JetPay, attached hereto as Exhibit E, and the arrangement described in the Depository Agreement was in fact the ordinary course of dealings of the parties since late 2006. Under the terms of the Merchant Contract, JetPay is responsible for processing virtually all credit card purchases of charter flights. Each time a flight is purchased with a valid Visa or MasterCard, JetPay is responsible for funding the Escrow Account for that purchase and assumes responsibility for collecting the purchase price (and applicable fees) from the credit card companies and/or their member banks. Thus, JetPay (through its own bank, Merrick Bank) is the entity funding the Escrow Account. In the Merchant Agreement, this account is referred to as the "Operating Account" and is expressly referenced in the wire instructions used by JetPay since 2006 as "Escrow Account# 041-074734." Exhibit[2] E, second page. Since, on information and belief, approximately 99% of all charter flights are purchased by credit card, JetPay has funded substantially all of the Escrow Account.

7. Pursuant to 14 CFR 380, Direct Air was also required to enter into a certain Public Charter Depository Agreement, a signed copy of which as obtained from the DOT is attached hereto as Exhibit F ("Second Depository Agreement"). The Second Depository

---

[2] AMEX is the only other credit card company used to purchase tickets from Direct Air. AMEX does not use a credit card processer and, on information and belief, pays into the Escrow Account directly. However, on information and belief, AMEX accounts for only a very small fraction of credit card purchases.

Agreement also provides for the maintenance of a separate account for customer purchases to be held until completion of flights. It expressly provides that upon cancellation of a Charter, the Bank is required to refund the amount of the Charter deposit on behalf of the Charter Participant. Second Depository Agreement, Section 2.1(c). In practice, in the rare instances where a customer pays by cash or check for a Charter, the Bank simply mails a check to the customer upon notification of cancellation of the flight. In the typical instance where the customer has paid by Visa or MasterCard, the customer obtains a credit from his credit card account and therefore the Escrow Agent does not issue a check. Instead, through a series of debits among institutions that occur within a 24-hour period, JetPay reimburses the credit card issuing bank, then sends a draft to the Escrow Agent and is immediately thereafter reimbursed by the Escrow Agent.

8. The effect of the DOT regulations, the Depository Account, the Merchant Contract and the Second Depository Agreement is that JetPay, as the entity from which the Escrow Agent-Bank has received deposits for charter flights, is a direct beneficiary of the Escrow Account and the recipient of funds from cancelled flights. This was the prepetition practice since inception of the arrangement in late 2006. Whenever a charter flight purchased by a Visa or MasterCard credit card was cancelled, the Bank remitted the deposit for that flight directly to JetPay.

9. JetPay has its own separate contractual arrangements with credit card member banks and its own bank, Merrick Bank. Under those arrangements, when a credit card member bank is obligated to honor a refund or chargeback, it is entitled to indemnification, directly or indirectly, from JetPay. Indeed, JetPay's own bank, Merrick Bank, automatically debits JetPay's account for each such chargeback or refund. In the ordinary course prepetition, pursuant to the

escrow arrangement, JetPay would immediately be reimbursed these funds out of the Escrow Account which JetPay had funded. Thus, except for certain processing fees, JetPay would be made whole. As a consequence of commencement of these proceedings, since March 13, 2012, the Escrow Agent, Valley National Bank, has declined to honor requests for reimbursement, concerned that its actions might run afoul of provisions of the Bankruptcy Code.

10.    Thus, since the Petition Date, with all of Direct Air's flights cancelled and no foreseeable likelihood that flights will ever resume, JetPay's own cash account is being drained daily by chargeback and refund claims without reimbursement from the Escrow Account. Moreover, as manifested in the Transportation Facts (<u>Exhibit A</u>), the DOT is encouraging consumers to seek chargebacks and refunds on all of their credit card purchases of Direct Air charters. JetPay does not have information concerning the exact number of booked charters completed, half-completed or cancelled. However, based upon the funds JetPay placed in the Escrow Account, JetPay's own prepetition experience with Direct Air, and the daily rate of chargebacks and refunds, JetPay fears its exposure for chargebacks and refunds may reach as high as $20 million. Without reimbursement from the Escrow Account which JetPay funded, JetPay may run out of cash and be out of business in a matter of weeks.

11.    JetPay does not request this Court make any determination concerning JetPay's entitlement to any particular remittance out of the Escrow Account, or of any customer's right to a chargeback or refund, or the right of any bank to hold JetPay liable for any chargeback. Those are substantive rights and obligations of non-Debtor parties to each other with respect to non-estate property. Rather, JetPay merely seeks an order from this Court for its benefit to the effect that the parties and beneficiaries to the Escrow Account are relieved from the automatic stay to the extent any such stay may affect their dealings so that Valley National Bank, as Escrow

Agent, is authorized to continue processing requests by JetPay to be reimbursed from the Escrow Account in the ordinary course consistent with the nonbankruptcy rights and obligations of the parties with respect to deposits paid by Visa or MasterCard for cancelled charters.

**Applicable Bankruptcy Law**

12.     It is well settled law in the First Circuit, and most other jurisdictions, that money held in escrow is not property of the estate.  NTA, LLC v. v. Concourse Holding Company, LLC (In re NTA, LLC), 380 F.3d 523, 531(1st Cir. 2004) (citing 5-541 COLLIER ON BANKRUPTCY, § 541.09A (15th ed. rev. 2004); cf. Mercurius inv. Holding, Ltd. v. Aranha, 247 F.3d 328, 330 (1st Cir. 2001) (finding that because no escrow arrangement was made, the debtor's funds belonged with the foreign liquidators); George v. Kitchens By Rice Brothers, Inc., 665 F.2d 7, 8 (1st Cir. 1981) (property held by revocable trust, in which debtor was trustee, was not property of the bankruptcy estate where equitable title resided in the beneficiaries of the trust).  In Massachusetts, to deposit a sum in escrow is simply to deliver it to a third party to be held until the performance of a condition or the happening of a certain event.  Mercurius inv. Holding, Ltd. v. Aranha, 247 F.3d 328, 331 (1st Cir. 2001).  In general, an estate holds only the same contingent rights to the escrowed property that the debtor held prior to filing for bankruptcy.  In re NTA, 380 F.3d at 528-29.  Thus, where the debtor's right to the escrowed funds has expired or terminated, the estate has no remaining property interest.  Id. at 529.

13.     This principle is demonstrated in the leading First Circuit case, In re NTA.  There, the debtors placed their primary assets into an escrow account as part of an agreement to avoid foreclosure.  Id. at 524.  According to the terms of the escrow agreement, the escrow agent would release the property to the lender if the lender gave notice of a triggering event (i.e., NTA failed to obtain a letter of intent and to close on new financing by particular dates) and a

designated waiting period expired. Id. The lender gave notice of a triggering event. Before the waiting period expired, NTA filed a bankruptcy petition and claimed that the escrowed property was property of the estate. Id. The bankruptcy court ruled that the escrowed property was not part of the bankruptcy estate. The First Circuit affirmed holding that the debtor's contingent contract right to the escrowed property had expired, subject only to the lapse of the waiting period. Id. at 529, 531. By failing to timely satisfy the conditions precedent, the bankruptcy estate had no property interest in the escrowed property. Id. at 529, 531 ("Our holding that the Membership Interests are not part of NTA's bankruptcy estate is consistent with the treatment given by other courts to property placed in escrow prior to a party filing for bankruptcy protection").

14. The present facts fit squarely within the principles of NTA. Valley National Bank is the escrow agent with respect to the Escrow Account funded by JetPay. On certain conditions, funds from the Escrow Account are remitted to the Debtor. On other conditions, funds are returned to JetPay (and other rare instances, directly to AMEX or other customers who paid cash). In this case, the Escrow Agent has been informed that Direct Air has cancelled all flights, the Department of Transportation has publicly stated that Direct Air has no authorization to fly, and customers are now claiming chargebacks and refunds. Thus, the conditions for returning the escrowed funds to JetPay have been met, and whatever property interest the Debtor might have had in the Escrow Account has been extinguished. Accordingly, such funds are not property of the estate.

**Notice and Certification Pursuant to MLBR 9013-1(g)**

15. JetPay is serving this Emergency Motion and accompanying Chester Affidavit by overnight mail on the List of 20 Largest Unsecured Creditors (to the extent addresses have been

provided), on Valley National Bank at the business address provided by the Bank to JetPay, on the United States Attorney for the District of Massachusetts, and, by email to local counsel, on Merrick Bank. Notice of any hearing scheduled hereon will be similarly provided or in any other fashion as may be directed by this Court.

16. Pursuant to MLBR 9013-1, the undersigned certifies that he attempted without success to contact Debtor's counsel of record by email to Alan Braunstein on March 19, 2012. As of the filing of this Emergency Motion, the undersigned has not received a reply. In addition, several days prior to filing this Emergency Motion, JetPay contacted Valley National Bank to request that their attorney contact the undersigned concerning the subject of this Emergency Motion. As of the filing of this Emergency Motion, no attorney or other contact person at Valley National Bank has been identified to the undersigned. Prior to filing this Emergency Motion, the undersigned was contacted by local counsel to Merrick Bank and, through discussions and emails, apprised Merrick Bank of the subject of this Emergency Motion.

**Relief Requested**

17. As emphasized above, JetPay does not seek any determination by this Court of the substantive rights and obligations of any party or beneficiary to the Escrow Account. JetPay only requests that this Court issue an order to the effect that to the extent any stay might be construed as applying to any aspect of processing chargebacks and refunds out of the Escrow Account with respect to cancelled flights, relief from stay is warranted for cause under Section 362(d)(1) or due to the Debtor's lack of any equity or other interest in the subject property pursuant to Section 362(d)(2).

18. A proposed form of order with the specifically detailed relief being requested is filed herewith.

WHEREFORE, JetPay Merchant Services, LLC respectfully requests that this Court act on an emergency basis and grant it relief from stay to the extent any such relief is required in the form of the order proposed herewith, and grant such other and further relief as is just and proper.

JETPAY MERCHANT SERVICES, LLC

/s/ David J. Reier
David J. Reier (BBO No. 546202)
POSTERNAK BLANKSTEIN & LUND LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-8004
Telephone:  617-973-6100
Telecopier:  617-367-2315
E-mail:  dreier@pbl.com

Dated: March 21, 2012

**CERTIFICATE OF SERVICE**

IT IS CERTIFIED that the foregoing document, together with exhibits, the proposed Order and Chester Affidavit was filed this 21st day of March, 2012 through the ECF filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and by overnight mail or as otherwise indicated on the attached Noticed List.

/s/ David J. Reier

## NOTICE LIST

*Via email to:*  Gina L. Martin, Esq.
Goodwin Procter LLP
Exchange Place, 53 State Street
Boston, MA 02109
(Counsel to Merrimack Bank)
gmartin@goodwinprocter.com

***Via Overnight Mail to:***

| | |
|---|---|
| Valley National Bank<br>1040 Avenue of the Americas<br>New York, NY 10018 | United States Attorney<br>One Courthouse Way<br>Suite 9200<br>Boston, MA  02210 |
| Allegheny County Airport Authority<br>PO Box 642623<br>Pittsburgh, PA 15264 | Chemoil Corp.<br>200 East Las Olas Blvd., Ste. 2050<br>Attn: Richard White<br>Fort Lauderdale, FL 33301 |
| Kalamazoo/Battle Creek International Air<br>5235 Portage Road<br>Kalamazoo, MI 49002 | Lehigh Northampton Airport<br>3311 Airport Blvd.<br>Allentown, PA 18109 |
| Mass. Port Authority<br>Attn: Director, Worcester Regional Airport<br>One Harborside Dr., Ste. 200S<br>Boston, MA 02128 | Myrtle Beach International Airport<br>1100 Jetport Rd.<br>Myrtle Beach, SC 29577 |
| Niagra Frontier Transportation Authority<br>P.O. Box 5008<br>Buffalo, NY 14205 | Palm Beach International Airport<br>846 Palm Beach International Airport<br>West Palm Beach, FL 33406 |
| Quickflight, Inc.<br>145 Burt Rd., Ste. 16<br>Lexington, KY 40503 | Sky King Airlines<br>3200 Flightline Dr., Ste. 302<br>Lakeland, FL 33811 |
| Springfield Port Authority<br>1200 Capital Airport Drive<br>Springfield, IL 62707-8471 | The Port Authority of NY and NJ<br>PO Box 95000<br>Philadelphia, PA 19195-1517 |
| Vision Airlines<br>Attn: David Meers, SVP/COO<br>3975 Johns Creek Ct, Ste 100A<br>Suwanee, GA 30024 | WFFF/WVNY-TV<br>Smith Broadcasting of VT, LLC<br>298 Mountain View Drive<br>Colchester, VT 05406 |
| World Atlantic Airlines<br>Attn: Thomas Romero, CEO<br>5200 NW 36th St.<br>Miami, FL 33166 | WUTV – Fox 29<br>699 Herbal Ave., Ste. 100<br>Buffalo,NY 14207 |
| Xtra Airways<br>Attn: Lisa Dunn, President<br>800 West Idaho St., Ste. 304<br>Boise, ID 83702 | |

1346980v2/999-213

11