# EXHIBIT D

## SCHEDULE A

Merchant Name:

Visa & MasterCard Interchange – Interchange is the exchange of clearing records between Members. Interchange Fees are paid to a Member Issuer by a Member Acquirer for reimbursement of expenses associated with the clearing and settlement of an interchange transaction. Interchange Fees are established by Visa and MasterCard and if changed shall be applicable to Merchant as of the effective date established by Visa and MasterCard.

Visa Assessments – .0925% as of Agreement date; subject to change by Visa USA Inc. and if changed shall be applicable to Merchant as of the effective date established by Visa USA, Inc.

MasterCard Assessments – .095% as of Agreement date; subject to adjustment by MasterCard International and if changed shall be applicable to Merchant as of the effective date established by MasterCard International.

| Credit Card Rates & Fees | | Debit Card Rates & Fees | |
|---|---|---|---|
| Visa/ MasterCard Discount Rate | 0.50% | Debit POS Discount Rate | N/A |
| Visa/ MasterCard Authorization Fee | $ 0.20 | Debit POS Transaction Fee | N/A |
| Visa/ MasterCard Settlement Fee | $0.00 | | |
| Discover Authorization Fee | $ 0.20 | | |
| American Express Authorization Fee | $ 0.20 | **Optional Services** (available upon request) | |
| JCB Discount Rate | | Transaction Recycling ("per transaction") | $ N/A |
| JCB Authorization Fee | | Account Updater ("per update") | $ N/A |
| Diners Discount Rate | | Verified by Visa (Payer Authentication) | $ 0.10 |
| Application Fee | $ 100.00 | SecureCode (Payer Authentication) | $ 0.10 |
| Account Set Up Fee | $ N/A | Download & Training – Phone | $ |
| Rush Application / Rush Set Up Fee | $ N/A | Installation & Training – Onsite | $ |
| High Risk Registration Fee | N/A | POS Hardware Purchase | $ |
| Monthly Minimum Fee | $ 40.00 | POS Software Purchase | $ |
| Monthly Account Maintenance Fee | $ 15.00 | | |
| Monthly Help Desk Fee | $ 2.50 | WeSTARS Reports (monthly) | $ 10.00 user |
| Voice ("ARU") Authorization Fee | $0.75 | JetPay Reports (monthly) | $ 100.00 |
| ACH Reject Fee | $25.00 | | |
| Chargeback Fee | $20.00 | **ACH Rates & Fees** (if applicable) | |
| Account File Change Fee | $25.00 | ACH Processing Transaction Fee | $N/A |
| AVS Fee | $0.00 | ACH/Deposit Fee | $N/A |
| Gateway Fee | $0.00 | ACH Return Fee | $N/A |
| Early Termination Fee | Per Agreement | | |
| Discount Frequency | Monthly | | |

Schedule A is based on Merchant's representation of transaction size and volume and method of processing as represented on the Merchant Application and Merchant acknowledges that, to the extent Merchant's actual transaction size and volume and method of processing differ from such representation, Bank or JETPAY MERCHANT SERVICES may, at their option, from time to time, modify Schedule A.

# Bank Disclosure Page

### Member Bank Information

Merrick Bank
Merchant Services Department
101 Crossways Park West, Woodbury, NY 11797
(800) 328-9155

### Important Bank Responsibilities

1. Merrick Bank is the **only entity** approved to extend acceptance of VISA products directly to a Merchant.
2. Merrick Bank must be a principal (signor) to the Merchant Agreement.
3. Merrick Bank is responsible for educating Merchant on pertinent VISA Operating Regulations with which Merchants must comply.
4. Merrick Bank is responsible for and must provide settlement funds to the Merchant.
5. Merrick Bank is responsible for all funds held in reserve that are derived from settlement.

### Merchant Information

Merchant Name: _Myrtle Beach Direct Air + Tours_

Merchant Address: _1600 Oak Street, Suite B, Myrtle Beach S.C. 29577_

Merchant Phone: _843-916-9700_

### Important Merchant Responsibilities

1. Ensure compliance with cardholder data security and storage requirements.
2. Maintain fraud and chargebacks below thresholds.
3. Review and understand the terms of the Merchant Agreement.
4. Comply with VISA Operating Regulations.

The responsibilities listed above do not supersede terms of the Merchant Agreement and are provided to ensure the Merchant understands some important obligations of each party and that the VISA Member – Merrick Bank – is the ultimate authority should the Merchant have any problems.

_Judy Tull_                                       _11-13-06_
Merchant's Signature                              Date

_Judy Tull - President_
Merchant's Printed Name & Title

1

## Tammy Jones

**From:** Veronica Largent
**Sent:** Friday, November 10, 2006 1:52 PM
**To:** Tammy Jones
**Subject:** FW: Southern Sky Air d/b/a Myrtle Beach Direct

Veronica Largent
P: 972-759-4800 ext. 120
F: 972-503-9100
M: 972-821-2025
www.jetpayms.com

**From:** Trent Voigt [mailto:trent@jetpay.com]
**Sent:** Friday, November 10, 2006 10:16 AM
**To:** 'Veronica Largent'
**Subject:** FW: Southern Sky Air d/b/a Myrtle Beach Direct

*Deposit Info*

**From:** Rooney, Lori [mailto:LRooney@valleynationalbank.com]
**Sent:** Friday, November 10, 2006 9:04 AM
**To:** 'trent@jetpay.com'
**Cc:** 'kevintull@gmail.com'
**Subject:** Southern Sky Air d/b/a Myrtle Beach Direct

Trent. This e-mail is being sent to you at the request of Kevin Tull of Southern Sky Air d/b/a Myrtle Beach Direct.

This will confirm that Valley National Bank has been appointed Depository Bank for Southern Sky Air d/b/a Myrtle Beach Direct. We have opened up the Depository Account for which all passenger funds are to be deposited per the regulations of the U.S. Department of Transportation. The following is our wire transfer instructions for depositing funds into the depository account:

Wire Transfer Instructions:
Bank Name: Valley National Bank
Bank Address 1455 Valley Road, Wayne, N.J. 07470
ABA Number: 021 201 383
Account Number: 041-074734
Beneficiary Name: Southern Sky Air

Please feel free to contact me if you have further questions @ m212 973-6532.

Regards. Lori

11/13/2006


**JetPay Merchant Services - Merchant Application & Agreement**

Dallas
3361 Boyington Drive, Suite 180
Carrollton, TX 75006
Ph: (972) 759-4800
Fax: (972) 503-9100

Detroit
30800 Telegraph Road, Suite 1924
Bingham Farms, MI 48025
Ph: (248) 540-1100
Fax: (248) 646-4948

**MERCHANT NAME (DBA or Trade Name):** MYRTLE BEACH DIRECT AIR + TOURS
**CORPORATE/LEGAL NAME (if Different):** SOUTHERN SKY AIR, INC.
**LOCATION ADDRESS:** 1600 OAK Street, Suite B
**CORPORATE ADDRESS (if Different):** 1600 OAK Street, Suite B
**CITY:** MYRTLE BEACH   **STATE:** S.C.   **ZIP:** 29577
**CITY:** Myrtle Beach   **STATE:** S.C.   **ZIP:** 29577
**CONTACT NAME:** Judy Tull
**CONTACT EMAIL ADDRESS:** jtull@southernskyair.com
**CONTACT TELEPHONE:** 843-916-9700
**FAX NUMBER:** 843-448-7920
**FEDERAL TAX ID#:** 205229102
**NAME TO APPEAR ON CARDHOLDER'S STATEMENT:** MYRTLE BEACH DIRECT AIR + TOURS
**PHONE # TO APPEAR ON CARDHOLDER'S STATEMENT (if MOTO):** 877-432-3473
**COMPANY WEBSITE:** myrtlebeachdirectair.com

**DOES THIS LOCATION CURRENTLY TAKE VISA/MASTERCARD?** ☒ No   ☐ Yes Reason For Leaving ___
**HAVE MERCHANT OR OWNERS/PRINCIPALS EVER BEEN TERMINATED FROM ACCEPTING BANKCARDS FOR THIS BUSINESS OR ANY OTHER BUSINESSES?** ☒ No   ☐ Yes (if yes, please explain)

**OWNERSHIP:**
☐ Individual/Sole Proprietor   ☐ Partnership
☒ Corporation   ☐ LLC  State ___
☐ Non-Profit (Must Provide 503-C)
☐ Private   ☐ Publicly Traded   ☐ Government

**LOCATION:**
Building Type: ☐ Shopping Center ☐ Office Building ☐ Industrial Building ☐ Residence
Merchant: ☐ Owns ☐ Rents
Area Zoned: ☐ Commercial ☐ Industrial ☐ Residential
Square Footage: ☐ 0-500 ☐ 501-2500 ☐ 2501-5000 ☐ 5001-10000+

**PRINCIPALS**

**Principal Name:**
First: Judy   Middle: K.   Last: TULL   SSN: ___   % Ownership: 25   Title: PRESIDENT
Home Address: 1914 Highland Circle   City: Myrtle Beach   State: S.C.   Zip: 29575   Date of Birth: 3-2-45
Home Phone: 770-366-2018   Cell Phone: 770-366-2018   Email Address: jtull@southernskyair.com

**Principal Name:**
First: Edward   Middle: S.   Last: WARNECK   SSN: ___   % Ownership: 25   Title: V.P.
Home Address: 491 Ocean Creek Dr.   City: Myrtle Beach   State: S.C.   Zip: 29573   Date of Birth: 11-19-48
Home Phone: ___   Cell Phone: ___   Email Address: ___

**HAVE MERCHANT OR OWNERS/PRINCIPALS EVER FILED:**
☐ Business Bankruptcy   ☐ Personal Bankruptcy
(if yes, please explain)

**YEARS IN BUSINESS:** START UP
**AVERAGE TICKET:** $600.00
**MONTHLY VISA/MASTERCARD VOLUME:** $750,000 ±

**NATURE OF BUSINESS:**
(What are you accepting credit cards for? When is the card charged? When is the product or service delivered? Please include any marketing materials that may help describe your product or service.)

Air Charter and Tour Packages

**REFUND POLICY:** (Provide details of your return policy.)

All reservations are non-refundable

**Seasonal Sales:** ☐ Yes ☐ No   If so, please list high volume months: ___

**SALES METHOD:**
Retail Swiped ___% Keyed with Signatures or Imprints ___% Mail Order ___% Phone ___%
Inbound Calls 40% Outbound Calls ___% Internet 60% ACH ___%

**BANK ACCOUNT INFORMATION:** ☐ Checking Account ☐ Savings Account
Attach voided check for the operating account where funds are to be deposited.
Routing #: 021-201-383
Account #: 041-074734

**Reporting Options:** ☐ Real-Time Reporting ☐ Daily Settlement Reporting ☐ Virtual Terminal Reporting ☐ Other: ___
E-mail Address to send Daily Sales Summaries to: ___

**VENDOR REFERENCES** (List 2 - include: name, address, and phone number)
1. SKYKING AIRLINES - JIM GALLAGHER   570-457-4149
2.

**OTHER CARDS ACCEPTED** (Place the account number in the space below for existing accounts)
American Express: 439057 27 66   ☐ Apply
Discover: ___   ☐ Apply
Diner's Club: ___

* By checking "Apply" for either American Express and/or Discover merchant accounts, you acknowledge that you will receive Terms and Conditions from the card company for which you wish to apply. Please note that these companies are separate entities with their own pricing and acceptance policies. We will notify you as to the status of your application with each of these companies.

843-293-7506

12/11/2006  12:29   3842551628   WUMORTGAGE STORE   PAGE 03/03

From: JETPAY   972 503 9100   12/11/2006 09:40 #012 P.002/002

P6 of President + VP.

**JetPay**

Dallas
2081 Boyington Drive, Suite 180
Carrollton, TX 75006
Ph: (972) 728-7778
Fax: (972) 503-9100

Dayton
20800 Telegraph Road, Suite 1924
Bingham Farms, MI 48025
Ph: (248) 540-1100
Fax: (248) 646-4940

### Merchant Application Acceptance

[signature] Jody Tull   Date 10/31/06
[signature]   Date 10/31/06

### Merchant Agreement Acceptance

[signature] Jody Tull   Date 10/31/06
[signature]   Date 10/30/06

### Corporate Resolution

1. Judy Tull ... President of Myrtle Beach Direct Corp

[signatures]
Edward Barnes — President — [signature]
Jay Ellison — VP — [signature]

10th DEC 06
[signature] Judy Tull — CEO

### Personal Guarantee

[signature] Judy Tull   Date 11/10/06
[signature]   Date 11/10/06

*P6 of Robert Keilman, CFO*

FROM : FOCUS STRATEGIES          FAX NO. : 7326712480          Dec. 14 2006 03:51PM P2



**Dallas**
3361 Boyington Drive, Suite 180
Carrollton, TX 75006
Ph: (972) 726-7778
Fax: (972) 503-8100

**Detroit**
30800 Telegraph Road, Suite 1924
Bingham Farms, MI 48025
Ph: (248) 540-1100
Fax: (248) 646-4948

### Merchant Application Acceptance

By executing this Merchant Application on behalf of the merchant described above (the "Merchant"), the undersigned individual(s): (i) represent(s) and warrant(s) that all information contained in this Merchant Application is true, correct and complete as of the date of the Merchant Application, and that such individual(s) have the requisite corporate power and authority to complete and submit this Merchant Application and make and provide the acknowledgements, authorizations and agreements set forth below, both on behalf of the Merchant and individually; (ii) acknowledge(s) that the information contained in this Merchant Application is provided for the purpose of obtaining, or maintaining, a merchant account with JETPAY MERCHANT SERVICES, LLC ("JETPAY MERCHANT SERVICES") and Merrick Bank Corporation ("Merrick") or Enterprise Bank and Trust ("Enterprise") on behalf of the Merchant, (iii) authorize JETPAY MERCHANT SERVICES and Merrick/Enterprise to investigate the credit of the Merchant and each person listed on this Merchant Application, and (iv) agree, on behalf of the Merchant and in the event the Merchant Application is accepted and executed by Merrick/Enterprise and JETPAY MERCHANT SERVICES, to all of the terms and conditions set forth in the Merchant Agreement attached to this Merchant Application and the Fee Schedule set forth above. By executing this Merchant Application, Merrick or Merrick/Enterprise and JETPAY MERCHANT SERVICES accept this Merchant Application, and agree to all of the terms and conditions set forth in the Merchant Agreement attached to this Merchant Application, and the Fee Schedule set forth on the Merchant Application Page or as set forth on Schedule A.

**Merchant**

Principal 1: _____ Date: _____
(Signature of Officer/Owner)

Principal 2: _____ Date: _____
(Signature of Officer/Owner)

**Merrick Bank Corporation/Enterprise Bank:**

By: _____ Date: _____
Name and Title: _____

**JETPAY MERCHANT SERVICES, LLC:**

By: _____ Date: _____
Name and Title: _____

### Merchant Agreement Acceptance

By signing below, the parties acknowledge they have read and agree to the terms of the Merchant Agreement. If the merchant is a corporation, its proper Corporate Officers must sign. This Agreement may be signed by one or more counterparts and all signed agreements shall be considered as one.

**Merchant**

Principal 1: _____ Date: _____
(Signature of Officer/Owner)

Principal 2: _____ Date: _____
(Signature of Officer/Owner)

**Merrick Bank Corporation/Enterprise Bank and Trust**

By: _____ Date: _____
Name and Title: _____

**JETPAY MERCHANT SERVICES, LLC:**

By: _____ Date: _____
Name and Title: _____

### Corporate Resolution

1. I, _____, the duly elected, qualified and acting _____ of _____, a _____ (the "Company"), do hereby certify as follows:
   (Corporate Secretary)     (Officer Title)     (Legal Corporate Name of Co.)   (Incorporation State)

The following resolutions were duly adopted by the board of directors/managing members/general partners (circle one) of the Company: WHEREAS, the Company desires to enter into a Merchant Agreement (the "Merchant Agreement") with Merrick Bank Corporation, a Utah industrial loan corporation ("Merrick") or Enterprise Bank and Trust ("Enterprise") and JETPAY MERCHANT SERVICES, LLC, a Texas limited liability company ("JETPAY MERCHANT SERVICES"), a copy of which Merchant Agreement is attached hereto as Exhibit "A"; WHEREAS, pursuant to the terms of the Merchant Agreement, Merrick/Enterprise and JETPAY MERCHANT SERVICES will provide certain credit card Boarding and processing for VISA and/or MASTERCARD credit card purchases made by the Company's customers; WHEREAS, pursuant to the terms of the Merchant Agreement, (a) the Company may be required to establish a Reserve Account (as defined in the Merchant Agreement) and (b) Merrick/Enterprise may require the Company to direct certain funds relating to credit card purchases in such Reserve Account; WHEREAS, pursuant to the terms of the Merchant Agreement, Merrick/Enterprise may require the Company to execute documents evidencing Merrick/Enterprise's security interest in the Operating Account (as defined in the Merchant Agreement) and Reserve Account; and WHEREAS, pursuant to the terms of the Merchant Agreement, the Company is required to comply with strict requirements concerning the processing of credit card transactions and the sale of the Company's products; NOW, THEREFORE, BE IT RESOLVED, that the Merchant Agreement by and among the Company, Merrick/Enterprise and JETPAY MERCHANT SERVICES, pursuant to which Merrick/Enterprise and JETPAY MERCHANT SERVICES shall act as the Company's exclusive provider of VISA and/or MASTERCARD credit card financing and processing services, is hereby approved and adopted in the form attached to these resolutions, together with such additions, changes or modifications as may be deemed necessary, advisable or appropriate by the officer(s) executing or signing the same to be completed; and RESOLVED FURTHER, that in connection with the Merchant Agreement, the appropriate officer(s) of the Company is/are hereby authorized to establish (a) an Operating Account into which funds from credit card sales by the Company will be directed, and (b) if necessary, a Reserve Account into which funds from credit card sales by the Company may be directed by Merrick/Enterprise in accordance with the provisions of the Merchant Agreement; RESOLVED FURTHER, that the Company hereby grants Merrick/Enterprise a security interest in the funds held by the Company in the Operating Account and Reserve Account, and the appropriate officer(s) of the Company is/are hereby authorized to execute all documents reasonably required by Merrick/Enterprise to perfect such security interests; RESOLVED FURTHER, that the appropriate officer(s) of the Company is/are hereby authorized to enter into such additional agreements, and take such additional actions as may be reasonably required by Merrick/Enterprise or JETPAY MERCHANT SERVICES in connection with the Merchant Agreement; and RESOLVED FURTHER, that the Secretary/managing member/general partner (circle one) of the Company is hereby authorized to deliver to Merrick/Enterprise and JETPAY MERCHANT SERVICES a Certificate (i) identifying the officers of the Company, (ii) verifying the signatures of such officers, and (iii) certifying a copy of these resolutions, and Merrick/Enterprise and JETPAY MERCHANT SERVICES are hereby authorized to rely on such Certificate until formally advised by a like certificate of any changes therein, and is hereby authorized to rely on any such additional certificates.

2. Each person listed below (an "Officer") (i) holds the office in the Company indicated opposite his or her name on the date hereof, (ii) the signature appearing opposite his or her name is the genuine signature of such such officer, (iii) each such Officer, acting individually, is authorized to execute and deliver the Merchant Agreement and each of the agreements and documents contemplated by the Merchant Agreement (collectively, the "Transaction Documents") on behalf of the Company, and (iv) each such Officer, acting individually, is authorized to perform the Company's obligations under the Transaction Documents on behalf of the Company.

| NAME | OFFICER | SIGNATURE |
|------|---------|-----------|
| | | |
| | | |
| | | |

IN WITNESS WHEREOF, I have executed this Certificate this _____ day of _____, 20____.

Sign: _____

Name: _____          TITLE: Corporate Secretary or Print Officer Title

** If only one Corporate Officer will complete the entire Corporate Resolution and sign as Witness; if more than one Corporate Officer, Corporate Secretary is to complete top portion of Resolution, have all other Officers sign body of Resolution, and Corporate Secretary is to sign as Witness.

### Personal Guarantee

By signing below, each individual or entity (a "Guarantor") jointly and severally (if there is more than one Guarantor) unconditionally guarantees to JETPAY MERCHANT SERVICES, LLC and Merrick Bank Corporation ("Merrick") or Enterprise Bank ("Enterprise") the prompt payment and performance of all obligations of the Merchant identified above under the Merchant Agreement (as that term is defined above), including, without limitation, all payments and covenants of the Merchant payable by the Merchant under the Merchant Agreement, including, without limitation, interest, costs and other expenses, such as attorney's fees and court costs. This means, among other things, that JETPAY MERCHANT SERVICES or Merrick/Enterprise can demand performance or payment from any Guarantor if the Merchant fails to perform any obligation or to pay what the Merchant owes under the Agreement. Each Guarantor agrees that his or her liability under this guaranty will not be limited or canceled because: (1) the Merchant Agreement cannot be enforced against the Merchant; (2) either JETPAY MERCHANT SERVICES or Merrick/Enterprise agrees to changes or modifications to the Merchant Agreement; (3) JETPAY MERCHANT SERVICES or Merrick/Enterprise or Guarantor or the Merchant from any obligation under the Merchant Agreement; (4) a law, regulation or order of any public authority affects the rights of either JETPAY MERCHANT SERVICES or Merrick/Enterprise against the Merchant or any other Guarantor. Each Guarantor further agrees that: (a) JETPAY MERCHANT SERVICES and Merrick/Enterprise each may delay enforcing any of its rights under this guaranty without losing such rights; (b) JETPAY MERCHANT SERVICES and Merrick/Enterprise each can demand payment from such Guarantor without first seeking payment from the Merchant or any other Guarantor; and (c) such Guarantor will pay all court costs, attorney's fees and collection costs incurred by either JETPAY MERCHANT SERVICES or Merrick/Enterprise in connection with the enforcement of any terms of the Merchant Agreement or this guaranty, whether or not there is a lawsuit, and such additional fees and costs as may be ordered by a court.

**Merchant**

Principal 1: *Robert Keil* Date: *11/10/06*
(Signature of Officer/Owner)

Principal 2: _____ Date: _____
(Signature of Officer/Owner)

**Merrick Bank Corporation/The Enterprise Bank**

☐ Merrick Bank Corporation     ☐ Enterprise Bank and Trust

Your Account will be processed at the following Merchant Bank:

Kay Ellison, V.P. System Operation

12/14/2006 15:23  3042551628  WUMORTGAGE STORE  PAGE 01/02


**JetPay Merchant Services**

**Dallas**
3361 Boyington Drive, Suite 180
Carrollton, TX 75006
Ph: (972) 728-7776
Fax: (972) 503-9100

**Detroit**
30600 Telegraph Road, Suite 1924
Bingham Farms, MI 48025
Ph: (248) 540-1100
Fax: (248) 546-1948

## Merchant Application Acceptance

By executing this Merchant Application on behalf of the merchant described above (the "Merchant"), the undersigned individual(s): (i) represent(s) and warrant(s) that the information contained in this Merchant Application is true, correct and complete as of the date of this Merchant Application, and that such individual(s) have the requisite corporate power and authority to complete and submit this Merchant Application and make and provide the acknowledgments, authorizations and agreements set forth below, both on behalf of the Merchant and individually; (ii) acknowledge(s) that the information contained in this Merchant Application is provided for the purpose of obtaining, or maintaining a merchant account with JETPAY MERCHANT SERVICES, LLC ("JETPAY MERCHANT SERVICES") and Merrick Bank Corporation ("Merrick") or Enterprise Bank and Trust ("Enterprise") on behalf of the Merchant; (iii) authorize JETPAY MERCHANT SERVICES and Merrick/Enterprise to investigate the credit of the Merchant and each person listed on this Merchant Application; and (iv) agree, on behalf of the Merchant and in the event this Merchant Application is accepted and executed by Merrick/Enterprise and JETPAY MERCHANT SERVICES, to all of the terms and conditions set forth in the Merchant Agreement attached to this Merchant Application and the Fee Schedule set forth above. By executing this Merchant Application, each of Merrick/Enterprise and JETPAY MERCHANT SERVICES accept this Merchant Application, and agree to all of the terms and conditions set forth in the Merchant Agreement attached to this Merchant Application and the Fee Schedule set forth on the Merchant Application Page or as set forth on Schedule A.

Merchant:

Principal 1: _____ Date: _____
(Signature of Officer/Owner)

Principal 2: _____ Date: _____
(Signature of Officer/Owner)

Merrick Bank Corporation/Enterprise Bank:

By: _____ Date: _____
Name and Title: _____

JETPAY MERCHANT SERVICES, LLC:

By: _____ Date: _____
Name and Title: _____

## Merchant Agreement Acceptance

By signing below, the parties acknowledge they have read and agree to the terms of the Merchant Agreement. If the merchant is a corporation, its proper Corporate Officers must sign. This Agreement may be signed in one or more counterparts and all signed agreements shall be considered as one.

Merchant:

Principal 1: _____ Date: _____
(Signature of Officer/Owner)

Principal 2: _____ Date: _____
(Signature of Officer/Owner)

Merrick Bank Corporation/Enterprise Bank and Trust:

By: _____ Date: _____
Name and Title: _____

JETPAY MERCHANT SERVICES, LLC:

By: _____ Date: _____
Name and Title: _____

## Corporate Resolution

1. I, _____, the duly elected, qualified and acting _____ of _____, a _____ (the "Company"), do hereby certify as follows:
   (Corporate Secretary) (Office Title) (Legal Corporate Name of Co.) (Incorporation Status)

The following resolutions were duly adopted by the Board of Directors/managing member(s)/general partners (circle one) of the Company: WHEREAS, the Company desires to enter into a Merchant Agreement (the "Merchant Agreement") with Merrick Bank Corporation, a Utah industrial loan corporation ("Merrick") or Enterprise Bank and Trust ("Enterprise"), and JETPAY MERCHANT SERVICES, LLC, a Texas limited liability company ("JETPAY MERCHANT SERVICES"), a copy of which Merchant Agreement is attached hereto as Exhibit "A"; WHEREAS, pursuant to the terms of the Merchant Agreement, Merrick/Enterprise and JETPAY MERCHANT SERVICES will provide certain credit card financing and processing for VISA and/or MASTERCARD credit card purchases made by the Company's customers; WHEREAS, pursuant to the terms of the Merchant Agreement, (a) the Company may be required to establish a Reserve Account (as defined in the Merchant Agreement) and (b) Merrick/Enterprise may require the Company to direct certain funds relating to credit card purchases to such Reserve Account; WHEREAS, pursuant to the terms of the Merchant Agreement, Merrick/Enterprise may require the Company to comply with strict requirements concerning the processing of credit card transactions and the sale of the Company's products; NOW, THEREFORE, BE IT RESOLVED, that the Merchant Agreement by and among the Company, Merrick/Enterprise and JETPAY MERCHANT SERVICES, pursuant to which Merrick/Enterprise and JETPAY MERCHANT SERVICES shall act as the Company's exclusive provider of VISA and/or MASTERCARD credit card financing and processing services, is hereby approved and adopted in the form attached to these resolutions, together with such additions, changes or modifications as may be deemed necessary, advisable or appropriate by the officer(s) executing or causing the same to be executed; and RESOLVED FURTHER, that in connection with the Merchant Agreement, the appropriate officer(s) of the Company is/are hereby authorized to establish (i) an Operating Account into which funds from credit card sales by the Company will be directed, and (ii) if necessary, a Reserve Account into which funds from credit card sales by the Company may be directed by Merrick/Enterprise in accordance with the provisions of the Merchant Agreement; RESOLVED FURTHER, that the Company hereby grants Merrick/Enterprise a security interest in the funds held by the Company in the Operating Account and Reserve Account, and the appropriate officer(s) of the Company is/are hereby authorized to execute all documents reasonably required by Merrick/Enterprise to perfect such security interest; RESOLVED FURTHER, that the appropriate officer(s) of the Company is/are hereby authorized to enter into such additional agreements, and take such additional actions as may be reasonably required by Merrick/Enterprise or JETPAY MERCHANT SERVICES in connection with the Merchant Agreement and RESOLVED FURTHER, that the Secretary/managing member/general partner (circle one) of the Company is hereby authorized to deliver to Merrick/Enterprise and JETPAY MERCHANT SERVICES a Certificate (i) identifying the officers of the Company, (ii) verifying the signature of such officers, and (iii) confirming a copy of these resolutions, and Merrick/Enterprise and JETPAY MERCHANT SERVICES are hereby authorized to rely on such Certificate until formally advised by a like Certificate of any changes therein, and is hereby authorized to rely on any such additional certificates.

2. Each person listed below (an "Officer") (i) holds the office in the Company indicated opposite his or her name on the date hereof, (ii) the signature appearing opposite his or her name is the genuine signature of each such officer, (iii) each such Officer, acting individually, is authorized to execute and deliver the Merchant Agreement and each of the agreements and documents contemplated by the Merchant Agreement (collectively, the "Transaction Documents") on behalf of the Company, and (iv) each such Officer, acting individually, is authorized to perform the Company's obligations under the Transaction Documents on behalf of the Company:

3. | NAME | OFFICER | SIGNATURE |
| --- | --- | --- |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

IN WITNESS WHEREOF, I have executed this Certificate this ___ day of _____, 20___.

Sign: _____

Name: _____

TITLE: "Corporate Secretary" or Print Officer Title

* If only one Corporate Officer will complete the entire Corporate Resolution and sign as witness; if more than one Corporate Officer, Corporate Secretary is to complete top portion of Resolution, have all other Officers sign body of Resolution, and Corporate Secretary is to sign as witness.

## Personal Guarantee

By signing below, each individual or entity (a "Guarantor") jointly and severally (if there is more than one Guarantor) and unconditionally guarantees to JETPAY MERCHANT SERVICES, LLC and Merrick Bank Corporation ("Merrick") or Enterprise Bank ("Enterprise") the prompt payment and performance of all obligations of the Merchant identified above under the Merchant Agreement, including, without limitation, all promises and covenants of the Merchant, and all amounts payable by the Merchant under the Merchant Agreement (as that term is defined above), including, without limitation, interest, costs and other expenses, such as attorney's fees and court costs. This means, among other things, that JETPAY MERCHANT SERVICES or Merrick/Enterprise can demand performance or payment from any Guarantor if the Merchant fails to perform any obligation or pay what the Merchant owes under the Agreement. Each Guarantor agrees that his or her liability under this guaranty will not be limited or canceled because: (1) the Merchant Agreement cannot be enforced against the Merchant; (2) either JETPAY MERCHANT SERVICES or Merrick/Enterprise agrees to changes or modifications to the Merchant Agreement; (3) JETPAY MERCHANT SERVICES or Merrick/Enterprise releases any other Guarantor or the Merchant from any obligation under the Merchant Agreement; (4) a law, regulation or order of any public authority affects the rights of either JETPAY MERCHANT SERVICES or Merrick/Enterprise under the Merchant Agreement; and/or (5) anything else happens that may affect the rights of either JETPAY MERCHANT SERVICES or Merrick/Enterprise against the Merchant or any other Guarantor. Each Guarantor further agrees that: (a) JETPAY MERCHANT SERVICES and Merrick/Enterprise each may delay enforcing any of its rights under this guaranty without losing such rights; (b) JETPAY MERCHANT SERVICES and Merrick/Enterprise each can demand payment from such Guarantor without first seeking payment from the Merchant or any other Guarantor; and (c) such Guarantor will pay all court costs, attorney's fees and collection costs incurred by either JETPAY MERCHANT SERVICES or Merrick/Enterprise in connection with the enforcement of any terms of the Merchant Agreement or this guaranty, whether or not there is a lawsuit, and such additional fees and costs as may be directed by a court.

Merchant:

Principal 1: Kay O. Ellison  Date: _____

Merrick Bank Corporation/The Enterprise Bank:

Principal 2: _____  Date: _____
(Signature of Officer/Owner)

Your Account will be processed at the following Merchant Bank: ☐ Merrick Bank Corporation  ☐ Enterprise Bank and Trust

12/14/2006 15:23 3842351628 WUMORTGAGE STORE PAGE 02/02



**JetPay Merchant Services**

Dallas
3351 Boyington Drive, Suite 180
Carrollton, TX 75006
Ph: (972) 726-7776
Fax: (972) 503-9100

Detroit
30800 Telegraph Road, Suite 1924
Bingham Farms, MI 48025
Ph: (248) 540-1100
Fax: (248) 646-4048

## Merchant Application Acceptance

[Block of dense legal text, largely illegible, regarding execution of the Merchant Application on behalf of the Merchant, representations and warranties, authorization of JetPay Merchant Services, LLC ("JETPAY MERCHANT SERVICES") and Merrick Bank Corporation ("Merrick") or Enterprise Bank and Trust ("Enterprise"), and acceptance of terms set forth in the Merchant Agreement and Fee Schedule on Schedule A.]

Merchant:

Principal 1: _____ Date: _____
(Signature of Officer/Owner)

Principal 2: _____ Date: _____
(Signature of Officer/Owner)

Merrick Bank Corporation/Enterprise Bank:

By: _____ Date: _____

Name and Title: _____

JETPAY MERCHANT SERVICES, LLC:

By: _____ Date: _____

Name and Title: _____

## Merchant Agreement Acceptance

By signing below, the parties acknowledge they have read and agree to the terms of the Merchant Agreement. If the merchant is a corporation, its proper Corporate Officers must sign. This Agreement may be signed by one or more counterparts and all signed agreements shall be considered as one.

Merchant:

Principal 1: _____ Date: _____
(Signature of Officer/Owner)

Principal 2: _____ Date: _____
(Signature of Officer/Owner)

Merrick Bank Corporation/Enterprise Bank and Trust:

By: _____ Date: _____

Name and Title: _____

JETPAY MERCHANT SERVICES, LLC:

By: _____ Date: _____

Name and Title: _____

## Corporate Resolution

1. I, _____, the duly elected, qualified and acting _____ of _____, a _____ (the "Company"), do hereby certify as follows:

[Dense illegible block of resolution text regarding the Merchant Agreement with Merrick Bank Corporation and Enterprise Bank and Trust and JETPAY MERCHANT SERVICES, LLC, including WHEREAS clauses regarding Reserve Account, Operating Account, security interest, and RESOLVED clauses authorizing officers to execute documents.]

2. Each person listed below (an "Officer") (i) holds the office in the Company indicated opposite his or her name as of the date hereof, (ii) the signature appearing opposite his or her name is the genuine signature of such officer, (iii) each such Officer, acting individually, is authorized to execute and deliver the Merchant Agreement and each of the agreements and documents contemplated by the Merchant Agreement (collectively, the "Transaction Documents") on behalf of the Company, and (iv) each such Officer, acting individually, is authorized to perform the Company's obligations under the Transaction Documents on behalf of the Company;

3.
| NAME | OFFICER | SIGNATURE |
|------|---------|-----------|
| [illegible] | [illegible] | [illegible] |

IN WITNESS WHEREOF, I have executed this Certificate this 11 day of Nov, 20 06.

Sign: _____

Name: _____    TITLE: Corporate Secretary or Print Other Title: Sec

*If any one Corporate Officer will complete the entire Corporate Resolution and sign as witness, if more than one Corporate Officer, Corporate Secretary is to complete top portion of Resolution, have all other Officers sign body of Resolution, and Corporate Secretary is to sign as Witness.*

## Personal Guarantee

By signing below, each individual or entity (a "Guarantor") jointly and severally (if there is more than one Guarantor) and unconditionally guarantees to JETPAY MERCHANT SERVICES, LLC and Merrick Bank Corporation ("Merrick") or Enterprise Bank ("Enterprise") the prompt payment and performance of all obligations of the Merchant identified above under the Merchant Agreement (as that term is defined above), including, without limitation, all promises and covenants of the Merchant, and all amounts payable by the Merchant under the Merchant Agreement, including, without limitation, interest, costs and other expenses, such as attorney's fees and court costs. This means, among other things, that JETPAY MERCHANT SERVICES or Merrick/Enterprise can demand performance or payment from any Guarantor if the Merchant fails to perform any obligation or pay what the Merchant owes under the Agreement. Each Guarantor agrees that his or her liability under this guaranty will not be limited or contested because: (1) the Merchant Agreement cannot be enforced against the Merchant; (2) JETPAY MERCHANT SERVICES or Merrick/Enterprise or Merrick/Enterprise releases any other Guarantor or the Merchant from any obligation under the Merchant Agreement; (4) a law, regulation or order of any public authority affects the rights of either JETPAY MERCHANT SERVICES or Merrick/Enterprise under the Merchant Agreement and/or (5) anything else happens that may affect the rights of JETPAY MERCHANT SERVICES or Merrick/Enterprise or Merrick/Enterprise at any other Guarantor. Each Guarantor further agrees that: (a) JETPAY MERCHANT SERVICES and Merrick/Enterprise each may enforce any of its rights under this guaranty without losing such right; (b) JETPAY MERCHANT SERVICES and Merrick/Enterprise each can demand payment from such Guarantor without first seeking payment from the Merchant or any other Guarantor; and (c) such Guarantor will pay all court costs, attorney's fees and collection costs incurred by either JETPAY MERCHANT SERVICES or Merrick/Enterprise in connection with the enforcement of any of the terms of the Merchant Agreement or this guaranty, whether or not there is a lawsuit, and such additional fees and costs as may be directed by a court.

Merchant:

Principal 1: _____ Date: _____
(Signature of Officer/Owner)

Merrick Bank Corporation/The Enterprise Bank:

Principal 2: _____ Date: _____
(Signature of Officer/Owner)

Your Account will be processed at the following Merchant Bank:   ☐ Merrick Bank Corporation   ☐ Enterprise Bank and Trust

## Merchant Application Acceptance

By executing this Merchant Application on behalf of the merchant described above (the "Merchant"), the undersigned individual(s): (i) represent(s) and warrant(s) that all information contained in this Merchant Application is true, correct and complete as of the date of this Merchant Application, and that such individual(s) have the requisite corporate power and authority to complete and submit this Merchant Application and make and provide the acknowledgements, authorizations and agreements set forth below, both on behalf of the Merchant and individually; (ii) acknowledge(s) that the information contained in this Merchant Application is provided for the purpose of obtaining, or maintaining a merchant account with JETPAY, LLC ("JETPAY") and Bank on behalf of the Merchant; (iii) authorize JETPAY and Bank to investigate the credit of the Merchant and each person listed on this Merchant Application; and (iv) agree, on behalf of the Merchant and in the event this Merchant Application is accepted and executed by Bank and JETPAY, to all of the terms and conditions set forth in the Merchant Agreement attached to this Merchant Application and the Fee Schedule set forth above. By executing this Merchant Application, each of Bank and JETPAY accept this Merchant Application, and agree to all of the terms and conditions set forth in the Merchant Agreement attached to this Merchant Application and the Fee Schedule set forth on the Merchant Application Page or as set forth on Schedule A.

Merchant:

Principal 1: _____ Date: _____
(Signature of Officer/Owner)

Principal 2: _____ Date: _____
(Signature of Officer/Owner)

Bank

By: _____ Date: _____

Name and Title: _____

JETPAY, LLC:

By: _____ Date: _____

Name and Title: _____

## Merchant Agreement Acceptance

By signing below, the parties acknowledge they have read and agree to the terms of the Merchant Agreement. If the merchant is a corporation, its proper Corporate Officers must sign. This Agreement may be signed by one or more counterparts and all signed agreements shall be considered as one.

Merchant:

Principal 1: _____ Date: _____
(Signature of Officer/Owner)

Principal 2: _____ Date: _____
(Signature of Officer/Owner)

Bank

By: _____ Date: _____

Name and Title: _____

JETPAY, LLC:

By: _____ Date: _____

Name and Title: _____

## Corporate Resolution

1. _____, the duly elected, qualified and acting _____ of _____, a _____ (the "Company"), do hereby certify as follows:
   Corporate Secretary**    Office Title    Legal Corporate Name of Co.    Incorporation Status

The following resolutions were duly adopted by the board of directors/managing member(s)/general partners (circle one) of the Company: WHEREAS, the Company desires to enter into a Merchant Agreement (the "Merchant Agreement") with Bank and JETPAY, LLC, a Texas limited liability company ("JETPAY"), a copy of which Merchant Agreement is attached hereto as Exhibit "A"; WHEREAS, pursuant to the terms of the Merchant Agreement, Bank and JETPAY will provide certain credit card financing and processing for VISA, MASTERCARD and/or Discover Network credit card purchases made by the Company's customers; WHEREAS, pursuant to the terms of the Merchant Agreement, (a) the Company may be required to establish a Reserve Account (as defined in the Merchant Agreement) and (b) Bank may require the Company to direct certain funds relating to credit card purchases to such Reserve Account; WHEREAS, pursuant to the terms of the Merchant Agreement, Bank may require the Company to execute instruments evidencing Bank's security interest in the Operating Account and Reserve Account (as defined in the Merchant Agreement) and Reserve Account; and WHEREAS, pursuant to the terms of the Merchant Agreement, the Company is required to comply with strict requirements concerning the processing of credit card transactions and the sale of the Company's products. NOW, THEREFORE, BE IT RESOLVED, that the Merchant Agreement by and among the Company, Bank and JETPAY, pursuant to which Bank and JETPAY shall act as the Company's exclusive provider of VISA, MASTERCARD and/or Discover Network credit card financing and processing services, is hereby approved and adopted in the form attached to these resolutions, together with such additions, changes or modifications as may be deemed necessary, advisable or appropriate by the officer(s) executing or causing the same to be completed; and RESOLVED FURTHER, that in connection with the Merchant Agreement, the appropriate officer(s) of the Company is/are hereby authorized to establish (a) an Operating Account into which funds from credit card sales by the Company will be directed, and (b) if necessary, a Reserve Account into which funds from credit card sales by the Company may be directed by Bank in accordance with the provisions of the Merchant Agreement; RESOLVED FURTHER, that the Company hereby grants Bank a security interest in the funds held by the Company in the Operating Account and Reserve Account, and WHEREAS, pursuant to the terms of the Merchant Agreement, the appropriate officer(s) of the Company is/are hereby authorized to execute all documents reasonably required by Bank to perfect such security interests; RESOLVED FURTHER, that the appropriate officer(s) of the Company is/are hereby authorized to enter into such additional agreements, and take such additional actions as may be reasonably required by Bank or JETPAY in connection with the Merchant Agreement; and RESOLVED FURTHER, that the Secretary/managing member/general partner (circle one) of the Company is hereby authorized to deliver to Bank and JETPAY a Certificate (i) identifying the officers of the Company, (ii) verifying the signatures of such officers, and (iii) certifying a copy of these resolutions, and Bank and JETPAY are hereby authorized to rely on such Certificate until formally advised by a like certificate of any changes therein, and is hereby authorized to rely on any such additional certificates.

2. Each person listed below (an "Officer") (i) holds the office in the Company indicated opposite his or her name on the date hereof, (ii) the signature appearing opposite his or her name is the genuine signature of each such officer, (iii) each such Officer, acting individually, is authorized to execute and deliver the Merchant Agreement and each of the agreements and documents contemplated by the Merchant Agreement (collectively, the "Transaction Documents") on behalf of the Company, and (iv) each such Officer, acting individually, is authorized to perform the Company's obligations under the Transaction Documents on behalf of the Company:

3. | NAME | OFFICER | SIGNATURE |
|---|---|---|
| | | |
| | | |
| | | |

IN WITNESS WHEREOF, I have executed this Certificate this _____ day of _____ 20____.
Sign:

Name: _____    TITLE: Corporate Secretary** or Print Officer Title

** If only one Corporate Officer will complete the entire Corporate Resolution and sign as witness; if more than one Corporate Officer, Corporate Secretary is to complete top portion of Resolution, have all other Officers sign body of Resolution, and Corporate Secretary is to sign as Witness.

## Guarantor of Payment

By signing below, each individual or entity (a "Guarantor") jointly and severally (if there is more than one Guarantor) and unconditionally guarantees to JETPAY, LLC and Bank the prompt payment and performance of all obligations of the Merchant identified above under the Merchant Agreement (as that term is defined above), including, without limitation, all promises and covenants of the Merchant, and all amounts payable by the Merchant under the Merchant Agreement, including, without limitation, interest, costs and other expenses, such as attorney's fees and court costs. This means, among other things, that JETPAY or Bank can demand performance or payment from any Guarantor if the Merchant fails to perform any obligation or pay what the Merchant owes under the Agreement. Each Guarantor agrees that his or her liability under this guaranty will not be limited or canceled because: (1) the Merchant Agreement cannot be enforced against the Merchant; (2) either JETPAY or Bank agrees to changes or modifications to the Merchant Agreement; (3) JETPAY or Bank releases any other Guarantor or the Merchant from any obligation under the Merchant Agreement; (4) a law, regulation or order of any public authority affects the rights of either JETPAY or Bank under the Merchant Agreement; and/or (5) anything else happens that may affect the rights of either JETPAY or Bank against the Merchant or any other Guarantor. Each Guarantor further agrees that: (a) JETPAY and Bank each may delay enforcing any of its rights under this guaranty without losing such rights; (b) JETPAY and Bank each can demand payment from such Guarantor without first seeking payment from the Merchant or any other Guarantor; and (c) such Guarantor will pay all court costs, attorney's fees and collection costs incurred by either JETPAY or Bank in connection with the enforcement of any terms of the Merchant Agreement or this guaranty, whether or not there is a lawsuit, and such additional fees and costs as may be directed by a court.

Merchant:

Principal 1: _____ Date: _____    Principal 2: _____ Date: _____
(Signature of Officer/Owner)                                                            (Signature of Officer/Owner)

Rev 070110_33



Agent Name: _____
Agent I.D.#: _____

3381 Boyington Drive, Suite 180
Carrollton, TX 75006
Ph:  (972) 759-4800
Fax: (972) 503-9100

**JetPay - Merchant Application & Agreement**

| MERCHANT NAME (DBA or Trade Name) | CORPORATE/LEGAL NAME (if Different) |
|---|---|
| | |

| LOCATION ADDRESS | CORPORATE ADDRESS (if Different) |
|---|---|
| | |

| CITY | STATE | ZIP | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| | | | | | |

| CONTACT NAME | CONTACT EMAIL ADDRESS | CONTACT TELEPHONE | FAX NUMBER | FEDERAL TAX ID# |
|---|---|---|---|---|
| | | | | |

| NAME TO APPEAR ON CARDHOLDER'S STATEMENT | PHONE # TO APPEAR ON CARDHOLDER'S STATEMENT (if MOTO) | COMPANY WEBSITE |
|---|---|---|
| | | |

DOES THIS LOCATION CURRENTLY TAKE VISA/MASTERCARD/DISCOVER®NETWORK?
☐ No   ☐ Yes   Reason For Leaving _____

HAVE MERCHANT OR OWNERS/PRINCIPALS EVER BEEN TERMINATED FROM ACCEPTING BANKCARDS FOR THIS BUSINESS OR ANY OTHER BUSINESSES?
☐ No   ☐ Yes (if yes, please explain)

**OWNERSHIP**
☐ Individual/Sole Proprietor   ☐ Partnership
☐ Corporation                  ☐ LLC State: _____
☐ Non-Profit (Must Provide 503-C)
☐ Private   ☐ Publicly Traded   ☐ Government

**LOCATION:**
Building Type: ☐ Shopping Center  ☐ Office Building  ☐ Industrial Building  ☐ Residence
Merchant:      ☐ Owns             ☐ Rents
Area Zoned:    ☐ Commercial       ☐ Industrial       ☐ Residential
Square Footage: ☐ 0-500   ☐ 501-2500   ☐ 2501-5000   ☐ 5001-10000+

**PRINCIPALS**

Principal Name:
First:_____ Middle:_____ Last:_____ SSN:_____ % Ownership:_____ Title:_____
Home Address:_____ City:_____ State:_____ Zip:_____ Date of Birth:_____
Home Phone:_____ Cell Phone:_____ Email Address:_____

Principal Name:
First:_____ Middle:_____ Last:_____ SSN:_____ % Ownership:_____ Title:_____
Home Address:_____ City:_____ State:_____ Zip:_____ Date of Birth:_____
Home Phone:_____ Cell Phone:_____ Email Address:_____

| HAVE MERCHANT OR OWNERS/PRINCIPALS EVER FILED: ☐ Business Bankruptcy ☐ Personal Bankruptcy (If yes, please explain) _____ | YEARS IN BUSINESS* | AVERAGE TICKET $_____ | MONTHLY VISA/MASTERCARD/DISCOVER NETWORK VOLUME $_____ |
|---|---|---|---|

**NATURE OF BUSINESS:**
(What are you accepting credit cards for? When is the card charged? When is the product or service delivered? Please include any marketing materials that may help describe your product or service.)

**REFUND POLICY:**
(Provide details of your return policy.)

Seasonal Sales: ☐ Yes ☐ No   If so, please list high volume months : _____

**SALES METHOD:**
Retail Swiped_____%  Keyed with Signatures or Imprints_____%  Mail Order_____%  Phone_____%
Inbound Calls_____%  Outbound Calls_____%  Internet_____%  ACH_____%

**OTHER CARDS ACCEPTED*** (Place the account number in the space below for existing accounts)
American Express_____  ☐ Apply

By checking "Apply" for American Express merchant account, you acknowledge that you will receive Terms and Conditions from the card company for which you wish to apply. Please note that these companies are separate entities with their own pricing and acceptance policies.

Reporting Options: ☐ Real-Time Reporting  ☐ Daily Settlement Reporting  ☐ Virtual Terminal Reporting  ☐ Other: _____
E-Mail Address to send Daily Sales Summaries to: _____

VENDOR REFERENCES (List 2 -- include: name, address, and phone number)
1.
2.

**Acquiring Bank Disclosure**

Member Bank (Acquirer) Responsibilities:

☐ Merrick Bank 101 Crossways Park West, Woodbury NY 11797, 800-328-9155
☐ Susquehanna Bank 1570 Manheim Pike, Lancaster, PA 17604, 856-794-4381

1. A Visa Member is the only entity approved to extend acceptance of VISA products directly to a Merchant.
2. A Visa Member must be a principal (signor) to the Merchant Agreement.
3. The Visa Member is responsible for educating merchants on pertinent Visa Operating Regulations with which Merchants must comply.
4. The Visa Member is responsible for and must provide settlement funds to the Merchant.
5. The Visa Member is responsible for all funds held in reserve that are derived from settlement.

Signature of Officer/Owner _____   Date _____

Rev 070110_33



# MERCHANT AGREEMENT

In consideration of the mutual promises and covenants contained in this Merchant Agreement ("Agreement"), the parties agree as follows:

**1. Parties.** The parties to this Agreement are ("Bank", as marked and described below), JETPAY MERCHANT SERVICES, LLC, a Texas limited liability company whose address is 3361 Boyington Drive, Suite 180, Carrollton, TX 75006 ("JETPAY"), and the Merchant set forth on the Merchant Application form to which this Agreement is attached ("Merchant").

**2. Definitions.** For the purposes of this Agreement and the Schedules referred to herein, the following definitions apply unless the context otherwise requires:

(a) Address Verification shall mean a service that allows Merchant to verify the home address of Cardholders with the relevant Issuer.
(b) Association(s) shall mean VISA USA, Inc. ("Visa") and MasterCard International, Inc. ("MasterCard") and Discover Network ("Discover Network").
(c) Authorization shall mean an affirmative response, by or on behalf of an Issuer to a request to effect a Transaction, that a Transaction is within the Cardholder's available credit limit and that the Cardholder has not reported the Card lost or stolen. All Transactions require Authorization.
(d) Authorization Center shall mean the facility or facilities designated from time to time by Bank or JETPAY to which Merchant shall submit all requests for Authorization.
(e) Business Day shall mean any day other than (i) a Saturday or Sunday, or (ii) a day on which banking institutions in Utah are authorized by law or executive order to be closed (and on which Bank is in fact closed).
(f) Card(s) shall mean either a Visa, MasterCard, or Discover Network credit card, debit card or other similar card that requires a PIN for identification purposes or pre-paid, stored-value or gift card.
(g) Cardholder shall mean a person authorized to use a Card.
(h) Chargeback shall mean a Transaction that Bank returns to Merchant pursuant to this Agreement.
(i) Forced Sale shall mean a sales Transaction processed without an approved electronic Authorization number being obtained for the full amount of the sales Transaction at the time the Transaction is processed.
(j) Full Recourse Transactions shall mean mail orders, telephone orders, e-commerce (Internet) orders, Pre-Authorized Recurring Order Transactions, and other "card not present" sales.
(k) Issuer shall mean a member of an Association that enters into a contractual relationship with a Cardholder for the issuance of one or more Cards.
(l) Merchant Statement shall mean an itemized monthly statement of all charges and credits to the Operating Account (as that term is defined in Section 9 of this Agreement).
(m) Mid-Qualified Transactions shall mean: (i) key-entered retail Transactions; (ii) Visa telephone or mail Transactions without Address Verification; (iii) any MasterCard telephone or mail Transaction; (iv) any Discover Network telephone or mail Transaction; (v) any Transaction designated as such by the organization designated by Bank to settle Transactions with the Associations
(n) Non-Qualified Transactions shall mean: (i) any Transaction submitted for processing more than 48 hours past the time the Authorization occurred; (ii) any Transaction missing required data; and (iii) any Transaction designated as such by the organization designated by Bank to settle Transactions with the Associations.
(o) Normal Transaction shall mean a Transaction in which the Card is swiped through a terminal, register or other device, capturing the Card information encoded on the Card's magnetic strip.
(p) Pre-Authorized Recurring Order Transactions shall mean Transactions that have been pre-authorized by the Cardholder and for which the goods or services are to be delivered or performed in the future by Merchant without having to obtain approval from the Cardholder each time.
(q) Qualified Transactions shall mean: (i) retail Transactions in which the Card is swiped; (ii) Visa telephone or mail Transactions with Address Verification; or (iii) Transactions that are part of a special registered program approved by the Associations.
(r) Services shall mean the transaction processing services provided by Bank under this Agreement.
(s) Transaction shall mean the acceptance of a Card or information embossed on the Card for payment for goods sold and/or leased or services provided to Cardholders by Merchant and receipt of payment from Bank, whether the Transaction is approved, declined, or processed as a Forced Sale. The term "Transaction" also includes credits, errors, returns and adjustments.

**3. Merchant agrees to participate in program.** Merchant agrees to participate in the card processing services program established by Bank.

**4. JETPAY to provide services to Merchant.** During the term of this Agreement, subject to the terms and conditions of this Agreement, JETPAY agrees to provide technical documentation and support in order to allow Merchant to accept and process Transactions. JETPAY shall provide technical support and customer support for all Transactions, including, without limitation, Authorization, settlement, Chargeback processing and reporting, twenty-four hours each day, seven days each week during the term of this Agreement. JETPAY agrees to provide Merchant with the those Services on *Schedule A* which are not provided by Bank, as amended from time to time by JETPAY, during the term of this Agreement, subject to the terms and conditions of this Agreement.

**5. Bank to Provide Services to Merchant.** Bank agrees to provide Merchant with the Services indicated on *Schedule A*, as amended from time to time by Bank, during the term of this Agreement, subject to the terms and conditions of this Agreement.

**6. Independent Contractor.** In the performance of its duties hereunder, JETPAY shall be an independent contractor, and not an employee or agent of Bank.

**7. Compliance with Association Rules.** Merchant agrees to comply with the bylaws, rules, regulations, policy statements and guidelines of the Associations.

**8. Term.** This Agreement shall become effective when all parties sign the Merchant Application form to which this Agreement is attached and, unless sooner terminated, shall remain in effect for a term of three (3) years. This Agreement shall renew automatically for successive terms of three (3) years each, unless any party provides written notice of termination to the other parties at least 90 days prior to the end of the then-current term. Prior to termination and regardless of the circumstances for termination, Merchant grants JETPAY a right of first refusal in connection with any proposal made to Merchant by any other merchant services provider to provide a product or service that is the same or substantially similar to any product or service offered by Bank or JETPAY and which proposal Merchant wishes to accept. Merchant shall promptly notify JETPAY, in writing, of any such proposal and if Merchant's fails to provide such notice, JETPAY shall have the option to charge merchant for liquidated damages (LD), as specified in Section 38 of this Merchant Agreement. The notice from Merchant shall reasonably and sufficiently describe both the price and the non-price terms of the products and services to be offered pursuant to the proposal. Within thirty (30) days from the date JETPAY received written notice from Merchant, JETPAY may elect to exercise its right of first refusal by offering the same or substantially similar product or service on the same or more favorable price and non-price terms as that of the other merchant services provider and so notifying Merchant in writing. In the event JETPAY fails to exercise its right of first refusal with respect to any such proposal, Merchant may accept that proposal, provided, however, that JETPAY' failure to exercise its right of first refusal in any one instance shall not preclude or otherwise void or affect JETPAY' right of first refusal with respect to any other proposal. All existing obligations, warranties, indemnities and agreements with respect to Transactions entered into before such termination shall remain in full force and effect, and Merchant shall remain liable for all obligations to Cardholders and Bank incurred while this Agreement was in effect.

**9. Merchant Operating Account.** Prior to accepting any Cards, Merchant shall establish a demand deposit account at Bank, or at a financial institution approved by Bank ("Operating Account"), through which fees, charges and credits due in accordance with this Agreement may be processed. Merchant authorizes Bank or JETPAY to debit all amounts Merchant owes Bank or JETPAY hereunder from the Operating Account, whether maintained at Bank or another financial institution, at times deemed appropriate by Bank, through the ACH Banking Network or by a manual debit of the Operating Account. Merchant waives any claims for loss or damage arising out of any such charges or debits to the Operating Account against any other financial institution where the Operating Account is maintained.

**10. Reserve Account.** Upon, or at any time after, execution of this Agreement, Bank may establish a reserve account at Bank or any other financial institution designated by Bank "Reserve Account", for all future indebtedness of Merchant to Bank or JETPAY that may arise out of or relate to the obligations of Merchant under this Agreement, including, but not limited to, Chargebacks and fees, in such amount as Bank from time to time may determine in its sole discretion. Bank may fund the Reserve Account by deduction from payments due Merchant or a charge against Merchant's Operating Account or against any of Merchant's accounts at Bank. The initial amount of the reserve account is provided for in Schedule B. The Reserve Account will be maintained for a minimum of six months after the date on which this Agreement terminates or until such time as Bank determines that the release of the funds to Merchant is prudent, in the best interest of Bank, and commercially reasonable, and that Merchant's account with Bank is fully resolved. Upon expiration of this six-month period, any balance remaining in the Reserve Account will be paid to Merchant. Bank will inform Merchant in writing of any charges debited to the Reserve Account during this six-month period.

INITIAL _____

**11. Fees.** Merchant shall pay Bank and JETPAY all fees specified on *Schedule A*, as amended by Bank or JETPAY from time to time. For each Transaction, Bank or JETPAY will charge Merchant as follows:
(a) Actual Visa, MasterCard, and Discover Network interchange and assessments; and/or;
(b) An amount ("Merchant Discount Fees") equal to a specified percentage of the total cash price of each sales and cash withdrawal Transaction ("Merchant Discount Rate");
(c) A specified amount per Transaction ("Transaction Fee"); and
(d) A specified amount per Authorization ("Authorization Fee").
The Merchant Discount Rate, Authorization Fees and Transaction Fees are set forth on *Schedule A*. The Merchant Discount Fees are based on sales, not net sales. Different Merchant Discount Rates apply to Qualified, Mid-Qualified and Non-Qualified Transactions, as shown on *Schedule A*. Merchant agrees that Bank and JETPAY will deduct Merchant Discount Fees from the Operating Account or Reserve Account on a daily basis unless a monthly basis is specified on *Schedule A*. Merchant also agrees to pay Bank or JETPAY the amount of any fees, charges or penalties assessed against Bank or JETPAY by any Association or Issuer for Merchant's violation of the by-laws, rules, regulations, guidelines, policy statements or threshold requirements of such entities. Merchant shall pay Bank or JETPAY for any other services provided to Merchant by Bank or JETPAY and for all other fees shown on *Schedule A*, including, but not limited to monthly minimum fees, Chargeback fees and customer service fees.
**12. Billing.** All amounts Merchant owes Bank or JETPAY may be charged to the Operating Account or Reserve Account, recouped by adjustment to any credits due to Merchant, or set off against any account or property Bank or JETPAY holds for or on behalf of Merchant.
**13. Security Interest.** As security for the performance by Merchant of all of its obligations under this Agreement, Merchant hereby grants to Bank a security interest in the funds held in the Operating Account and in the Reserve Account. Merchant will execute and deliver to Bank such documents, in form satisfactory to Bank, as Bank may reasonably request in order to perfect Bank's security interest in the Operating Account and Reserve Account, and will pay all costs and expenses of filing the same or of filing this Agreement in all public filing offices, where filing is deemed by Bank to be necessary or desirable. Bank is authorized to file financing statements relating to the Operating Account and the Reserve Account without Merchant's signature where authorized by law.
**14. Power of Attorney.** Merchant appoints Bank as its attorney-in-fact to execute such documents as are necessary or desirable to accomplish perfection of any security interests. This appointment is coupled with an interest and shall be irrevocable as long as Merchant owes any amount to Bank or JETPAY.
**15. Equipment.** In processing Transactions, Merchant shall use only equipment or software programs provided or approved by the Authorization Center or JETPAY ("equipment") and related equipment installed or approved by JETPAY, subject to Bank's approval, and the following additional terms:
(a) The equipment shall be suitable for processing the Services;
(b) Merchant will provide, at Merchant's expense, suitable electric power and telephone services and will pay for any alterations to Merchant's premises required to properly locate Merchant's equipment;
(c) If Merchant is using equipment, Merchant acknowledges receipt of a copy of the equipment User's Guide. Merchant will use and operate the equipment only in accordance with the equipment User's Guide; and
(d) Bank will have no liability to Merchant if any installation is delayed or cannot be completed. JETPAY will not have liability to Merchant if any installation is delayed or cannot be completed for reasons not caused by the act or neglect of JETPAY. At no time will JETPAY liability exceed the amount of fees collected or reasonably expected to be collected from merchant for this delay period.
**16. Documenting Transactions.** Merchant shall submit the following information to Bank or Bank's designee in connection with Transaction processing:
(a) The DBA name of Merchant (if any), name of Merchant and Merchant's address;
(b) Merchant's customer service telephone number;
(c) Merchant's Internet address (if applicable);
(d) The Merchant Number assigned to Merchant by Bank;
(e) Merchant must retain enough information to identify a transaction and be able to reverse it upon request.
(f) The name, address and telephone number of Cardholder; and
(g) Such additional information as may from time to time be required by Bank and/or the relevant issuer.
Merchant shall not submit a Transaction to Bank (electronically or otherwise) until Merchant has performed its obligations to the Cardholder in connection with the Transaction or obtained Cardholder's consent for a Pre-Authorized Recurring Order Transaction. Merchant shall not transmit any Transaction to Bank that Merchant knows or should have known to be fraudulent or not authorized by the Cardholder. Merchant is responsible for its employees' actions. Merchant may transmit a Transaction that effects a prepayment of services or full prepayment of custom-ordered merchandise, manufactured to a Cardholder's specifications, if Merchant advises Cardholder of the immediate billing at the time of the Transaction and within time limits established by the Associations.
**17. Authorization for Transactions.** Merchant shall obtain Authorization for Transactions as follows:
(a) <u>Electronically Transmitted Transaction</u>. Merchant shall submit each Normal Transaction for Authorization to the Authorization Center using the equipment. The Authorization Center shall authorize or decline a Normal Transaction transmitted for Authorization and shall capture and process for Merchant the information relating to the Normal Transaction. If equipment is inoperable at the time of an Authorization request, the Transaction may be authorized by using the appropriate dial-up facility. In that case, the Transaction shall be entered as a Forced Sale Transaction, provided the approval number is also entered, and Merchant shall be subject to [an additional voice or audio response unit "ARU" Authorization Fee as outlined on *Schedule A*.
(b) <u>Full Recourse Transactions</u>. The following additional requirements apply to Full Recourse Transactions:
(1) All Full Recourse Transactions are at Merchant's risk. As to each Full Recourse Transaction, Merchant warrants to Bank that the person whose name is submitted to Bank as Cardholder either made or authorized another to make the purchase. Upon breach of this warranty, Bank may charge back the Transaction to Merchant. If Bank charges back the Transaction to Merchant: (i) Merchant shall pay Bank the amount of the Transaction, any Chargeback fee set forth on *Schedule A*, plus any Association fine or assessment; and (ii) Bank may charge all such amounts to the Operating Account or Reserve Account without prior notice to Merchant;
(2) All Full Recourse Transactions must be electronically authorized through the Authorization Center and, in addition to the information required in Section 16 of this Agreement, each such request for Authorization also shall include: (i) an Authorization code, if required; (ii) the Cardholder's address and Address Verification results; and (iii) in lieu of the Cardholder's signature, a notation of (A) mail order (MO), (B) telephone order (TO), (C) e-commerce order (EO), or (D) pre-authorized order (PO) on the signature line;
(3) If Merchant accepts a Pre-Authorized Recurring Order Transaction, the Cardholder shall execute and deliver to Merchant a written request for this pre-authorization. This written request shall be maintained by Merchant and made available upon request to Bank. All annual billings must be reaffirmed at least once each year. Merchant shall not deliver goods or perform services covered by a pre-authorization order after receiving notification from the Cardholder that the pre-authorization is canceled or from Bank that the Card covering the pre-authorization is not to be honored; and
(4) Merchant shall verify Cardholder's address from the Association network. For telephone or mail order sales, Merchant shall transmit a ticket/invoice number and shall do an Address Verification to qualify for the Qualified Transaction discount rate.
**18. Prohibited Transactions.** Merchant shall not do any of the following with respect to any Transaction:
(a) Impose a surcharge on a Cardholder who elects to use a Card in lieu of payment by cash, check or other mode of payment;
(b) Charge a Cardholder more than the amount the Cardholder would pay if payment were made by cash or check;
(c) Establish a minimum or maximum dollar Transaction amount;
(d) Obtain multiple Authorizations for amounts less than the total sale amount;
(e) Obtain Authorization for purposes of setting aside Cardholder's credit line for use in future sales;
(f) Extend credit for or defer the time of payment of the total cash price in any Transaction;
(g) Honor a Card except in a Transaction where a total cash price is due and payable;
(h) Make any special charge to or extract any special agreement or security from any Cardholder in connection with any Transaction;
(i) Transmit or accept for payment any Transaction that was not originated directly between Merchant and a Cardholder for the sale or lease of goods or the performance of services of the type indicated in the Merchant Application form to which this Agreement is attached;
(j) Honor or accept a Card as payment for any legal services or expenses arising out of or related to: (i) the defense of any crime other than a traffic violation; (ii) any domestic relations matter where such services or expenses are furnished to a person whose name is not embossed on a Card; or (iii) any bankruptcy, insolvency, compromise, composition or other process affecting Cardholder's creditors;
(k) Use Merchant's own Card, or one to which Merchant has access, to process a Transaction for the purpose of obtaining credit for Merchant's own benefit;
(l) Redeposit a previously charged Transaction, regardless of whether the Cardholder consents;
(m) Initiate a Transaction credit without a balance in the Operating Account equal to the credit;
(n) Use the equipment or any data received thereon for any other purpose other than for determining whether or not Merchant should accept checks or Cards in connection with a current sale or lease of goods or services;
(o) Use the equipment or any data received thereon for credit inquiry purposes or any other purpose not authorized by this Agreement;

INITIAL _____

Rev 070110_33

(p) Draw or convey any inference concerning a person's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living when any Card or check is processed as non-accepted;
(q) Disclose any information obtained through the equipment to any person except for necessary disclosures to affected Cardholders, Bank and/or the Issuer;
(r) Add any tax to Transactions unless applicable law expressly requires that Merchant be permitted to impose a tax. Any tax, if allowed, must be included in the Transaction amount and not collected separately;
(s) Disburse funds in the form of travelers cheques, if the sole purpose is to allow the Cardholder to make a cash purchase of goods or services from Merchant;
(t) Disburse funds in the form of cash;
(u) Accept a Card to collect or refinance an existing debt;
(v) Issue a transaction credit in respect of goods or services acquired in a cash transaction which are returned; or
(w) Make any cash refund to a Cardholder who has made a purchase with a Card. All transaction credits will be issued to the same Card account number as the sale.

**19. Prohibition of Furnishing Account Information.** Merchant shall not, without the Cardholder's consent, sell, purchase, provide or exchange Card account number information in the form of Transaction documents, carbon copies of imprinted Transaction documents, mailing lists, tapes, journal rolls or other media obtained by reason of a Card to any third party.

**20. Daily Reconciliation of Transactions.**
(a) **Electronically Transmitted Transactions.** Transactions will be settled on a daily basis. Bank shall deliver payment to Merchant as soon thereafter as practicable by a credit to the Operating Account equal to the reconciled summary Transaction total of all of Merchant's total summary Transactions since the previous credit. This credit will be reduced, if necessary, by: (i) the sum of all Cardholder charges denied, refused or charged back; (ii) all refunds processed on account of Cardholders during said time period; (iii) the fees and charges, including Chargebacks, Merchant owes Bank or JETPAY hereunder; (iv) all taxes, penalties, charges and other items incurred by Bank that are reimbursable pursuant to this Agreement; and (v) all applicable rates, fees and charges described on *Schedule A*.
(b) **Reconciliation of Transactions.** Merchant shall reconcile each settled Transaction within fifteen (15) days after the date on which such Transaction is submitted to Bank for payment, and shall notify Bank and JETPAY immediately of any discrepancies or errors Merchant notes as a result of such reconciliation. Neither Bank nor JETPAY shall have any responsibility or liability for Transaction-related errors or omissions that are brought to their attention more than thirty (30) days after the date on which the Transaction to which such error or omission relates is first presented to Bank for settlement.
(c) **Provisional Credit.** Any credits to the Operating Account are provisional only and subject to revocation by Bank until such time that the Transaction is final and no longer subject to Chargeback by the Issuer, Cardholder or Associations. Bank may withhold payment for a Transaction to Merchant, for any reason, until such time as the Transaction has been verified as legitimate by the relevant Issuer or Bank and/or JETPAY receive adequate supporting documentation from Merchant to authenticate the Transaction and mitigate Chargeback risk.

**21. Adjustments and Returns.** Merchant will maintain a fair exchange and return policy and make adjustments with respect to goods and services sold and/or leased to its customers whenever appropriate. If goods are returned, or services are terminated or canceled, or any price is adjusted, Merchant will prepare and transmit a credit or return Transaction, either electronically or by paper, for the amount of the adjustment as a deduction from the total amount of Transactions transmitted that day. If the amount of credit or return Transactions exceeds the amount of sales Transactions, Merchant shall pay Bank the excess. Merchant shall make no cash refunds on Transactions and shall handle all credit adjustments as provided in this Section 21. If no refund or return will be given, Cardholder must be advised in writing that the sale is a "final sale" and "no returns" are permitted at the time of the Transaction. Cardholder also must be advised in writing of any policy of Merchant that provides for no-cash refunds and in-store credit only. Merchant shall follow Association reservation/no-show policies. Merchant shall notify Cardholders in writing of this policy on all advance reservations. Merchant also shall notify Cardholders at the time of the reservation of the exact number of days required for reservation deposit refunds.

**22. Chargebacks.** The acceptance by Bank of any Transaction processed in accordance with the terms of this Agreement shall be without recourse to Merchant, except for: (i) Full Recourse Transactions; (ii) as otherwise indicated in this Agreement; and (iii) as follows:
(a) No specific prior Authorization for the Transaction was obtained from the Authorization Center, the approval number does not appear in the electronic transmittal that is maintained by Bank, or the Transaction was submitted to the Bank or JETPAY thirty (30) days or more after the date on which the goods and/or services to which the Transaction relates were purchased or leased by the relevant Cardholder;
(b) The Transaction was based on a pre-authorization form and the Card on which the Authorization was based has been canceled and Merchant was so notified prior to the Transaction;
(c) The Card giving rise to the Transaction was canceled and prior to, or at the time of, the Transaction, and Merchant received notice of the cancellation through the electronic terminal, in writing or otherwise;
(d) The Card expired prior to the date of the Transaction or the date of Transaction was prior to the validation date, if any, indicated on the Card;
(e) The information required in Sections 16 and 17(b) above was not submitted to Bank;
(f) Bank or Issuer has received a complaint from or on behalf of a Cardholder stating that there is an unresolved dispute or defense to a charge (whether or not valid) between Merchant and Cardholder;
(g) The Cardholder makes a written complaint to Bank or Issuer that the Cardholder did not make or authorize the Transaction;
(h) A setoff or counterclaim of any kind exists in favor of any Cardholder against Merchant that may be asserted in defense of an action to enforce payment against the Cardholder in a Transaction;
(i) The Transaction was made at or by a Merchant other than Merchant named in this Agreement;
(j) The Transaction otherwise violates the terms of this Agreement or any other Association or Issuer bylaw, rule, regulation, policy or guideline;
(k) A Transaction is charged back by an Issuer; or
(l) Any representation or warranty made by Merchant in connection with the Transaction is false or inaccurate in any respect.
In any such case, Bank shall not be obligated to accept a Transaction for credit to the Operating Account. If Bank has credited the Operating Account or Reserve Account for such a Transaction, Bank may return the Transaction to the Merchant, and Merchant shall pay Bank the amount of the Transaction. Merchant agrees that Bank, without prior notice to Merchant, may (i) charge the amount of the Transaction to the Operating Account or Reserve Account; (ii) recoup the amount of the Transaction by adjustment of the credits due to Merchant; or (iii) set off the amount of the Transaction against any account or property Bank holds for or on behalf of Merchant. If Merchant disagrees with Bank's decision to charge back a Transaction, Merchant must so notify Bank in writing within 10 days of the Chargeback, and provide documentation that the dispute has been resolved to Cardholder's satisfaction or proof that a credit has been issued.
Without limiting the generality of any other provision of this Agreement, if Bank or JETPAY, if JETPAY has indemnified Bank, takes legal action against Merchant for any Chargebacks or any amounts due Bank or JETPAY hereunder, Merchant shall pay the costs and attorneys' fees incurred by Bank and/or JETPAY, whether suit is commenced or not.

**23. Merchant Statement.** At least once per month, Bank shall provide Merchant with a statement (the "Merchant Statement"). All information appearing on the Merchant Statement shall be deemed accurate and affirmed by Merchant unless Merchant objects by written notice specifying the particular item in dispute within 30 days of the date of the Merchant Statement.

**24. Retention of Original Sales Information.** Merchant shall retain the information required by Sections 16 and 17(a) for seven years from the date of the Transaction. At the request of Bank, Merchant shall provide such information to Bank or JETPAY, as directed by Bank, within five (5) days of receipt of a request from Bank. Failure to meet such time frame or non-delivery of any item or delivery of an illegible copy of an item requested by an Issuer shall constitute a waiver by Merchant of any claims and may result in an irrevocable Chargeback for the full amount of the Transaction.

**25. Recovery of Cards.** Merchant will use its best efforts to reasonably and peaceably recover and retain any Card for which Merchant receives notification of cancellation, restrictions, theft or counterfeiting. This notice may be given: (i) electronically through the equipment; (ii) by the Authorization Center through any means; or (iii) by listing on any canceled Card or restricted Card list. Merchant shall also take reasonable steps to recover a Card which it has reasonable grounds to believe is counterfeit, fraudulent or stolen.

**26. Customer Complaints.** Merchant shall respond promptly to inquiries from Cardholders and shall resolve any disputes amicably. If unresolved disputes occur with a frequency unacceptable to Bank, Bank may terminate this Agreement. Bank reserves the right to charge Merchant reasonable fees and reimbursement on account of excessive Cardholder inquiries, refunds or Chargebacks. Merchant agrees to maintain the following information in writing with respect to each claim or defense asserted by a Cardholder for which Merchant has received notice:
(a) The Cardholder's name;
(b) The Card account number;
(c) The date and time the Cardholder asserted the claim or defense;
(d) The nature of the claim or defense; and
(e) The action that Merchant took in an attempt to resolve the dispute.
Upon request, Merchant shall furnish Bank with this information in writing within 10 days.

**27. Confidentiality.** Merchant shall treat all information received in connection with this Agreement as confidential. Merchant shall prevent the disclosure of this information except for necessary disclosures to affected Cardholders, to Bank, to JETPAY and to Issuers.

INITIAL _____

Rev 070110_33

used to process Transactions in accordance with this Agreement. Merchant will display prominently at its place of business Card emblems and other promotional material and literature provided by Bank directly or through JETPAY. Subject to the terms and conditions of this Agreement and such rules as authorized by Bank, Merchant may use Card service marks or design marks in its own advertisement and promotional materials.

**29. Compliance with Applicable Law.** Merchant represents and warrants that it has obtained all necessary regulatory approvals, certificates and licenses to sell any product or provide any service it intends to offer, and that it is in compliance with the Telephone Disclosure and Dispute Resolution Act and the regulations of the Federal Trade Commission and the Federal Communications Commission. Merchant shall comply with all present and future federal, state and local laws and regulations pertaining to Transactions, including, without limitation, the Federal Fair Credit Reporting Act, the Federal Truth-in-Lending Act, the Electronic Fund Transfers Act and the Federal Equal Credit Opportunity Act, as amended.

**30. Taxes.** Each party hereto shall report its income and pay its own taxes to any applicable jurisdiction. If Bank or JETPAY are required to pay any taxes, interests, fines or penalties owed by Merchant, said amount shall become immediately due and payable by Merchant to Bank or JETPAY. If excise, sale or use taxes are imposed on the Transactions, Merchant shall be responsible for the collection and payment thereof. Bank or JETPAY shall be entitled to recover of any of said taxes paid by it on behalf of Merchant from Merchant immediately after payment.

**31. Limitation of Liability.** In addition to all other limitations on the liability of Bank and JETPAY contained in this Agreement, neither Bank nor JETPAY shall be liable to Merchant or Merchant's customers or any other person for any of the following:
(a) Any loss or liability resulting from the denial of credit to any person or Merchant's retention of any Card or any attempt to do so;
(b) Any loss caused by a Transaction downgrade resulting from defective or faulty equipment regardless if owned by Bank, JETPAY or Merchant;
(c) The unavailability of Services caused by the termination of contracts with computer hardware vendors, processors or installers, whether terminated by Bank, JETPAY or any other person for any reason; or
(d) Interruption or termination of any Services caused by any reason except for failure of JETPAY to repair or replace equipment at Merchant's expense. At no time will JETPAY' liability exceed the amount of fees collected or reasonably expected to be collected from merchant for this delay period. .
NEITHER BANK NOR JETPAY SHALL BE LIABLE FOR ANY LOST PROFITS, PUNITIVE, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES TO MERCHANT OR TO ANY THIRD PARTY IN CONNECTION WITH OR ARISING OUT OF THIS AGREEMENT OR ANY OF THE SERVICES TO BE PERFORMED BY BANK OR JETPAY PURSUANT TO THIS AGREEMENT.
MERCHANT ACKNOWLEDGES THAT BANK HAS PROVIDED NO WARRANTIES, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO ANY EQUIPMENT AND THAT BANK HAS NO LIABILITY WITH RESPECT TO ANY EQUIPMENT. BANK MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE SERVICES IT PROVIDES HEREUNDER. SHOULD THERE BE ERRORS, OMISSIONS, INTERRUPTIONS OR DELAYS RESULTING FROM BANK'S OR JETPAY' PERFORMANCE OR FAILURE TO PERFORM OF ANY KIND, BANK'S AND JETPAY' LIABILITY SHALL BE LIMITED TO CORRECTING SUCH ERRORS IF COMMERCIALLY REASONABLE OR SUPPLYING SUCH OMISSIONS IN THE WORK PRODUCT IN WHICH THEY HAVE OCCURRED.

**32. Limitation on Damages.** In no case shall Merchant be entitled to recover damages from JETPAY or Bank that exceed the fees retained by Bank and JETPAY pursuant to this Agreement during the six month period immediately prior to the event giving rise to the claim for damages.

**33. Indemnification.** Merchant agrees to indemnify and hold Bank and JETPAY harmless from any and all losses, claims, damages, liabilities and expenses, including attorneys' fees and costs (whether or not an attorney is an employee of Bank or Bank's affiliates, JETPAY or affiliates of JETPAY) arising out of any of the following:
(a) Merchant's failure to comply with this Agreement;
(b) Any act or omission of Merchant;
(c) Merchant's failure to comply with the equipment's User's Guide;
(d) Merchant's failure to comply with any bylaw, rule, regulation, guideline or policy of any Association or Issuer;
(e) Merchant's failure to comply with any applicable law, rule or regulation;
(f) Any dispute concerning the quality, condition or delivery of any merchandise or the quality of performance of any service;
(g) The fraud or dishonesty of Merchant or Merchant's employees, licensees, successors, agents and/or assigns;
(h) Merchant's selection of an Internet service provider or other telecommunication services provider;
(i) The theft of or damage or destruction to any equipment; or
(j) Full Recourse Transactions, unauthorized Transactions and prohibited Transactions.

**34. Credit Investigation and Bank Auditing.** Bank may audit, from time to time, Merchant's compliance with the terms of this Agreement. Merchant shall provide all information requested by Bank to complete Bank's audit. Merchant authorizes parties contacted by Bank to release the credit information requested by Bank, and Merchant agrees to provide Bank a separate authorization for release of credit information, if requested. Merchant shall deliver to Bank such information as Bank may reasonably request from time to time, including without limitation, financial statements and information pertaining to Merchant's financial condition. Such information shall be true, complete and accurate. [Without limiting the generality of the foregoing, Merchant shall provide to Bank and JETPAY its balance sheet and income statements not less frequently than every three calendar months during the term of this Agreement.]

**35. Termination of Agreement by Bank and JETPAY.** Bank may terminate this Agreement upon at least 30 days' prior written notice to the other parties. In addition, Bank and JETPAY jointly may terminate this Agreement without notice to Merchant under any of the below listed circumstances. Any such notice of termination by Bank is effective upon mailing.
(a) Any information concerning Merchant obtained by Bank is unsatisfactory to Bank in Bank's sole discretion;
(b) Any act of fraud or dishonesty is committed by Merchant, its employees and/or agents, or JETPAY or Bank believes in good faith that Merchant, its employees and/or agents have committed, are committing or are planning to commit any acts of fraud or misrepresentation;
(c) Chargebacks are excessive in the opinion of Bank;
(d) Breach of this Agreement by Merchant;
(e) Any representation or warranty made by Merchant in this Agreement is not true and correct;
(f) Merchant files a petition under any bankruptcy or insolvency law;
(g) Merchant fails to maintain sufficient funds in the Operating Account to cover the amounts due to Bank hereunder;
(h) Merchant's percentage of error Transactions or retrieval requests is excessive in the opinion of Bank;
(i) Any insurance policy obtained by Bank, JETPAY or Merchant relating to Transactions and/or Chargebacks is cancelled or terminated for any reason;'
(j) Merchant fails to maintain PCI DSS compliance or is not using a compliant Payment Application per card association mandates.
(k) Merchant fails to maintain an active policy indicating PCI breach insurance.
(l) Merchant fails to provide financial statements suitable to Bank on request; or
(m) JETPAY does not or cannot perform its duties under this Agreement and Bank determines that it is not feasible to provide to Merchant the Services contemplated by this Agreement. Bank is not obligated to provide replacement Services if JETPAY does not or cannot perform.
Bank may selectively terminate one or more of Merchant's approved locations without terminating this entire Agreement. In the event of termination, all obligations of Merchant incurred or existing under this Agreement prior to termination shall survive the termination. Merchant's obligations with respect to any Transaction shall be deemed incurred and existing on the transaction date of such Transaction.

**36. Termination of Agreement by Merchant.** Merchant may terminate this Agreement upon at least 30 days' prior written notice to the other parties if Bank amends *Schedule A* pursuant to Section 39 to increase the rates, fees or charges Merchant pays hereunder, except for fees or rates that result from a pass through from an Association.

**37. Setoff.** In addition to any other legal or equitable remedy available to it in accordance with this Agreement or by law, Bank and/or JETPAY may set off any amounts due to Bank and/or JETPAY under this Agreement against any property of Merchant in the possession or control of Bank or JETPAY.

**38. Exclusivity** —Merchant shall submit, on an annual basis, not less than 75% of Merchant's total Transactions to Bank, unless Bank indicates to Merchant that it cannot or will not process that number of Transactions for Merchant. Additionally, Merchant shall provide to Bank the name and address of each other entity that Merchant elects to use to process Transactions, and copies of monthly statements from each such entity, in order to allow Bank to verify compliance by Merchant with the foregoing requirement. In the event Merchant fails to submit to Bank at least 75% of the total number of Transactions processed for or on behalf of Merchant during any twelve-month period during the term of this Agreement, Merchant: (i) acknowledges and agrees that the actual damages sustained by Bank as a result of such failure would be difficult, if not impossible, to calculate with precision; and (ii) agrees to pay to Bank and JETPAY, as liquidated damages for such failure, an amount calculated as follows:
$LD = [(TT \times 0.75) - BT] \times 0.02$; where:
LD = the liquidated damages to be paid by Merchant;
TT = the total gross dollar volume of Transactions processed for Merchant during such twelve-month period; and
BT = the total gross dollar volume of Transactions processed by Bank for Merchant during such twelve-month period.
The obligations of Merchant under this Section 38 shall survive any termination or expiration of this Agreement.

INITIAL _____

Rev 070110_33

**39. Amendments to this Agreement.** From time to time Bank may amend this Agreement as follows:
(a) Amendment to Cards and/or Services. Bank may amend or add to this Agreement Cards or Services by giving Merchant in writing of any such amendment. All provisions of this Agreement shall apply to Cards or Services added to this Agreement. Bank shall notify Merchant of the fees to be charged for processing the additional Cards and Services. Acceptance by Merchant of a new approved Card as payment for a Transaction or use of a new Service after Bank has sent Merchant notice of an amendment shall constitute Merchant's agreement to the amendment and the fees or charges related to these additions.
(b) Amendment to Fees and Charges. From time to time, Bank or JETPAY may change all rates, fees and charges set forth on *Schedule A*. Bank or JETPAY will provide written notice to Merchant of all such amendments. Bank or JETPAY may change the rates, fees and charges without prior written notice if Merchant's sales volume or average Transaction amount does not meet Merchant's projections contained in the Merchant Application form to which this Agreement is attached. If notice is required, Bank or JETPAY will give written notice on the Merchant Statement or by sending separate notice by mail.. All new rates, fees and charges will become effective for the month immediately following the month in which the notice appeared on the Merchant Statement or was sent by mail, unless Merchant terminates this Agreement in accordance with Section 36.
(c) Amendments to all other Provisions. Bank may amend this Agreement in any manner other than as described in Section 39(a) or 39(b) above simply by providing written notice of such amendment to Merchant, and such amendment shall become effective on the latter of: (i) the date on which such written notice is received by Merchant; or (ii) a date specified by Bank in such written notice.
**40. Assignment.** This Agreement may not be assigned by Merchant without the prior written consent of Bank. Bank may assign this Agreement without limitation. Assignment of this Agreement by Bank shall relieve Bank of any further obligations under this Agreement.
**41. Financial Accommodations.** Bank, JETPAY and Merchant intend this Agreement to be construed as a contract to extend financial accommodations for the benefit of Merchant.
**42. Waiver.** To the extent that Merchant becomes a debtor under any chapter of title 11 of the United States Code and such event does not result in the termination of this Agreement, Merchant hereby unconditionally and absolutely waives any right or ability that Merchant may otherwise have had to oppose, defend against or otherwise challenge any motion filed by Bank for relief from the automatic stay of 11 U.S.C. § 362(a) to enforce any of Bank's rights or claims under this Agreement.
**43. Cooperation.** In their dealings with one another, each party agrees to act reasonably and in good faith and to fully cooperate with each other in order to facilitate and accomplish the transactions contemplated hereby. Merchant agrees to allow Jet Pay to use their name in proposals, brochures, banners, and press releases which may be used to promote Jet Pay.
**44. Entire Agreement.** This Agreement, together with the Schedules attached hereto, supersedes any other agreement, whether written or oral, that may have been made or entered into by any party (or by any officer or officers of any party) relating to the matters covered herein and constitutes the entire agreement of the parties hereto.
**45. Severability.** If any provisions of this Agreement shall be held, or deemed to be, or shall in fact be, inoperative or unenforceable as applied in any particular situation, such circumstance shall not have the effect of rendering any other provision or provisions herein contained invalid, inoperative or unenforceable to any extent whatsoever. The invalidity of any one or more phrases, sentences, clauses or sections herein contained shall not affect the remaining portions of this Agreement or any part hereof.
**46. Notices.** Except for notices provided by Bank to Merchant on the Merchant Statement, all notices, requests, demands or other instruments which may or are required to be given by any party hereunder shall be in writing and each shall be deemed to have been properly given when (i) served personally on an officer of the party to whom such notice is to be given, (ii) upon expiration of a period of three (3) Business Days from and after the date of mailing thereof when mailed postage prepaid by registered or certified mail, requesting return receipt, or (iii) upon delivery by a nationally recognized overnight delivery service, addressed as follows:

| If to BANK: | With a Copy to: |
|---|---|
| Address listed on Acquirer Discloser | JETPAY |
| If to JETPAY: | If to MERCHANT: |
| JETPAY, LLC: ATTN: Trent Voigt 3361 Boyington Dr. Suite 180 Carrollton TX 75006 | Address listed on Merchant Application |

Any party may change the address to which subsequent notices are to be sent by notice to the others given as aforesaid.
**47. Governing Law.** This Agreement shall be governed and construed in accordance with the laws of the State of Texas, without regard to internal principles of conflict of laws, and federal law.
**48. Captions.** Captions in this Agreement are for convenience of reference only and are not to be considered as defining or limiting in any way the scope or intent of the provisions of this Agreement.
**49. No Waiver.** Any delay, waiver or omission by Bank to exercise any right or power arising from any breach or default of the other party in any of the terms, provisions or covenants of this Agreement shall not be construed to be a waiver of any subsequent breach or default of the same or any other terms, provisions or covenants on the part of the other party. All remedies afforded by this Agreement for a breach hereof shall be cumulative.
**50. Force Majeure.** The parties shall be excused from performing any of their respective obligations under this Agreement which are prevented or delayed by any occurrence not within their respective control including but not limited to strikes or other labor matters, destruction of or damage to any building, natural disasters, accidents, riots or any regulation, rule, law, ordinance or order of any federal, state or local government authority.
**51. ACH Processing.** When requested by Merchant, JETPAY will also provide ACH processing services at the rates specified in *Schedule A*. Merchant agrees that information supplied in this application may be used to establish a separate ACH account. If this service is requested, Merchant understands that a personal credit review may be deemed necessary and authorizes such an action. Merchant agrees that Bank and JETPAY will deduct processing fees from the Operating Account or Reserve Account on a daily basis unless a monthly basis is specified on *Schedule A*. Merchant also agrees to pay Bank or JETPAY the amount of any fees, charges or penalties assessed against Bank or JETPAY. Merchant agrees to abide by all National Automated Clearing House Association (NACHA) rules and regulations governing ACH processing and use of their networks.
**52. Honoring Cards.** (a) Merchant will accept all valid Cards when properly presented by Cardholders in payment for goods or services, subject to Visa, MasterCard and/or Discover Network rules requiring Merchant to elect whether it will accept credit only, debit only or both debit and credit Cards. Merchant's election is set forth in the Application. (b) Merchant shall not establish minimum or maximum amounts for Card sales as a condition for accepting any Card. (c) Merchant shall not require any Cardholder to pay as a surcharge any part of any discount or charge imposed upon Merchant by this Agreement, whether through any increase in price or otherwise require a customer presenting a Card to pay any charge or price as a condition of sale that is not also required from a customer paying cash. However, Merchant may not, by this term, be prevented from offering discounts to customers for cash purchases. (d) Merchant shall not engage in a Card Transaction (other than a mail order, telephone order, ecommerce or preauthorized sale to the extent permitted under this Agreement) if the person seeking to charge the purchase to his or her Card account does not present the Card to permit Merchant to compare the signature on the Card to the signature on the Sales Draft and obtain an Imprint or otherwise use the physical Card to complete the Transaction.
**53. Important Merchant Responsibilities.** (a) Ensure compliance with payment card industry data security standard requirements. (b) Maintain fraud and chargebacks below Association thresholds. (c) Maintain an active data breach insurance policy with at least $50,000 in coverage. (d) Review and understand the terms of the Merchant Agreement. (e) Comply with all Association Operating Regulations. (f) The responsibilities listed do not supersede terms of the Merchant Agreement and are provided to ensure the Merchant understands some important obligations of each party and that the Association Member is the ultimate authority should the Merchant have any problems.

INITIAL _____

Rev 070110_33

## Merchant Application Acceptance

By executing this Merchant Application on behalf of the merchant described above (the "Merchant"), the undersigned individual(s): (i) represent(s) and warrant(s) that all information contained in this Merchant Application is true, correct and complete as of the date of this Merchant Application and that they have the full corporate and/or other authority to complete and submit this Merchant Application and make and provide the acknowledgements, authorizations and agreements set forth below, both on behalf of the Merchant and individually; (ii) acknowledge(s) that the information contained in this Merchant Application is provided for the purpose of obtaining, or maintaining a merchant account with JETPAY, LLC ("JETPAY") and Bank on behalf of the Merchant; (iii) authorize JETPAY and Bank to investigate the credit of the Merchant and each person listed on this Merchant Application; and (iv) agree, on behalf of the Merchant and in the event this Merchant Application is accepted and executed by Bank and JETPAY, to all of the terms and conditions set forth in the Merchant Agreement attached to this Merchant Application and the Fee Schedule set forth above. By executing this Merchant Application, each of Bank and JETPAY accept this Merchant Application, and agree to all of the terms and conditions set forth in the Merchant Agreement attached to this Merchant Application and the Fee Schedule set forth on the Merchant Application Page or as set forth on Schedule A.

**Merchant:**

Principal 1: _____ (Signature of Officer/Owner) Date: _____

Principal 2: _____ (Signature of Officer/Owner) Date: _____

**Bank**

By: _____ Date: _____
Name and Title: _____

**JETPAY, LLC:**

By: _____ Date: _____
Name and Title: _____

## Merchant Agreement Acceptance

By signing below, the parties acknowledge they have read and agree to the terms of the Merchant Agreement. If the merchant is a corporation, its proper Corporate Officers must sign. This Agreement may be signed by one or more counterparts and all signed agreements shall be considered as one.

**Merchant:**

Principal 1: _____ (Signature of Officer/Owner) Date: _____

Principal 2: _____ (Signature of Officer/Owner) Date: _____

**Bank**

By: _____ Date: _____
Name and Title: _____

**JETPAY, LLC:**

By: _____ Date: _____
Name and Title: _____

## Corporate Resolution

1. _____, the duly elected, qualified and acting _____ of _____, a _____ (the "Company"), do hereby certify as follows:
   Corporate Secretary**          Office Title          Legal Corporate Name of Co.          Incorporation Status

The following resolutions were duly adopted by the board of directors/managing member(s)/general partners (circle one) of the Company: WHEREAS, the Company desires to enter into a Merchant Agreement (the "Merchant Agreement") with Bank and JETPAY, LLC, a Texas limited liability company ("JETPAY"), a copy of which Merchant Agreement is attached hereto as Exhibit "A"; WHEREAS, pursuant to the terms of the Merchant Agreement, Bank and JETPAY will provide certain credit card financing and processing for VISA, MASTERCARD and/or Discover Network credit card purchases made by the Company's customers; WHEREAS, pursuant to the terms of the Merchant Agreement, (a) the Company may be required to establish a Reserve Account (as defined in the Merchant Agreement) and (b) Bank may require the Company to direct certain funds relating to credit card purchases to such Reserve Account; WHEREAS, pursuant to the terms of the Merchant Agreement, Bank may require the Company to execute instruments evidencing Bank's security interest in the Operating Account (as defined in the Merchant Agreement) and Reserve Account; and WHEREAS, pursuant to the terms of the Merchant Agreement, the Company is required to comply with strict requirements concerning the processing of credit card transactions and the sale of the Company's products. NOW, THEREFORE, BE IT RESOLVED, that the Merchant Agreement by and among the Company, Bank and JETPAY, pursuant to which Bank and JETPAY shall act as the Company's exclusive provider of VISA, MASTERCARD and/or Discover Network credit card financing and processing services, is hereby approved and adopted in the form attached to these resolutions, together with such additions, changes or modifications as may be deemed necessary, advisable or appropriate by the officer(s) executing or causing the same to be completed; and RESOLVED FURTHER, that in connection with the Merchant Agreement, the appropriate officer(s) of the Company is/are hereby authorized to establish (a) an Operating Account into which funds from credit card sales by the Company will be directed, and (b) if necessary, a Reserve Account into which funds from credit card sales by the Company may be directed by Bank in accordance with the provisions of the Merchant Agreement; RESOLVED FURTHER, that the Company hereby grants Bank a security interest in the funds held by the Company in the Operating Account and Reserve Account, and the appropriate officer(s) of the Company is/are hereby authorized to execute all documents reasonably required by Bank to perfect such security interests; RESOLVED FURTHER, that the appropriate officer(s) of the Company is/are hereby authorized to enter into such additional agreements, and take such additional actions as may be reasonably required by Bank or JETPAY in connection with the Merchant Agreement; and RESOLVED FURTHER, that the Secretary/managing member/general partner (circle one) of the Company is hereby authorized to deliver to Bank and JETPAY a Certificate (i) identifying the officers of the Company, (ii) verifying the signatures of such officers, and (iii) certifying a copy of these resolutions, and Bank and JETPAY are hereby authorized to rely on such Certificate until formally advised by a like certificate of any changes therein, and is hereby authorized to rely on any such additional certificates.

2. Each person listed below (an "Officer") (i) holds the office in the Company indicated opposite his or her name on the date hereof, (ii) the signature appearing opposite his or her name is the genuine signature of each such officer, (iii) each such Officer, acting individually, is authorized to execute and deliver the Merchant Agreement and each of the agreements and documents contemplated by the Merchant Agreement (collectively, the "Transaction Documents") on behalf of the Company, and (iv) each such Officer, acting individually, is authorized to perform the Company's obligations under the Transaction Documents on behalf of the Company:

3. 

| NAME | OFFICER | SIGNATURE |
|------|---------|-----------|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

IN WITNESS WHEREOF, I have executed this Certificate this _____ day of _____ 20_____.

Sign:

Name: _____                              TITLE: *Corporate Secretary*** *or Print Officer Title*

** If only one Corporate Officer will complete the entire Corporate Resolution and sign as witness; if more than one Corporate Officer, Corporate Secretary is to complete top portion of Resolution, have all other Officers sign body of Resolution, and Corporate Secretary is to sign as Witness.

## Guarantor of Payment

By signing below, each individual or entity (a "Guarantor") jointly and severally (if there is more than one Guarantor) and unconditionally guarantees to JETPAY, LLC and Bank the prompt payment and performance of all obligations of the Merchant identified above under the Merchant Agreement (as that term is defined above), including, without limitation, all promises and covenants of the Merchant, and all amounts payable by the Merchant under the Merchant Agreement, including, without limitation, interest, costs and other expenses, such as attorney's fees and court costs. This means, among other things, that JETPAY or Bank can demand performance or payment from any Guarantor if the Merchant fails to perform any obligation or pay what the Merchant owes under the Agreement. Each Guarantor agrees that his or her liability under this guaranty will not be limited or canceled because: (1) the Merchant Agreement cannot be enforced against the Merchant; (2) either JETPAY or Bank agrees to changes or modifications to the Merchant Agreement; (3) JETPAY or Bank releases any other Guarantor or the Merchant from any obligation under the Merchant Agreement; (4) a law, regulation or order of any public authority affects the rights of either JETPAY or Bank under the Merchant Agreement; and/or (5) anything else happens that may affect the rights of either JETPAY or Bank against the Merchant or any other Guarantor. Each Guarantor further agrees that: (a) JETPAY and Bank each may delay enforcing any of its rights under this guaranty without losing such rights; (b) JETPAY and Bank each can demand payment from such Guarantor without first seeking payment from the Merchant or any other Guarantor; and (c) such Guarantor will pay all court costs, attorney's fees and collection costs incurred by either JETPAY or Bank in connection with the enforcement of any terms of the Merchant Agreement or this guaranty, whether or not there is a lawsuit, and such additional fees and costs as may be directed by a court.

**Merchant:**

Principal 1: _____ (Signature of Officer/Owner) Date: _____    Principal 2: _____ (Signature of Officer/Owner) Date: _____

Rev 070110_33

IMPORTANT INFORMATION ABOUT PROCEDURES
FOR OPENING A NEW ACCOUNT

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

---

### ATTACH VOIDED CHECK HERE

**A voided check from your checking account must be included in this application**
**(Do not use a deposit ticket or temporary check)**

---

### ATTACH COPY OF PRINCIPAL'S DRIVERS LICENSE HERE
(or on a separate page for all principals listed on the first page of this agreement)

---

### ATTACH COPY SECONDARY PRINCIPAL IDENTIFICATION HERE
(or on a separate page for all principals listed on the first page of this agreement)
**(Any one of the following) Current Auto Insurance Card or Registration**
**Current Utility Bill**
**Employer ID Card with Photo**
**Most Recent Complete Tax Return**
**Most Recent Real Estate Bill**

---

Rev 070110_33



## Payment Card Industry Data Security Standard Merchant Options

Active PCI DSS compliance is required to obtain a merchant account. By participating in our PCI Compliance program, you will gain access to full PCI DSS compliance documentation, assistance in completing any necessary tasks required to become compliant and gain access to a PCI Breach Insurance policy by Royal Group Services Ltd., LLC. Your coverage will begin on the first day of the month after signing this agreement. The below contact listed will be contacted with login information and access directions.

Does the merchant use:  Software ☐  Terminal ☐ ?

If Terminal, what type: _____

If Software, Payment Application Name: _____

If Software, what is the version of the Payment Application in use: _____

Is your organization currently PCI DSS Compliant?   Yes ☐  No ☐

If Yes, who is your current qualified security assessor? _____

<u>If Yes, please include the most recent copy of your PCI DSS certification.</u>

PCI Contact Information:

| CONTACT NAME | CONTACT EMAIL ADDRESS | CONTACT TELEPHONE | FAX NUMBER |
|---|---|---|---|
|  |  |  |  |

The PCI Compliance program includes access to and assistance with the Self Assessment Questionnaire including task management for out-of-compliance items and policy assistance (PCI ToolKit by CSRSI, Inc.), PCI quarterly scans* and coverage for up to $50,000 per each merchant identification number (MID) for any one incident or in any year. For merchants with 10 or more insured MIDs, there is an aggregate limit of $500,000 for any one incident or in any one year.

Merchants who opt out of the PCI Toolkit/Scanning portion are still required to have breach insurance. For pricing, see your Schedule A. If you do not choose the annual option on the Schedule A, our system will default to monthly billing. Merchants can opt out of the PCI Compliance program but will be required to provide full compliance certification through their current provider as well as a copy of the merchant's active PCI Breach insurance on an annual basis. Information regarding PCI DSS is available at https://www.pcisecuritystandards.org. Questions regarding PCI DSS or PCI Breach insurance can be emailed to compliance@jetpay.com.

\* PCI scanning included in package pricing is based on one IP per merchant account. Additional fees may apply if there is additional IPs requiring the PCI scan.

INITIAL _____

Rev 070110_33