**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**(CENTRAL DIVISION)**

| | |
|---|---|
| In re:<br><br>SOUTHERN SKY AIR & TOURS, LLC,<br>d/b/a DIRECT AIR,<br><br>Debtor | Chapter 11<br>Case No. 12-40944-MSH |

**LIMITED OBJECTION OF AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC. TO
EMERGENCY MOTION OF JETPAY MERCHANT SERVICES, LLC FOR RELIEF FROM STAY TO CONTINUE PROCESSING CUSTOMER CHARGEBACKS FROM NON-ESTATE PROPERTY ESCROW ACCOUNT IN THE ORDINARY COURSE OF BUSINESS**

American Express Travel Related Services Company, Inc. ("AMEX"), a creditor of the above-captioned debtor and debtor-in-possession, Southern Sky Air & Tours, LLC d/b/a Direct Air (the "Debtor"), hereby makes its limited objection to the emergency motion (the "Motion") of JetPay Merchant Services, LLC ("JetPay"), for entry of a proposed order granting JetPay relief from the automatic stay to permit certain afflicted parties to a customer escrow account to continue processing customer chargebacks and refunds in the ordinary course of business consistent with the terms of an escrow arrangement established and entered into pursuant to applicable regulations of the Department of Transportation ("DOT") and JetPay's course of dealings regarding the Debtor and its depository bank, Valley National Bank (the "Bank").

AMEX objects to the Motion on several limited grounds, on the basis that it situated similarly to JetPay with respect to making claims against the Debtor's escrow account (the "Escrow Fund") at the Bank. First, contrary to JetPay's assertions in the Motion, AMEX estimates that approximately ten percent (10%) of the Debtor's sales

- 1 -

were made with American Express Cards. Accordingly, AMEX has funded a significant percentage of the Escrow Fund through its course of dealing with the Debtor and the Bank, contrary to the one (1%) percent or less alleged by JetPay.

Second, AMEX objects to the proposed order attached to the Motion in that it has contractual rights and obligations with respect to the Escrow Fund similar to those of JetPay, and JetPay has failed to include AMEX in the proposed order as a party permitted to make claims on the Escrow Fund to reclaim its pro-rata share of the Escrow Fund. Further, there are likely other claimants to the Escrow Fund, including individual consumers. Accordingly, the terms of the proposed order are overly narrow.

Third, although AMEX agrees with JetPay that the Escrow Fund is not subject to the claims of the Debtor's general creditors and the Debtor has no legal interest in the Escrow Funds, AMEX suggests that the Court retain jurisdiction over the Escrow Fund to manage and allocate the claims against the Escrow Fund, whether lodged by a JetPay, AMEX, another credit card processor or an individual consumer. AMEX currently has credited over $1.8 million to American Express Cardmembers for disputed charges relating to purchases from the Debtor, and expects that amount to continue to grow. To the extent that AMEX, JetPay and any other claimant are successfully reimbursed from the Escrow Fund (either completely or partially), the potential claims against the Debtor's estate are reduced accordingly. Further, without a single claims process, there is a risk that claims already satisfied by the Escrow Fund would be lodged again in the Debtor's bankruptcy case. By retaining jurisdiction over the claims process, the Court would be able to significantly reduce the risk such potentially fraudulent conduct. Thus, notwithstanding JetPay's assertions regarding the Debtor's lack of a property interest in the Escrow Fund under 11 U.S.C. §541, payouts to JetPay and to AMEX from the

Escrow Fund have a significant impact on the size of claims that will be made against the Debtor's estate. To that extent, this Court's retention of jurisdiction over the management of AMEX's and JetPay's pro rata claims against the Escrow Fund would ensure a fair and equitable distribution among AMEX, JetPay, and any other party who may have similar rights against the Escrow Fund.

WHEREFORE, AMEX requests that the Court enter the proposed order on the Motion, but with the following changes:

A. Amending the order to eliminate references to any specific person, as persons granted relief from the automatic stay in order to make claims against the Escrow Fund;

B. Amending the proposed order to retain jurisdiction over the payment of claims against the Escrow Fund, to ensure a pro rata and equitable distribution of the monies held in the Escrow Fund among JetPay, AMEX, and any other persons with similar contractual rights and obligations with respect to the Escrow Fund; and

      C.     Granting such and other relief as the Court deems just and proper.

Respectfully submitted,

AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC.

By its counsel,

   /s/ Kevin C. McGee
J. Robert Seder, Esq. (BBO# 450260)
Kevin C. McGee, Esq. (BBO# 548923)
SEDER & CHANDLER, LLP
339 Main Street
Worcester, Massachusetts 01608
(508) 757-7721
kmcgee@sederlaw.com
jrseder@sederlaw.com

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)**

| | |
|---|---|
| In re:<br><br>SOUTHERN SKY AIR & TOURS, LLC,<br>d/b/a DIRECT AIR,<br><br>　　　　　　Debtor | Chapter 11<br>Case No. 12-40944-MSH |

ECF CERTIFICATE OF SERVICE

　　　　I, Kevin C. McGee, hereby certify that I will, immediately upon receipt of the notice of electronic service, serve by first class mail, postage prepaid or by means directed by the Court, a true and correct copy of the foregoing Limited Objection of American Express Company upon any person listed below who is not deemed to have consented to electronic notice or service in this case under MLBR, EFR 9.

　　　　　　　　　　　　　　　　　　　　*/s/ Kevin C. McGee*
　　　　　　　　　　　　　　　　　　　　Kevin C. McGee (BBO# 548923)
　　　　　　　　　　　　　　　　　　　　SEDER & CHANDLER, LLP
　　　　　　　　　　　　　　　　　　　　339 Main Street
　　　　　　　　　　　　　　　　　　　　Worcester, MA  01608
　　　　　　　　　　　　　　　　　　　　(508) 757-7721
　　　　　　　　　　　　　　　　　　　　kmcgee@sederlaw.com