Exhibit A
(Engagement Letter)



ASI ADVISORS, LLC
445 Hamilton Avenue, Suite 1102
White Plains, NY 10601

Tel: (914) 358-0032
Fax: (914) 358-0033
dstukes@asi-advisors.com

Donald A. Stukes
*Senior Managing Director*

March 13, 2012

Mr. Hank Torbert
Chairman
Southern Sky Air & Tours, LLC
DBA Direct Air
1600 Oak Street
Myrtle Beach, SC 29577

Dear Hank:

This letter confirms the understanding and agreement ("the Agreement") between ASI Advisors, LLC ("ASI") and Southern Sky Air & Tours, LLC DBA Direct Air ("Direct" or the "Company") regarding the retention of ASI by Direct, effective as of March 13, 2012 (the "Effective Date"), as its financial advisor for the purposes set forth herein.

Under this Agreement, ASI will provide general restructuring advice and other financial advisory services to the Direct in connection with a possible "Restructuring" (as defined below) of Obligations (as defined below) and will assist Direct in analyzing, structuring, negotiating, and effecting the Restructuring pursuant to the terms and conditions of this Agreement. As used in this Agreement, the term "Restructuring" shall mean, collectively, (i) any restructuring, reorganization and/or recapitalization of existing and potential debt obligations or claims involving , without limitation, senior debt, subordinated debt, trade claims, lease obligations, general unsecured claims, any obligations under the Company Credit Agreements, and other liabilities of Direct (collectively, the "Obligations"); and/or (ii) any complete or partial repurchase, refinance, extension or repayment by the Company of any of the Obligations; and/or any merger of assets and stock/membership interests with another Part 121 airline carrier or Part 380 tour operator.

ASI will, working together with the Company and its respective legal counsel, render such general restructuring and financial advisory services as the Company may reasonably request, including but not limited to the following:

(a) Assist in the evaluation of the Company's business , operations, and prospects, including evaluation of proposed strategic alternatives;



(b) Assist in the development, review and analysis of the Company's long-term business plan and related financial projections, including the development of a detailed financial model of Direct and the assessment of the restructuring objectives developed by the Company;

(c) Assist in the development of financial data and presentations to the Company's Board of Directors (or committees thereof), management, various creditors and other third parties;

(d) Analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity;

(e) Analyze various restructuring scenarios and the potential impact of these scenarios on the value of Direct and recoveries of those stakeholders impacted by the Restructuring, including potential recoveries and impacts under a Chapter 11 proceeding;

(f) Assist in the development of a restructuring plan or merger plan and provide strategic advice with regard to restructuring of refinancing the Obligations;

(g) Evaluate and assist in the determination of Direct's liquidity needs, debt capacity and alternative capital structures;

(h) Render financial advice to Direct and participate in meetings or negotiations among Direct and its creditors, lessors, and other interested parties or relevant parties or regulatory bodies in connection with any Restructuring or merger;

(i) Advise Direct and participate in negotiations with creditors with respect to potential waivers and amendments with respect to the Obligations;

(j) Advise Direct on the timing, nature and terms of other consideration and/or inducements to be offered to creditors pursuant to the Restructuring or merger;

(k) Assist Direct and counsel in preparing documentation required in connection with the Restructuring or merger;

(l) Provide advice to and attend meetings of the Board of Directors of Direct, and any relevant committees thereof;

(m) Provide testimony, as necessary, in any proceeding before any Bankruptcy Court;

(n) Provide Direct with appropriate general restructuring advice; and

(o) Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring as reasonably requested and mutually agreed.

Notwithstanding anything contained in the agreement to the contrary, ASI shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management, or liquidity. ASI makes no representations or warranties about the Company's ability to (i) successfully improve operations, (ii) maintain or secure sufficient liquidity to operate its business, or

(iii) successfully complete a Restructuring. ASI is retained under this Agreement solely to provide advice regarding a Restructuring and is not "crisis management".

The Company agrees to pay the following fees to ASI for the services being provided hereunder:

(i) a retainer advisory fee (the "Retainer") in the amount of $15,000 in cash, payable upon the execution of this Agreement by both parties ;
(ii) you will be billed for professional fees at a hourly rate no less than $200 per hour to no more than $500 per hour based upon the staff assigned to this engagement and related tasks;
(iii) reimbursement of all necessary, reasonable and documented third party out-of-pocket expenses incurred during this engagement, including but not limited to, travel and lodging, direct identifiable communication charges, working meals, courier services, and other necessary expenditures. In connection therewith the Company shall pay ASI on the Effective Date and maintain thereafter a $1,000 expenses advance for which ASI shall account upon termination of this Agreement; and
(iv) All professional fees and expenses will be billed to you on a monthly basis.

In the event that the Company is or becomes a debtor under Chapter 11 of the Bankruptcy Code, the Company shall use its best efforts to promptly apply to the bankruptcy court having jurisdiction over Chapter 11 case or cases ( the "Bankruptcy Court") for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of (A) this Agreement, including the attached indemnification agreement, and (B) ASI's retention by the Company under the terms of this Agreement and subject to the standard of review provided in section 328 (a) of the Bankruptcy Code. The Company shall supply ASI with a draft of such application and any proposed order authorizing ASI's retention sufficiently in advance of the filing of such application and proposed order to enable ASI and its counsel to review and comment thereon. ASI shall have no obligation to provide any services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless ASI's retention under the terms of this Agreement is approved under section 328 (a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to ASI in all respects. ASI acknowledges that in the event the Bankruptcy Court approves its retention by the Company, ASI's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328 (a) of the Bankruptcy Code and any applicable fee and expenses guideline orders. In the event the Company becomes a debtor under the Bankruptcy Code and ASI's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of ASI hereunder as promptly as practicable in accordance with the terms hereof. Prior to commencing a Chapter 11 case, the Company shall pay all invoiced amounts to ASI in immediately available funds by wire transfer.

With respect to ASI's retention under sections 327 and 328 of the Bankruptcy Code, the Company acknowledges and agrees that ASI restructuring expertise as well as in capital markets knowledge,



financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Company during the term of ASI's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of ASI's services hereunder could not be measured merely by reference to the number of hours to be expended by ASI's professionals in the performance of such services. The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of ASI and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for ASI and that the actual time and commitment required by ASI and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given the numerous issues which ASI may be required to address in the performance of its services hereunder, ASI commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for ASI's services for engagements of this nature in an out-or-court context, the Company agrees that the fee arrangements here under are reasonable under the standards set forth in U.S.C. section 328 (a).

ASI shall commit the personnel and resources necessary or appropriate to perform the services set forth herein and to work with PPI and its advisors. ASI agrees that Donald Stukes and Lee Blackwell will be actively involved in and devote significant times towards the engagement described herein.

<u>The advisory services and compensation arrangements set forth in this Agreement do not encompass other investment banking or transactions that may be undertaken by ASI at the request of the Company, including the arranging of debt or equity capital (except as provided above), issuing fairness opinions, or any other specific services not set forth in this Agreement. The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between ASI and the appropriate party.</u>

Except as contemplated by the terms hereof or as required by applicable law or legal process, ASI shall keep confidential all non-public information provided to it by or at the request of the Company, and shall not disclose such information to any third party or to any of its employees or advisors, except to its employees and advisors ("Representatives") who have a need to know such information in connection with ASI's performance of its responsibilities hereunder and who are advised of the confidential nature of the information and who agree to keep such information confidential. All such non-public information will be used solely in the course of the performance of services hereunder.

The Company will furnish or cause to be furnished to ASI such information as is reasonably necessary and appropriate to ASI's assignment (all such information so furnished being the "Information"). The Company recognizes and confirms that ASI (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification, absent manifest, error, and, (d) will not make an appraisal of any assets in connection with its assignment.



Any advice to be provided by ASI under this Agreement shall not be disclosed publicly or made available to third parties (other than Direct's other professional advisors) without the prior written consent of ASI (not to be unreasonably withheld); provided, however, that the Company may disclose such information and advice if requested pursuant to, or required by law, regulation or legal process, including in connection with seeking creditor or security holder approval and regulatory and governmental consents with respect to any restructuring transaction. All services, advice and information and reports provided by ASI to the Company in connection with this agreement shall be for the sole benefit of the Company and shall not be relied upon by any person other than the management of Direct and the Board of Directors of Direct.

The Company acknowledges and agrees that ASI has been retained to act solely as financial advisor hereunder to the Company, and does not in such capacity act as a fiduciary for the Company or any other person. ASI shall act as an independent contractor, and any duties of ASI arising out of its engagement pursuant to this Agreement shall be owed solely to the Company. Upon request of the Company, ASI will provide the Company with any financial models or tools developed in the course of the engagement hereunder, along with related documentation and supporting materials.
The Company acknowledges that it is not relying on the advice of ASI for tax, legal or accounting matters; it is seeking and will rely on the advice of its own professionals and advisors for such matters.

In consideration of ASI's agreement to provide financial advisory services to Direct in connection with this Agreement, it is agreed that the Company will indemnify ASI and its agents, representatives, members, and employees. A copy of our standard form of indemnification agreement is attached to this Agreement as Attachment A.

ASI's engagement hereunder may be terminated without cause by the Company upon 7 days' written notice or by ASI without cause upon 30 days' written notice. Each party may terminate for cause, which termination shall be effective upon written notice thereof. Notwithstanding the foregoing, (a) the provisions relating to payment of the hourly fees and expenses accrued through the date of termination, the status of ASI as an independent contractor, the confidentiality provisions hereof, and the limitation as to whom ASI shall owe duties will survive any such termination, (b) any such termination shall not affect the Company's obligations under the indemnification agreement attached as Attachment A, and (c) ASI shall be entitled to the hourly fees in the event that the Restructuring is completed at any time prior to the expiration of twelve full months following the termination of this Agreement by the Company without cause or by ASI with cause. With respect to a termination by the Company, "cause" shall include gross negligence, willful misconduct, or a material breach by ASI of the terms of this letter.

Unless otherwise notified to change such instructions, all payment made to ASI Advisors by Direct shall be made by wire transfer to the account of ASI Advisors, LLC:

Bank Name: Bank of America
           206 Main Street
           White Plains, NY 10606
Account Name: ASI Advisors, LLC
Account Number: 004834155211



ABA Number:   02600959

This Agreement (including the attached indemnification agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof.  If any provision of the Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect such provision in any other respect, which will remain in full force and effect. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party bound thereby.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

This agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.



We are delighted to accept this engagement and look forward to working with you on this matter. Please confirm that the foregoing correctly sets forth our agreement by signing and returning to ASI the duplicate copy of this Agreement and the indemnification agreement hereto as Attachment A.

Very truly yours,

ASI ADVISORS, LLC

By: _____

Donald A. Stukes
Senior Managing Director

Accepted and Agreed to as of
the date set forth above:

SOUTHERN SKY AIR & TOURS, LLC DBA DIRECT AIR

By: _____

Mr. Hank Torbert
Chairman

ATTACHMENT A

March 13, 2011

ASI Advisors, LLC
445 Hamilton Avenue, Suite 1102
White Plains, New York 10601

## INDEMNIFICATION AGREEMNENT

Gentlemen:

This letter will confirm that we have engaged ASI Advisors, LLC ("ASI") to advise and assist us in connection with matters referred to in our letter of agreement dated March 13, 2012 (the "Engagement Letter"). In consideration of your agreement to act on our behalf in connection with such matters, we agree to and hold harmless you and your affiliates and your respective partners, members, officers, directors, employees and agents and each person, if any, controlling you and any of your affiliates (you and each such other person being an "Indemnified Party") from and against any losses, claims, damages, expenses, and liabilities whatsoever, whether they be joint or several, related to, arising out of in connection with the engagement (the "Engagement") under the Engagement Letter and will reimburse each Indemnified Party for all expenses (including reasonable fees, expenses, and disbursements of counsel) as they are incurred in connection with investigation, preparing, pursuing, defending or assisting in the defense of any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement of this agreement, whether or not pending or threatened , whether or not Indemnified Party is a party, whether or not resulting in any liability and whether or not such action, claim, suit, investigation or proceeding is initiated or brought by us. We will not, however, be liable under the foregoing indemnification provision for any losses, claims, damages or liabilities (or expenses relating thereto) that have primarily resulted from the bad faith, gross negligence or willful misconduct of the Indemnified Party. We also agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to us or our owners, parents, affiliates, security holders or creditors for or in connection with the Engagement except for any such liability for losses, claims, damages, or liabilities incurred by us that have primarily resulted from the bad faith, gross negligence or willful misconduct of ASI.

If the indemnification provided for in the preceding paragraph is for any reason unavailable to an Indemnified Party in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Party hereunder, we shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages or liabilities (and expenses relating thereto) (i) in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by you, on the one hand, and us, on the other hand, from the Engagement or (ii) if and



only if the allocation provided by clause (i) above is for any reason not available, in such clause (i) but also the relative fault of each of you and us, as well as any other relevant equitable considerations; provided, however, to the extent permitted by applicable law, in no event shall your aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by you under the Engagement Letter. For the purposes of this agreement, the relative benefits to us and you of the Engagement Letter shall be deemed to be in the same proportion as (a) the total value paid or contemplated to be paid or received or contemplated to be received by us, our security holders and our creditors in the transaction or transactions that are subject to the Engagement, whether or not any such transaction is consummated, bears to (b) the fees paid or to be paid to ASI under the Engagement Letter.

Neither party to this agreement will, without the prior written consent of the other party (which consent will not be unreasonably withheld), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder (a "Judgment"), whether or not we or any Indemnified Party is an actual or potential party to such claim, action, suit or proceeding; provided that we may, or may require that you, without your prior write consent, so settle compromise or consent to the entry of a Judgment if such settlement, compromise or consent shall include an unconditional release of ASI and each other Indemnified Party hereunder from all liability arising out of such claim, action, suit or proceeding provided that such unconditioned release may be subject to a mutual release of claims that ASI and each other Indemnified Party involves only the payment of money and such obligation is satisfied in full by us.

Promptly after receipt by an Indemnified Party of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will promptly notify us in writing of such complaint or of the commencement of such action or proceeding, but failure to so notify us will not relieve us from any liability which we may have hereunder or otherwise, except to the extent that such failure materially prejudices our rights. You shall consult with us, to the extent appropriate, with a view to ensuring the reasonableness of the cost to us of our obligations hereunder. We shall be entitled to assume the defense of any action for which the indemnification is sought hereunder with counsel of our choice at our expense (in which case we shall not thereafter be responsible for the fees and expenses of any separate counsel retained by you except as set forth below). If we so elect, we will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to ASI and the payment of the fees and disbursements of such counsel.

In the event, however, such Indemnified Party is advised by outside counsel that having common counsel would present such counsel with a conflict of interest or if we fail to assume the defense of the action or proceeding in a timely manner, then such Indemnified Party may employ separate counsel reasonably satisfactory to us to represent or defend it in any action or proceeding and we will pay the fees and disbursements of such counsel; provided, however, that we will not be required to pay the reasonable fees and disbursements of more than one separate counsel for all Indemnified Parties in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which we assume, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense. Notwithstanding the provisions in this paragraph requiring that expenses be reimbursed as they are incurred, we need not reimburse you for such expenses for so long as we have a bona fide claim that you are not entitled to indemnification hereunder. If we have reimbursed you for any expenses pursuant to this indemnification agreement and it is subsequently determined that you are not entitled to indemnification hereunder, you shall promptly



refund to us such reimbursed amounts.

The foregoing reimbursement, indemnity and contribution obligation of the Company under this agreement shall be in addition to any rights that an Indemnified Party may have at common law or otherwise, and shall be binding upon and inure to the benefit of any successors, assigns, heirs, and personal representatives of the Company and such Indemnified Party.

The provisions of this agreement shall apply to the Engagement and any written modification of the Engagement and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This agreement and the Engagement Letter shall be governed by and construed in accordance with the laws of the state of New York applicable to contracts executed in and to be performed in that state.

Sincerely,

SOUTHEREN SKY AIR & TOURS, LLC DBA DIRECT AIR

By: _____
Name: Hank Torbert
Title: Chairman

Accepted and Agreed
To as of the date first
Written above:

ASI ADVISORS, LLC

By: _____
Name: Donald A. Stukes
Title: Senior Managing Director