**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| SOUTHERN SKY AIR & TOURS, LLC | ) | Chapter 11 |
|   d/b/a DIRECT AIR, | ) | Case No. 12-40944-MSH |
| | ) | |
|               Debtor. | ) | |
| | ) | |

**LIMITED OBJECTION OF THE UNITED STATES DEPARTMENT OF
TRANSPORTATION TO EMERGENCY MOTION OF JETPAY MERCHANT
SERVICES FOR RELIEF FROM THE STAY TO CONTINUE PROCESSING
CUSTOMER CHARGEBACKS FROM NON-ESTATE PROPERTY ESCROW
ACCOUNT IN THE ORDINARY COURSE (TO THE EXTENT ANY SUCH RELIEF IS
REQUIRED)**

The United States of America ("United States"), on behalf of the United States Department of Transportation ("DOT"), hereby files this limited objection to the Emergency Motion of JetPay Merchant Services, LLC ("JetPay") for Relief From the Stay to Continue Processing Customer Chargebacks From Non-Estate Property Escrow Account in the Ordinary Course (the "Motion"). In support of its limited objection, the United States states as follows:

1. Southern Sky Air & Tours, LLC d/b/a Direct Air ("Direct Air" or "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on March 15, 2012.

2. Direct Air is an indirect air carrier known as a public charter operator governed by

DOT regulations set forth in 14 C.F.R. Part 380.[1]  To obtain authorization to operate as a public charter operator, Direct Air was required to submit a public charter prospectus to DOT as described in 14 C.F.R. § 380.28.  Following DOT's acceptance of the prospectus, Direct Air could lawfully operate, sell, and receive money from prospective charter participants (also known as charter passengers).

3.    As a public charter operator, the Debtor arranged and sponsored one-way or round-trip charter flights to be operated by one or more direct air carriers.[2]  As of March 13, 2012, however, Direct Air ceased operations and cancelled all of its charter programs.  As a result, the direct air carriers with which the Debtor had contractual agreements to perform charter flights cancelled all flights.

4.    Upon information and belief, Direct Air intends to resume operations as a public charter operator.  However, Direct Air is prohibited from resuming operations as a public charter operator without DOT's acceptance of a newly-filed public charter prospectus.  In reviewing such prospectus, DOT will consider, among other things, whether accepting the prospectus and permitting Direct Air to resume operations as a public charter operator is in the public interest.  *See* 49 U.S.C. §§ 40109(a)(1) and (a)(2).

5.    DOT's comprehensive regulatory scheme protects the payments of public charter participants.  The public charter prospectus must include, among other options, a security agreement in the form of a surety bond of up to $200,000.  *See* 14 C.F.R. § 380.34(b)(1).  The security agreement seeks to insure the financial responsibility of the public charter operator and that it will supply transportation in accordance with the contracts between the public charter

---

[1] An indirect air carrier is any person who undertakes to engage indirectly in air transportation operations and who uses for such transportation the services of a direct air carrier.  14 C.F.R. § 380.2.

[2] A direct air carrier is, among other things, a certificated air carrier or a commuter air carrier that directly engages in the operation of aircraft under a certificate, or authorization issued by DOT.  *See* 14 C.F.R. § 380.2.

operator and the charter participants. 14 C.F.R. § 380.34(c)(1). In addition to the surety bond, for the protection of the charter participant payments, the direct air carrier and the public charter operator must establish a depository account with a designated bank into which all payments by charter participants to the public charter operator are deposited.[3] The terms of such depository agreements are generally described in 14 C.F.R. § 380.34.

6. The depository agreement states that the charter participant payments must be maintained by the depository bank until certain conditions are met. No earlier than 60 days prior to the scheduled day of departure of a charter flight, the depository bank pays the direct air carrier for the charter flight.[4] Two banking days after the completion of the flight, the bank may pay the public charter operator from the depository account, provided that: (1) the bank has paid the direct air carrier; and (2) the direct air carrier has certified that the flight was performed. Thus, the depository bank may not disburse funds from the depository account to the public charter operator until the flight is completed.

7. If either the operator or the carrier notifies the bank that a charter is cancelled, the bank shall make refunds directly to the charter participants. 14 C.F.R. § 380.34(b)(2)(iv).

8. Pursuant to the agreement between the Debtor, the direct air carriers, and Valley National Bank, Valley National Bank agreed to act as the depository bank for the charter participant payments made to the Debtor.[5]

---

[3] The depository bank may commingle payments by charter participants on different charter flights but must maintain a separate accounting for each charter group.

[4] The funds are deposited into the direct air carrier's depository account, which is separate from the public charter operator's depository account. The funds in the direct air carrier's depository account are disbursed to the direct air carrier's operating account upon the direct air carrier's certification that the charter flight was performed.

[5] During the hearing held on March 23, 2012 on JetPay's Motion, Valley National Bank questioned the use of the term "escrow" in describing the account that a public charter operator is required to establish as a prerequisite to obtaining authority from DOT to operate as a public charter operator. The account is a depository account commonly referred to as an escrow account and is required to be established for the sole purpose of protecting

3

9. After Direct Air filed its bankruptcy petition, Valley National Bank froze Direct Air's depository account and ceased making disbursements from that account. At this time, DOT supports Valley National Bank's actions in this regard.

10. Upon information and belief, Direct Air's depository account is underfunded. DOT is currently investigating the apparent shortfall in the depository account.

11. On March 21, 2012, JetPay filed its Motion asserting that it processes credit cards for the Debtor and that it has been processing customer chargebacks on account of the Debtor's cancelled flights. In the Motion, JetPay requests an order to "clarify that it and Valley National Bank have whatever relief from stay might be required to continue processing credit card chargebacks and refunds in the ordinary course, including remitting to JetPay funds from the escrow account arising from any recognized customer chargeback or refund." Motion at p. 2.

The Court held a hearing on the Motion on March 23, 2012, and continued the hearing to April 11, 2012. To the extent that JetPay seeks in its Motion to be reimbursed and to have funds in the depository account be remitted to it at this time, the United States objects, because it is not clear that all affected charter participants have been refunded.

12. The sole purpose of the financial security requirements described above is to protect the charter participants. Direct Air's depository account is funded entirely by charter participants' payments. Since charter participants paid for flights that they did not receive and will not receive due to cessation of Direct Air's operations, the funds contained in Direct Air's depository account are for the benefit of those charter participants and should be refunded to

---

charter participants' payments. Regardless of how Valley Bank characterizes the account, the purpose of the account remains unchanged, as well as the conditions upon which Valley Bank can disburse the funds.

them.[6] Moreover, since flights which charter participants had paid for were not performed, the Debtor has no right to the funds in the depository account. Accordingly, the depository account is not property of the Debtor or its estate.

13. DOT does not take an active role in processing individual claims involving the depository account, which as in this case, apparently will involve a *pro rata* distribution of refunds. Instead, DOT relies on other parties such as Direct Air and Valley National Bank to reconcile charter participant reservation and travel information with charter participant claims for refunds and for refunds to be made to those affected charter participants. Until all affected charter participants have had an opportunity to file claims for refunds, Valley National Bank at this time should not disburse funds from Direct Air's depository account.

WHEREFORE, the United States respectfully requests that the Court deny the relief requested in JetPay's Motion to the extent that JetPay is seeking at this time a disbursement of funds from the depository account.

                                                   Respectfully submitted,

                                                   STUART F. DELERY
                                                   Acting Assistant Attorney General

                                                   Christopher R. Donato
                                                   Assistant U.S. Attorney
                                                   BBO #628907
                                                   John Joseph Moakley Courthouse
                                                   1 Courthouse Way, Suite 9200
                                                   Boston, MA 02210
                                                   (617) 748-3303

---

[6] It is DOT's understanding that JetPay has been issuing refunds to charter participants who paid with a Visa, Mastercard, or Discovercard, including those charter participants who paid with a debit card. To the extent that JetPay has not been issuing refunds to charter participants who paid with a debit card, those charter participants may seek a refund from Direct Air's depository account, the surety bond, or Direct Air's bankruptcy estate. In addition, those charter participants that paid with cash or by check may also seek a refund from the depository account, the surety bond, or the bankruptcy estate.

/s/Andrea Horowitz Handel
J. CHRISTOPHER KOHN
TRACY J. WHITAKER
ANDREA HOROWITZ HANDEL
Civil Division
Department of Justice
Post Office Box 875
Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 307-0358
Facsimile: (202) 514-9163
Email: andrea.handel@usdoj.gov

Attorneys for the United States

Certificate of Service

I hereby certify that a copy of the foregoing document has been served by electronic mail on all parties on the Court's ECF system this 4th day of April, 2012.

/s/Andrea Horowitz Handel
Andrea Horowitz Handel