UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>SOUTHERN SKY AIR & TOURS, LLC D/B/A DIRECT AIR,<br><br><div align="center">Debtor.</div> | Case No. 12-40944 (MSH)<br><br>Chapter 11 |

**DEBTOR'S RESPONSE IN OPPOSITION TO THE U.S. TRUSTEE'S
MOTION TO CONVERT CASE TO CHAPTER 7, OR IN THE
ALTERNATIVE, FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE**

Southern Sky Air & Tours, LLC d/b/a Direct Air, debtor and debtor-in-possession herein (the "Debtor"), hereby files this response in opposition (the "Response') to the motion (the "Motion") of the United States Trustee (the "U.S. Trustee") for entry of an order either converting this case to a case under Chapter 7, or for the appointment of a Chapter 11 trustee. In response and opposition to the Motion, the Debtor respectfully states as follows:

<div align="center"><u>FACTS</u></div>

**A.      Introduction**

1.      On March 15, 2012 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code.

2.      Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its properties as a debtor-in-possession.

3.      No trustee, examiner or official committee of unsecured creditors has been appointed in this case.

4.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**B.**     **Background**

5.      The Debtor is a South Carolina limited liability company, with a principal Massachusetts business address at 375 Airport Drive, Worcester, Massachusetts, and a mailing address at 1600 Oak Street, Myrtle Beach, South Carolina.  Prior to the Petition Date, the Debtor operated its business as an indirect air carrier providing public charter air flights and offering all-inclusive vacation, golf, and entertainment packages.  In addition, the Debtor operated a reservation/call center located in Beckley, West Virginia, but ceased operations at that location on or about March 14, 2012.

6.      In late September 2011, Avondale Aviation I, LLC ("Avondale") purchased a majority membership interest in the Debtor.  Following the investment by Avondale, the founding members of the Debtor (who also constituted existing management and who continued to own more than forty percent (40%) of the interests in the Debtor (collectively, the "Founding Members")), remained in place as the operating management of the Debtor.

7.      Rising fuel costs and other operating expenses pushed the Debtor into a severe operating loss position.  On or about March 12, 2012, three of the Founding Members and controlling members of the operating management team, namely Kay Ellison, Marshall Ellison and Judy Tull (collectively, the "Prior Management") without warning, and without notice, resigned from their management positions at the Debtor, as well as their board positions on the Debtor's Board of Managers.  In the wake of the Prior Management's departure, on March 12, 2012 Avondale stepped in and appointed new interim management to take control of the Debtor's business operations and finances.  On March 13, 2012, the Debtor found itself with insufficient funds to maintain normal course operations, and as a result canceled all of its charter flights.

8.      As noted above, on March 15, 2012 the Debtor filed for protection under Chapter 11 in an effort to create a stable environment within which it could explore alternatives to reorganize its business.

### C.      JetPay Stay Relief Motion

9.      On March 21, 2012, JetPay Merchant Services, LLC ("JetPay"), the Debtor's credit card processor for VISA, MasterCard and Discover charge transactions, filed a motion ("JetPay Motion") for relief from the automatic stay to continue processing customer chargebacks from a certain depository account maintained by the Debtor (the "Valley Account") at Valley National Bank ("Valley") pursuant to Department of Transportation (the "DOT") regulation 14 CFR Part 380.  The Debtor presently estimates that there is not less than $1.012 million in the Valley Account. Among other things, JetPay asserts in the JetPay Motion that the funds on deposit in the subject Valley Account are not property of the Debtor's estate, and therefore such funds should be available to JetPay, among others, to compensate JetPay for certain customer chargeback transactions.[1]

10.      Various parties have opposed the JetPay Motion, including the Debtor, Valley, American Express Travel Related Services Co., Inc. ("AMEX"), and the DOT. In its objection [D.R. No. 26], the Debtor noted that its preliminary investigation had revealed a substantial shortfall in the Valley Account relative to what it understands is required under applicable DOT regulations. The Debtor also noted that the exact amount and/or reasons for the shortfall were then not clear, and further that a determination as to the extent and reasons for such shortfall would require extensive forensic research and analysis, which was only then just beginning. Further complicating matters, completion of this forensic analysis required, among other things, access to information then under the control of certain third parties, including Radixx International ("Radixx"), which access had been terminated by Radixx at or about the commencement of this case, and which the Debtor was only then in the process of working with Radixx to restore. Separately, the Debtor noted that while JetPay had asserted that the Valley Account constituted a true "escrow" account, as a result of which the Debtor allegedly held no interest in the deposited funds, the

---

[1]      Merrick Bank Corporation ("Merrick") subsequently joined in the JetPay Motion. Merrick describes itself as an "acquiring bank", which is a bank that processes credit and/or debit card payments for products or services for a merchant.  According to Merrick, JetPay is an "Independent Sales Organization," or an "ISO," which is, in essence, the "middle man" between the merchant (here, the Debtor) and the acquiring bank (Merrick).

Debtor was not then waiving the right to assert that some or all of said funds constituted property of the estate (although it was not then asserting an interest in the funds on deposit in the Valley Account).

11.     Similarly, Valley filed its own limited objection to the Jetpay Motion [D.R. No. 16]. In its limited objection, Valley asserted that although it claimed no interest in or to the funds on deposit in the Valley Account, it nevertheless objected to the entry of an order that directed it to disburse the funds to a specific party at this point in time, as the full extent of the claims against such funds would not be known for quite some time, and further that disposition of the funds would only be made following consultation and direction from the DOT.[2] The DOT has since filed its own separate limited objection to the JetPay Motion, claiming that under the applicable federal regulatory scheme governing the Debtor's operations, the funds on deposit in the Valley Account are intended to be available solely to reimburse "charter participants" for the costs and fees paid to the Debtor on account of cancelled charter flights and related services, and not as a general fund to reimburse parties such as JetPay (and AMEX) for their chargeback exposure. See D.R. No. 65.

12.     AMEX has likewise filed a separate limited objection to the Jetpay Motion. In its limited objection, AMEX has asserted in essence that it too has an entitlement to a portion of the funds on deposit in the Valley Account to satisfy its own customer chargeback exposure, and further that JetPay was not entitled to any priority in treatment with respect to said account funds. See D.R. No. 23.

13.     The Court conducted an emergency preliminary hearing on the Jetpay Motion on March 23, 2012, at the conclusion of which the Court adjourned the matter for further hearing on April 11, 2012 at 11:00 a.m.

---

[2]     In oral argument, Valley's counsel also took the position that the Valley Account was not an escrow account (as argued by JetPay), but instead was a mere depository account subject to the terms of a simple contract among the Debtor, Valley and the specific air carrier who was the other counter-party to that agreement. The Debtor has since identified a number of additional depository account agreements with other air carriers, thus expanding the universe of potentially interested parties in the funds on deposit in the Valley Account.

**D.      The U.S. Trustee's Conversion Motion**

14.      On March 23, 2012, the U.S. Trustee filed the Motion.[3] In the Motion, the U.S. Trustee contends that "[i]n light of the fact that the Debtor has ceased operations, and is apparently incurring post-petition liabilities, the UST believes that it is unlikely that the Debtor will be able to file a confirmable plan of reorganization." Motion at p. 4, ¶ 13. The U.S. Trustee further asserts "the fact that the Debtor's management team resigned on or about March 12, 2012, raises serious issues as to the continued management of the Debtor, and is also cause for conversion of the case." Motion at p. 4, ¶ 16.

15.      Given the early stage of the case, the Debtor submits that consideration of the Motion is too premature at this time, and instead should be deferred for a short time. Alternatively, the Debtor disagrees with the U.S. Trustee's assertions that "cause" exists for either conversion or the appointment of a Chapter 11 trustee, and submits that the Motion should be denied for the reasons stated herein.

**THE COURT SHOULD DEFER CONSIDERATION OF
THE U.S. TRUSTEE'S MOTION AS BEING PREMATURE, OR,
ALTERNATIVELY, DENY THE RELIEF REQUESTED THEREIN**

16.      In its presentation during the preliminary hearing on the JetPay Motion, the Debtor noted that although the departure of the Prior Management was unsettling and disruptive, the Debtor remained undeterred in its desire to explore whether, and to what extent, opportunities existed to rehabilitate its business and restore charter flight operations. At the same time, the Debtor acknowledged that several significant obstacles must be overcome before flight operations could be restored, if only initially on a limited basis. These obstacles include, but are not limited to, securing access to sufficient funding, airports, aircraft, fuel, and payment processing, just to name a few. Additionally, and no less important, the Debtor will have to rehabilitate itself in the eyes of the consumer public, as consumer confidence is challenged given the abrupt nature in which the Debtor ceased flight operations and canceled charters, as well as the challenges some consumers may face in obtaining refunds for prepaid flights and ancillary services. Last, the Debtor will have to respond to a letter of investigation issued by the DOT regarding,

---

[3]      Chemoil Corporation, d/b/a Chemoil Aviation ("Chemoil"), has filed a separate joinder in the U.S. Trustee's Motion. See D.R. No. 53.

inter alia, the abrupt cessation of services and the handling of the Valley Account, as well as satisfy DOT

that it has implemented sufficient internal controls such that it will be in a position to comply with all

applicable charter operator regulations going forward.

17.    Although the Debtor realizes that overcoming these obstacles will present substantial

challenges, the Debtor, now led by Avondale and free of the activities of the Prior Management, strongly

believes that this business, once reorganized and properly managed, has significant potential and would

have a positive economic impact in areas currently struggling from the loss of revenue, and the loss of

access to regular air travel options from the remote locations served by the Debtor, caused by the Debtor's

cessation of charter flight operations. Toward this end, the Debtor's representatives have been in regular

contact with representatives of DOT and have provided their full cooperation with DOT's investigation.

The Debtor's representatives have also held various meetings with interested members of Congress whose

constituents have an interest in seeing the Debtor restore charter operations, as well as local airport

authorities who similarly desire that the Debtor restore charter operations. The Debtor has also

commenced the process of exploring the interest of third parties in providing some or all of the funding

the Debtor will require to restore limited charter operations.

18.    At the same time, the Debtor has been devoting a substantial portion of its time working

with Radixx toward development of the multitude of critical data points necessary to fully reconcile all

customer refund and chargeback entitlements. Since the March 23rd preliminary hearing on the JetPay

Motion, substantial progress has been made along these lines, and the Debtor has recently provided

various schedules to JetPay based upon which the Debtors, DOT, Valley, JetPay (and Merrick), and

AMEX can start what promises to be a difficult and complex reconciliation process.

19.    Given this backdrop, the Debtor therefore requests that the Court adjourn the hearing

scheduled in connection with the Motion for approximately two (2) weeks (to a new date and time during

the week of April 23, 2012, subject to the Court's availability) in order to afford the Debtor additional

time to address some of the challenges noted above. During any such adjournment period, the Debtor will

continue its efforts to obtain an infusion of capital to, among other things, (i) fund the Debtor's operations

6

and pay its administrative expenses for the next 60-90 days while it continues to evaluate the possibility

of resuming limited flight operations, and (ii) fund the costs of the required forensic investigation

regarding the Valley Account and the apparent shortfall therein.[4] Discussions regarding a possible

infusion of capital are underway, and although no firm commitments have been provided to date, the

Debtor remains cautiously optimistic that real and tangible progress can be made with the benefit of the

requested additional time.

20.     Importantly, the Debtor submits that no harm to the estate or its creditors will result from

the grant of the brief adjournment being requested. During any requested adjournment period, the Debtor

has sufficient funds on hand to meet its limited current obligations, including rent, payroll and insurance.

The Debtor therefore submits that affording it the additional time requested leaves open the possibility of

significant potential upside to the Debtor, its creditors and the communities that would be serviced by any

resumed flight operations were the Debtor to be successful in its efforts.

21.     Based on the foregoing, the Debtor believes it is entirely premature for the Court, or any

party, to be able to conclude that the Debtor will not be able to rehabilitate and propose and confirm a

plan herein. Merely because the Debtor had ceased charter operations shortly before the Petition Date

does not, by itself, constitute cause for conversion or the appointment of a Chapter 11 trustee. As noted

above, the Debtor is undertaking good faith efforts to examine and explore the full range of opportunities

that may exist to rehabilitate its business and restore charter flight operations. As also noted above, the

departure by Prior Management, sudden as it was, likewise does not by itself provide cause for the

---

[4]     As part of its evaluation of its short term funding needs, the Debtor has assumed it will require approximately $75-100,000 to (a) cover the anticipated costs of the required forensic investigation into the handling of the Valley Account by Prior Management, (b) evaluate whether and to what extent, if any, the funds on deposit in the Valley Account constitute property of the Debtor's estate (and thus the extent to which said funds would be available to general creditors of the estate), and (c) definitively determine which charter participants, if any, are entitled to a refund from amounts deposited in the Valley Account.

During preliminary discussions with the U.S. Trustee, the U.S. Trustee raised the concept of appointing an independent third party -- such as an examiner appointed under Section 1104 of the Bankruptcy Code -- with a limited charge to conduct the aforementioned forensic investigation. Although the Debtor is continuing to evaluate this matter, it may be prepared to consent to the Court's appointment of an examiner to conduct the required forensic investigation, and to make the same $75-100,000 available to pay the fees and expenses of an examiner, subject of course, to the Debtor's success in procuring the needed capital infusion.

extraordinary relief being sought by the U.S. Trustee. In this regard, the Debtor's interim management is meeting its obligations in administering this Chapter 11 case. Additionally, there has been no suggestion, by either the U.S. Trustee or any other party, that the Debtor's interim management is either tainted by the possible misdeeds of the Prior Management, or otherwise not capable of administering this case effectively and efficiently, or otherwise meeting its obligations under Title 11. For these reasons the Debtor submits that the U.S. Trustee has failed to meet its burden of establishing that cause exists for either conversion to Chapter 7 or for the appointment of a chapter 11 trustee herein.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, for the reasons set forth herein, the Debtor submits that the U.S. Trustee's Motion is premature, and therefore respectfully requests that the Court adjourn the hearing on the Motion for approximately two (2) weeks (to a new date and time during the week of April 23, 2012, subject to the Court's availability) in order to afford the Debtor additional time address some of the reorganization challenges noted above, or, alternatively, deny the Motion in its entirety, and grant the Debtor such other and further relief as is just and proper.

Dated:  April 10, 2012

<div style="margin-left:45%">

Respectfully submitted,

SOUTHERN SKY AIR & TOURS, LLC D/B/A
DIRECT AIR

By its counsel,

RIEMER & BRAUNSTEIN LLP

/s/ Alan L. Braunstein
Alan L. Braunstein (BBO #546042)
Macken Toussaint (BBO# 645076)
Three Center Plaza
Boston, Massachusetts  02108
Tel: (617) 523-9000
Fax: (617) 880-3456
abraunstein@riemerlaw.com
mtoussaint@riemerlaw.com

-and-

Steven E. Fox, Esq.
Maura I. Russell, Esq.
Times Square Tower, Suite 2506
Seven Times Square
New York, NY 10036
(212) 789-3100
sfox@riemerlaw.com
mrussell@riemerlaw.com

</div>

1427280.5

9

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

In re:

SOUTHERN SKY AIR & TOURS, LLC,
D/B/A DIRECT AIR,

Case No. 12-40944 (MSH)

Chapter 11

                          Debtor.

# CERTIFICATE OF SERVICE

I, Alan L. Braunstein, of the law firm of Riemer & Braunstein LLP, hereby certify that, as of the date hereof, I have caused a copy of the *Debtor's Response in Opposition to the U.S. Trustee's Motion to Convert Case to Chapter 7, or in the Alternative, for the Appointment of a Chapter 11 Trustee* to be served by first class United States mail, postage pre-paid, E-mail, and/or by electronic notification (ECF), as indicated, upon (i) the parties listed in the attached service list, and (ii) any other parties receiving electronic notification.

/s/ Alan L. Braunstein
Alan L. Braunstein, BBO# 546042
Riemer & Braunstein LLP
Three Center Plaza
Boston, MA  02108
Phone: 617.523.9000
Fax:    617.880.3456
E-mail:   abraunstein@riemerlaw.com

DATED:  April 10, 2012

SOUTHERN SKY AIR & TOURS, LLC d/b/a DIRECT AIR
Service List
Case # 12-40944


Southern Sky Air & Tours, LLC
d/b/a Direct Air
c/o Mr. Hank L. Torbert
1600 Oak Street, Suite B
Myrtle Beach, SC 29577
**Email**: hltorbert@kingwilliamsholdings.com

ASI Advisors, LLC
c/o Donald Stukes
445 Hamilton Ave.
Suite 1102
White Plains, NY 10601
**Email**: dstukes@asi-advisors.com

Susan B. Jollie, Esq.
Law Office of Susan B. Jollie
7503 Walton Lane
Annandale, VA 22003-2558
**E-mail**: sjollie@verizon.net

Richard King, Esq.  **(ECF)**
Office of the US Trustee
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109
**Email**: Richard.T.King@usdoj.gov;
USTPRegion01.WO.ECF@USDOJ.GOV

***Notice of Appearance***

David J. Reier, Esq.  **(ECF)**
Posternak Blankstein & Lund LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
Email: dreier@pbl.com
(Counsel to JetPay Merchant Services, LLC)

Robert W. Kovacs, Jr., Esq.  **(ECF)**
Law Office of Robert W. Kovacs, Jr.
172 Shrewsbury Street
Worcester, MA 01604
Email:  Robert@RKovacslaw.com
(Counsel to Lynn A. and Kevin Conway)

William R. Moorman, Jr., Esq.  **(ECF)**
Craig and Macauley, P.C.
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
Email:  moorman@craigmacauley.com
(Counsel to Radixx Solutions International, Inc.)

Gina Lynn Martin, Esq. **(ECF)**
Michael J. Pappone, Esq. **(ECF)**
Goodwin Procter LLP
Exchange Place
Boston, MA 02109
Email: gmartin@goodwinprocter.com; mpappone@goodwinprocter.com
(Counsel to Merrick Bank Corp.)

Andrea Horowitz Handel, Esq. **(ECF)**
U.S. Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, DC 20044
Email: andrea.handel@usdoj.gov
(Counsel to US Department of Justice)

OVERNIGHT SERVICE: 1100 L Street, N.W.
Room 10068
Washington, DC 20005

Jonathan C. Burwood, Esq. **(ECF)**
Bradford R. Carver, Esq.
Hinshaw & Culbertson LLP
28 State Street
24th Floor
Boston, MA 02109
Email: jburwood@hinshawlaw.com ; bcarver@hinshawlaw.com
(Counsel to Platte River Insurance Company)

Thomas M. Horan, Esq.
Womble Carlyle Sandridge & Rice, LLP
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Email: thoran@wcsr.com
(Counsel to Falcon Air Express, Inc.)


Christopher Harrington
257 Tom Swamp Road
Petersham, MA 01366

The Port Authority of New York
  and New Jersey
Office of James M. Begley, Esq.
Attn: Lisa Marcoccia
225 Park Avenue South, 13th Floor
New York, NY 10003

## Secured Creditors:

Wachovia Bank, National Association
8740 Research Drive
NC 1120 BCS Post Closing
Charlotte, NC  28262

Joel T. Brighton, Esq.
Wells Fargo
One Wells Fargo Center
MAC: D1053-300
301 South College St.
Charlotte, NC 28202

## *Top 20 Creditors*

Allegheny County Airport Authority
P.O. Box 642623
Pittsburgh, PA 15264-2623

Chemoil Corporation
200 East Las Olas Blvd.
Suite 2050
Attn: Richard White
Fort Lauderdale, FL 33301

Horry County Department of Airports/PFC
1100 Jetport Road
Myrtle Beach SC 29577

Jet Pay
3361 Boyington Drive
Carrollton, TX 75006

Kalamazoo/Battle Creek International Air
5235Portage Road
Kalamazoo, MI 49002

Lehigh Northampton Airport
3311 Airport Blvd.
Allentown, PA 18109

Massachusetts Port of Authority
Attn: Director, Worcester Regional Airport
One Harborside Drive, Suite 200S
Boston, MA 02128

Myrtle Beach International Airport
1100 Jetport Road
Myrtle Beach, SC 29577

Niagra Frontier Transportation Authority
P.O. Box 5008
Buffalo, NY 14205

Palm Beach International Airport
846 Palm Beach International Airport
West Palm Beach, FL 33406

Quickflight, Inc.
145 Burt Road, Suite 16
Lexington, KY 40503

Sky King Airlines
3200 Flightline Drive
Suite 302
Lakeland, FL 33811

Springfield Port Authority
1200 Capital Airport Drive
Springfield, IL 62707-8471

Tech Aviation
c/o Niagara Falls Aviation, LLC
9900 Porter Road
Niagara Falls NY 14304

The Port Authority of NY & NJ
P.O. Box 95000
Philadelphia, PA 19195-1517

Vision Airlines
David Meers, SVP and COO
3975 Johns Creek Court
Suite 100A
Suwanee, GA 30024

WFFF/WVNY-TV
SMITH BROADCASTING OF VT LLC
298 Mountain View Drive
Colchester, VT 05406

World Atlantic Airlines
Thomas Romero, CEO
5200 NW 36th Street
Miami, FL 33166

WUTV-Fox 29
699 Hertal Avenue
Suite 100
Buffalo, NY 14207

Xtra Airways
Lisa Dunn, President
800 West Idaho Street, Suite 304
Boise, ID 83702

## *Members of LLC*

Kay Ellison
33837 Waterford Drive
Myrtle Beach, SC 29577

Stanley Ellison
33837 Waterford Drive
Myrtle Beach, SC 29577

Edward Warnick
8349 Juxa Drive
Myrtle Beach, SC 29579

Judy Tull
1414 Highland Circle
Myrtle Beach, SC 29578

Robert Keilman
194 Scarborough Way
Marlboro, NJ 07746

Avondale Aviation I, LLC
1629 K. Street NW – Suite 300
Washington, Dc 20011
Attn:  Hank L. Torbert

*__Governmental Authorities__*

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

Massachusetts Department of Revenue
Bankruptcy Unit
P.O. Box 9564
Boston, MA 02114-9564

Commonwealth of Massachusetts
Division of Unemployment Assistance
Bankruptcy Unit, 5th Floor, Attn: Chief Counsel
19 Staniford Street
Boston, MA 02114-2502

Office of the Attorney General
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02108

United States Attorney
John Joseph Moakley United States Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210

S.C. Department of Revenue and Taxation
P.O. Box 12265
Columbia, SC 29211

Office of the Attorney General
State of South Carolina
Rembert Dennis Building
1000 Assembly Street, Room 519
Columbia, SC 29201

*E-mail List*

Jeffrey Sternklar, Esq. (**ECF**)
Duane Morris LLP
100 High Street, Suite 2400
Boston, MA 02110
Email: jdsternklar@duanemorris.com
(counsel to Valley National Bank)

Kevin C. McGee, Esq. (**ECF**)
Seder & Chandler LLP
339 Main Street
Worcester, MA 01608
Email: kmcgee@sederlaw.com
(counsel to American Express Travel Related Services)

David B. Haber, Esq.
David B. Haber, P.A.
Miami Center, Suite 1205
201 South Biscayne Blvd.
Miami, Florida 33131
Email: dhaber@dhaberlaw.com
(counsel to Chemoil Corporation d/b/a Chemoil Aviation)

Ronald T. Bevans, Jr.
Law Offices of Ronald T. Bevans, Jr., P.A.
1221 Brickell Avenue
Suite 2660
Miami, FL 33131
Email: rtbevans@bevanslaw.com
(Counsel to Sky King)