## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## (CENTRAL DIVISION)

| | |
|---|---|
| **In re:**<br><br>**SOUTHERN SKY AIR & TOURS, LLC d/b/a DIRECT AIR,**<br><br>**Debtor.** | **Chapter 7**<br>**Case No. 12-40944-MSH** |

### TRUSTEE'S NOTICE OF ABANDONMENT OF DEBTOR'S PERSONAL PROPERTY
### (Including Ground Equipment, Miscellaneous Office Equipment, Furnishings and Supplies)

To the Honorable Melvin S. Hoffman, United States Bankruptcy Judge:

Pursuant to 11 U.S.C. § 554(a), Rule 6007 of the Federal Rules of Bankruptcy Procedure, and MLBR 6007(1)(b), Joseph H. Baldiga, the Chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Southern Sky Air & Tours, LLC d/b/a Direct Air (the "Debtor"), hereby gives notice of his intention to abandon (the "Notice of Abandonment") any and all of the Estate's interest in any and all tangible personal property of the Debtor listed in paragraphs 28-30 of the Debtor's Schedule B[1] and as more particularly set forth herein (collectively, the "Assets")[2]. The Assets include:

(A)    Miscellaneous tangible personal property, records, office equipment, furnishings and supplies located at the Debtor's primary business location at 1600 Oak Street, Myrtle Beach, South Carolina (the "Myrtle Beach Office"), some of which is identified in paragraph 28 of the Debtor's Schedule B (the "Myrtle Beach Office Assets");

---

[1]    A complete copy of the Debtor's Schedule B is attached as **Exhibit A**.
[2]    As set forth herein, the Trustee is <u>not</u> seeking to abandon, at this time, cash, causes of action, insurance proceeds, accounts receivable, customer lists, or any other assets not specifically listed in (A) – (F) herein.

(B)    Miscellaneous tangible personal property, records, office equipment, furnishings and supplies located at the Debtor's leased reservation center at 1334 Ritter Avenue, Glen Daniels, West Virginia (the "Reservation Center"), some of which is identified in paragraph 28 of the Debtor's Schedule B (the "Reservation Center Assets");

(C)    Miscellaneous tangible personal property, office equipment, furnishings and supplies located in one storage unit (the "Storage Unit") rented by the Debtor from Strand Storage Center, 870 Frontage Road East, Myrtle Beach, South Carolina, identified as Unit No. 303-D (the "Storage Unit Contents");

(D)    Ground equipment owned by the Debtor and located at any and all airport locations, including, but not limited to, the Kalamazoo Battle Creek International Airport, 5235 Portage Road, Kalamazoo, Michigan (the "Kalamazoo Airport") and Myrtle Beach International Airport, 1100 Jetport Road, Myrtle Beach, South Carolina (the "Myrtle Beach Airport"), including, but not limited to, bag carts, belt loaders, bag sizers, hand held radios, de-icing equipment, and tugs (the "Ground Equipment");

(E)    Miscellaneous catering goods and product owned by the Debtor and located at any and all airport locations, consisting of items such as chips, candy, soda, mini liquor bottles, and paper products (the "Catering Goods"); and

(F)    Any and all other remaining miscellaneous tangible personal property, records, office equipment, furnishings and supplies, located at any and all airport locations, including, but not limited to, ticket counters, kiosks, miscellaneous computer and telephone equipment and credit card machines (the "Airport Assets").

In support hereof, the Trustee submits the following:

## I.      BACKGROUND

### A.      Bankruptcy Case Background.

1.      On March 15, 2012 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

2.      Prior to the Petition Date, the Debtor operated as a low cost discount charter airline that flew various routes in the United States. The Debtor operated its business primarily from the Myrtle Beach Office. The Debtor also conducted business activities at the Reservation Center and maintained a presence at various airport locations.

3.      On April 11, 2012 (the "Conversion Date"), this Court converted the Debtor's Chapter 11 case to one under Chapter 7 of the Bankruptcy Code.

4.      On the Conversion Date, the United States Trustee appointed the Trustee as Chapter 7 trustee of this proceeding and he continues to serve as such. Since his appointment, the Trustee has worked to secure assets and records of the Debtor and to begin investigating the many allegations of fraud raised by interested parties during the Debtor's Chapter 11 case and to the Trustee post-conversion.

5.      Following the Trustee's appointment, agents of the Trustee traveled to South Carolina where they conducted a preliminary review of the Debtor's records and personally viewed certain of the Assets. Specifically, the Trustee's representatives visited the Myrtle Beach Office, the Storage Unit, and the Myrtle Beach Airport. At the Myrtle Beach Airport, the Trustee's representatives toured various airport spaces (guided by airport personnel) and personally viewed the Debtor's ground equipment, catering goods, and airport assets located at

that airport. Based on their site visits and review of the Debtor's records and assets, the

Trustee's agents took possession of certain of the Debtor's records and assets (including all

computers from the Myrtle Beach Office) and packaged them for delivery to the Trustee's

proposed accountant on behalf of the Trustee.

**B.      Secured Creditor.**

6.      On the Debtor's Schedule D, the Debtor lists Wachovia Bank, National

Association (the "Bank")[3] as its only secured creditor, holding a claim in the amount of

$178,800.00 secured by all of the Debtor's personal property.

7.      The Trustee has reviewed copies of loan documents provided by the Bank's

counsel consisting of (a) a promissory note dated November 27, 2006 from the Debtor in favor

of the Bank in the original principal amount of $300,000.00, (b) a security agreement dated

November 27, 2006 between the Debtor and the Bank, (c) a promissory note dated December 23,

2009 from the Debtor in favor of the Bank in the original principal amount of $292,835.23, and

(d) UCC-1 and UCC-3 Financing Statements filed with the South Carolina Secretary of State's

Office by the Bank (collectively, the "Loan Documents"). Bank's counsel has also provided the

Trustee with a payoff figure, as of April 20, 2012, in the amount of $181,008.00.

8.      Based on his review of the Loan Documents, it appears that the Bank has a

properly perfected lien (the "Bank Lien") on personal property of the Debtor, including the

Assets.[4]

**C.      Sale Negotiations.**

9.      The Trustee has investigated the possibility of selling some or all of the Assets

with the Bank's consent. Indeed, the Trustee engaged in detailed negotiations with one potential

---

[3]    Wells Fargo Bank, N.A. is successor in interest by merger to Wachovia Bank, National Association.
[4]    The Trustee reserves all rights regarding the scope and enforceability of the Bank Lien with respect to all
      property other than the Assets.

purchaser who recently declined to move forward with purchasing any of the Assets. Based on

limited interest from other potential purchasers, the size of the Bank Lien, and the location of the

Assets in multiple states, the Trustee has determined that a sale of all Assets is not a viable

possibility.

**D.**     **The Assets.**

10.     In paragraphs 28-30 of its Schedule B, the Debtor lists office equipment,

furnishings, and supplies totaling $45,000, comprised of the Myrtle Beach Office Assets

($15,000), the Reservation Center Assets ($30,000), and so-called "station assets" (i.e., Ground

Equipment and Airport Assets) (no assigned value).

**i.**     **Office Assets.**

11.     The Trustee has investigated the potential value to the Estate of the Debtor's

Myrtle Beach Office Assets and the Reservation Center Assets (collectively, the "Office

Assets"). Representatives of the Trustee have personally viewed the Myrtle Beach Office Assets

and prepared the informal inventory of furniture and certain equipment attached as **Exhibit B**.

The Debtor's representative, Hank L. Torbert, informed the Trustee that the Debtor's office

equipment, furnishings and supplies located at the various offices and airports, including the

Reservation Center Office Assets, are of limited value.

12.     The Office Assets are encumbered by the Bank Lien. The Trustee has determined

that the Bank's claims against the estate greatly exceed the $45,000 value of the Office Assets.

Even if the Trustee were able to locate a buyer for the Office Assets and the Bank were to agree

some carve-out from the proceeds for the Estate, the costs of selling the Office Assets would

likely exceed the proceeds available to the Estate from any such sale. Specifically, the landlords

of the Myrtle Beach Office and the Reservation Center may assert claims for use and occupancy

of those spaces pending any sale.  In addition, as the Office Assets are located in both South

Carolina and West Virginia, any sale of the Office Assets would present logistical challenges

that would increase the Trustee's costs of completing such sale.

13.     Based on his investigation, the Trustee has determined that the Office Assets are

burdensome and of inconsequential value to the Estate and, therefore, abandonment is in the best

interest of the Estate.

### ii.     Storage Unit Contents.

14.     Representatives of the Trustee have personally viewed the Storage Unit Contents

and prepared the informal inventory attached as **Exhibit C**.  The Storage Unit Contents consist

of miscellaneous used office furnishings and equipment of lesser quality and quantity than the

Office Assets.

15.     The Storage Unit Contents are also encumbered by the Bank Lien.  The Trustee

has determined that the Bank's claims against the estate greatly exceed the value of the Storage

Unit Contents.  Based on his investigation, the Trustee has determined that the Storage Unit

Contents are burdensome and of inconsequential value to the Estate and, therefore, abandonment

is in the best interest of the Estate.

### iii.     Ground Equipment.

16.     The list of station assets attached to the Debtor's Schedule B appears to represent

that the Debtor's only owned Ground Equipment is located at Kalamazoo Airport.  The Trustee's

investigation also revealed that the Debtor owns Ground Equipment located at the Myrtle Beach

Airport.  The Trustee (via counsel) subsequently confirmed with the Debtor's former Director of

Station Operations that the Debtor only owned Ground Equipment at the Kalamazoo Airport and

the Myrtle Beach Airport, and that the Debtor leased ground equipment at all other airport locations.

17.    A representative of the Trustee has personally viewed the Ground Equipment located at the Myrtle Beach Airport and prepared the informal inventory attached as **Exhibit D**. A Kalamazoo Airport employee confirmed to the Trustee (via counsel) that the Ground Equipment located at the Kalamazoo Airport had been secured, but declined to provide the Trustee with an inventory of such Ground Equipment. Based on the attachments to the Debtor's Schedule B, the Trustee believes that the Debtor owns one tug, four bag carts, one belt loader, and assorted radios located at the Kalamazoo Airport.

18.    The Trustee has investigated the potential value of the Ground Equipment to the Estate. Specifically, based on assessments from airport personnel and potential purchasers regarding the condition and quality of the Ground Equipment, the Trustee has determined that, collectively, such equipment has a maximum value of a few thousand dollars.

19.    The Ground Equipment is also encumbered by the Bank Lien. The Trustee has determined that the Bank's claims against the estate greatly exceed the value of the Ground Equipment. Based on his investigation, the Trustee has determined that the Ground Equipment is burdensome and of inconsequential value to the Estate and, therefore, abandonment is in the best interest of the Estate.

### iv.    Catering Goods.

20.    A representative of the Trustee has personally viewed the Catering Goods located at Myrtle Beach Airport, consisting of a few pallets or cabinets worth of chips, candy, beverages, paper napkins, and the like. Representatives of other airports have contacted the Trustee to report that Catering Goods of similar type, amount, and quality remain at those airport locations.

21.     The Trustee has determined that the potential value of the Catering Goods to the

Estate is of insignificant value to the Estate based on the perishable nature of the product, the

Bank Lien, and the location of the Catering Goods at multiple airports.   Accordingly, the

Trustee believes that abandonment is in the best interest of the Estate.

### v.     Airport Assets.

22.     Representatives of the Trustee have personally viewed the Airport Assets at the

Myrtle Beach Airport, consisting of assorted older office furniture, a few computers and credit

card machines, and other assorted furnishings and supplies.[5]  The lists of station assets attached

to the Debtor's Schedule B appear to reflect Aiport Assets of similar kind and quality at other

airport locations.  Based on his review of the Airport Assets at the Myrtle Beach Airport and the

Debtor's Schedules, the Trustee believes that the Airport Assets are comprised entirely of used

office furnishings and equipment of insignificant value.

23.     The Airport Assets are also encumbered by the Bank Lien.  The Trustee has

determined that Airport Assets are of insignificant value to the Estate based on the quality and

age of the Airport Assets, the Bank Lien, and the location of the Airport Assets at multiple

airports.  Accordingly, the Trustee believes that abandonment is in the best interest of the Estate.

## II.     ABANDONMENT

24.     As previously noted, the Trustee has engaged in discussions with potential buyers

to explore the possibility of selling the Assets (with the Bank's consent).  Those discussions have

ceased and the Trustee no longer believes that a sale of all Assets is likely or possible.  The

Trustee believes that sales of portions of the Assets would be cost-prohibitive due to, among

other things, the Bank Lien, the lower value of each subset of Assets (as detailed above), and the

---

[5]     The Trustee also reviewed the Debtor's records at the Myrtle Beach Airport and determined that they consisted
of operational records (e.g., training materials and logs) rather than corporate records.  Upon information and
belief, these records remain at the Myrtle Beach Airport.

presence of Assets at multiple locations in various states. Based on the foregoing, the Trustee

believes that retention of the Assets is unnecessary and that the Assets are burdensome and of

inconsequential value to the Estate.

25.    Further, the Trustee is concerned that absent prompt abandonment of the Assets,

the Estate may incur unnecessary administrative expenses which would dilute any recovery in

these proceedings. The Trustee has filed a motion contemporaneously herewith seeking authority

to reject the leases for all locations at which the Assets are located.

26.    The Trustee has removed and retained relevant records from the Myrtle Beach

Office and the Storage Center, and has taken possession of the Debtor's computers and servers.

To the extent that any paper records remain at the Myrtle Beach Office, the Reservation Center,

or any of the airport locations, the Trustee believes such records to be irrelevant or duplicative.

27.    Based on the foregoing, the Trustee has determined that, in light of the estimated

value of the Assets and the amount of the Bank's secured claim, the Assets are of inadequate or

insufficient value to benefit the Estate. Additionally, no value is likely to be realized were the

Trustee to attempt to sell the Assets, and the Trustee has determined that the Assets are no longer

necessary to the administration of the Estate. Accordingly, the Trustee believes and avers that it

is in the best interest of the Estate that he be allowed to abandon the Assets without further notice

or hearing.

28.    The Trustee does not seek to abandon the Estate's interest in (a) any property not

clearly identified herein as Assets, (b) any cash, no matter where located, (c) the proceeds of any

property already liquidated by the Trustee, (d) any potential claims the Estate may have against

any party, including, but not limited to, claims resulting from the unauthorized removal, use, or

destruction of any of the Debtor's assets from any location, (e) customer lists, and/or (f)

insurance proceeds, accounts receivables, or other similar assets.

Please be advised that objections to this Notice of Abandonment must be filed in the

Clerk's Office, United States Bankruptcy Court, Harold Donahue Federal Building, 595

Main Street, Worcester, Massachusetts 01608, to be received within fifteen (15) days of

June 4, 2012, with copies mailed within such time to the Chapter 7 Trustee, Joseph H.

Baldiga, Mirick, O'Connell, DeMallie & Lougee, *LLP*, 100 Front Street, Worcester,

Massachusetts 01608. Pursuant to Federal Rule 6007(a), if no such objections are received

within fifteen (15) days hereof, the within Trustee's Notice of Abandonment of Estate

Property shall be final and binding upon all parties without further notice, hearing or

order from the Court.

<div style="margin-left:50%">

Respectfully submitted,

JOSEPH H. BALDIGA,
CHAPTER 7 TRUSTEE

By his counsel,

_____/s/ Gina M. Barbieri_____
Joseph H. Baldiga, BBO #549963
Gina M. Barbieri, BBO #670596
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581
Phone: 508.898.1501
Fax:    508.898.1502
Email: bankrupt@mirickoconnell.com
Email: gbarbieri@mirickoconnell.com

</div>

Dated:  June 4, 2012