UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | |
|---|---|
| In re:<br><br>**SOUTHERN SKY AIR & TOURS, LLC d/b/a DIRECT AIR,**<br><br>**Debtor.** | **Chapter 7**<br>**Case No. 12-40944-MSH** |

## MOTION BY CHAPTER 7 TRUSTEE TO REJECT ANY AND ALL TENANCY AND/OR USE AND OCCUPANCY AGREEMENTS AS OF APRIL 11, 2012

To the Honorable Melvin S. Hoffman, United States Bankruptcy Judge:

NOW COMES Joseph H. Baldiga, the Chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Southern Sky Air & Tours, LLC d/b/a Direct Air (the "Debtor"), and hereby moves this Court pursuant to § 365 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code") for an order authorizing rejection, as of April 11, 2012 (the "Rejection Date"), of any and all leases or agreements to which the Debtor may be a party for the tenancy and/or use and occupancy of any real property (the "Agreements") including, but not limited to (1) the Agreements listed on the attached **Exhibit A**[1] and (2) any and all Agreements regarding (a) the Debtor's primary business location at 1600 Oak Street, Myrtle Beach, South Carolina (the "Myrtle Beach Location"), (b) the Debtor's reservation center at 1334 Ritter Avenue, Daniels, West Virginia (the "Reservation Center"), (c) a storage unit located at Strand Storage Center, 870 Frontage Road East, Unit 303-D, Myrtle Beach, South Carolina (the "Storage Unit") and (d) physical space located at any airport (the "Various Airport Spaces"). The Agreements to be rejected herein are collectively referred to as the "Rejection

---

[1] Exhibit A consists of Agreements related to real property and/or airport space that were identified on the Debtor's Schedule G.

{Practice Areas\CORP\15008\14190\A2005872.DOC}

Contracts". **The Trustee does not seek, at this time, to reject any leases, contracts, or agreements other than the Rejection Contracts identified herein.** In support of this Motion, the Trustee submits the following:

## I.     FACTUAL BACKGROUND

### A.     Bankruptcy Case Background.

1. On March 15, 2012 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

2. Prior to the Petition Date, the Debtor operated as a low cost discount charter airline that flew various routes in the United States. The Debtor operated its business primarily from the Myrtle Beach Office. The Debtor also conducted business activities at the Reservation Center and maintained a presence at various airport locations.

3. On April 11, 2012 (the "Conversion Date"), this Court converted the Debtor's Chapter 11 case to one under Chapter 7 of the Bankruptcy Code.

4. On the Conversion Date, the United States Trustee appointed the Trustee as Chapter 7 trustee of this proceeding and he continues to serve as such. Since his appointment, the Trustee has worked to secure assets and records of the Debtor and to begin investigating the many allegations of fraud raised by interested parties during the Debtor's Chapter 11 case and to the Trustee post-conversion.

5. Following the Trustee's appointment, agents of the Trustee traveled to South Carolina where they conducted a preliminary review of the Debtor's records and personally viewed certain of the Assets. Specifically, the Trustee's representatives visited the Myrtle Beach Office, the Storage Unit, and the Myrtle Beach International Airport (the "Myrtle Beach

Airport"). At the Myrtle Beach Airport, the Trustee's representatives toured various airport spaces (guided by airport personnel) and personally viewed the Debtor's ground equipment, catering goods, and airport assets located at that airport. Based on their site visits and review of the Debtor's records and assets, the Trustee's agents took possession of certain of the Debtor's records and assets (including all computers from the Myrtle Beach Office) and packaged them for delivery to the Trustee's proposed accountant on behalf of the Trustee.

**B.    Claims Bar Dates.**

6.    Upon conversion to Chapter 7, this Court established August 14, 2012 as the deadline for creditors asserting pre-petition claims to file such claims against the Estate (the "Pre-Petition Bar Date"). Additionally, after the Debtor filed its Schedules with the Bankruptcy Court, this Court established August 17, 2012 as the deadline for added creditors asserting pre-petition claims to file such claims against the Estate (the "Added Creditor Bar Date"; together with the Pre-Petition Bar Date, the "Bar Dates").

7.    On May 22, 2012, this Court entered its Order and Notice Regarding Bar Date For Filing Chapter 11 Administrative Expense Claims, pursuant to which this Court established July 31, 2012 at 4:30 p.m. as the deadline for creditors asserting Chapter 11 administrative expense claims to file such claims against the Estate (the "Chapter 11 Bar Date").

**C.    Abandonment of Debtor's Personal Property.**

8.    Simultaneously herewith, the Trustee has filed a Notice of Abandonment in which the Trustee provides notice of his intention to abandon the Estate's interest in tangible personal property of the Debtor as set forth therein (the "Assets"). As described in the Notice of Abandonment, the Assets include, among other things, miscellaneous tangible personal property,

records[2], office equipment, furnishings, catering goods, ground equipment. The Assets are located primarily at the Myrtle Beach Office, the Reservation Center, the Storage Unit, and at the Various Airport Spaces.

9.  As set forth in detail in the Notice of Abandonment, the Trustee has determined that Wachovia Bank, National Association (the "Bank")[3] has a properly perfected lien (the "Bank Lien") on personal property of the Debtor, including the Assets.[4] The Bank has indicated to the Trustee that its secured claim totals $181,008.00.

**D.    The Agreements.**

10.  Prior to the Petition Date, and during the course of its business, the Debtor entered into certain Agreements regarding the physical spaces in which it conducted its business. The Debtor is obligated to pay rent pursuant to the terms of some or all of these Agreements.

i.    *Agreements Regarding the Myrtle Beach Office.*

11.  The management company for the Myrtle Beach Office has provided the Trustee with copies of the Agreements regarding the Myrtle Beach Office. Specifically, the Agreements include (a) a Lease Agreement dated May 1, 2008 between Oak Street Investment Group, LLC and the Debtor for Suites A, B, and C at the Myrtle Beach Office and (b) a Sublease Agreement between Centene Management Company and "[Direct Air]" (i.e., the Debtor) dated March 25, 2009 for Suite D at the Myrtle Beach office. Although the Debtor also occupied "Suite E" at the Myrtle Beach Office, the Trustee is aware of no written agreement regarding that suite. Based on his review of the Agreements regarding the Myrtle Beach Office and representations from the

---

[2] The Trustee believes that any records included in the Assets to be abandoned are either duplicative or unnecessary for the Trustee's investigations.
[3] Wells Fargo Bank, N.A. is successor in interest by merger to Wachovia Bank, National Association.
[4] The Trustee reserves all rights regarding the scope and enforceability of the Bank Lien with respect to all property other than the Assets.

management company, the Trustee believes that the Agreements regarding the Myrtle Beach Office expired pre-petition.

12. As described in more detail in the Notice of Abandonment, certain of the Assets are currently located at the Myrtle Beach Office, including miscellaneous personal property, records, office equipment, furnishings, and supplies.

### i. *Agreements Regarding the Reservation Center.*

13. The Trustee has reviewed the Lease Agreement dated June 1, 2008 between Daniels Professional Center Complex (the "Reservation Center Landlord") and "Direct Air" (i.e., the Debtor) for part of the property known as Daniels Professional Center Complex in Daniels, West Virginia (i.e., the Reservation Center). Upon information and belief, the Reservation Center Landlord is a limited partnership in which the parents of Kay Ellison, a former manager of the Debtor, are or were partners.[5]

14. Based upon his review of this Lease Agreement regarding the West Virginia Reservation Center, the Trustee believes that this Lease Agreement will expire on May 31, 2013. Upon information and belief, the Reservation Center Landlord locked the Debtor out of the Reservation Center shortly before prior to the Petition Date; the timing of such action coincides with the separation of Kay Ellison from the Debtor.

15. As described in more detail in the Notice of Abandonment filed contemporaneously herewith, certain of the Assets are currently located at the Reservation Center, including miscellaneous personal property, records, office equipment, furnishings, and supplies.

---

[5] The Trustee has learned that Kay Ellison's father, Frank Dearing, recently passed away. Frank A. Dearing signed the Lease Agreement regarding the Reservation Center as a general partner of the Reservation Center Landlord. The Lease Agreement regarding the Reservation Center also lists Frank A. Dearing as the notice party for the Reservation Center Landlord.

### iii.    *Agreements Regarding Storage Unit.*

16. Based on representations of the landlord of the Storage Unit and former employees of the Debtor, the Trustee believes that the Debtor entered into a month-to-month occupancy arrangement with the landlord of the Storage Unit and that the Debtor paid through the end of April 2012. Accordingly, the Trustee believes that any Agreements regarding the Storage Unit have expired.

17. As described in more detail in the Notice of Abandonment filed contemporaneously herewith, certain of the Assets are currently located at the Storage Unit, including miscellaneous personal property, office equipment, furnishings, and supplies.

### D.    Agreements Regarding Various Airport Spaces.

18. The Trustee has reviewed copies of available Agreements regarding certain of the Various Airport Spaces. Specifically, the Trustee has reviewed (a) the Signatory Indirect Air Carrier Contract and Airport Use Agreement by and between Horry County and Myrtle Beach Direct Air & Tours dated July 1, 2007 (the "Myrtle Beach Airport Agreement"), (b) the Worcester Regional Airport Terminal Lease by and between The Massachusetts Port Authority and Southern Sky Air & Tours, LLC dba Direct Air (the "Worcester Airport Agreement") dated November 22, 2010, (c) the Airline Operating and Lease Agreement between Palm Beach County and Southern Sky Air and Tour, LLC d/b/a Direct Air dated November 12, 2010 (the "Palm Beach Airport Lease"), and (d) an unsigned, undated (2008) Lease Agreement by and between the County of Clinton and Myrtle Beach Direct Air & Tours, dba Myrtle Beach Direct Air (the "Plattsburgh Airport Lease"). In addition, a representative of the Punta Gorda Airport represented to the Trustee that there is no written agreement between the Debtor and that airport.

19. Based on his review of the above-referenced Agreements, the Trustee believes that many Agreements related to Various Airport Locations have either expired or will expire in the near future. (The Myrtle Beach Airport Agreement will expire on June 30, 2012, the Worcester Airport Agreement expires on written notice from the Massachusetts Port Authority, the Palm Beach Airport Lease has expired, and the Plattsburgh Airport Lease has expired. In addition, although the Debtor lists on its Schedule G an Airport Agreement with the Charlotte County Airport Authority, located in Punta Gorda, FL, a representative of the Punta Gorda Airport denies the existence of any current written agreement.)

20. To the extent that any of the Agreements related to Various Airport Spaces remain unexpired, the Trustee believes that they have limited value, if any, for the Estate. The Trustee has been unable to locate a buyer for the Debtor's Assets, such as a competitor airline, which could be a natural potential purchaser of the Debtor's Agreements regarding Various Airport Spaces. Although the Trustee believes that other airlines may be interested in flying the Debtor's former routes, many of the Agreements that he reviewed contain significant restrictions on transferability of such Agreements, due in part to the highly regulated airline industry. In addition, many of the airports and counties into which the Debtor operated flights are listed as significant creditors on the Debtor's Schedules; accordingly, the likely costs to "cure" these types of Agreements would further inhibit buyer interest.

21. As described in more detail in the Notice of Abandonment filed contemporaneously herewith, certain of the Assets are currently located at Various Airport Spaces, including ground equipment, catering goods, miscellaneous personal property, records, office equipment, furnishings and supplies, including, but not limited to, ticket counters, kiosks, miscellaneous computer equipment and credit card machines.

## II.   RELIEF REQUESTED.

22. Pursuant to Bankruptcy Code § 365(a), the Trustee, subject to the Court's approval, may reject any executory contract or unexpired lease of the Debtor. This provision allows the Trustee to "relieve the [E]state of burdensome agreements which have not been completely performed." Stewart Title Guar. Co. v. Old Republic Nat'l Title Co., 83 F.3d 735, 741 (5th Cir. 1996) (citing In re Muerexco Petroleum, Inc., 15 F.3d 60, 62 (5th Cir. 1994)).

23. Further, pursuant to Bankruptcy Code § 365(d)(4), "an unexpired lease of nonresidential real property under which the debtor is the lessee shall be rejected... if the trustee does not assume or reject the unexpired lease by the earlier of... the date that is 120 days after the date of the order for relief...."[6] Accordingly, but for this request of the Trustee, the Rejection Contracts would otherwise be deemed rejected as of August 9, 2012.

24. The Trustee now seeks to reject the Rejection Contracts as of the Rejection Date (which is also the Conversion Date), in order to limit the Estate's exposure and also to provide notice and clarity to the Agreement counterparties, many of whom have contacted the Trustee for updates regarding turnover of leased space.

25. The Debtor stopped providing flights prior to the Petition Date. Upon conversion of this case to Chapter 7, the Debtor ceased all remaining operations. As the Debtor is no longer operating and as the Trustee believes a sale of the Assets is not likely (and, indeed, the Trustee has filed the Notice of Abandonment contemporaneously herewith) and that he would be unable to locate a willing buyer or buyers for individual Agreements, assumption of the Agreements would provide no benefit to the Estate.

---

[6] Bankruptcy Code § 365(d) applies in converted cases as though the conversion order were the order for relief. See Bankruptcy Code § 348(c).

26. The Trustee seeks to limit any exposure the Estate may have for the unnecessary payment of post-petition charges under any Agreement regarding real property or physical space at any airport or other location by rejecting the Rejection Contracts as of the Rejection Date. As such, rejection of the Rejection Contracts is in the best interest of the Estate.

27. As previously noted, this Court has already scheduled and provided notice of the Bar Dates by which creditors asserting prepetition claims must file such claims to all known creditors. Additionally, the Court has scheduled the Chapter 11 Bar Date and the Trustee has provided notice of the Chapter 11 Bar Date to known creditors and parties-in-interest.

28. **The Trustee specifically reserves all rights to object to any and all claims asserted by non-debtor parties (if any) including, without limitation, any requests for allowance of administrative claims arising during the Chapter 7 period.**

WHEREFORE, the Trustee respectfully requests that this Court:

a. Authorize the rejection as of the Rejection Date (i.e., April 11, 2012) of any and all leases or agreements to which the Debtor may be a party for the tenancy and/or use and occupancy of any real property including, but not limited to (i) the agreements listed on the attached **Exhibit A** and (ii) any and all leases and agreements for tenancy and/or use and occupancy of (a) the Myrtle Beach Office, (b) the Reservation Center, (c) the Storage Unit, and (d) the Various Airport Spaces; and

    b.    Grant the Trustee such other and further relief as is just.

Respectfully submitted,

JOSEPH H. BALDIGA,
CHAPTER 7 TRUSTEE

By his counsel,

_____/s/ Gina M. Barbieri_____
Joseph H. Baldiga, BBO #549963
Gina M. Barbieri, BBO # 670596
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581
Phone: 508.898.1501
Fax:    508.898.1502
Email: bankrupt@mirickoconnell.com
Email: gbarbieri@mirickoconnell.com

Dated: June 4, 2012

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | |
|---|---|
| **In re:**<br><br>**SOUTHERN SKY AIR & TOURS, LLC**<br>**d/b/a DIRECT AIR,**<br><br>**Debtor.** | Chapter 7<br>Case No. 12-40944-MSH |

**ORDER APPROVING MOTION BY CHAPTER 7 TRUSTEE TO REJECT**
**ANY AND ALL TENANCY AND/OR USE AND OCCUPANCY AGREEMENTS**
**AS OF APRIL 11, 2012**

Upon the motion (the "Motion") by Chapter 7 Trustee for an order rejecting, as of April 11, 2012, any and all tenancy and/or use and occupancy agreements to which the Debtor may be a party including, but not limited to, those contracts and leases identified on <u>Exhibit A</u> to that Motion and within the Motion itself (collectively, the "Rejection Contracts"), and sufficient notice thereof having been duly given, no objection to the Motion having been filed, or such objection being overruled, and the Court finding that the notice given by the Trustee as set forth in the Certificate of Service filed with the Court was sufficient, it is hereby ordered that:

1. The Motion is approved; and

2. The Rejection Contracts are rejected as of April 11, 2012.

Dated: _____, 2012        _____
                                          Honorable Melvin S. Hoffman
                                          United States Bankruptcy Judge

{Practice Areas\CORP\15008\14190\A2005872.DOC}