UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

In re:

DIRECT AIR, INC.

                        Debtor.

Chapter 7
Case No. 12-40944 (MSH)

**APPLICATION OF RIEMER & BRAUNSTEIN LLP FOR (I) COMPENSATION
AND REIMBURSEMENT OF EXPENSESAS COUNSEL TO THE DEBTOR IN THE
DEBTOR'S CHAPTER 11 PROCEEDING, AND (II) AUTHORIZATION ALLOWANCE IN
THE AMOUNT OF (AND PAYMENT FROM) RETAINER ON AN INTERIM BASIS WITH
SUCH AMOUNT AND BALANCE OF APPLICATION CONSTITUTING AN
ADMINISTRATIVE CLAIM SUBJECT TO FINAL DETERMINATION BY THE COURT**

The law firm of Riemer & Braunstein LLP (the "Law Firm") respectfully requests that

this Court enter an order (i) allowing compensation and reimbursement of disbursements and

expenses to the Law Firm for reasonable and necessary legal services provided on behalf of

Direct Air, Inc. (the "Debtor"), as counsel to the Debtor-In-Possession in its Chapter 11

proceeding; and (ii) authorizing payment of such fees and expenses in the amount of the

Retainer (as defined below) on an interim basis, with all fees and expenses requested pursuant to

this application constituting a Chapter 11 administrative claim with allowance subject to final

determination by this court. This Application covers period from the Petition Date (as defined

below) to April 11, 2012 (the "Application").[1]

During the course of the Chapter 11 case, the Law Firm was required to expend

considerable time and resources in an effort to stabilize, preserve and protect the financial

interests and potential affirmative claims of the Debtor and provide an opportunity, albeit within

short period of time, for the Debtor to solicit a loan or sale of the business enterprise, but at the

---

[1] Specifically, the Law Firm requests interim allowance of $24,758.36 in fees and $5,295.64 in expenses to be applied against its retainer of $30,054.00, with the balance of the fees awarded (or to be awarded) pursuant to this Application and any interim allowance deemed an administrative claim against the Debtor's estate.

very least to facilitate an orderly a wind down.  This became necessary given that Prior

Management (as defined below), who had managed the Debtor's business since its inception,

abruptly, and without notice, "resigned" from operating the Debtor's business.  Accordingly, the

Law Firm assisted the Debtor to, among other things, (i) preserve its assets and potential

affirmative claims, (ii) handle the immediate crisis and facilitating contact with consumer

creditors whose flights had been cancelled due to the Debtor's inability to access relevant

information to notify its customers, and (iii) respond and provide information to the Department

of Transportation (the "DOT"), the carriers, and the airports.  This effort included initiating

discussions with counsel to the software provider to make the reservation information accessible

to the Debtor so it could properly and adequately notify its customers.

   The Law Firm also provided assistance to the newly instituted management team so they

could timely perform the duties of the Debtor-in-Possession.  Among those duties included

promptly providing the US Trustee and certain other relevant parties, including the DOT, with

information pertaining to the bankruptcy, the cancellation of flights, the limited and admittedly

challenging prospects of facilitating a potential sale, and disseminating information that the

Debtor had ascertained regarding the purported escrow account at Valley National Bank

("Valley"), as well as the Debtor's commitment to ensure transparency during the Chapter 11

process.  Moreover, as the Debtor sought to formulate an approach that had the best potential of

success, the Law Firm was able to work quickly and efficiently with the proposed professional

financial advisor and DOT counsel so that the Debtor could conjointly focus its efforts on

locating a lender or buyer unfettered by the restraints of the issues surrounding the escrow, the

Debtor's prior financial dealings and issues regarding the propriety of Prior Management (as

defined below) which the Law Firm contended warranted an authoritative investigation.

The impact on the Debtor's business due to the flight cancellations that preceded the bankruptcy was severe and crippling and the Debtor's assessment as to the potential scope of Prior Management's treatment of the escrow account weighed heavily against the Debtor's ability to seek a buyer or reorganize. Yet, the Debtor pursued every viable avenue and responded to every entity expressing an interest and pursued discussions with various representatives from airports and the government. The Law Firm's efforts, amidst considerable obstacles that jeopardized a reorganization process, included addressing the JetPay Motion (as defined below) as well as a motion filed by the United States Trustee to convert the case (the "Motion to Convert"), endeavored to afford the Debtor the opportunity it stated it needed – albeit short lived – to assess and evaluate what, if any portion, of the business enterprise value could be sustained as well as insuring compliance with DOT regulations that would be necessary to reinstate or transfer the operations.

Thus, the Law Firm, among other services, played a role in facilitating information to various parties and directed its focus on both positioning the Debtor for the potential of a rapid sale or financing, while also providing counsel in connection with the disputes that arose related to pending motions; but most assuredly the Law Firm promoted dialogue among the parties, and, equally significant, facilitated the transmittal of information that would be necessary for and responsive to customers. The Law Firm additionally investigated potential affirmative claims for recoveries and assessed strategies recognizing the strict time limitations due to budgetary restraints, and promoted collaboration and reconciliation while continuing to examine the viability of the business. Ultimately there was no way to mitigate the damage to the business after flights had been cancelled with no ability to access the necessary customer information – which had propelled the filing - or any ability to reach consensus with its carriers and suppliers.

3

That said, the US Trustee did move successfully to convert the case and immediately upon conversion of the case the Law Firm transitioned information to the Chapter 7 Trustee and was responsive to the Chapter 7 Trustee's requests as well as fielding hundreds of calls from consumers.

## BACKGROUND

1.    On March 15, 2012 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code.

2.    On April 11, 2012, the case was converted to Chapter 7 of the Bankruptcy Code pursuant to motion of the U.S. Trustee. No committee was appointed in this case prior to its conversion to Chapter 7.

## A.  Events Leading Up to Chapter 11

3.    Prior to the Petition Date, the Debtor operated its business as an indirect air carrier providing public charter air flights and offering all-inclusive vacation, golf, and entertainment packages.  The Debtor's strength lay in its strategic locations and low operating costs and use of the internet which translated into lower prices to consumers.

4.    In addition, the Debtor operated a reservation/call center located in Beckley, West Virginia, but had ceased operations at that location on or about March 14, 2012.[2]

5.    Earlier, in late September 2011, Avondale Aviation I, LLC ("Avondale") had purchased a majority membership interest in the Debtor.  Following the investment by Avondale, the founding members of the Debtor (who also constituted existing management and who continued to own more than forty percent (40%) of the interests in the Debtor (collectively, the "Founding Members")), remained in place as the operating management of the Debtor.

---

[2] The reservation/call center was purportedly owned, operated (and abruptly shut down pre-petition) by Prior Management.

6.      Rising fuel costs and other operating expenses allegedly pushed the Debtor into a severe operating loss position.  On or about March 12, 2012, three of the Founding Members and controlling members of the operating management team (collectively, the "Prior Management") without warning, and without notice, resigned from their management positions at the Debtor, as well as their board positions on the Debtor's Board of Managers, vacated the Debtor's business removed certain records and shut down the call center.  In the wake of the Prior Management's abrupt and unexpected departure, on March 12, 2012 Avondale stepped in and appointed new interim management to take control of the Debtor's business operations and finances.  On March 13, 2012, the Debtor found itself with insufficient funds to maintain normal course operations, and as a result canceled all of its charter flights.

7.      As noted above, on March 15, 2012 the Debtor filed for protection under Chapter 11 in an effort to create a stable environment within which it could explore alternatives to reorganize its business.

**B.  Employment of Riemer & Braunstein; Fee Application**

8.      On April 6, 2012, the Court authorized the employment of the Law Firm as counsel to the Chapter 11 Debtor-In-Possession pursuant to the application filed on March 22, 2012.  A copy of the order approving the employment of the Law Firm is annexed hereto as *Exhibit "A"*.

9.      This is the Law Firm's first application for compensation and reimbursement of its disbursements and expenses as counsel to the Debtor in the Chapter 11 case, and for authorization for payment from the Retainer (as defined below).

10.      The Law Firm is holding a retainer of $30,054.00 (the "Retainer"), which Retainer has not yet been applied.

11.   The within Application (i) among other things, evidences the immediate and considerable efforts by the Law Firm in furtherance of its responsibilities as counsel to the Debtor-in-Possession, (ii) is in compliance with Bankruptcy Rule 2016 and MLBR 2016-1 regarding disclosure of compensation, and (iii) presents the following detailed statement of services in support of the Law Firm's request for compensation and reimbursement of expenses and disbursements:

(a)   A narrative summary of the services rendered by the Law Firm in connection with its representation of the Debtor;

(b)   An exhibit detailing the number of hours expended by each attorney and paralegal, his or her respective hourly rate, and the calculation of the time incurred multiplied by the applicable hourly rate (*Exhibit "B"*) (the "Lodestar Calculation");

(c)   A detailed description of the specific services rendered by each attorney and paralegal (*Exhibits "C-1" through "C -8"*);

(d)   A detailed description and the amount of all expenses and disbursements incurred (*Exhibit "D"*); and

(e)   A biographical sketch of the attorneys who performed the majority of services in the case (*Exhibit "E"*).

12.   The following summary of the legal services rendered by the Law Firm and the attached exhibits clearly establishes that the amount of compensation requested by the Law Firm is reasonable and that such services rendered were necessary to the Debtor's estate.

## SUMMARY OF SERVICES (GENERAL)

13.   The Law Firm, as required by the Local Rules of this Court, has established certain categories of services.  Although the scope of many of the services may be subject to

inclusion in more than one category, the Law Firm has undertaken considerable efforts to place each time entry description within the category most appropriate in order to permit parties-in-interest and the Court to evaluate the reasonableness of the particular services in context. In doing so, the Law Firm believes that coupled with the narrative summary, the Court, the U.S. Trustee and all parties-in-interest will have the ability to review, assess and conclude that the work performed within each category as well as the totality of the services rendered evidence the reasonableness of the Law Firm's services rendered in the case. Further, the Law Firm has made an effort to expand upon the statement of services with a concise, yet dispositive summary for the Court and all parties in interest to make their own respective assessment.

14.     The work performed was significant due to the critical time restraints; but, there was little, if any, duplication of services rendered (or such services, designated as "no charge time" have not been billed in the Lodestar amount requested). For routine matters, the Law Firm delegated tasks to associates at lower hourly rates. Accordingly, the Law Firm believes that the services rendered and amounts requested herein were reasonable and necessary. The Law Firm's efforts are also evident due, in part, to the exceedingly prompt responsiveness of the Law Firm and its painstaking efforts to provide parties in interest with requested information if it was in the best interest of the Debtor's estate to do so. Recognizing the quality and competency of the professionals in the case, the Law Firm's approach of being fully prepared and having reviewed and considered alternative strategies ready to be implemented if necessary, warrants allowance of the application.

## CATEGORIES OF SPECIFIC SERVICES

### A. Bankruptcy

1.      Under this category the services relate to providing the Debtor with information pertaining to the bankruptcy case, preparation of the bankruptcy petition – which was initially considered problematic due to the inability to access relevant information from Prior Management. The Law Firm also incurred time in discussing the proceedings in bankruptcy including various conferences with the Debtor, certain necessary employees and other interested parties and preparation of documents analysis of documents regarding the bankruptcy case.

2.      As noted below and on Exhibit "C-1", the Law Firm incurred 32.60 hours at a Lodestar Calculation of $19,249.00 in the Bankruptcy category.

| NAME | RATE | HOURS | LODESTAR CALCULATION |
|------|------|-------|----------------------|
| Braunstein, A.L. | 625.00 | 7.30 | 4,562.50 |
| Jacobs, A.W. | 550.00 | .20 | 110.00 |
| Moss, G.B. | 625.00 | 1.80 | 1,125.00 |
| Fox, S.E. | 625.00 | 3.30 | 2,062.50 |
| Russell, M.E. | 625.00 | 9.80 | 6,125.00 |
| Nizzo, B.J. | 510.00 | 7.10 | 3,621.00 |
| Stumbo, A.B. | 530.00 | 3.10 | 1,643.00 |
| TOTAL | | 32.60 | $19,249.00 |

### B. Case Administration

3.      The legal services performed under this category of services pertain to work necessary for the Debtor as it proceeded through the Chapter 11 process. This category includes time spent by the Law Firm in connection with the performance of its duties as counsel for the Debtor which does not fall within any of the more specific categories discussed below. That time includes, among other services, the development of strategies with respect to various bankruptcy issues, advising the Debtor with respect to the administration of the Chapter 11 case and various bankruptcy and other issues that came up before the case was converted to Chapter

7, including providing guidance to the Debtor regarding the US Trustee's operating requirements and guidelines, monitoring the docket, and reviewing general documents and pleadings.

4.    The Debtor's representatives also commenced contact with representatives of DOT and provided their full cooperation with DOT's investigation, as well as local airport authorities and others who desired that the Debtor restore charter operations. The services rendered in this category by the Law Firm thus include assisting the Debtor and proposed special counsel regarding the DOT with these efforts and preparing whatever information could be assembled as well as initiating discussions with counsel to other parties in interest.

5.    As noted below and on Exhibit "C-2", the Law Firm incurred 57.70 hours at a net Lodestar Calculation of $30,667.00 in the Case Administration category.

| NAME | RATE | HOURS | LODESTAR CALCULATION |
|---|---|---|---|
| Braunstein, A.L. | 625.00 | 9.50 | 5,937.50 |
| Moss, G.B. | 625.00 | .70 | 437.50 |
| Toussaint, M.X. | 425.00 | 19.10 | 8,117.50 |
| Fox, S.E. | 625.00 | 2.10 | 1,312.50 |
| Russell, M.I. | 625.00 | 12.60 | 7,875.00 |
| Nizzo, B.J. | 510.00 | 13.70 | 6,987.00 |
| TOTAL | | 57.70 | $30,667.00 |

## C. Raddix/Customer Issues

6.    The Law Firm devoted a substantial portion of time seeking to obtain information from Radixx International ("Radixx"), the Debtor's software provider, which information was essential to develop the multitude of critical data points necessary to fully reconcile all customer refund and chargeback entitlements. Since the inception of the case and in particular after the initial hearing on the JetPay Motion (as defined below), substantial progress was made along these lines, and the Debtor provided various schedules to JetPay based upon which the Debtor, the DOT, Valley, JetPay Merchant Services, LLC ("JetPay"), Merrick Bank Corporation

("Merrick Bank"), and American Express Travel Related Services Co., Inc. ("AMEX") could commence their respective reconciliation process to provide customer refunds and assess their respective claims.

      7.     In this category, the Law Firm's intervention was critical due to the fact that Raddix was the software company with access to all the reservations which had been withheld from the Debtor prior and subsequent to the filing. Accordingly, efforts were undertaken by the Law Firm to successfully obtain such information so as to be in a position to provide accurate information to customers about cancelation of flights and related issues, and so customers could commence the process of pursuing refunds. The Law Firm held initial discussions with counsel for Radixx (after the Debtor's efforts were unsuccessful) and commenced preparing the motion to hold Raddix in violation of the automatic stay; that proposed motion convinced Raddix to retain bankruptcy counsel and negotiations ensued and ultimately resulted in the necessary information becoming accessible to the Debtor.

      8.     As noted below and on Exhibit "C-3", the Law Firm incurred 27.10 hours at a net Lodestar Calculation of $15,316.00 in the Raddix/Customer Issues category.

| NAME | RATE | HOURS | LODESTAR CALCULATION |
|------|------|-------|----------------------|
| Braunstein, A.L. | 625.00 | .40 | 250.00 |
| Fox, S.E. | 625.00 | .50 | 312.50 |
| Russell, M.I. | 625.00 | 12.10 | 7,562.50 |
| Nizzo, B.J. | 510.00 | 14.10 | 7,191.00 |
| TOTAL | | 27.10 | $15,316.00 |

**D.  Relief From Stay Proceedings**

      9.     On March 21, 2012, JetPay, the Debtor's credit card processor for VISA, MasterCard and Discover charge transactions, filed a motion ("JetPay Motion") for relief from the automatic stay to continue processing customer chargebacks from a certain depository

account maintained by the Debtor (the "Valley Account") at Valley pursuant to DOT regulations.

Among other things, JetPay asserted in the JetPay Motion that the funds on deposit in the Valley

Account were not property of the Debtor's estate, and therefore such funds should be available to

JetPay, among others, to compensate JetPay for certain customer chargeback transactions.[3]

10.    Various parties opposed the JetPay Motion, including the Debtor, Valley, AMEX,

and the DOT. In its objection, the Law Firm on behalf of the Debtor, noted that its preliminary

investigation had revealed a substantial shortfall in the Valley Account relative to what it

understood is required under applicable DOT regulations.  The Law Firm, on behalf of the

Debtor, further noted that the exact amount and/or reasons for the shortfall were then not clear,

and further that a determination as to the extent and reasons for such shortfall would require

extensive forensic research and analysis, which was only then just beginning.  Further

complicating matters, completion of this forensic analysis required, among other things, access

to information then under the control of certain third parties, (including Radixx, which as noted

above, access had been terminated by Radixx at or about the commencement of the case, and

which the Law Firm was only then in the process of working with Radixx's counsel to restore.)

Separately, the Law Firm noted that while JetPay had asserted that the Valley Account

constituted a true "escrow" account, as a result of which the Debtor allegedly held no interest in

the deposited funds, the Debtor was not then waiving the right to assert that some or all of said

funds constituted property of the estate (although it was not then asserting an interest in the funds

on deposit in the Valley Account).

11.    Additionally, the Law Firm promptly notified Jet Pay, in a conference call with

Jet Pay's counsel and attorneys for Merrick Bank of the mounting concerns of the Debtor as it

---

[3] Merrick Bank subsequently joined in the JetPay Motion.

attempted to reconcile the escrow and the information from Raddix that the Law Firm was able to access, and facilitate that information to those parties.

12.    The Court conducted an emergency preliminary hearing on the Jetpay Motion, at the conclusion of which the Court adjourned the matter for further hearing which was continued by assent of the parties.  The Law Firm attended the initial hearing on the stay relief motion as well as the first continued hearing and engaged in communications with counsel to each of the parties.

13.    As noted below and on <u>Exhibit "C-4"</u>, the Law Firm incurred 23.90 hours at a Lodestar Calculation of $14,417.50 in the Relief From Stay Proceedings category.

| NAME | RATE | HOURS | LODESTAR CALCULATION |
|------|------|-------|----------------------|
| Braunstein, A.L. | 625.00 | 1.20 | 750.00 |
| Toussaint, M.X. | 425.00 | .30 | 127.50 |
| Fox, S.E. | 625.00 | 11.30 | 7,062.50 |
| Russell, M.I. | 625.00 | 7.10 | 4,437.50 |
| Nizzo, B.J. | 510.00 | 4.00 | 2,040.00 |
| TOTAL | | 23.90 | $14,417.50 |

**E.  Employment Applications**

14.    At the commencement of the case the Law Firm began preparing employment applications for itself as well as the Debtor's proposed financial advisor and special counsel for compliance with the DOT as that was a necessary issue to be dealt with in the case regarding the potential for, among other things, the company's ability to transfer its interest in its permits which required DOT approval, and which would be necessary to the extent the Debtor or any purchaser was to re-commence operations.  Special DOT Counsel was also needed to respond to documents and other requests of the DOT.  Similarly, the Debtor's financial advisor was sought to be engaged to work with the Debtor regarding assessing feasibility of the business, budget

issues, seeking potential lenders and buyers, and preparation of the schedules and other financial

data.

15.    As noted below and on Exhibit "C-5", the Law Firm incurred 18.70 hours at a

Lodestar Calculation of $9,208.50 in the Employment Applications category.

| NAME | RATE | HOURS | LODESTAR CALCULATION |
|---|---|---|---|
| Toussaint, M.X. | 425.00 | 8.60 | 3,655.00 |
| Russell, M.I. | 625.00 | 3.50 | 2,187.50 |
| Nizzo, B.J. | 510.00 | 6.60 | 3,366.00 |
| TOTAL | | 18.70 | $9,208.50 |

## F. Business Issues

16.    The Law Firm assisted the Debtor in connection with assessing how any type of

transaction might be facilitated in bankruptcy, as well as exploring other avenues through the

potential funding, sale, and/or reorganization process.  Additionally, the Law Firm responded to

inquires of the Debtor regarding potential negotiations with airports and other parties.  However,

because of time and budget restraints and the eroding of the customer base from the necessitated

flight cancellations this ultimately proved to be problematic.

17.    As noted below and on Exhibit "C-6", the Law Firm incurred 38.00 hours

at a Lodestar Calculation of $22,937.50 in the Business Issues category.

| NAME | RATE | HOURS | LODESTAR CALCULATION |
|---|---|---|---|
| Braunstein, A.L. | 625.00 | .80 | 500.00 |
| Toussaint, M.X. | 425.00 | .90 | 382.50 |
| Fox, S.E. | 625.00 | .40 | 250.00 |
| Russell, M.I. | 625.00 | 30.40 | 19,000.00 |
| Nizzo, B.J. | 510.00 | 5.50 | 2,805.00 |
| TOTAL | | 38.00 | $22,937.50 |

## G. Litigation

18.    The Law Firm conducted an initial investigation into potential affirmative claims of the Debtor and in particular a potentially significant avoidance action against its major fuel supplier.

19.    The Law Firm extensively reviewed records in connection with the transaction history with the creditor and commenced preparation of an adversary proceeding, which information was conveyed to the Chapter 7 Trustee when the case was converted.

20.    The Law Firm had also commenced an investigation into the allegations regarding Prior Management and the escrow.

21.    As noted below and on Exhibit "C-7", the Law Firm incurred 30.00 hours at a Lodestar Calculation of $17,885.50 in the Litigation category.

| NAME | RATE | HOURS | LODESTAR CALCULATION |
|---|---|---|---|
| Sutton, P.H. | 650.00 | 3.40 | 2,210.00 |
| Braunstein, A.L. | 625.00 | .40 | 250.00 |
| McKenna, D.E. | 575.00 | 6.00 | 3,450.00 |
| Toussaint, M.X. | 425.00 | .20 | 85.00 |
| Russell, M.I. | 625.00 | 14.70 | 9,187.50 |
| Nizzo, B.J. | 510.00 | 5.30 | 2,703.00 |
| TOTAL | | 30.00 | $17,885.50 |

## H. U.S. Trustee

22.    Shortly after the case was commenced, the U.S. Trustee informed the Law Firm that it intended to file a Motion to Convert the case to a Chapter 7.

23.    The Law Firm discussed the Motion to Convert with the Debtor then the U.S. Trustee and in its response stated, among other things, that it believed consideration of the Motion was premature at that time, and instead should be deferred for a short but specific time to afford the Debtor time to address some of the challenges in the case, given that the Debtor was

working with the proposed financial advisor and DOT counsel and pursuing efforts to obtain an

infusion of capital to, among other things, fund operations and pay its administrative expenses

for the additional time being sought while it also evaluated the possibility of resuming limited

flight operations. The Law Firm also was informed that discussions regarding a possible

infusion of capital or alternative funding were underway, and although no commitments were

provided to date, the Debtor, through the Law Firm, noted to the court the circumstances and

challenges, but stated that the Debtor remained cautiously optimistic that real and tangible

progress could be made with the benefit of the requested additional time.

    24.    The Law Firm was also extremely responsive and transparent with regard to the

Debtor and promoted an open dialogue with the U.S. Trustee. The Law Firm and Debtor's

present management and its proposed financial advisor had early conference calls with the U.S.

Trustee, attend the initial Debtor conference and thereafter had an extensive meeting with United

States Trustee's administrator and counsel to fully disclose whatever information it had with

respect to the Debtor's operations, potential litigation, the concerns regarding disposition of the

escrow account, the circumstances and challenges. In connection therewith, the Debtor was fully

responsive as to the cash, budget and projected burn rate.

    25.    As noted below and on <u>Exhibit "C-8"</u>, the Law Firm incurred 39.30 hours at a

Lodestar Calculation of $23,550.00 in the US Trustee category.

| NAME | RATE | HOUR | LODESTAR CALCULATION |
|---|---|---|---|
| Braunstein, A.L. | 625.00 | 8.80 | 5,500.00 |
| Toussaint, M.X. | 425.00 | 1.90 | 807.50 |
| Fox, S.E. | 625.00 | 10.00 | 6,250.00 |
| Russell, M.I. | 625.00 | 13.10 | 8,187.50 |
| Nizzo, B.J. | 510.00 | 5.50 | 2,805.00 |
| TOTAL | | 39.30 | $23,550.00 |

## I. <u>Fee Application</u>

26.     The Law Firm incurred time in preparing the within Application, detailing the specific nature of services rendered and in reviewing all time entries, calculating the amount of time incurred by each attorney and paralegal per each category of services, quantifying the Lodestar Calculation, preparing exhibits and drafting a considerably detailed narrative of services.  Normally, the time incurred in connection with the preparation of any fee application merits consideration for compensation and is invariably allowed to some extent, if not entirely.

27.     As noted below and on <u>Exhibit "C-9"</u>, the Law Firm incurred 9.00 hours at a Lodestar Calculation of $5,625.00 in the Fee Application category.

| NAME | RATE | HOURS | LODESTAR CALCULATION |
|------|------|-------|----------------------|
| Braunstein, A.L. | 625.00 | 9.00 | 5,625.00 |
| TOTAL | | 9.00 | 5,625.00 |

## STATEMENT OF NORMAL HOURLY RATES

28.     The hours, attorneys, paralegals and the average hourly rates which have been charged without considering the size, degree of responsibility, difficulty, complexity of the specific services performed are reflected in <u>Exhibit "C"</u>.  Based upon such hourly rates, the amount of compensation requested for the Law Firm's rendition of services on behalf of the Debtor during the aforementioned time period total 280.9  hours net of "no charge time" and as detailed in <u>Exhibit "B"</u> is $161,457.00.  The specific statement of services is annexed hereto as Exhibit "<u>C-1</u> through <u>C-9</u>".

29.     The compensation requested herein by the Law Firm as a Chapter 11 administrative expense is reasonable compensation for the actual and necessary legal services rendered by the Law Firm, based upon the time, nature, extent and value of the services rendered in this case.  The Law Firm further submits that the cost of services rendered for and on behalf of

the Debtor in this case is comparable to the costs of similar services in legal matters other than these under the Bankruptcy Code.

30.     The Law Firm, pursuant to 11 U.S.C. §504, hereby states that it has not in any form or guise agreed to share compensation in this case, except among the partners of the Law Firm.

## SUMMARY OF EXPENSES INCURRED

31.     The Law Firm has incurred actual and necessary expenses in the rendition of such legal services in the aggregate amount of $5,295.64 and for which Law Firm has not been reimbursed.  Disbursements for actual and necessary expenses incurred in the rendition of professional services during the aforementioned period of the within request for compensation, are summarized on Exhibit "D".

WHEREFORE, the Law Firm respectfully requests that this Court enter an order regarding compensation and reimbursement of expenses, as follows:

(1)     awarding it an interim amount of $24,758.36 for duly authorized, reasonable and necessary legal services rendered as counsel to the Debtor in its Chapter 11 proceeding for the benefit of the Debtor's estate, and the amount of $5,295.64 for reimbursement of its disbursements and expenses;

(2)     authorizing the Law Firm to be paid such allowed fees and expenses out of the Retainer;

(3)     awarding the balance of requested fees in the amount of $136,698.64 and any interim fees and expenses on a final basis when, and if, there becomes sufficient funds for payment of Chapter 11 administrative expenditures or at the hearing on the Trustee's Final Account at the close of the case;

(4)    the Law Firm reserves the right to submit a supplemental application for services

rendered to the extent of any time expended during the Chapter 7 case (not otherwise covered

herein) as may be requested by the Chapter 7 Trustee; and

(5)    entering such further and additional relief as may be appropriate under the

circumstances.

Respectfully submitted this 31st day of July, 2012.

THE LAW FIRM OF
RIEMER & BRAUNSTEIN LLP

*/s/ Alan L. Braunstein*
Alan L. Braunstein
Riemer & Braunstein LLP
Three Center Plaza
Boston, MA 02108
(617) 523-9000
Email: abraunstein@riemerlaw.com

<u>Exhibit A</u>
(Retention Order)

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS

| |
|---|
| In re:<br><br>SOUTHERN SKY AIR & TOURS, LLC,<br>D/B/A DIRECT AIR,<br><br><br>Debtor. |

Case No. 12-40944 (MSH)

Chapter 11

## ORDER AUTHORIZING DEBTOR TO EMPLOY
## RIEMER & BRAUNSTEIN LLP AS COUNSEL

Upon consideration of the Debtor's Application for Authority to Employ Riemer &

Braunstein LLP as Counsel dated March 21, 2012 (the "Application"),[1] whereby Southern Sky

Air & Tours, LLC, d/b/a Direct Air (the "Debtor") seeks to employ the law firm of Riemer &

Braunstein LLP (the "Firm") as its counsel; appropriate notice of the Application having been

provided in the particular circumstances; no objection to the Application having been filed; and

this Court having reviewed the Application and having found good cause for the relief sought

therein; it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Application is granted.

2.      The Debtor is authorized to employ the Firm as bankruptcy counsel in its chapter

11 case on the terms set forth in the Application.

3.      The compensation and reimbursement of expenses to be allowed to the Firm shall

be determined by the Court upon appropriate application therefor and upon notice and a hearing,

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Application.

in accordance with sections 330 and 331 of the Bankruptcy Code and the applicable Bankruptcy Rules.

4.    The Firm may hold the Retainer pending final allowance of compensation pursuant to 11 U.S.C. § 330 and receive interim compensation from the Debtor pursuant to Orders of this Court authorizing its payment, upon appropriate application thereof.

5.    Approval of the Application shall be deemed effective as of the Petition Date in accordance with MLBR 2014-1(d).

6.    The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _April 6_____, 2012                    _Melvin S. Hoffman_____

United States Bankruptcy Judge

1422426.4

<u>Exhibit B</u>
(Lodestar Calculation)

EXHIBIT B

Direct Air

| ATTORNEY | RATE | HOURS | FEE |
|---|---|---|---|
| Sutton, P.H. | 650.00 | 3.40 | 2,210.00 |
| Braunstein, A.L. | 625.00 | 37.40 | 23,375.00 |
| Jacobs, A.W. | 550.00 | .20 | 110.00 |
| McKenna, D.E. | 575.00 | 6.00 | 3,450.00 |
| Moss, G.B. | 625.00 | 2.50 | 1,562.50 |
| Fox, S.E. | 625.00 | 27.60 | 17,250.00 |
| Russell, M.I. | 625.00 | 103.30 | 64,562.50 |
| Toussaint, M.X. | 425.00 | 31.00 | 13,175.00 |
| Nizzo, B.J. | 510.00 | 66.90 | 34,119.00 |
| Stumbo, A.B. | 530.00 | 3.10 | 1,643.00 |
| TOTAL | | 280.90 | $161,457.00 |

1462122.1