**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**(CENTRAL DIVISION)**

| | |
|---|---|
| **In re:**<br><br>**SOUTHERN SKY AIR & TOURS, LLC d/b/a DIRECT AIR,**<br><br>**Debtor.** | **Chapter 7**<br>**Case No. 12-40944-MSH** |

**STIPULATION AND RELEASE BETWEEN JOSEPH H. BALDIGA, CHAPTER 7 TRUSTEE, AND PLATTE RIVER INSURANCE COMPANY REGARDING PUBLIC CHARTER OPERATOR'S SURETY BOND**

Joseph H. Baldiga, as Chapter 7 Trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Southern Sky Air & Tours, LLC d/b/a Direct Air (the "Debtor"), and Platte River Insurance Company (the "Company") are the parties and signatories hereto and do hereby enter into this Stipulation and Release (the "Stipulation"), subject to Bankruptcy Court approval. The Trustee and the Company are referred to together herein as the "Parties." The Parties make reference to the following facts:

**RECITALS**

A. On March 15, 2012 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

B. Prior to the Petition Date, the Debtor was a public charter operator (tour operator) with charter programs serving various points in the United States. The Debtor operated its business primarily from its headquarters in Myrtle Beach, South Carolina. The Debtor canceled all of its charter programs on or about March 13, 2012.

C. On April 11, 2012 (the "Conversion Date"), this Court converted the Debtor's Chapter 11 case to one under Chapter 7 of the Bankruptcy Code.

D. On the Conversion Date, the United States Trustee appointed the Trustee as Chapter 7 trustee of this case and he continues to serve as such.

E. As a public charter operator, the Debtor's operations were governed by, among other things, regulations promulgated by the United States Department of Transportation (the "DOT"), 14 C.F.R. Part 380.

F. Pursuant to 14 C.F.R § 380.34, while operating, the Debtor was required to maintain a security agreement, such as a bond, to protect passenger monies deposited for airline

travel in the event that services were canceled and incidental passenger expenses reasonably incurred as a result of such cancellations.

G. In accordance with 14 C.F.R. § 380.34, on October 12, 2006, the Debtor posted a Public Charter Operator's Surety Bond, Bond # 41060098 (the "Bond"), in the amount of TWO HUNDRED THOUSAND DOLLARS ($200,000; the "Bond Amount") to ensure the Debtor's compliance with applicable DOT regulations. The Company guaranteed the Bond as the surety. The Bond continues in full force and effect indefinitely, subject to cancelation by the Debtor or the Company with notice to the DOT. A copy of the Bond is attached here to **Exhibit A**.

H. Since the Petition Date, many customers of the Debtor have asserted claims under the Bond for the monies lost in connection with the Debtor's canceled flights and ceased operations and for expenses incurred due to those cancellations and the cessation of operations (the "Claims"). The Parties believe that the Claims exceed the Bond Amount. To assess and reconcile the full extent of the Claims covered by the Bond, it will be necessary to review each claim in order to eliminate duplicative and illegitimate claims. Many of the claimants, for example, are likely to have resolved their claims by effecting credit card and debit card "charge backs."

I. Although the amount of the Claims will almost certainly exceed the Bond Amount, the Bond provides that the Company's liability under the Bond is limited to the Bond Amount.

J. Under 14 C.F.R. § 380.34(d) and the Bond, claimants to the Bond are required to file any claim under the Bond within 60 days from the date of a claimant's canceled return flight. Upon information and belief, prior to the Petition Date, the Debtor had scheduled operating flights through approximately November 16, 2012. It is possible, therefore, that Claims could be timely asserted against the Bond through January 15, 2013.

K. Following the Petition Date, the DOT issued a public notice to consumers regarding the cessation of the Debtor's operations, the potential rights of passengers to reimbursements from the Bond, and the process for asserting such claims. A copy of the notice, entitled *Information for Consumers Regarding the Cessation of Operations by Southern Sky Air Tours d/b/a Myrtle Beach Direct Air and Tours*, is attached hereto as **Exhibit B**.

L. The Court has established September 11, 2012 as the deadline for creditors asserting pre-petition claims to file such claims against the Estate (the "Chapter 7 Bar Date").[1]

## STIPULATION AND RELEASE

WHEREFORE, in consideration of the promises, covenants, representations and warranties contained herein, and for good and valuable consideration given hereunder, the sufficiency of which is hereby acknowledged by the signatories to this Stipulation, the Parties hereby stipulate and agree as follows:

---

1 At the Trustee's request, the Court also set July 30, 2012 as the deadline for creditors to file Chapter 11 administrative expense claims.

**1. Effective Date.**

This Stipulation shall become effective upon the entry of a Bankruptcy Court Order in substantially the form annexed hereto approving this Stipulation and that order becoming "final" (i.e., no longer subject to stay or appeal; the "Final Order").

**2. Consideration.**

2.1 Obligations of the Company.

(a) The Company agrees to pay TWO HUNDRED THOUSAND DOLLARS ($200,000) to the Trustee, on behalf of the Estate, in exchange for a full release of the Company of any and all liability under the Bond. The Company shall pay the Bond Amount to the Trustee within ten (10) days after entry of an order of the Bankruptcy Court approving this Stipulation and that order having become the Final Order. The Bond Amount shall be made by check payable to "Joseph H. Baldiga, Chapter 7 Trustee" and shall be sent to the Trustee at the address provided in Paragraph 6, below.

(b) Upon entry of the Final Order, the Company agrees to turn over to the Trustee any and all Claims, known to the Company, that have been asserted pursuant to the Bond. The Company shall continue to provide the Trustee with such information relating to any and all Claims received by the Company on an on-going basis through January 15, 2013. The Company will also furnish to the Trustee such additional information as the Trustee may reasonably request in furtherance of the purpose of this Stipulation.

2.2 Obligations of the Trustee.

(a) Upon entry of the Final Order and the Trustee's receipt of the Bond Amount, the Trustee and the Estate shall be deemed to have released the Company from any and all claims related to the Claims or the Company's liability under the Bond, whether or not such claims have been asserted as of the date of the Final Order or by the January 15, 2013 deadline for filing Claims. This release shall not relieve the Company of any of the Company's obligations under to this Stipulation.

(b) Upon entry of the Final Order and the Trustee's receipt of the Bond Amount, in consideration for the Company's turnover of the Bond Amount, the Trustee will assume any and all responsibility relating to the administration and reconciliation of any and all claims asserted against the Bond in conjunction with the Trustee's normal claim administration process in the Debtor's Chapter 7 bankruptcy case, including without limitation (a) comprehensively reviewing and evaluating any and all potential Claims to the Bond Amount, (b) determining whether such Claims are invalid or duplicative, and (c) establishing which Claims shall be allowed claims, including whether such Claims are valid under 14 C.F.R. § 380.34 as described in paragraph F above. The Trustee shall require potential Bond claimants to first exhaust all efforts to obtain a

reimbursement from those claimants' credit card and debit card companies and, if unsuccessful, demonstrate evidence of the claimants' inability to recover payment from such credit card and debit card companies.

(c) The Bond Amount shall be paid into the Estate and become general property of the Estate pursuant to Bankruptcy Code § 541; provided, however, that if allowed Bond Claims total at least $175,000, then $175,000 of the Bond Amount shall be payable only to allowed Bond Claims (pro rata, as applicable), while the balance of the Bond Amount ($25,000) shall become general property of the Estate, to be administered by the Trustee in the normal course of his administration of the Debtor's Estate. If allowed Bond Claims are less than $175,000, then, the Bond Amount comprising the difference between the total amount of allowed Bond Claims and $175,000 shall also become general property of the Debtor's Estate. Because the Claims are so entwined with the general claims asserted against the Estate, the Trustee's claim reconciliation and payment efforts will benefit the Bond claimants, as well as other claimants asserting claims against the Estate.

(d) Notwithstanding that any claimant with a right to payment under the Bond has received notice of the bankruptcy filing, the Chapter 7 Bar Date and the process for claiming funds under the Bond, the Trustee shall not object to any and all claims made pursuant to the Bond as being untimely filed if they are filed by January 15, 2013. Since the right of claimants to assert Bond claims extinguishes 60 days from the date of their regularly-scheduled return flight and because, upon information and belief, the Debtor scheduled flights through November 16, 2012, the Trustee's recognition of such claims filed on or before January 15, 2013 as timely-filed claims complies with applicable DOT regulations.

**3. Mutual Release.**

(a) Upon the Company's delivery of the Bond Amount to the Trustee and entry of the Final Order, except for the rights, duties, and obligations set forth in this Stipulation, the Trustee, for himself, his agents, servants, employees, representatives, assigns, successors, heirs, executors, trustees, joint venturers, partners and attorneys, and each of them, does hereby absolutely, fully and forever release, relieve, waive, relinquish and discharge the Company, and its respective agents, servants, employees, representatives, assigns, successors, heirs, executors, trustees, joint venturers, partners and attorneys (collectively, the "Released Parties"), of and from any and all causes of action, suits and liabilities, now, heretofore existing at law or in equity, whether known or unknown, arising out of, or relating to, the subject matter of the Claims and the Company's liability under the Bond, such that the Company's obligations under the Bond shall be deemed fully satisfied other than as set forth in this Stipulation.

(b) Upon entry of the Final Order, except for the rights, duties, and obligations set forth in this Stipulation, the Company, for itself, its agents, servants, employees, representatives, assigns, successors, heirs, executors, trustees, joint venturers, partners and attorneys, and each of them, does hereby absolutely, fully and forever release, relieve, waive, relinquish and discharge the Trustee, the Debtor, the Estate and each of the Trustee's respective

agents, servants, employees, representatives, assigns, successors, heirs, executors, trustees, joint venturers, partners and attorneys (the "Estate Parties"), of and from any and all causes of action, suits and liabilities, now, heretofore existing at law or in equity, whether known or unknown, arising out of, or relating to, the subject matter of the Claims, the Bond, or otherwise. Further, the Company shall pay and relinquish all rights to the Bond Amount whether or not the Claims, asserted by claimants specifically under the Bond, total more, or less, than the Bond Amount.

(c) The releases set forth in this Stipulation shall be and shall remain in effect notwithstanding the discovery or existence of any new or additional fact or any fact different from that which the Parties now know or believe to be true.

**4. Authority.**

Each party represents and warrants to the other party that the person executing this Stipulation on his, her or its behalf has full authority and capacity to execute this Stipulation and to give the releases and other promises contained herein.

**5. No Admission of Liability.**

This Stipulation affects the settlement of claims which are denied and contested, and nothing contained herein shall be construed as an admission by the Released Parties or by the Estate Parties of any liability of any kind. The Released Parties deny any liability in connection with any such claims and intend merely to avoid litigating this matter and to buy peace.

**6. Notices.**

Any notice or communication required under this Stipulation shall be effective when received and sufficient if given in writing, and shall be addressed as follows:

For the Trustee:

Joseph H. Baldiga, Esq.
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581-3926
Fax: 508.983.6232
Email: jbaldiga@mirickoconnell.com

For the Company:

Bradford R. Carver, Esq.
Hinshaw & Culbertson LLP
28 State Street, 24th Floor
Boston, MA 02109-5709
Fax: 617.213.7001
Email: bcarver@hinshawlaw.com

**7. General Provisions.**

7.1 Further Cooperation.

Each party hereto agrees to execute all such further and additional documents and instruments, as shall be necessary or expedient to carry out the provisions of this Stipulation, and shall promptly and in good faith undertake all reasonable acts to effectuate the provisions of this Stipulation.

7.2 Entire Agreement.

This Stipulation contains the entire agreement and understanding between the Parties concerning the subject matter hereof, and any and all prior oral or written agreements or understandings between the Parties related hereto are superseded. No representations, oral or otherwise, express or implied, other than those specifically referred to in this Stipulation, have been made by any party hereto. Upon entry of the Final Order, this Stipulation shall be binding upon the Parties and their agents, servants, employees, representatives, assigns, successors, heirs, executors, trustees, joint venturers, partners and attorneys.

7.3 Attorneys' Fees and Costs.

Each of the Parties shall bear his, her or its own attorneys' fees, costs, and expenses incurred in connection with the disputes between the Parties which are the subject of, or related to, this Stipulation, including, without limitation, the negotiation, drafting and consummation of this Stipulation.

7.4 Choice of Law and Jurisdiction.

This Stipulation is being executed in the Commonwealth of Massachusetts and it shall be deemed to be made under, and shall be interpreted in accordance with, the internal laws of the Commonwealth of Massachusetts.

7.5 Legal Advice.

Each party has had the opportunity to consult with independent legal counsel with respect to the advisability of making the settlement provided for herein and of executing this Stipulation and all other matters contained herein.

7.6 Investigation.

The Parties hereby acknowledge that they have been represented in the negotiations for, and in preparation of, this Stipulation by counsel of their choice; that they have read this Stipulation and have had it fully explained to them by such counsel; and that they are fully aware of the contents of this Stipulation and of the legal effect of each and every provision thereof. Each party to this Stipulation has made such

investigation of the facts pertaining to this Stipulation and of all of the matters pertaining thereto as it deems necessary.

7.7 Waiver, Modification and Amendment.

No provision of this Stipulation may be waived unless in writing signed by all of the Parties hereto. Waiver of any one provision shall not be deemed to be a waiver of any other provision hereof. This Stipulation may not be altered, amended or otherwise changed or modified, except in writing signed by all of the Parties hereto.

7.8 Construction.

In construing this Stipulation, none of the Parties hereto shall have any term or provision, or any uncertainty or ambiguity as to any term or provision herein, construed against such party solely by reason of such party having drafted the same, as a result of the manner of the preparation of this Stipulation, or otherwise. Each term and provision of this Stipulation shall be construed and interpreted so as to render it enforceable.

7.9 Execution in Counterparts.

This Stipulation may be executed in counterparts and all of said counterparts shall collectively constitute one agreement binding on all of the Parties.

7.10 Fax or Electronic Signatures.

Signatures that are telecopied, emailed or otherwise sent electronically shall be deemed originals, but each party transmitting its signature by facsimile, email, or other electronic means shall thereafter deliver an original signature page to be appended to this Stipulation.

7.11 Headings or Pronouns.

Headings or captions contained in this Stipulation are solely for the convenience of the Parties, are not a part of this Stipulation, and shall not be used for the interpretation of, or determination of the validity of, this Stipulation or any provision hereof. Whenever the context may so require, the masculine gender shall be deemed to refer to and include the feminine and neuter, and the singular shall be deemed to refer to and include the plural, and vice versa.

7.12 Bankruptcy Court Approval Required.

This Stipulation is subject to Bankruptcy Court approval pursuant to Fed. R. Bankr. P. 9019 and MLBR 9019-1. Absent such approval, this Stipulation shall be of no force or effect.

IN WITNESS WHEREOF, the Parties have caused this Stipulation to be executed as of the dates set forth below.

DATED: September 4, 2012

/s/ Joseph H. Baldiga
Joseph H. Baldiga, Chapter 7 Trustee

DATED: ____________________

____________________
Platte River Insurance Company

By: ____________________

Its: ____________________

DATED: September 4, 2012

Consented to in form only:

/s/ Bradford R. Carver
Bradford R. Carver
Hinshaw & Culbertson, LLP
28 State Street, 24th Floor
Boston, MA 02109-5709

7.12 Bankruptcy Court Approval Required.

This Stipulation is subject to Bankruptcy Court approval pursuant to Fed. R. Bankr. P. 9019 and MLBR 9019-1. Absent such approval, this Stipulation shall be of no force or effect.

IN WITNESS WHEREOF, the Parties have caused this Stipulation to be executed as of the dates set forth below.

DATED: ____________________

Joseph H. Baldiga, Chapter 7 Trustee

DATED: August 31, 2012

Platte River Insurance Company
By: PATRICIA A. FRAMKE
Its: Senior Claim Specialist

DATED: ____________________

Consented to in form only:

Bradford R. Carver
Hinshaw & Culbertson, LLP
28 State Street, 24th Floor
Boston, MA 02109-5709

# EXHIBIT A

**PUBLIC CHARTER OPERATOR'S SURETY BOND UNDER PART 380 OF THE SPECIAL REGULATIONS OF THE DEPARTMENT OF TRANSPORTATION, 14 CFR PART 380**

Southern Sky Air & Tours dba

Know all men by these presents, that we Myrtle Beach Direct Air & Tours (name of charter operator) of ______Myrtle Beach______(city) ____South Carolina____(state) as Principal (hereinafter called Principal), and ____Platte River Insurance Company____ (name of surety) a corporation created and existing under the laws of the State of _______Wisconsin________(State) as Surety (hereinafter called Surety) are held and firmly bound unto the [redacted] in the sum of $ 200,000.00 (see 14 CFR 380.34) for which payment, well and truly to be made, we bind ourselves and our heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by these presents.

Whereas Principal intends to become a Public Charter operator pursuant to the provisions of 14 CFR Part 380 and other rules and regulations of the Department relating to insurance or other security for the protection of charter participants, and has elected to file with the Department of Transportation such a bond as will insure financial responsibility with respect to all moneys received from charter participants for services in connection with a Public Charter to be operated subject to Part 380 of the Department's Special Regulations in accordance with contracts, agreements, or arrangements therefore, and

Whereas this bond is written to assure compliance by Principal as an authorized charter operator with 14 CFR Part 380 and other rules and regulations of the Department relating to insurance and other security for the protection of charter participants, and shall inure to the benefit of any and all charter participants to whom Principal may be held legally liable for any damages herein described.

Now, therefore, the condition of this obligation is such that if Principal shall pay or cause to be paid to charter participants any sum or sums for which Principal may be held legally liable by reason of Principal's failure faithfully to perform, fulfill and carry out all contracts, agreements, and arrangements made by Principal while this bond is in effect with respect to the receipt of moneys from charter participants, and proper disbursement thereof pursuant to and in accordance with the provisions of 14 CFR Part 380, then this obligation shall be void, otherwise to remain in full force and effect.

The liability of Surety with respect to any charter participant shall not exceed the charter price paid by or on behalf of such participant.

The liability of Surety shall not be discharged by any payment or succession of payments hereunder, unless and until such payment or payments shall amount in the aggregate to the penalty of the bond, but in no event shall Surety's obligation hereunder exceed the amount of said penalty.

Surety agrees to furnish written notice to the Office of Aviation Analysis, Department of Transportation, forthwith of all suits or claims filed and judgments rendered, and payments made by Surety under this bond.

Bond # 41060098 , effective October 12, 2006. SURETY'S CORPORATE SEAL

(Revised 3/94)

11/06/2007 06:34 PM

**Part 380, Appendix A, page 2.**

The bond shall cover the following charters: [1]

**ALL FLIGHTS TO WHICH PRINCIPAL IS THE PUBLIC CHARTER OPERATOR UNDER 14 CFR PART 380.**

1 These data may be supplied in an addendum attached to the bond.

**Bond # 41060098 , effective October 12, 2006.**

SURETY'S CORPORATE SEAL

(Revised 3/94)

**11/06/2007 06:34 PM**

**Part 380, Appendix A, page 3.**

Surety company's bond No. **41060098**
Date of flight departure____________________
Place of flight departure____________________

This bond is effective on the **12th** day of **October**, 2006, 12:01 a.m., standard time at the address of Principal as stated herein and as hereinafter provided. Principal or Surety may at any time terminate this bond by written notice to: "Special Authorities Division (X-57), Office of Aviation Analysis, U.S. Department of Transportation, Washington, DC 20590," such termination to become effective thirty (30) days after the actual receipt of said notice by the Department. Surety shall not be liable hereunder for the payment of any damages hereinbefore described which arise as a result of any contracts, agreements, undertakings, or arrangements for the supplying of transportation and other services made by Principal after the termination of this bond as herein provided, but such termination shall not affect the liability of the bond hereunder for the payment of any damages arising as a result of contracts, agreements, or arrangements for the supplying of transportation and other services made by Principal prior to the date that such termination becomes effective. Liability of Surety under this bond shall in all events be limited only to a charter participant or charter participants who shall within sixty [illegible]

In witness whereof, the said Principal and Surety have executed this instrument on the **12th** day of **October**, 2006.

PRINCIPAL

Name **Southern Sky Air & Tours dba Myrtle Beach Direct Air & Tours**
By: Signature and title **Judy K. Tull, CEO**
Witness____________________

SURETY

Name **Platte River Insurance Company**
By: Signature and title **Alejandro Navarro-Attorney-In-Fact**
Witness **Stanley Varon**

**Bonding or surety company must be listed in Best's Insurance Reports (Fire and Casualty) with a general policyholders' rating of "A" or better or in the Department of the Treasury listing of companies holding certificates of authority as acceptable sureties on Federal bonds. In addition, the bonding or surety company shall be one legally authorized to issue bonds of that type in the State(s) in which the charter flight(s) originate. Agents must provide satisfactory proof that they have the requisite authority to issue this bond.**

**Bond # 41060098 ,effective October 12, 2006.**

SURETY'S CORPORATE SEAL

(Revised 3/94)

11/06/2007 06:34 PM

# VERIFICATION CERTIFICATE

**Platte River Insurance Company** (hereinafter called the Surety), hereby confirms that its Surety Bond numbered **41060098**, in the amount of $ **200,000.00**, on behalf of **Southern Sky Air & Tours dba Myrtle Beach Direct Air & Tours** (Principal) in favor of **U.S. Department of Transportation**, (Obligee) with an original effective date of **October 12, 2006** is still in full force and effect subject to the terms, conditions and limitations of said bond.

This verification certificate is executed upon the express condition that the Surety's liability under said bond, together with this and all previous verification certificates shall not be cumulative and shall in no event exceed the amount specifically set forth in said bond or any existing certificate changing the amount of said bond.

Signed, sealed and dated: **September 4, 2007 .**

**Surety**: **Platte River Insurance Company**

By: ______________________

Alejandro Navarro , Attorney-in Fact

# EXHIBIT B



**U.S. Department of Transportation**
Office of the Secretary of Transportation

# Transportation Facts

---

## *Information for Consumers Regarding the Cessation of Operations by* Southern Sky Air Tours d/b/a *Myrtle Beach Direct Air and Tours*

(as of March 20, 2012)

On or about March 13, 2012, Southern Sky Air Tours, d/b/a Myrtle Beach Direct Air and Tours (Direct Air) — a public charter operator — ceased operations. Direct Air has subsequently filed for bankruptcy protection in the U.S. Bankruptcy Court for the District of Massachusetts (Worcester) (Case no. 12-40944). Set forth below are certain alternatives available to Direct Air customers.

### *Air Transportation*

Direct Air was authorized by the Department to operate public charter flights between numerous cities and Myrtle Beach, South Carolina, and points in Florida. Under Department regulations, Direct Air has in place an escrow account into which all charter participant funds were to be deposited until payment was made to the airline that was to perform their charter flights. The Department is investigating the handling of that escrow account. In addition, as required by Department rules, Direct Air has in place a surety bond in the amount of $200,000 protecting charter participant payments.

At this time, it is unclear whether consumers who have completed the outbound portion of their trip and need to return home will be provided return transportation, but we have been advised that the company is working with the airlines involved with its charter program to provide return flights. Direct Air has established a toll-free number that should be operational at the time of publication of this fact sheet to provide consumers more information about this matter. That number is **1-855-888-8090**.

### *Obtaining a Refund*

Consumers affected by Direct Air's cessation of service who are due a refund need to be able to prove to the escrow bank and surety bond company that they purchased charter air transportation or an air charter tour package from Direct Air. Acceptable proof might include a Direct Air receipt or invoice, or possibly the consumer's credit card purchase record.

Under Department rules, consumers may request a refund from Direct Air by writing to the company at 1600 Oak Street, Suite B, Myrtle Beach, SC 29577, with a copy sent to the company's escrow depository bank, Valley National Bank, at 1455 Valley Road, Wayne, NJ 07470.

Consumers may also be able to recover funds by making a claim under Direct Air's surety bond. The bond number is 41060098. The holder of Direct Air's surety bond is Platte Insurance Company. Platte River Insurance Company may be contacted via U.S. mail at P.O. Box 5900, Madison, WI 53705; via fax at 608-829-7451; or via email at bondclaims@capitol.net. In addition, Platte River Insurance Company has established a toll-free phone number to provide information regarding procedures for filing claims, 1-800-475-4450 ext. 4284. Claims made under the surety bond must be made within 60 days of the date of the originally-scheduled return air transportation. Claims are limited to the amount paid by the consumer for the charter air transportation or air charter tour package.

***Credit and Debit Card Refunds***

Customers who paid Direct Air by credit card may be entitled to a credit from their credit card company under the Fair Credit Billing Act. Write to your credit card issuer, being sure to state your account number. Enclose a photocopy of your credit card statement, if you have received one, and a photocopy of your ticket, itinerary or receipt if possible, or indicate the price of the transportation and the date it was purchased. State that Direct Air has ceased operations, that you will not receive the product that you charged to your account (i.e., the comprehensive tour), and that you are requesting a credit pursuant to the Fair Credit Billing Act.

The credit card issuer must receive this notice no later than 60 days after the date that you received the first monthly statement that listed the Direct Air charge, although credit card companies sometimes waive this deadline for future transportation. If you have a paper ticket or other evidence of your transportation, some credit card issuers may ask for the original unused ticket or other documentation. If this is requested, keep a photocopy and send the original by certified mail. Do not send the original documentation unless it is requested. However, it would be a good idea to enclose a copy of any confirmation or itinerary sheet that you may have received.

There are no federal protections for debit card purchases of the type described above for credit cards. However, some debit card issuers voluntarily provide some or all of those protections. If you paid by debit card, consult your debit card issuer regarding your refund rights.

***Bankruptcy claim***

If you are not able to take advantage of any of the above options, you may file a claim in the bankruptcy proceeding. To do so, get a "Proof of Claim" form (Form B10) at http://www.mab.uscourts.gov/mab/node/65. When filling out the form, make reference to Southern Sky Air Tours d/b/a Myrtle Beach Direct Air and Tours, and case 12-40944. See the instructions in the form for any documents you should enclose. Make copies of the form and enclosures and send the claim to:

Clerk<br>
United States Bankruptcy Court<br>
District of Massachusetts<br>
211 Donohue Federal Building<br>
595 Main Street<br>
Worcester, MA 01608-2076

Such a filing does not guarantee a refund. If a refund is made, it may not be for the full amount of the claim. The process may take a long time.