## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### (CENTRAL DIVISION)

|  |  |
|---|---|
| **In re:**<br><br>**SOUTHERN SKY AIR & TOURS, LLC**<br>**d/b/a DIRECT AIR,**<br><br>     **Debtor.** | **Chapter 7**<br>**Case No. 12-40944-MSH** |

### MOTION TO LIMIT NOTICE
**(Re: Motion to (1) Approve Agreement Regarding Debtor's**
**Accounts at Valley National Bank and (2) Extend Claim Bar Date for**
**Charter Participants to January 15, 2013)**

To the Honorable Melvin S. Hoffman, United States Bankruptcy Judge:

NOW COMES Joseph H. Baldiga, Chapter 7 trustee (the "Trustee") for the above-referenced Debtor, and hereby moves this Court pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure and MLBR 2002-1(b) to limit notice regarding his Motion for Order (1) Approving Agreement Regarding Debtor's Accounts at Valley National Bank and (2) Extending Claim Bar Date for Charter Participants to January 15, 2013 (the "Motion to Approve") to service upon the Debtor, counsel to the Debtor, the Office of the United States Trustee, all secured creditors, the Debtor's twenty largest unsecured creditors, taxing authorities, affected governmental authorities, all parties that have filed requests for notice, Schedule F – Non-Consumer Creditors, and all parties listed on the Debtor's Amended Schedule of Post-petition Creditors.

In support hereof, the Trustee submits the following:

1.      On March 15, 2012 (the "Petition Date"), the Debtor filed its petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101–1532 (the "Bankruptcy Code").

2.      On April 11, 2012 (the "Conversion Date"), the case was converted to one under Chapter 7 of the Bankruptcy Code.

3.      On the Conversion Date, the United States Trustee appointed Joseph H. Baldiga Chapter 7 trustee of this proceeding and he continues to serve as such.

4.      Prior to the Petition Date, the Debtor was a public charter operator (tour operator) with charter programs servicing various points in the United States. On March 13, 2012 (two days prior to the Petition Date), the Debtor ceased operation of its tour programs, stopped accepting flight reservations and terminated reservation capabilities on its web-site. The Debtor never resumed operations. By the time of these actions, the Debtor had previously accepted flight reservations from thousands of charter participants (the "Charter Participants"), who were then unable to fly with the Debtor, and who were left with claims for the monies lost in connection with the Debtor's cancelled flights and ceased operations.

5.      On May 3, 2012, the Debtor filed, among other things, two separate schedules for Schedule F creditors, categorized as (1) consumer creditors (the "Schedule F - Consumer Creditors") and (2) non-consumer creditors (the "Schedule F – Non-Consumer Creditors"). The number of Schedule F – Consumer Creditors totals approximately 93,000 and, upon information and belief, are all consumer creditors who purchased airline tickets for flights that never occurred (i.e., Charter Participants).

6.      On the date hereof, the Trustee filed the Motion to Approve. In the Motion to Approve, the Trustee seeks, among other things, approval of an agreement (the "Agreement")

regarding recovery and allocation of funds on deposit in accounts maintained at Valley National

Bank for, and on behalf of, the Debtor (the "Escrow Proceeds").

7.      As discussed in the Motion to Approve, certain parties have expressed belief that

the Escrow Proceeds may not be property of the Estate but, rather, funds belonging directly to

certain Charter Participants.  As noted above, the Trustee believes that the approximately 93,000

Schedule F – Consumer Creditors consist of Charter Participants.

8.      However, upon information and belief, and as discussed in detail in the Motion to

Approve, the vast majority of Charter Participants have already sought "chargebacks" for flights

purchased on their credit and debit cards that never occurred.  JetPay Merchant Services, LLC

("JetPay") and American Express Travel Related Services Company, Inc. ("AMEX") have

processed reimbursements for those customers via the banks that issued the credit cards (i.e.,

Merrick Bank Corporation on behalf of JetPay) and have made claims against the Escrow

Proceeds based on their reimbursement for such chargebacks.  Accordingly, JetPay, along with

Merrick Bank Corporation, and AMEX, which are all parties to the Agreement, now stand in the

shoes of a vast majority of Charter Participants with respect to those participants' potential

interests in the Escrow Proceeds.

9.      Additionally, upon information and belief, only a small portion of Charter

Participants who purchased flights by credit card or debit card remain unreimbursed.[1]  Upon

further information and belief, only a small fraction of Charter Participants paid for flights in a

manner other than by credit card or debit card (i.e., by check or cash).  While the Trustee

acknowledges that some small portion of Charter Participants do retain claims against the

---

[1]   As set forth in the Motion to Approve, JetPay has informed the Trustee that as of August 28, 2012, it has
processed over 63,000 chargebacks and refunds.  AMEX informed the Trustee that it had processed over 6,000
chargeback transactions as of that same date.  The Trustee believes that the chargebacks funded by Merrick and
AMEX will continue to increase.  Further, JetPay, Merrick, and AMEX have agreed to process chargebacks
submitted by Charter Participants through January 15, 2013.

Escrow Proceeds (indeed, pursuant to the Agreement, funds from the Escrow Proceeds are allocated for disbursement to such Charter Participants), the Trustee submits that there is no efficient or cost-effective manner to identify such unreimbursed Charter Participants from the approximately 93,000 Schedule F – Consumer Creditors.  While the Trustee may be able to identify unreimbursed Chapter Participants after investigating the dissipation of funds from the accounts comprising the Escrow Proceeds and/or performing a comprehensive claims analysis, the Trustee is in no position to conduct such investigations and analyses until after the Agreement is approved.

10.     Fortunately, the Department of Transportation (the "DOT") and other administrative agencies have been heavily involved in the Debtor's bankruptcy case, including to advocate on behalf of Charter Participants that may have an interest in the Escrow Proceeds. Indeed, the parties to the Agreement consulted with the DOT and enacted certain of the DOT's suggested modifications to the Agreement prior to filing the Motion to Approve.  The Trustee submits that the DOT's involvement mitigates any damage from the Trustee's inability to provide notice of the Motion to Approve and the underlying Agreement to all approximately 93,000 Schedule F – Consumer Creditors.

11.     Based on the foregoing, the Trustee believes that service of the Motion to Approve on the Schedule F – Consumer Creditors is unnecessary and would impose an undue burden on the Estate both financially and administratively.

12.     Accordingly, the Trustee requests that he be authorized to limit notice of the Motion to Approve to the Debtor, counsel to the Debtor, the Office of the United States Trustee, all secured creditors, the Debtor's twenty largest unsecured creditors, taxing authorities, affected governmental authorities, all parties that have filed requests for notice, Schedule F – Non-

Consumer Creditors, and all parties listed on the Debtor's Amended Schedule of Postpetition

Creditors.

WHEREFORE, the Trustee respectfully requests that this Court enter an Order:

a.   Allowing the Trustee's motion to limit notice; and

b.   Granting such other and further relief as is just.



Respectfully submitted,

JOSEPH H. BALDIGA,
CHAPTER 7 TRUSTEE


/s/ Gina Barbieri
Joseph H. Baldiga, BBO #549963
Gina M. Barbieri, BBO #670596
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581
Phone: 508.898.1501
Fax:    508.898.1502
Email: bankrupt@mirickoconnell.com
Email: gbarbieri@mirickoconnell.com

Dated: September 10, 2012

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### (CENTRAL DIVISION)

In re:

**SOUTHERN SKY AIR & TOURS, LLC**
**d/b/a DIRECT AIR,**

        Debtor.

Chapter 7
Case No. 12-40944-MSH

### ORDER AUTHORIZING MOTION TO LIMIT NOTICE
**(Re: Trustee's Motion to (1) Approve Agreement Regarding Debtor's**
**Accounts at Valley National Bank and (2) Extend Claim Bar Date for**
**Charter Participants to January 15, 2013)**

Upon the motion dated September 10, 2012 (the "Motion") of Joseph H. Baldiga, Chapter 7 trustee (the "Trustee") for the above-referenced Debtor, for authority to limit notice of his Motion to (1) Approve Agreement Regarding Debtor's Accounts at Valley National Bank and (2) Extend Claim Bar Date for Charter Participants to January 15, 2013 (the "Motion to Approve"), and the Court finding that the notice given of the Motion as set forth in the Certificate of Service accompanying the Motion and filed with the Court is sufficient; and no objection to the Motion having been filed or any such objection having been withdrawn or overruled;

NOW, THEREFORE, IT IS HEREBY ORDERED, that:

    a.      The Motion is ALLOWED; and

    b.      The Trustee may limit notice of the Motion to Approve to service upon the Debtor, counsel to the Debtor, the Office of the United States Trustee, all secured creditors, the Debtor's twenty largest unsecured creditors, taxing authorities, affected governmental authorities, all parties that have filed requests for notice, Schedule F –

Non-Consumer Creditors, and all parties listed on the Debtor's Amended Schedule of

Postpetition Creditors.

Dated: _____, 2012

                                        _____

                                        Honorable Melvin S. Hoffman
                                        United States Bankruptcy Judge