UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | |
|---|---|
| **In re:**<br><br>**SOUTHERN SKY AIR & TOURS, LLC d/b/a DIRECT AIR,**<br><br>　　　　　**Debtor.** | **Chapter 7**<br>**Case No. 12-40944-MSH** |

**MOTION OF CHAPTER 7 TRUSTEE FOR ORDERS APPROVING:  (1) THE PROPOSED FORM AND SCOPE OF NOTICE AND (2) STIPULATION COMPROMISING AND SETTLING CERTAIN CLAIMS TO FUNDS HELD BY VALLEY NATIONAL BANK IN CERTAIN DEPOSITORY ACCOUNTS**

To the Honorable Melvin S. Hoffman, United States Bankruptcy Judge:

NOW COMES Joseph H. Baldiga, the Chapter 7 trustee (the "Trustee") of the

bankruptcy estate (the "Estate") of Southern Sky Air & Tours, LLC d/b/a Direct Air (the

"Debtor") in the above-captioned bankruptcy case (the "Bankruptcy Case"), and hereby moves

this Court (the "Motion") to enter two successive orders.  By the first such order (the "Notice

Order"), the proposed form of which is attached hereto as **Exhibit A**, the Court would approve

the proposed form and scope of notice (the "Notice") of this Motion and Agreement (as defined

below) to be provided to Charter Participants (as defined in paragraph 2 below) and other

interested parties and creditors as to the release by VNB of certain escrowed funds held by VNB

in certain depository accounts maintained by VNB (collectively, the "Direct Air Accounts").  By

the second such order (the "Approval Order"), the proposed form of which is attached hereto as

**Exhibit B**, the Court would approve the agreement (the "Agreement") between and among the

Trustee, JetPay Merchant Services, LLC ("JetPay"), Merrick Bank Corporation ("Merrick"),

American Express Travel Related Services Company, Inc. ("Amex") and Valley National Bank

("VNB") regarding the release by VNB of the funds in the Direct Air Accounts.[1]   The Approval

Order would be entered after that period of time the Court rules as sufficient for allowing such

Charter Participants and other interested parties to raise any objections to this Motion and the

relief sought herein. A copy of the Agreement is attached hereto as **Exhibit C**.  A copy of the

proposed form of Notice is attached hereto as **Exhibit D**.[2]

**Accordingly, the Trustee requests two hearings:  <u>first</u>, a hearing on the Trustee's**

**request to approve the form and scope of Notice, including scheduling the second hearing**

**and objection deadline; and <u>second</u>, a hearing on the Trustee's request to approve the**

**Agreement itself.**

In support of this Motion, the Trustee states as follows:

## I.      BACKGROUND.

### A.      Bankruptcy Case Background.

1.      On March 15, 2012 (the "Petition Date"), the Debtor filed a petition for relief

under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the

"Bankruptcy Code").

2.      Prior to the Petition Date, the Debtor was a public charter operator (tour operator)

with charter programs servicing various points in the United States.  On March 13, 2012 (two

days prior to the Petition Date), the Debtor ceased operation of its tour programs, stopped

accepting flight reservations and terminated reservation capabilities on its web-site.  The Debtor

never resumed operations.  By the time of this cessation of operations, the Debtor had previously

accepted flight reservations from thousands of its customers, denoted as "charter participants"

---

[1]   JetPay, Amex, and Merrick shall collectively be referred to as the "Credit Card Parties."  The Credit Card
Parties with the Trustee and VNB shall collectively be referred to as the "Parties."

[2]   Information regarding the filing of the Motion will be placed upon the website of the United States Department
of Transportation ("DOT").

1442161v6/18355-2

2

(the "Charter Participants") by the applicable federal regulations (see below), who were then unable to fly with the Debtor, and who were left with claims for the monies lost in connection with the Debtor's cancelled flights and ceased operations.

3.    On April 11, 2012 (the "Conversion Date"), this Court converted the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.

4.    On the Conversion Date, the United States Trustee appointed the Trustee as Chapter 7 trustee of this proceeding and he continues to serve as such.  Since his appointment, the Trustee has worked to secure assets and records of the Debtor and to begin investigating the many allegations of fraud and/or financial irregularities raised by interested parties during the Debtor's Chapter 11 case and to the Trustee post-conversion.

**B.    The Valley National Bank Accounts.**

5.    As a public charter operator, the Debtor's operations were governed by, among other things, regulations promulgated by the United States Department of Transportation ("DOT"), 14 C.F.R. Part 380.  One of the Debtor's obligations was compliance with regulations regarding security and depository agreements.  See 14 C.F.R. § 380.34.

6.    Pursuant to 14 C.F.R. § 380.34, public charter operators may, in lieu of furnishing a certain type of security agreement, elect to: (a) furnish a surety bond, a surety trust agreement, or a letter of credit in the amount of at least $10,000 times the number of flights, except that the amount need not exceed $200,000;[3] and (b) enter into a three party agreement with the company directly engaging in the operation of aircraft (known as the "direct air carrier") and a designated bank, the terms of which shall provide that "all payments by charter participants paid to charter operators… shall be deposited with and maintained by the bank subject to […certain…] conditions[.]"  14 C.F.R. § 380.34(b).

---

[3]    The Debtor carried a surety bond through Platte River Insurance Company in the amount of $200,000.

7.      Prior to the Petition Date, the Debtor entered into Public Charter Depository Agreements (the "Depository Agreements") with various direct air carriers and VNB.  The Depository Agreements are substantially similar; a copy of one of the Depository Agreements is attached hereto for reference as **Exhibit E**.

8.      Pursuant to the Depository Agreements, VNB agreed to act as depository bank within the meaning of 14 C.F.R. § 380.  See Exh. E at 1.  The Debtor was required to deliver or cause to be delivered to VNB all amounts received from each Charter Participant in accordance with 14 C.F.R. § 380.34.  Id. at § 1.2.  Subject to certain additional terms, VNB agreed to accept such payments for deposit.  Id. at § 1.1.  VNB agreed to maintain a separate account for each charter, flight, or rotation, but was permitted to use deposited funds in its general banking business.  Id. at § 1.3.

9.      Federal regulations govern further disbursement of funds after payments from Charter Participants have been deposited into depository banks, such as VNB.  Depository banks are permitted to pay the direct air carrier, by deposit into such carrier's DOT-regulated escrow account, for the charter price for transportation no earlier than 60 days prior to the scheduled day of departure, upon certification of the departure date by such carrier.  14 C.F.R. § 380.34(b)(2)(ii) and 14 C.F.R. § 212.8(a).  With some exceptions (including payment to direct air carriers as noted above), the depository bank "shall not pay out any funds from the account prior to 2 banking days after completion of each charter, when the balance in the account shall be paid [to] the charter operator…, upon certification of the completion date by the air carrier."  14 C.F.R. § 380.34(b)(2)(ix).  If a charter operator notifies its depository bank that a charter has been canceled, the bank is required to make applicable refunds directly to the Charter Participants.  14 C.F.R. § 380.34(b)(2)(iv).

10.     The Depository Agreements contain provisions regarding disbursement of funds

that are in line with the above-described requirements of 14 C.F.R. § 380.34.  See Depository

Agreements at § 2.1.

11.     As of the Petition Date, VNB maintained two depository accounts for Direct Air,

a money market account and a demand deposit account (the latter the "DDA Account" and,

collectively with the money market account, the "Direct Air Accounts").[4]   According to VNB,

funds were "swept" from the DDA account into the money market account periodically to earn

interest.  The VNB DDA account currently holds a balance of approximately $.01.  The VNB

money market account currently holds a balance of approximately $1,016,935.90 (collectively

with the one cent in the DDA account, the "Petition Date Funds").

**C.     The Shortfall.**

12.     Since the Petition Date and the cancellation of the Debtor's flights, thousands of

customers have sought "chargebacks" for flights purchased on their credit cards and debit cards

(the "Chargebacks"). The only transaction cards Charter Participants could use to purchase

tickets from the Debtor were those issued by American Express, Visa, MasterCard and

Discover.[5]  JetPay processed all of the credit and debit card transactions for Visa, MasterCard

and Discover, in accordance certain agreements among the Debtor, JetPay and Merrick, among

other parties.  All such transactions were funded by Merrick.  Amex itself processes and funds all

Amex transactions.  Merrick and Amex have reimbursed those customers (pursuant to the Visa,

---

[4]     The money market account and the DDA account, along with any other accounts that VNB maintained for or on
behalf of the Debtor, comprise the "Escrow Account/s" referred to by the Chapter 7 Trustee in his prior *Motion
for Order (1) Approving Agreement Regarding Debtor's Accounts at Valley National Bank and (2) Extending
Claim Bar Date for Charter Participants to January 15, 2013*.

[5]     Far fewer Charter Participants purchased tickets with American Express cards; AMEX estimates that
approximately 10% of the Debtor's customers used American Express cards to purchase flights.  Upon
information and belief, only a very small fraction, if any, of Charter Participants purchased tickets using a
method other than a credit or debit card, such as cash or checks.

1442161v6/18355-2

MasterCard and Discover rules in the case of Merrick and pursuant to the American Express

Rules in the case of American Express) in amounts far exceeding the Petition Date Funds in the

Direct Air Accounts.

13.     Due to VNB's refusal to release the limited Petition Date Funds other than

pursuant to the terms of the Agreement, neither Merrick nor Amex have as yet received even

partial reimbursement for such Chargebacks.

14.     JetPay has informed the Trustee that, as of August 28, 2012, it had processed

over 63,000 Chargebacks and refunds related to Debtor transactions from Merrick totaling

approximately $25.8 million.  Amex has informed the Trustee that as of the same date it had

processed over 6,000 Chargebacks related to Debtor transactions totaling approximately $3.68

million.  Although the Trustee believes that the Chargebacks funded by Merrick and Amex may

continue to increase in small amounts, based on the number of scheduled flights that were

canceled on account of the Debtor's bankruptcy filing, as well as the Chargebacks already

funded by Merrick and Amex, the Trustee estimates that the total amount of Debtor related

Chargebacks could be as high as approximately $30 million.

15.     As previously noted, the Petition Date Funds amount to just over $1 million.  The

Direct Air Accounts, however, pursuant to the Depository Agreements and applicable DOT

regulations, should have held approximately $29.5 million on, or shortly after the Petition Date.

The approximately $28.5 million difference between these two sums is sometimes referred to

herein as the "Shortfall" in the Direct Air Accounts.

**D.     The Multi-Party Agreement Previously Approved By This Court.**

16.     In light of the Petition Date Funds being manifestly insufficient to satisfy the claims

of the Credit Card Parties for reimbursement of amounts said parties paid Charter Participants

pursuant to the Visa/MasterCard/DiscoverCard and Amex rules and regulations for Chargebacks, as

1442161v6/18355-2

well as potential claims that might be asserted by other Charter Participants who were not reimbursed

by the Credit Card Parties, the Trustee and the Credit Card Parties reached an earlier agreement (the

"Multi-Party Agreement") to allocate the Petition Date Funds among themselves (the "Multi-Party

Agreement Parties").  The Multi-Party Agreement, moreover, was acceptable to the DOT, the

governmental agency charged with, among other things, protecting the interests of Charter

Participants.[6]

17.      The Multi-Party Agreement was filed with this Court as Exhibit A to the motion

seeking approval of same [Docket No. 220], and was approved by this Court by order dated

October 11, 2012 [Docket No. 240].

18.      The Multi-Party Agreement Parties had engaged the DOT in extensive

discussions regarding the terms of the Multi-Party Agreement prior to the Trustee's filing of the

motion seeking approval of same.  As a result and at the DOT's request, the Credit Card Parties

agreed to extend applicable contractual deadlines and honor credit card and debit card

Chargeback requests which were received from Charter Participants on or before January 15,

2013, provided that such requests are otherwise valid.

19.      Similarly, not only has the Trustee already previously extended the bar date

applicable to Charter Participants for their filing of claims against the Estate to January 15, 2013

(from September 11, 2012), but the Trustee has presently agreed that he would permit the

continued filing of proofs of claim by Charter Participants until a date certain, one that is not yet

determined, but such date would be no earlier than thirty (30) days after the proposed Notice has

been transmitted to Charter Participants who are VNB Claimants (as that latter term is defined

below), or as otherwise determined by the Court.  The Trustee reserves the right to object to any

---

[6]   The Petition Date Funds are the same funds on deposit in the Direct Air Accounts as of the Petition Date as
those funds identified in the Multi-Party Agreement and motion that sought approval of same (denoted therein
as the "Escrow Proceeds").

1442161v6/18355-2

such claims on all other grounds including, without limitation, that such claims are duplicative, excessive or have already been paid from another source.

**E.      The Subsequent Agreement with VNB for Which Approval is Hereby Sought.**

20.      VNB is not a party to the Multi-Party Agreement, and accordingly, nothing in the Multi-Party Agreement obligates VNB to turn over the Petition Date Funds.

21.      VNB still maintains control over the Petition Date Funds and has, until now, refused to turn such funds over to the Multi-Party Agreement Parties.  VNB has contended, among other things, that it has a security interest in the Petition Date Funds to secure certain indemnification obligations that the Debtor allegedly owes or may in the future owe VNB.  VNB also claims that it has received and may continue to receive competing demands against the Direct Air Accounts for reimbursement, potentially from the DOT or various known and unknown Charter Participants and, in the absence of the Agreement, from the Trustee and the Credit Card Parties.  The Trustee and the Credit Card Parties (*i.e.*, the Multi-Party Agreement Parties) dispute both that VNB has a security interest in any of the Petition Date Funds, and that VNB is permitted to retain possession of them.

22.      Although the identity of all other potential claimants to the Petition Date Funds is not presently known and/or perhaps might not ever be fully knowable, VNB is aware of approximately 1,700 Charter Participants who have notified VNB of direct claims for Petition Date Funds (the "VNB Claimants").

23.      After further negotiations, the Parties have agreed to terms and conditions by which VNB shall release and turn over the vast majority of the Petition Date Funds to the Multi-Party Agreement Parties (for distribution among the Multi-Party Agreement Parties pursuant to the terms of the court-approved Multi-Party Agreement).

24.      The Parties have also agreed to the proposed form and scope of the Notice to be issued to the Charter Participants, including the VNB Claimants.

1442161v6/18355-2

## II.     SUMMARY OF AGREEMENT.[7]

A.      As set forth in the attached Agreement, following entry of a Final Order, VNB shall promptly make the following disbursements (collectively, the "Settlement Payments") from the Direct Air Accounts:

    i.    the sum of $25,000 to VNB (the "**VNB Payment**");

    ii.   the sum of $250,000 to the Trustee (the "**Trustee Payment**");

    iii.  90% of the balance remaining after (a) and (b) (the "**Remaining Balance**") to Merrick ("**Merrick Payment**"); and

    iv.   10% of the Remaining Balance to Amex ("**Amex Payment**").

B.      The Trustee Payment, the Merrick Payment and the Amex Payment shall be made as directed in writing by the Trustee, by counsel of record to Merrick (specifically, Daniel G. Gurfein), and by counsel of record to Amex (specifically, Kevin McGee), respectively, or, in the absence of such counsel, by such other counsel as may appear of record at the time of disbursement.  As among the Parties other than VNB, it is expressly understood and agreed that the $250,000 paid to the Trustee represents the sum of the $100,000 and two $75,000 payments set forth in the Multi-Party Agreement, and such funds shall be held by the Trustee for the purposes set forth in such Multi-Party Agreement.

C.      VNB waives its alleged lien and security interest against the Petition Date Funds.

D.      Nothing contained in the Agreement is to be construed to impair or compromise any other claim, whether administrative expense, priority, or general unsecured, which VNB has or may have against the Estate, or impair or compromise any objection to such claim by any Party.

E.      Nothing contained in the Agreement is to be construed to affect the rights or claims, if any, of any Party or any other person or entity against any other Party, person or entity

---

[7]     The following is a summary only.  Interested parties are directed to the attached Stipulation for the full and complete terms of the Agreement.

1442161v6/18355-2

9

(or any defenses to any such claim or right) with respect to any matter other than claims in and to the Petition Date Funds, including, without limitation, claims with respect to:

a.     disbursements from, or deposits into, the Direct Air Accounts prior to the Petition Date; or

b.     any matter in any way related to, or arising from, any person's relationship with the Debtor including, without limitation, undertakings by VNB in the Depository Agreements, or any person's obligations with respect to governing law and regulations.

F.     The Agreement is conditioned upon the entry of an order by the Court in form and substance satisfactory to all Parties approving the Agreement, which order shall not be subject to any pending appeal, or if appealed from, has been affirmed on appeal with no further appeals pending ("Final Order").  The Parties agree that the proposed form of Approval Order is satisfactory.  See Exhibit B.  The proposed Approval Order contains, among other things, a provision expressly exculpating VNB from liability to any third parties in connection with its entering into, and performance under, the Agreement, including VNB's disbursement of the Petition Date Funds as provided therein.

### III.     REASONABLENESS OF THE SETTLEMENT.

25.     In determining whether a settlement agreement should be approved, a bankruptcy court should "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995), quoting In re GHR Cos., 50 B.R. 925, 931 (Bankr. D. Mass. 1985) (additional citation omitted).  The Trustee's judgment as to the propriety of the proposed settlement is to be accorded some deference. Hill v. Burdick (In re Moorhead Corp.), 208 B.R. 87 (1st Cir. BAP 1997).

1442161v6/18355-2

26.     The Trustee believes that the Agreement clearly is in the best interest of the Estate.  As a preliminary matter, certain of the Parties have previously expressed beliefs that the Petition Date Funds may not be property of the Estate, although all of the Parties have retained the right to argue either for or against such a position.  There is a strong argument that the Petition Date Funds are, in fact, property of Charter Participants (and, by subrogation or assignment, property of Merrick and Amex), based on applicable federal regulations and language in the Depository Agreements**.**

27.     The Agreement allows for the parties to the Multi-Party Agreement to receive the funds from the Direct Air Accounts without any litigation with VNB over such funds, which would impose considerable costs and further delay on all of the Parties, including the Estate.

28.     The Agreement will allow the Estate to receive a substantial portion of the Petition Date Funds in accordance with the terms of the court-approved Multi-Party Agreement and therefore, in relevant part, facilitate the Trustee's continued investigation into the Shortfall.

29.     The Parties believe that, in light of VNB's release of the Petition Date Funds and any lien VNB may have over same, the VNB Payment of $25,000 to be made to VNB pursuant to the terms of the Agreement is reasonable.

30.     Based on the foregoing, the Trustee believes that the Agreement is fair and equitable and will result in a material benefit to the Estate.  Accordingly, the Trustee submits that the Agreement represents the most efficient and cost-effective structure for addressing the disposition of the funds in the Direct Air Accounts as of the Petition Date, including a satisfactory consummation of the court-approved Multi-Party Agreement.

## IV.    PROPOSED NOTICE.

31.    The Trustee proposes to limit the content and scope of notice as follows:

a.    Service by ECF.  This Motion and notice of any hearing scheduled hereon will be served by ECF on all those interested parties appearing electronically.

b.    Limited Service by Mail.  This Motion and notice of any hearing to be held hereon will be served by first-class mail on at least the following parties to the extent they have not appeared electronically:  (i) all secured creditors, (ii) the Debtor's scheduled list of 20 largest unsecured creditors, (iii) taxing authorities, and (iv) all parties that have filed requests for notice.

c.    Service by Mail of Notice to VNB Claimants.  Following approval of the form of Notice, including scheduling the date of hearing and objection deadline, copies of the completed Notice will be mailed by first-class mail to the list of VNB Claimants which has been provided by VNB to the Trustee as of the date of the Notice Order.  As indicated on the form, the Notice will direct VNB Claimants to an address at the Trustee's special counsel's ("Posternak") website where the Motion itself and Notice will be posted and can be downloaded and/or printed.

d.    Publication of Notice.  Following approval of the form of Notice, DOT will publish information about the proposed settlement and this Motion substantially in the form attached hereto as Exhibit F, at the web page where DOT has published information generally about this bankruptcy case (e.g., http://www.dot.gov/airconsumer/myrtle-beach-direct-air-and-tours).  As indicated on Exhibit F, the public will be directed to the web address where the Motion and Notice will be posted.

32.    The Trustee believes that the foregoing limited notice provisions are reasonable and justified because every reasonable attempt has been made to ensure that all interested parties (including all Charter Participants) have received adequate notice and an opportunity to be heard both in this case generally and on the present Motion.  In particular, the Trustee believes that the proposed limited notice provisions are reasonable based on the following reasons:

33.    First, based on the Schedules filed by the Debtor, there are approximately 92,000 general unsecured creditors.  Not only would actual service by mail of the Notice and Motion on

1442161v6/18355-2

12

all 92,000 of these general unsecured creditors be impracticable and expensive, but the Trustee

believes that all Charter Participants (including all VNB Claimants) have already received ample

notice of Debtor's bankruptcy case and the existing deadlines for the filing of proofs of claim

against the Estate as members of this 92,000 member creditor body.  In particular, not only was

the Debtor's general creditor constituency served with notice of the September 11, 2012 bar date

for the filing of proofs of claim, but the Trustee has already extended such bar date as to Charter

Participants to January 15, 2013.

34.    Moreover, the Trustee proposes that, regardless of whether any or all of the VNB

Claimants may have already received actual notice of the original and extended bar dates in the

Debtor's bankruptcy case, particular efforts have been made to provide such claimants with an

opportunity to file proofs of claim and objections to the present Motion.  Following cessation of

Debtor's business, the DOT published information on its website.  Among other things, the DOT

encouraged Charter Participants to assert claims against the Petition Date Funds.  Based on

information provided to the Trustee by VNB, approximately 1,700 individuals have notified

VNB of claims for Petition Date Funds or have otherwise made claims to VNB for same, *i.e.*, the

"VNB Claimants."  VNB has compiled a list of names and addresses of VNB Claimants which

has been or will shortly be provided to the Trustee.

35.    Since the effect of the Approval Order will be to exculpate VNB from liability for

disbursing the Petition Date Funds in accordance with the terms of the Agreement, the Trustee

believes both that reasonable efforts should be made to give such VNB Claimants actual notice

and that the limited notice provisions set forth above are reasonably calculated to provide such

actual notice.  All known VNB Claimants will receive copies of the proposed form of Notice by

first-class mail, postage pre-paid; such claimants will thereby receive an opportunity review the

1442161v6/18355-2

Motion and its supporting exhibits via the Posternak website and thus both to file proofs of claim via a further-extended bar date (see below) and/or objections to the Motion.

36.     Because there is a possibility, however remote, that one or more of the Charter Participants who also comprise VNB Claimants might not have previously received any notice (whether of the Debtor's bankruptcy case or of the extended January 15, 2013 bar date for the filing of proofs of claim), the Trustee has agreed that he would permit the continued filing of proofs of claim by Charter Participants until a date certain, one that is not yet determined, but such date would be no earlier than thirty (30) days after the proposed Notice has been transmitted to the VNB Claimants, or as otherwise determined by the Court.

37.     The Trustee notes that other Charter Participants (possibly including some of the VNB Claimants) may already have been recompensed by the Credit Card Parties.  The Trustee thus notes that the Credit Card Parties have agreed with the DOT, as recited in the Multi-Party Agreement and motion to approve same [Docket No. 220 at ¶ K], to honor (otherwise late) chargeback requests from Charter Participants through January 15, 2013.

38.     Further, the Parties have also proposed that information regarding the filing of the Motion will be published on the DOT's website for a period of at least thirty (30) days prior to any date by which the Court would enter the subsequent Approval Order, so as to afford all potential interested parties having or claiming any interest in the Petition Date Funds, whether Charter Participants or otherwise, actual notice of the subject matter of the Motion and a fair and adequate opportunity to be heard thereon.

39.     Finally, assuming that any as-of-yet unknown potential Charter Participants have somehow failed to previously receive notice during this case and never receive Notice of the present Motion through the DOT or Posternak websites or otherwise, the Parties assert that such

Charter Participants would not be unfairly prejudiced.[8]  In particular, the Trustee notes that a key

feature of the Multi-Party Agreement is the Trustee's receipt of $75,000 out of the Petition Date

Funds exclusively to refund those Charter Participants who have not yet received a refund or

chargeback or otherwise have been reimbursed.   [Docket No. 220 at ¶ A(iii).]  The Trustee

believes that this sum comprises a sufficient reserve for any hypothetical late claims filed by as-

of-yet unknown Charter Participants (the number of whom the Trustee believes will ultimately

prove non-existent or negligible) who have somehow failed to receive any notice of the Debtor's

bankruptcy case, any of the bar dates (both original and as extended) or of the present Motion.

40.    The Trustee submits that, especially in the context of the notice already provided

to Charter Participants and other interested parties throughout this case, the proposed Notice is

reasonable and provides sufficient information to permit all Charter Participants, including all

VNB Claimants, and other interested parties with an adequate opportunity to file objections to

the present Motion and / or, as to Charter Participants, proofs of claim against the Estate.


WHEREFORE, the Trustee respectfully requests that this Court enter:

a.    The Notice Order;

b.    Thereafter, the Approval Order; and,

c.    An order granting the Trustee such other and further relief as is just and proper.

---

[8] The foregoing assumes that a late-filed claim would be permitted, either on consent or pursuant to court order.

1442161v6/18355-2

15

Respectfully submitted,

JOSEPH H. BALDIGA,
CHAPTER 7 TRUSTEE

By his special counsel,

/s/ David J. Reier
David J. Reier (BBO No. 546202)
POSTERNAK BLANKSTEIN & LUND LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-8004
Telephone:  617-973-6100
Telecopier:  617-367-2315
E-mail:  dreier@pbl.com

Dated: March 4, 2013

1442161v6/18355-2