**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)**

| | |
|---|---|
| In re:<br><br>**SOUTHERN SKY AIR & TOURS, LLC d/b/a DIRECT AIR,**<br><br>            **Debtor.** | Chapter 7<br>Case No. 12-40944-MSH |

**MOTION OF MERRICK BANK CORPORATION FOR AUTHORITY TO CONDUCT EXAMINATIONS PURSUANT TO BANKRUPTCY RULE 2004 – MADE WITH CHAPTER 7 TRUSTEE'S ASSENT**

To the Honorable Melvin S. Hoffman, United States Bankruptcy Judge:

NOW COMES Merrick Bank Corporation ("Merrick"), and hereby moves this Court (the "Motion"), pursuant to Rules 2002 and 2004 of the Federal Rules of Bankruptcy Procedure (the "Rules") and MLBR 2002-1(b), for an order authorizing Merrick to conduct examinations (the "Rule 2004 Examinations") to the same extent and of the same parties that the Court has granted such authority to Joseph H. Baldiga, the chapter 7 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Southern Sky Air & Tours, LLC d/b/a Direct Air (the "Debtor") in the above-captioned bankruptcy case (the "Bankruptcy Case"). The Trustee has assented to the relief sought by Merrick in this Motion with the understanding that Merrick has committed to coordinate and cooperate with the Trustee regarding its 2004 examination activities to avoid undue burden upon third parties and to share with the Trustee all 2004 discovery obtained. The Trustee has taken no position as to the factual and legal statements made herein and reserves all rights to dispute or challenge same. In support of this Motion, Merrick states as follows:

## I. BACKGROUND

### A. The Debtor, its Bankruptcy Case and Merrick's Proof of Claim

1. On March 15, 2012 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). Less than one month later, on April 11, 2012 (the "Conversion Date"), this Court converted the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code and the United States Trustee appointed the Trustee.

2. Prior to the Petition Date, the Debtor had been a public charter operator (tour operator) with charter programs servicing various points in the United States. On March 13, 2012 (two days prior to the Petition Date), the Debtor ceased operation of its tour programs, stopped accepting flight reservations and terminated reservation capabilities on its web-site. The Debtor never resumed operations. By the time of this cessation of operations, the Debtor had previously accepted flight reservations from thousands of its customers, denoted as "charter participants" (the "Charter Participants") by the applicable federal regulations (see below), who were then unable to fly with the Debtor, and who were left with claims for the monies lost in connection with the Debtor's cancelled flights and ceased operations.

3. On May 3, 2013, Merrick filed amended proof of claim No.1439-2 (the "Amended Merrick Claim") in which Merrick asserted that the Debtor was liable to it in the amount of $26,198,057.49 (the "Amended Claim Amount"), as of March 14, 2013, under the terms of a certain Agreement (as that term is defined below). (Earlier, on August 9, 2012, Merrick had timely filed Proof of Claim No. 1439 against the Debtor (the "Original Merrick Claim") in the amount of $25,712,583.78, as of August 6, 2012.) Upon information and belief, the Amended Merrick Claim is the largest single claim filed in the Debtor's chapter 7 case.

2

1661620_8

4.    Since his appointment, the Trustee has worked to secure assets and records of the Debtor and to begin investigating the many allegations of fraud and/or financial irregularities raised by interested parties. To this end, and as described in greater detail below, the Trustee has received the authority from this Court to pursue discovery pertaining to the Debtor and the Estate pursuant to Rule 2004.

5.    For the reasons set forth in greater detail below, Merrick has a major stake in discovery being pursued on behalf of the Estate, both generally and in furtherance of the Trustee's planned Investigation into the Shortfall (as both of those terms are defined below). The relief sought herein on Merrick's behalf is in furtherance of the prompt and thorough undertaking of these necessary steps.

**B.    The DOT Regulations and the Valley National Bank Escrow Accounts**

6.    By way of background, the Debtor was an "Indirect Air Carrier", *i.e.*, a company engaged indirectly in air transportation operations by using "Direct Air Carriers" to provide such transportation. The businesses of Direct Air Carriers and Indirect Air Carriers are subject to regulations promulgated by the United States Department of Transportation ("DOT").

7.    One of the Debtor's obligations was compliance with regulations regarding security and depository agreements. See 14 C.F.R. § 380.34. The regulations provide, among other things, that Indirect Air Carriers must place in a DOT-approved escrow all amounts received from customers/Charter Participants. See 14 C.F.R. § 380.34(b)(2).

8.    Generally, the Indirect Air Carrier escrow agent may disburse from the escrow to the Direct Air Carrier's escrow account the charter price for a particular charter flight (the "Charter Price") not earlier than 60 days prior to the scheduled date of departure and may disburse the remainder of the Indirect Air Carrier's escrow with respect to such flight to the

3

Indirect Air Carrier not prior to 2 days after completion of the flight.[1]  If the charter flight does not occur, the Direct Air Carrier's escrow agent is obligated to return the Charter Price to the Indirect Air Carrier's escrow, and the Indirect Air Carrier's escrow agent is obligated to return that portion of the escrow fund related to the cancelled flight to the applicable customers/Charter Participants.  Pursuant to its Agreement with Merrick, see *infra*, the Debtor undertook the risk associated with not receiving back from the Direct Air Carrier's escrow account the Charter Price for cancelled flights because the Debtor agreed to reimburse Merrick in the amount of all Chargebacks (as that term is defined and discussed *infra*) paid by Merrick as a result of cardholder transactions with Debtor.

9. Pursuant to the DOT regulations outlined above, the Debtor was required to (i) establish an account at a depository bank for the benefit of its customers/Charter Participants, (ii) deposit into such account all funds received from customers/Charter Participants prior to the completion of their flights, and (iii) leave such funds (other than the Charter Price and other amounts addressed in the DOT regulations) in such account until after the completion of such flights.

10. Prior to the Petition Date, the Debtor entered into Public Charter Depository Agreements (the "Depository Agreements") with various direct air carriers and VNB.  Pursuant to the Depository Agreements, VNB agreed to act as depository bank within the meaning of 14 C.F.R. § 380.  The Debtor was required to deliver to VNB all amounts received from each customer/Charter Participant in accordance with 14 C.F.R. § 380.34(b)(2), and, subject to certain additional terms, VNB agreed to accept such payments from the Debtor for deposit.  VNB

---

[1] For full details as to the conditions under which funds may be disbursed from the relevant escrow accounts, please refer to the Amended Merrick Claim [Proof of Claim No. 1439-2.]  To the extent that permissible disbursements were made from the relevant escrow accounts, the precise calculation of the Shortfall, as that term is defined *infra*, would require to be adjusted accordingly.

4

agreed to maintain a separate account for each charter, flight, or rotation, but was permitted to use deposited funds in its general banking business.

11. As of the Petition Date, VNB maintained two depository accounts for Direct Air, a money market account and a demand deposit account (the latter the "DDA Account" and, collectively with the money market account, the "Direct Air Accounts").[2] According to VNB, funds were "swept" from the DDA account into the money market account periodically to earn interest. The VNB DDA account currently holds a negligible balance of approximately $.01. The VNB money market account currently holds a balance of approximately $1,016,935.90 (collectively with the one cent in the DDA account, the "Petition Date Funds").

## II. THE BASES FOR THE MERRICK PROOF OF CLAIM AND THE SHORTFALL

### A. Merrick, its Funding of the Direct Air Accounts and the Chargebacks

12. Merrick served as the Debtor's "acquiring" or "merchant" bank, thereby enabling the Debtor to accept Visa®, MasterCard® and Discover® (collectively the "Associations") credit and debit cards (collectively "Transaction Cards") as a means of payment for goods and services sold by merchants. Upon information and belief, the only Transaction Cards Charter Participants could use to purchase tickets from Debtor were those issued by American Express Travel Related Services Company, Inc. ("AMEX") or by one of the Associations.[3] In any event, given the collective market share of the payment card industry held by the Associations and

---

[2] The money market account and the DDA account, along with any other accounts that VNB maintained for or on behalf of the Debtor, comprise the "Escrow Account/s" referred to by the Trustee in his *Motion for Order (1) Approving Agreement Regarding Debtor's Accounts at Valley National Bank and (2) Extending Claim Bar Date for Charter Participants to January 15, 2013*.

[3] Far fewer Charter Participants purchased tickets with American Express cards; AMEX estimates that approximately 10% of the Debtor's customers used American Express cards to purchase flights. Upon information and belief, only a very small fraction, if any, of Charter Participants purchased tickets using a method other than a credit card, such as cash or checks.

5

AMEX, virtually all, if not all, payment cards accepted by the Debtor were issued by the Associations or AMEX.

13. JetPay Merchant Services, LLC ("JetPay") is an "Independent Sales Organization" that markets the merchant bank services of Merrick to merchants and provides support services relating thereto. To this end, the Debtor, Merrick and JetPay signed a Merchant Agreement dated October 31, 2006 (the "Agreement"), for the provision of such merchant bank and related support services.

14. The banks that issued the Transaction Cards (typically referred-to as the "issuing banks") used by consumers/Charter Participants to purchase flights and related services from the Debtor paid the purchase price for all such transactions to Merrick (through the systems of the Associations) as the Debtor's "acquiring bank" (sometimes alternatively referred-to as a "merchant bank"), and Merrick, in turn, remitted all such receipts to the Direct Air Accounts. Accordingly, upon information and belief, all funds required to be deposited into the Direct Air Accounts in connection with transactions paid for with Transaction Cards, were, in fact, so deposited.

15. Since the Petition Date and the cancellation of the Debtor's flights, thousands of customers / Charter Participants have sought "chargebacks" for flights purchased on their credit cards and debit cards (the "Chargebacks"). Pursuant to the rules of the Associations, if a cardholder does not receive from a merchant a good or service purchased with a Transaction Card, that merchant's acquiring bank (in this instance, Merrick) must reimburse the cardholder. As set forth in the Merrick Claim, Merrick has reimbursed customers/Charter Participants in excess of $26 million. Consequently, Merrick has made reimbursements in amounts far exceeding the Petition Date Funds in the Direct Air Accounts.

6

1661620_8

16. Pursuant to the terms of the Agreement, the Debtor is liable to Merrick for, among other things, Chargebacks, adjustments and returns arising from the Debtor's cancellation of its chartered flights and cessation of its business operations. On August 9, 2012, Merrick thus filed the Original Merrick Claim in the amount of $25,712,583.78, as of August 6, 2012, under the terms of the Agreement.

17. Because such Chargebacks, adjustments and returns continued to accrue since the filing of the Original Merrick Claim, the Debtor's liability to Merrick has risen, as of March 14, 2013, to the Amended Claim Amount of $26,198,057.49 and Merrick has accordingly filed the Amended Merrick Claim on May 3, 2013.

### B. The Shortfall in the Direct Air Accounts

18. On the Petition Date, the amount of Petition Date Funds in the Direct Air Accounts was (and is today) approximately only $1 million. Pursuant to applicable DOT regulations and the relevant Depository Agreements as and between the Debtor, VNB and Debtor's Direct Air Carriers, the aggregate amounts in the Direct Air Accounts and the escrow accounts of the Direct Air Carriers should have totaled at least $29.5 million on the Petition Date (with the difference between this total and the Petition Date Funds thereby comprising the "Shortfall"), with at least $26.2 million representing deposits having been made by Merrick for the Associations and, upon information and belief, the remainder having been deposited by AMEX.[4] The Debtor has no right to the Petition Date Funds since such funds were deposited in the Direct Air Accounts by Merrick for the benefit of customers/Charter Participants and

---

[4] AMEX volume is generally approximately 10% of Visa/MasterCard/Discover volume and thus the estimated $29.5 million Shortfall represents the minimum of what funds should have been in the Direct Air Accounts and the escrow accounts of the Direct Air Carriers. As previously noted, the calculation of the Shortfall would need to be adjusted in light of any disbursements from the relevant escrow accounts having been permissible. *See supra* n.1.

Merrick has already reimbursed customers / Charter Participants in the far greater amount of the Amended Claim Amount through the Visa/MasterCard/Discover chargeback process. Merrick is, therefore, subrogated to the rights of the customers/Charter Participants, including their rights to the funds remaining in the Direct Air Accounts.

### III. THE PENDING NECESSARY INVESTIGATION INTO THE SHORTFALL

#### A. The Agreements and the Petition Date Funds, Including Investigation Funds

19. In light of the Petition Date Funds being manifestly insufficient to satisfy the claims of Merrick and AMEX (collectively with JetPay, the "Credit Card Parties") for reimbursement of amounts paid to customers/Charter Participants pursuant to the Associations' and AMEX rules and regulations for Chargebacks, as well as potential claims that might be asserted by other customers/Charter Participants who were not reimbursed by the Credit Card Parties, the Trustee and the Credit Card Parties reached an agreement (the "Multi-Party Agreement") to allocate the Petition Date Funds among themselves (the "Multi-Party Agreement Parties"). The resulting Multi-Party Agreement, moreover, was acceptable to the DOT, the governmental agency charged with protecting the interests of customers/Charter Participants.

20. The Multi-Party Agreement was filed with this Court [Docket No. 220], and was approved by this Court by order (the "Multi-Party Agreement Order") dated October 11, 2012 [Docket No. 240].

21. Subsequent to the entry of the Multi-Party Agreement Order, the Multi-Party Agreement Parties negotiated with VNB and eventually agreed to terms and conditions (the "VNB Settlement") pursuant to which VNB would release and turn over the vast majority of the Petition Date Funds to the Multi-Party Agreement Parties (for distribution among the Multi-Party Agreement Parties pursuant to the terms of the Court-approved Multi-Party Agreement).

8

1661620_8

22.     On March 4, 2013, with the support of the Credit Card Parties, the Trustee filed a motion (the "VNB Motion") seeking the Court's approval of the VNB Settlement [ECF No. 264]; that VNB Motion remains pending, and objections thereto have been filed.

23.     Pursuant to the terms of both the Court-approved Multi-Party Agreement and the pending VNB Settlement, the first $100,000 in existing Petition Date Funds in the Direct Air Accounts are to be set aside for the Trustee as "Investigation Funds." [ECF No. 220 at § II.A.i.]

**B.     The Trustee's 2004 Motions and his Pending Shortfall Investigation**

24.     Approximately one year ago, on May 14, 2012, the Trustee filed a motion (the "Trustee's Original 2004 Motion") to conduct examinations pursuant to Rule 2004. [ECF No. 127.] The purpose of the Trustee's Original 2004 Motion was "to obtain documents and information in furtherance of his investigations regarding possible misappropriation and/or transfers of the Debtor's funds, as well as other possible causes of action against parties in control or related to the Debtor." Id. at ¶ 7. The Trustee also sought authority "to conduct Rule 2004 Examinations in order to gather information regarding the Debtor's assets and its pre- and post-petition operations." Id.

25.     On May 22, 2012, the Court entered its Order granting the Trustee's 2004 Motion. [ECF No. 143.]

26.     On or about March 29, 2013, the Trustee filed a second motion (the "Trustee's Second 2004 Motion") to conduct examinations pursuant to Rule 2004. [ECF No. 269]. The purpose of the Trustee's Second 2004 Motion was to conduct examinations of Visa, MasterCard, Discover and relevant issuing banks in order to reconcile certain claims against the Estate.

27.     Merrick is not hereby seeking the authority sought by the Trustee in the Trustee's Second 2004 Motion.

9

1661620_8

28. Because the VNB Motion remains pending and the Petition Funds (including Investigation Funds) have yet to be disbursed, the substance of the Investigation has yet to commence.

### IV.   MERRICK'S DESIRE TO CONDUCT DISCOVERY.

29. Under the terms of the Multi-Party Agreement, it is contemplated that Merrick will be an active participant in the Trustee's Investigation. Merrick has already agreed to pay its own legal fees and expenses in assisting with the Investigation and that such legal fees and expenses will not comprise Administrative Expenses of the Estate. [ECF No. 220 at § II.C.]

30. Given its exposure to the Debtor in the Amended Claim Amount, Merrick likely comprises the largest creditor of the Debtor and thus one of the largest stakeholders in the Estate.

31. Although the terms of the Multi-Party Agreement and the VNB Settlement will provide Merrick with approximately 90% of the Petition Date Funds remaining after all other disbursements are made, [ECF No. 220 at § II.A.v], given the magnitude of the Shortfall in the Direct Air Accounts, such payment will nowhere nearly compensate Merrick for the funds that it has provided in paying out on Chargebacks.

32. Thus, as a critical stakeholder in the Estate, Merrick has a major and direct pecuniary interest in the efficacy of the overall discovery concerning the affairs of the Debtor and, in particular, to the conduct of the Investigation concerning the Shortfall.

33. Merrick therefore believes it appropriate for it to receive coterminous authority with the Trustee in terms of pursuing discovery concerning the affairs and assets of the Debtor generally and in conducting the Investigation into the Shortfall.

1661620_8

34. Merrick intends on sharing with the Trustee the fruits of any discovery attained by Merrick pursuant to its receipt of the relief requested in this Motion.

## V. **RELIEF SOUGHT**

35. Merrick seeks coterminous authority with that already received by the Trustee from this Court to conduct discovery pursuant to Rule 2004, See ECF No. 143, 5-22-12 Order attached hereto as Exhibit "A" inasmuch as the scope of the authority granted to the Trustee through the May 22, 2012 Order necessarily includes the authority by which the Trustee intends to conduct his Investigation into the Shortfall.

36. Rule 2004 provides, in relevant part, that on "motion of any party in interest, the court may order the examination of any entity."

37. Although Rule 2004 does not define the term "party in interest," 11 U.S.C. § 1109 refers to parties in interest for purposes of the right to be heard in a Chapter 11 case. For this purpose, a party in interest includes "the debtor, the trustee, a creditors' committee, an equity security holder's committee, a creditor, an equity security holder, or any indenture trustee ..." 11 U.S.C. § 1109(b).

38. As one of the Debtor's largest creditors and stakeholders, Merrick is clearly a "party in interest" with the right to ask for the relief in this Motion.

39. The Trustee has assented to the relief sought by Merrick in this Motion with the understanding that Merrick has committed to coordinate and cooperate with the Trustee regarding its 2004 examination activities to avoid undue burden upon third parties and to share with the Trustee all 2004 discovery obtained. The Trustee has taken no position as to the factual and legal statements made herein and reserves all rights to dispute or challenge same.

40. Merrick thus asks this Court to enter a copy of the attached Order, the form of which is incorporated into this Motion.

WHEREFORE, Merrick respectfully requests that this Court enter an order:

a. Authorizing Merrick to conduct discovery pursuant to Rule 2004 to the same extent, and of the same parties, as those the Court has allowed the Trustee to examine; and

b. Granting Merrick such other and further relief as is just.

Respectfully submitted,

MERRICK BANK CORPORATION

By its counsel,

/s/ Daniel G. Gurfein
Daniel G. Gurfein
Timothy T. Brock
Satterlee Stephens Burke & Burke LLP
230 Park Avenue, 11th Floor
New York, NY 10169
Phone: (212) 818-9200
Fax: (212) 818-9607
Email: dgurfein@ssbb.com
Email: tbrock@ssbbcom

Dated: May 21, 2013

12

1661620_8

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# (CENTRAL DIVISION)

| | |
|---|---|
| **In re:**<br><br>**SOUTHERN SKY AIR & TOURS, LLC d/b/a DIRECT AIR,**<br><br>**Debtor.** | **Chapter 7**<br>**Case No. 12-40944-MSH** |

## ORDER AUTHORIZING MERRICK BANK CORPORATION'S MOTION FOR AUTHORITY TO CONDUCT RULE 2004 EXAMINATIONS

Upon the motion filed on May 21, 2013 (the "Motion") by Merrick Bank Corporation ("Merrick"), the Court finding that the Motion is in the best interest of the bankruptcy estate (the "Estate") of the Debtor Southern Sky Air & Tours, LLC d/b/a Direct Air; sufficient notice of the Motion having been given; and no objection to the Motion having been filed or any such objection having been withdrawn or overruled;

NOW THEREFORE IT IS HEREBY ORDERED THAT:

1. The Motion is ALLOWED; and

2. Merrick is authorized pursuant to Fed. R. Bankr. P. 2004 to conduct examinations to the same extent, and on the same parties, as Joseph H. Baldiga, Chapter 7 trustee of the Estate, as set forth in the Court's prior Order entered on May 22, 2012 and attached as Exhibit A to the Motion, provided Merrick coordinates and cooperates with the Trustee to avoid undue burden upon third parties and shares with the Trustee all 2004 discovery obtained.

Dated: _____, 2013

_____
The Honorable Melvin S. Hoffman
United States Bankruptcy Judge

1661620_8