**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**(CENTRAL DIVISION)**

| | |
|---|---|
| **In re:**<br><br>**SOUTHERN SKY AIR & TOURS, LLC d/b/a DIRECT AIR,**<br><br>          **Debtor.** | **Chapter 7**<br>**Case No. 12-40944-MSH** |

**TRUSTEE'S RESPONSE TO OBJECTIONS TO**
**MOTION OF CHAPTER 7 TRUSTEE FOR ORDER**
**APPROVING AGREEMENT REGARDING**
**DEBTOR'S ACCOUNTS AT VALLEY NATIONAL BANK**

The within duly appointed chapter 7 trustee, Joseph H. Baldiga ("Trustee"), by his undersigned special counsel, hereby responds to the various objections to his motion to approve a certain settlement agreement with Valley National Bank ("VNB Stipulation") regarding the disposition of the so-called "Petition Date Funds" ("Motion") [Docket No. 264].[1]  In further support hereof, the Trustee relies in part on the attached Affidavit of Trent Voigt in Support of Trustee's Response to Objections to VNB Stipulation ("Voigt Affidavit").

There appear to have been 32 objections filed ("Objections"),[2] all of which are objections from Charter Participants who were not reimbursed for their ticket purchases ("Unreimbursed

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion and VNB Stipulation.

[2] Karen Miscia [Docket No. 280]; Amy King [Docket No. 281]; Mona Wallace, RN [Docket No. 282]; Harvey and Anita Grell [Docket No. 283]; Cathy McCool [Docket No. 288]; Sheila J. Van Blarcom [Docket No. 289]; Joseph E. Kotecki [Docket No. 290]; Judy Moulton [Docket No. 291]; Joyce Ellis [Docket No. 294]; Michael and Karel Mace [Docket 297]; Susan Casey [Docket No. 298]; Cheryl Benz [Docket No. 300]; Patti Groetsema [Docket No. 301]; Janet Generous [Docket No. 302]; Ruby Tennyson [Docket No. 306]; Joseph & Loretta Mombrea [Docket No. 308]; Kristin and Jeremiah Shea [Docket No. 309]; Pearl M. Fuller [Docket No. 312]; Pamela Meskus [Docket No. 313]; Theresa A. Drake [Docket No. 314]; Janet G. VanAlstyne [Docket No. 317]; Diane Beauchemin [Docket No. 318]; Kathryn A. Walker [Docket No. 319]; Arlington and Deborah Spinner [Docket No. 320]; Dawn A. and John A. Cottone [Docket No. 325]; Nicole Notidis [Docket No. 326]; Marla L. Given [Docket No. 330]; Cynthia M. Golden [Docket No. 331]; Sue Hunt [Docket No. 334]; James Shelton [Docket No. 335]; Barton E. Bailey [Docket No. 336]; Margie Quartley [Docket No. 337].

Charter Participants"). As explained more fully below, the VNB Stipulation calls for the extinguishment only of certain claims against VNB, not claims against the Debtor's bankruptcy estate or other sources of potential recovery. Indeed, Unreimbursed Charter Participants who asserted claims will eventually receive a substantially greater dividend on account of their claims than they would receive if distributions of the Petition Date Funds were made to claimants on a *pro rata* basis. Notably, distributions for Unreimbursed Charter Participants under the VNB Stipulation will also be greater than what is being disbursed to the credit card companies under the terms of the VNB Stipulation. Finally, approval of the VNB Stipulation will also facilitate a more rapid distribution to creditors. Accordingly, the VNB Stipulation does not treat Charter Participants unfairly and should be approved despite the Objections.

### Objections - Summary

1. Taken collectively, the Objections can be summarized as follows:

    - The party to the Objection ("Objecting Party") purchased tickets from Direct Air by debit card. When reimbursement was sought from his/her issuing bank or credit union, the Objecting Party was advised that reimbursement was not available on the grounds that the consumer had used a "debit card" to purchase the ticket, or some other "technical" reason was given for denying reimbursement.

    - The Objecting Party made a claim variously with Direct Air, Platte River Insurance Company, VNB and/or the Bankruptcy Court for the unreimbursed purchase price.

    - Under the circumstances, it is unfair that the Objecting Party's rights be extinguished.

2. In addition to the filed Objections, the undersigned received approximately 60 telephone and/or email inquiries (collectively, "Callers") with questions and comments similar to the Objections.[3]

---

[3] The undersigned personally spoke with or exchanged emails with approximately 50 Callers.

2

**The So-Called "Debit Card" Issue**

3.      The Objecting Parties and Callers give the impression that so-called "debit card" transactions are processed differently from credit card transactions or at least are governed by different reimbursement rights.[4]  The Trustee's review of claims indicates that as many as a few hundred customers assert that they were denied reimbursement because they had used a "debit card." Debit card transactions were, however, processed no differently by JetPay than credit card transactions for reimbursement purposes. Voigt Affidavit, ¶ 3. Unfortunately, it appears that some customers' banks or credit unions gave them the erroneous advice that reimbursement was not available to them.

4.      Since Direct Air ceased operating at or about the Petition Date, JetPay processed, and Merrick funded, over 63,000 reimbursement transactions totaling over $26.2 million. Voigt Affidavit. Approximately 52% of such transactions involved debit card transactions. Id. Thus, out of the tens of thousands of Direct Air customers who requested reimbursement for debit card transactions, it appears that a few hundred customers were erroneously advised by their banks or credit unions that reimbursement was unavailable.

5.      While it is unfortunate that a small fraction of Charter Participants may have been wrongfully denied reimbursement, such denials came from their own banks or credit unions, not from JetPay or Merrick. Claims arising from such denials should therefore be treated as ordinary claims against the Petition Date Funds and Platte River Funds (as defined below). As shown below, the Unreimbursed Charter Participants will still receive a greater dividend than they

---

[4] What is commonly referred to as a "debit card" transaction is the purchase of a ticket by a Charter Participant using a debit card without entering a PIN number at a terminal. When purchasing merchandise on-line through the internet, such as a charter or airline ticket, there are no terminals and PIN numbers are not entered. These may be referred to as "non-PIN debit card transactions." Direct Air was not configured to accept PIN-based debit transactions. Amex does not have a "debit card" program. Accordingly, JetPay processed all debit card transactions." See Voigt Affidavit, ¶¶ 3-4.

3

would receive absent the VNB Stipulation, and a substantially greater dividend than Merrick and Amex will receive under the VNB Stipulation.

**The Credit Card Companies' Dividend Under the VNB Stipulation – 2.5%.**

6. Under the terms of the VNB Stipulation and Multi-Party Agreement, Merrick and Amex will, together, receive a dividend of approximately 2.5%. The Petition Date Funds are to be distributed as follows:

| | |
|---|---:|
| **Total Petition Date Funds:** | **$1,016,936** |
| Payment to VNB | ( 25,000) |
| Payment to Trustee to Fund Investigation: | ( 100,000) |
| Payment to Estate: | ( 75,000) |
| Fund for Unreimbursed Charter Participants: | ( 75,000) |
| **Balance to Merrick and Amex (90/10 split):** | **$ 741,936** |

7. As set forth in the Motion, as of August 28, 2013, JetPay had processed and Merrick had funded $25.8 million in chargebacks, and Amex had funded $3.68 million, for a total of $29,480,000 in claims against the Petition Date Funds from those companies alone. Thus, the dividend paid to the credit card companies out of the Petition Date Funds is only 2.5% (i.e., $741,936 / $29,480,000).

**Unreimbursed Charter Participants' Dividend – Likely 10% or Greater**

8. The rights of the Unreimbursed Charter Participants are not absolutely "extinguished". They are extinguished only as to claims against VNB with respect to the Petition Date Funds. Their claims are still preserved as to certain identifiable funds allocated specifically to them and as claims against the bankruptcy estate, generally.

4

9. In fact, if the VNB Stipulation is approved and given effect, it is a certainty that the Unreimbursed Charter Participants will receive a dividend in the range of at least 10-20% (and possibly higher), which is greater than they would receive absent the VNB Stipulation. It is also greater than the dividend to be received by Merrick and Amex under the VNB Stipulation. To calculate the dividend that Unreimbursed Charter Participants will likely receive, it is necessary to ascertain the total funds available and then divide that figure by an estimate of the total claims of Unreimbursed Charter Participants.

10. Currently, the Trustee is holding $200,000 pursuant to the Platte River Insurance Company settlement that was approved by order dated October 1, 2012 [Docket No. 234] ("Platte River Settlement"). Under the terms of the Platte River Settlement, $175,000 is set aside to fund Unreimbursed Charter Participants who hold claims against the Platte River bond. Under the terms of the VNB Stipulation and Multi-Party Agreement $75,000 will be set aside for Unreimbursed Charter Participants. Thus, there will be a total of $250,000 to distribute to Unreimbursed Charter Participants, without taking into account any additional dividend that they may receive from the bankruptcy estate at a later time.

11. Due to, among other things, a large number of duplicative claims, it is not feasible at this time to estimate with any reasonable degree of certainty the total Unreimbursed Charter Participant claims. The Trustee can, however, ascertain with reasonable accuracy the absolute maximum amount of such claims. That figure allows calculation of the minimum dividend. The Trustee can also make a reasonably educated guess as to the range by which such claims will be reduced once they are finally allowed, from which one can estimate the amount by which the dividend will increase.

1467470v3/18355-2

12. There are three sources of claims of Unreimbursed Charter Participants: (i) the claims asserted against Platte River ("Platte River Claims"); (ii) the claims asserted against VNB ("VNB Claims"); and (iii) the claims filed in this case in the form of proofs of claim ("Filed Claims"). The Trustee has conducted a preliminary review of all such claims. The totals are set forth in the table below:

| Source | Approximate Number of Claims | Approximate Amount of Claims |
|---|---|---|
| Platte River Claims | 2,300 | $1,085,000 |
| VNB Claims | 1,800 | $ 855,000 |
| Filed Claims | 1,822 | $ 892,000[5] |
| **Total of Maximum Claims:** | **5,922** | **$2,832,000** |

The figure of $2,832,000 represents the absolute maximum of the Unreimbursed Charter Participant Claims because it accepts all claims at face value without regard to obvious claim duplication or allowability. If all such claims are allowed, the resulting dividend to Unreimbursed Charter Participants would be 9% (i.e., $250,000 / $2,832,000), already substantially greater than the 2.5% to be paid to Merrick and Amex under the VNB Stipulation.

13. Moreover, there is good reason to believe that the dividend to Unreimbursed Charter Participants will be higher. A random comparison of Platte River Claims, VNB Claims and Filed Claims shows a substantial amount of duplication. In addition, it is suspected that many of these claimants have since been reimbursed by their credit card companies, since thousands of reimbursement requests were processed after claims were filed against Platte River and VNB. Based on the foregoing, the Trustee estimates that the actual total of allowed Unreimbursed Charter Participant claims will be less than one-half of the above amount, and

---

[5] Based on the Trustee's review of the Claims Register, excluding all non-individual claims. The inclusion of all claims filed by individuals thus includes many non-consumer claims. Thus, this estimate represents the absolute maximum of Filed Claims.

6

quite possibly as little as one-third or less. Thus, the likely dividend to Unreimbursed Charter Participants is projected to be 15% to 25% or greater.

## Notice

14. This Response and accompanying affidavit are being served by first-class mail on all Objecting Parties on the date hereof.

## Conclusion

The Objecting Parties and other claimants form a group of Unreimbursed Charter Participants. The Unreimbursed Charter Participants are entitled to a dividend against the Petition Date Funds and the Platte River Funds no greater than that enjoyed by Merrick and Amex. As shown above, it is a certainty that Unreimbursed Charter Participants will receive a substantially greater dividend than they would receive absent the VNB Stipulation. Accordingly, the Objections should be overruled and this Court should enter the order approving the VNB Stipulation in the form proposed.

JOSEPH H. BALDIGA,
CHAPTER 7 TRUSTEE

By his special counsel,

/s/ David J. Reier
David J. Reier (BBO No. 546202)
POSTERNAK BLANKSTEIN & LUND LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-8004
Telephone: 617-973-6100
Telecopier: 617-367-2315
E-mail: dreier@pbl.com

Dated: May 24, 2013

1467470v3/18355-2

## **CERTIFICATE OF SERVICE**

IT IS CERTIFIED that the foregoing document, together with the Voigt Affidavit was filed this 24th day of May, 2013 through the ECF filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and on the same day, by first-class mail, postage prepaid, on the attached list of Objecting Parties.

/s/ David J. Reier