**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**(CENTRAL DIVISION)**

| | |
|---|---|
| In re:<br><br>**SOUTHERN SKY AIR & TOURS, LLC<br>d/b/a DIRECT AIR,**<br><br>      **Debtor.** | Chapter 7<br>Case No. 12-40944-MSH |

**RESPONSE OF VALLEY NATIONAL BANK TO MOTION OF
MERRICK BANK CORPORATION FOR AUTHORITY TO CONDUCT
EXAMINATIONS PURSUANT TO BANKRUPTCY RULE 2004**

To the Honorable Melvin S. Hoffman, United States Bankruptcy Judge:

      NOW COMES Valley National Bank ("Valley") in response to the motion of Merrick

Bank Corporation ("Merrick") for Authority to Conduct Examinations Pursuant to Bankruptcy

Rule 2004 (the "Motion").  In the Motion, Merrick seeks to conduct 2004 examinations of

numerous parties to the same extent that this Court granted such authority to Joseph H. Baldiga,

the Chapter 7 Trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Southern Sky Air

& Tours, LLC, d/b/a Direct Air (the "Debtor") in the above-captioned bankruptcy case (the

"Bankruptcy Case").  Valley submits this response for the purpose of: (i) objecting to the relief

sought to the extent that Merrick seeks information for reasons unrelated to the Bankruptcy Case;

and (ii) elaborating upon and clarifying some of the factual statements made by Merrick in the

Motion.  In support of its response, Valley states as follows:

**I.**      **THE OBJECTION**

      1.      The Trustee obtained an order on May 22, 2012 (the "May 22 Order") allowing

the Trustee to conduct 2004 examinations of approximately forty-eight (48) persons identified in

the May 22 Order.  A copy of the May 22 Order is attached hereto as Exhibit A.

2.       Valley is one of the parties identified in the May 22 Order from whom the Trustee may seek discovery.  Valley already has provided some documents to the Trustee.  The Trustee recently contacted Valley seeking additional documents, which Valley is preparing for production.

3.       In its Motion, Merrick seeks "to conduct examinations to the same extent and on the same parties" as the Trustee is permitted to do under the May 22 Order.  Motion, ¶ 33. Merrick also claims that it will coordinate and cooperate with the Trustee and will "share" all discovery obtained.

4.       The relief sought by Merrick in the Motion is ambiguous and Merrick's ultimate objective is questionable, thereby creating concerns for Valley.  Merrick contends that it will coordinate and cooperate with the Trustee with respect to the information the Trustee will obtain under the 2004 examinations conducted pursuant to the May 22 Order.  However, the substance and tenor of Merrick's application makes it appear that Merrick will be "running" the discovery and not the Trustee, possibly with the ultimate goal of benefitting Merrick and not the Estate.

5.       Production of information pursuant to 2004 examinations is not intended to provide a non-debtor with a basis for obtaining information for use against another non-debtor or to circumvent the rules of civil procedure. *See In re GHR Energy Corp., 35 B.R. 534* (Bankr. D. Mass. 1983).

6.       Here, Merrick seems to be using the 2004 examination process to develop a factual basis for potential claims against Valley and/or to support claims in another lawsuit to which Merrick is party.   For instance, Merrick is a party to an action pending in the Federal District Court for the Southern District of New York entitled *Merrick Bank Corp. v. Chartis Specialty Insurance Co.*, Civil Action No. 12-civ-7315 (RJS-RLE).  In that action, Chartis issued

a subpoena to Valley for documents relating to Direct Air's Depository Account[1] at Valley.

Valley produced some documents in response to the demand, but objected to other requests.

Discussions concerning Valley's production of additional documents appear to have reached an

impasse.  The 2004 examinations in this Bankruptcy Case should not be used as a "back door"

method to circumvent the objections interposed in the non-bankruptcy action.

7.      Further, Merrick claims to have lost a substantial amount of money. Any claims

that Merrick may have against third parties will not be litigated in the Bankruptcy Case.  The

Bankruptcy Case is not the forum for gathering facts to build a claim by Merrick against Valley

or against any other party.  This Bankruptcy Case should not be used by Merrick to obtain

information for litigation that will have no benefit for the Estate.

8.      In light of the above, Valley respectfully requests that the Court deny the Motion

unless Merrick confirms that it intends to use the information obtained only for the purpose of

benefiting the Estate in the Bankruptcy Case.  Valley reserves all rights to object to requests for

information unrelated to the Bankruptcy Case.  Valley also reserves all rights to participate in

appropriate 2004 examinations and document productions.

## II.     THE DOT REGULATIONS AND THE "SHORTFALL"

9.      In its Motion, Merrick comments on the Department of Transportation ("DOT")

regulations as well as the Shortfall in the Depository Account at Valley.  Valley will not go into

detail concerning the DOT regulations or the manner in which the Shortfall was calculated.

Valley, however, makes the following comments.

---

[1] The capitalized terms herein shall have the same definition as in the Motion unless otherwise
defined herein.

10.     Merrick equates the Shortfall with the amount of the chargebacks paid by Merrick and AMEX.  Motion, ¶ 18.  The amount of the Shortfall in the Depository Account, however,  is not necessarily directly related to the amount of the chargebacks.

11.     First, to Valley's knowledge, no investigation has been done to verify the amount of the chargebacks or to determine the reasons for the chargebacks.  The fact that Merrick or AMEX paid a chargeback does not mean that the disputed charge was supposed to have been in the Depository Account as of the date of Direct Air's bankruptcy filing.  The Depository Account was intended to hold payments by passengers for flights.  Therefore, chargebacks for other purchases from Direct Air such as membership in Direct Air's passenger program called "Family Ties" would not necessarily have been in the depository account as of the date of the bankruptcy filing.

12.     Merrick also refers to Valley's purported obligations under a Depository Agreement with Direct Air.  Motion, ¶ 10.  The Depository Agreement contains many terms which Merrick does not mention.  For example, the Depository Agreement contains the following terms:

- Valley's duties are purely ministerial in nature under the Depository Agreement. (Depository Agreement, ¶ 4.1).
- Valley is not responsible for and is not required to enforce any terms or conditions of the Depository Agreement. (Depository Agreement, ¶ 4.1).
- Valley had the right to rely upon the accuracy of any certifications, instructions and notices provided by Direct Air with respect to the Depository Account. (Depository Agreement, ¶ 4.3).
- No third party beneficiary rights are conferred on any other person or entity under the Depository Agreement. (Depository Agreement, ¶ 7.12).
- Direct Air was obligated to provide information to Valley as prerequisite for certain obligations of Valley under the Depository Agreement. (Depository Agreement, ¶¶ 1.2, 2.1).

DM1\3912475.2

13.    In sum, the complete Depository Agreement and DOT Regulations must be examined for a statement of the rights and responsibilities of the parties affected thereby.  A copy of one of the Direct Air Depository Agreements is attached hereto as Exhibit B.

WHEREFORE, Valley respectfully requests that the Court deny the Motion and grant such other and further relief as the Court deems just and proper.

Dated:  June 4, 2013                              Respectfully submitted,


  /s/ Jeffrey D. Sternklar
Jeffrey D. Sternklar (BBO#549561)
DUANE MORRIS LLP
Suite 2400
100 High Street
Boston, MA  02110
Telephone:      (857) 488-4200
Facsimile:      (857) 401-3034
Email: jdsternklar@duanemorris.com

*Counsel to Valley National Bank*

5

<u>EXHIBIT A</u>

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

In re:

SOUTHERN SKY AIR & TOURS, LLC
d/b/a DIRECT AIR,

        Debtor.

Chapter 7
Case No. 12-40944-MSH

## ORDER AUTHORIZING CHAPTER 7 TRUSTEE'S MOTION FOR AUTHORITY TO CONDUCT RULE 2004 EXAMINATIONS

Upon the Motion for Authority to Conduct Rule 2004 Examinations (the "Motion") dated

May 14, 2012, and filed by Joseph H. Baldiga, Chapter 7 trustee (the "Trustee") of the

bankruptcy estate of Southern Sky Air & Tours, LLC d/b/a Direct Air, the Court finding that the

Motion is in the best interest of the estate; sufficient notice of the Motion having been given; and

no objection to the Motion having been filed or any such objection having been withdrawn or

overruled;

NOW THEREFORE IT IS HEREBY ORDERED that:

1.      The Motion is ALLOWED; and

2.      The Trustee is authorized pursuant to Fed. R. Bankr. P. 2004 to conduct

examinations of all parties listed on Exhibit A to the Motion, including without limitation the

parties described more generally in the Motion.

Dated:  May 22, 2012

Honorable Melvin S. Hoffman
United States Bankruptcy Judge

{Practice Areas\CORP\15008\14190\A4220522.DOC}

# EXHIBIT A
## Chapter 7 Trustee's Motion for Authority to Conduct Rule 2004 Examinations.

| Party | Address/Contact Information |
|---|---|
| Person Most Knowledgeable at American Express Travel Related Services Company, Inc. | c/o counsel:<br>Kevin C. McGee, Esq.<br>Seder & Chandler, LLP<br>339 Main Street<br>Worcester, MA 01608 |
| ASI Advisors, LLC (Donald Stukes, principal) | ATTN: Donald Stukes<br>445 Hamilton Avenue, Suite 1102<br>White Plains, NY 10601 |
| Person Most Knowledgeable at Avondale Aviation I, LLC | 1629 K. Street NW – Suite 300<br>Washington, DC 20011 |
| Person Most Knowledgeable at Avondale Ventures, LLC | 1629 K. Street NW – Suite 300<br>Washington, DC 20011 |
| Mary Baldwin | 1507 Dewitt Street<br>Conway, SC 29527 |
| Cale Benner | 6011 Quinn Road<br>Myrtle Beach, SC 29579 |
| BJC Investments LLC* (Bruce Carusi, principal) | ATTN: Bruce Carusi<br>PO Box 203<br>Mill Neck, NY 11765 |
| Boyd Goldfinch Law Firm – Reese Boyd III, Esq. | PO Box 15358<br>Myrtle Beach, SC 29587 |
| Clay Brittain* | 1314 Professional Drive<br>Myrtle Beach, SC 29572 |
| Person Most Knowledgeable on behalf of the Estate of David Brittain | 5700 Canterbury Lane<br>Myrtle Beach, SC 29577 |
| Matthew Brittain* | 5633 Woodside Drive<br>Myrtle Beach, SC 29577 |
| Person Most Knowledgeable at Bush/Ross | 1801 North Highland Avenue<br>Tampa, Florida 33602 |
| Jeffry Conry | c/o King Williams Aviation, LLC<br>c/o Corporation Service Center<br>1703 Laurel Street<br>Columbia, SC 29201<br><br>and<br><br>c/o King Williams Holdings, LLC<br>c/o Avondale Ventures, LLC<br>1629 K Street, NW, Suite 300<br>Washington, DC 20006 |

* Contact information believed to be current as of December 27, 2007.

1

{Practice Areas\CORP\15008\14190\A1995863.DOC}

| Party | Address/Contact Information |
|---|---|
| ChemOil Corporation | c/o counsel:<br>David B. Haber, Esq.<br>David B. Haber, P.A.<br>201 S. Biscayne Blvd., Suite 1205<br>Miami, FL 33131 |
| Person Most Knowledgeable at Crescent Bank | 991 38th Avenue North<br>Myrtle Beach, SC 29577-2832 |
| The Owner or Partner Most Knowledgeable about the property located at 1334 Ritter Avenue, Glenn Daniels, WV | P.O. Box 68<br>Prosperity, WV 25909<br><br>and<br><br>1334 Ritter Avenue<br>Glen Daniels, WV 25832 |
| Anne Dearing | |
| Kay Ellison | c/o counsel:<br>David C. Fixler<br>Stephen G. DeLisle<br>Rubin and Rudman LLP<br>50 Rowes Wharf<br>Boston, MA 02110 |
| Stanley "Marshall" Ellison | c/o counsel:<br>David C. Fixler<br>Stephen G. DeLisle<br>Rubin and Rudman LLP<br>50 Rowes Wharf<br>Boston, MA 02110 |
| Person Most Knowledgeable at Garofalo Goerlich Hainbach PC | 1200 New Hampshire Ave. NW<br>Washington, DC 20036-6802 |
| Robert Giordano | 10 Goldsmith Dr.<br>Holmdel, NJ 07733 |
| Wayne Greene | wngreene@gmail.com |
| Reginald Greiner | |
| Person Most Knowledgeable at Horry County State Bank | 1701 North Oak Street<br>Myrtle Beach, SC 29577 |
| Person Most Knowledgeable at JetPay Merchant Services, LLC | c/o counsel:<br>David J. Reier, Esq.<br>Posternak, Blankstein & Lund, LLP<br>Prudential Tower<br>800 Boylston Street<br>Boston, MA 02199 |

2

{Practice Areas\CORP\15008\14190\A1995863.DOC}

| Robert Keilman | c/o counsel:<br>F. Thomas Rafferty, Esq.<br>Ober, Kaler, Grimes & Shriver<br>100 Light Street, 19th Floor<br>Baltimore, MD 21202-1036 |
| --- | --- |
| Person Most Knowledgeable at King Williams Aviation, LLC | c/o Corporation Service Center<br>1703 Laurel Street<br>Columbia, SC 29201 |
| Person Most Knowledgeable at King Williams Holdings, LLC | c/o Avondale Ventures, LLC<br>1629 K Street, NW, Suite 300<br>Washington, DC 20006 |
| Law Offices of Susan B. Jollie – Susan B. Jollie, Esq. | 7503 Walton Lane<br>Annandale, VA 22003-2558 |
| Thomas Lowe | 1032 Great Lakes Circle<br>Myrtle Beach, SC 29588 |
| Thomas Mastro* | 24 Wright Ave.<br>Malverne, NY 11565 |
| George McConnaughey | |
| Person Most Knowledgeable at MLB Management Services | P.O. Box 938<br>Conway, SC 29528 |
| Ober, Kaler, Grimes & Shriver – Stuart Schabes, Esq. | 100 Light Street, 19th Floor<br>Baltimore, MD 21202-1036 |
| Person Most Knowledgeable at Platte River Insurance Co. | c/o counsel:<br>Bradford R. Carver<br>Hinshaw & Culbertson, LLP<br>28 State Street, 24th Floor<br>Boston, MA 02109-1775 |
| Patricia Small | 353 Deerfield Links Drive<br>Surfside Beach, SC 29575 |
| Stukes Atwood, LLC (Donald Stukes, principal) | c/o Donald Stukes<br>ASI Advisors, LLC<br>445 Hamilton Avenue, Suite 1102<br>White Plains, NY 10601 |
| Donald Stukes | c/o ASI Advisors, LLC<br>445 Hamilton Avenue, Suite 1102<br>White Plains, NY 10601 |
| Hank L. Torbert | 525 Decatur St. NW<br>Washington, DC 20011 |
| James Tull | 1414 Highland Circle<br>Myrtle Beach, SC 29578 |

{Practice Areas\CORP\15008\14190\A1995863.DOC}

| | |
|---|---|
| Judy Tull | c/o counsel:<br>David C. Fixler<br>Stephen G. DeLisle<br>Rubin and Rudman LLP<br>50 Rowes Wharf<br>Boston, MA  02110 |
| Person Most Knowledgeable at Valley National Bank | c/o counsel:<br>Jeffrey Sternklar<br>Duane Morris LLP<br>100 High Street, Suite 2400<br>Boston, MA  02110-1724<br><br>and<br><br>Gregory R. Haworth, Esq.<br>Duane Morris LLP<br>One Riverfront Plaza<br>1037 Raymond Blvd., Suite 1800<br>Newark, NJ  07102-5429 |
| Person Most Knowledgeable at Wachovia/Wells Fargo | c/o counsel:<br>John Vian, Esq.<br>Brian Hall, Esq.<br>Smith, Gambrell & Russell, LLP<br>Promenade Two, Suite 3100<br>1230 Peachtree Street N.E.<br>Atlanta, GA 30309 |
| Robert Wardlow | 89 Clyde Avenue<br>Hopelawn, NJ  08861 |
| Person Most Knowledge at Romans 828, LLC* | PO Box 249<br>Myrtle Beach, SC  29572 |
| Edward Warneck | 8349 Juxa Drive<br>Myrtle Beach, SC  29579 |
| Larry Young* | 1500 Legends Drive<br>Myrtle Beach, SC  29578 |
| Person Most Knowledgeable at XTRA Airways | 800 West Idaho Street<br>Suite 304<br>Boise, ID 83702 |

4

EXHIBIT B

## PUBLIC CHARTER
## DEPOSITORY AGREEMENT

This Depository Agreement, made as of the 14th day of February, 2012, by and among **SOUTHERN SKY AIR & TOURS D/B/A MYRTLE BEACH DIRECT AIR & TOURS** a South Carolina corporation ("Charter Operator"), **SWIFT AIRLINES** an Arizona corporation ("Carrier") and **VALLEY NATIONAL BANK**, having a place of business at 1460 Valley Road, Wayne, New Jersey 07470("Bank").

WHEREAS, Charter Operator is a public charter operator or foreign charter operator within the meaning of 14 CFR 380 of the Special Regulations ("Regulations") of the United States Department of Transportation, Office of Aviation ("DOT") and intends to market public charters to charter or tour participants ("Charter Participants") pursuant to said Regulations.

WHEREAS, Bank is insured by the Federal Deposit Insurance Corporation and is agreeable to act as the depository bank within the meaning of said Part 380, subject to the terms and conditions herein;

NOW, THEREFORE the parties hereto, for and in consideration of the premises and covenants hereinafter made, hereby agree pursuant to the Regulations as follows:

### SECTION 1 - DEPOSITS

1.1    Subject to the terms and conditions of this Agreement, Bank agrees from time to time to receive and accept for deposit payments, including cash, credit card transactions, checks or money orders, delivered or caused to be delivered to it by Charter Operator for deposit with respect to each charter (a "Charter") identified in a certificate from Charter Operator as being the flight schedule or schedules on file with the DOT. The flight schedule or schedules from time to time, may be amended or modified by Charter Operator by written notice to Bank.

1.2    Charter Operator shall deliver or cause to be delivered to Bank for deposit with Bank as depository, all amounts received from each Charter Participant with respect to each Charter in accordance with Section 380.34 of the Regulations. To the extent such information is available, each deposit made or caused to be made by Charter Operator shall be accompanied by a notice or notices to Bank setting forth the following information: (i) the amount of the item being deposited; (ii) the name of the Charter Participant with respect to which such deposit is made; and (iii) such other information as Bank may reasonably request from time to time.

1.3    Bank shall maintain a separate account (an "Account") for each charter, flight or rotation but shall be under no obligation to segregate any funds received by it between inbound and out-bound flights in the absence of express instructions to do so. Bank may use funds deposited pursuant to this Agreement in its general banking business and may commingle such funds with its general funds. Unless otherwise agreed in writing by Bank and Charter Operator, Bank shall be under no duty to pay any interest on any funds held by it hereunder.

1.4    Funds deposited in an Account maintained for one Charter may be transferred to an Account maintained for another Charter or to the Charter Operator as reimbursement for obtaining substitute travel arrangements or otherwise upon receipt of a written directive from the Charter Operator together with such other documents and authorizations as the Bank may from time to time request.

1.5    Bank agrees to permit the Charter Operator to use the Bank's name solely for the purposes of stating on all charter solicitation materials regarding the charter program that checks and money orders are made payable to Bank. Charter Operator and Carrier agree that no references to, or use of, Bank's name will be made other than to indicate that the checks or money orders of Charter Participants shall be made payable to the order of the Bank. In addition, each tour prospectus and each agreement between Charter Operator and a Charter Participant shall state that a copy of this Agreement will be made available by Charter Operator to each Charter Participant upon request and is incorporated as part of the agreement between the Charter Operator and the Charter Participant.

1.6    Bank shall return to Charter Operator all checks received by it pursuant to this Agreement which shall be dishonored for any reason. Bank shall make the appropriate adjustment to the applicable account(s) to reflect the return of said dishonored check. Bank shall not be required to accept personal checks on any tour from any participant whose prior checks have been dishonored.

## SECTION 2 - DISBURSEMENTS

2.1    Subject to the limitations expressed in the subparagraphs hereof, Bank shall remit funds from the Account maintained with respect to each Charter as follows:

(a)    Not later than five (5) Business Days after Bank's receipt of a certificate from either Carrier or Charter Operator substantially in the form of Exhibit A (the "Exhibit A Certificate") attached hereto, specifying if available, the following information: (i) the amount due to Carrier (the "Charter Price"); (ii) the date on which such payment is due; and (iii) the address to which such payment is to be sent, Bank shall remit out of the Account for such Charter directly to Carrier, or, if Carrier maintains an escrow account pursuant to DOT requirements, to Carrier's escrow account designated on Exhibit C, the Charter Price; provided, however, that Bank shall not remit funds earlier than:  (i)  60 days (including date of departure) prior to the scheduled date of departure of the originating flight if the Charter Price represents round-trip air transportation to be performed by Carrier as set forth on the Exhibit A Certificate; and (ii) 60 days (including date of departure) prior to the scheduled date of departure of the originating or returning flight as set forth on the Exhibit A Certificate, as the case may be, if such Charter Price does not represent such round-trip air transportation.

(b)    Not later than five (5) Business Days after receipt by Bank of a written notification from Charter Operator of the amount of refunds made by Charter Operator to Charter Participants as a result of cancellation by Charter Participants of participation in a Charter, which notice shall be accompanied by such evidence satisfactory to Bank, in its sole discretion, of the making of payments to Charter Participants, Bank shall remit to Charter Operator out of the Account for the Charter for which the refund was made the amount of such refunds made.

(c)    Not later than five (5) Business Days after Bank's receipt of written notification from either Charter Operator or Carrier of the cancellation of any Charter for which an Account has been established, Bank shall refund checks for the amount deposited in the separate account established for the canceled Charter on behalf of each Charter Participant and mail said checks directly to each Charter Participant in amounts and to the address furnished to Bank in a certificate from Charter Operator or, if addresses shall have been furnished, Bank may attempt to deliver such checks by such method as may be deemed reasonable by Bank, in its sole discretion.  Bank shall have no responsibility for the failure of any check to be delivered as a result of the failure of Charter Operator to furnish Bank with the names and addresses of Charter Participants or the amounts of the Charter Participants deposits or for any cause beyond its control.

(d)    After Bank's receipt of written confirmation that the Charter Price for a Charter has been paid in full to Carrier and not later than five (5) Business Days after receipt by Bank of invoices from hotels, sightseeing enterprises or other persons or companies furnishing accommodations or service in connection with such Charter ("Vendors"), certified as correct by Charter Operator, Bank shall remit from the Account maintained for such Charter, the amount set forth in such invoices directly to such Vendors.

2.2    Except as provided in Section 2.1, Bank shall not pay to or remit any funds from an Account maintained for Charter Operator prior to two (2) Business Days after completion of such Charter.  The balance in such account shall, subject to the provisions of Sections 4 and 5 of this Agreement and the following sentence hereof, be remitted to Charter Operator by Bank not later than five (5) Business Days after receipt by Bank of a certification substantially in the form of Exhibit B hereto by Carrier of the completion of such Charter.    Notwithstanding the foregoing, if the Charter to which such account relates involves air transportation only and Bank has paid the Carrier the Charter Price for all air transportation and has paid all refunds due to Charter Participants as provided in Section 2.1(b) of this Agreement, the balance in such account shall be, subject to the provisions of Section 5.4 of this Agreement, be remitted to Charter Operator by Bank not later than five (5) Business Days after receipt by Bank of certification substantially in the form of Exhibit B hereto by the Carrier performing the originating flight that such flight has in fact departed.

2.3    *In the event any Charter fails to operate after payment by Bank in accordance with Section 2.1(a) of this Agreement or Carrier fails to provide air transportation for any Charter after payment by Bank in accordance with Section 2.1(a) of this Agreement, Carrier agrees to refund to Bank all monies received by it, after such cancellation or failure.* Charter Operator further agrees that in the event any Charter fails to operate after payment by Bank in accordance with Section 2.1(a) of this Agreement, to pay to Bank within five (5) Business Days from the date of such cancellation, for deposit in the Account established for the canceled charter an amount equal to that remitted by Bank to Vendors pursuant to Section 2.1(d) of this Agreement.  In the event Carrier shall fail to make the refund required hereby, Charter Operator agrees to pay to Bank, for deposit in the Account established for the canceled Charter, the amount of such refund or the balance owing thereon.  No payment by Charter Operator pursuant to this Section 2.3 shall act as a waiver of any right which Charter Operator may have against Carrier or any Vendor.  Charter Operator and Carrier each agree to give Bank prompt notice of any cancellation of a Charter or any failure of Carrier to provide air transportation.

3

2.4    All amounts remitted by Bank and sent to Bank hereunder shall be in U.S. Dollars and shall be made only to the extent funds in the Account established for a charter are legally available by Bank for withdrawal.  Bank is not obligated to remit funds against any uncollected funds representing deposits in the Account.  None of the provisions of this Section 2 or any of the provisions of this Agreement shall require Bank to expend its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder.

2.5    Upon distribution of all of the funds on deposit with Bank pursuant to the terms of this Agreement, Bank shall be relieved of any and all further obligations and released from any and all liability under this Agreement, except as otherwise specifically set forth herein.

## SECTION 3 - ACCOUNTING AND REPORTING

3.1    Charter Operator shall furnish any additional information and reports as Bank may request.

3.2    Bank will provide Charter Operator with a cash statement for each Account at the end of each calendar month until such time as a closing cash statement is rendered by the payment over of the balance of such Account by Bank in accordance with Section 2 of this Agreement.

3.3    Except as may be required by the Regulations, Bank is not required to maintain documents received by it pursuant to this Agreement.

## SECTION 4 - RESPONSIBILITIES OF BANK

4.1    It is understood and agreed that the duties of Bank are only as specifically provided herein and are purely ministerial in nature.  Bank shall not be responsible for or be required to enforce any of the terms or conditions of this Agreement or any other agreement or institute legal proceedings of any kind.  Bank shall not incur any liability whatsoever to any other party or person except for willful misconduct or gross negligence.

4.2    Bank shall be under no obligation and bear no responsibility in respect of any of the items deposited with it other than to faithfully follow the terms of this Agreement.  Bank shall be under no duty or responsibility to enforce collection of any check delivered to it hereunder.  Unless agreed in writing by the parties hereto, Bank shall be under no duty to pay interest on any funds held by it hereunder.

4.3    Bank shall be entitled to rely upon the accuracy, act in reliance upon the contents, and assume the genuineness, of any notice, instruction, certificate, signature, instrument or other document that is given to Bank pursuant to this Agreement without the necessity of Bank verifying the truth, completeness or accuracy thereof.  Bank shall not be obligated to make any inquiry as to the authority, capacity, existence or identity of any person purporting to give any such notice or instructions or to execute any such certificate, instruction, instrument or document and Bank shall be fully protected in acting in accordance with any certificate, instruction, instrument or document given to it hereunder believed by it to have been signed by the proper parties.

4

4.4    Bank shall not be responsible for the validity, legality or voidness or voidability or enforceability of this Agreement with respect to Charter Operator or Carrier and shall not be responsible for the performance of any obligation of Charter Operator, Carrier or any retail travel agent or Vendor under this Agreement or under the Regulations or otherwise.

4.5    In the event that (a) Bank receives a notice objecting to the disbursement of the funds on deposit with Bank, (b) Bank shall be uncertain as to its duties or rights hereunder, (c) Bank shall receive instructions with respect to the funds on deposit with Bank which, in Bank's sole determination, are in conflict either with other instructions received by it or with any provision of this Agreement or the Regulations, or (d) in Bank's sole determination, there is a disagreement between the parties hereto or any third party which may result or has resulted in adverse claims with respect to the funds on deposit with Bank, then, in such event, Bank shall be entitled to refuse to comply with any demands on it and with respect thereto and hold the funds on deposit with Bank, or a portion thereof, in the Account pending the resolution of such uncertainty to Bank's sole satisfaction, by final judgment of the DOT, or a court of competent jurisdiction, a stipulation of settlement between the parties or otherwise; or Bank, at its sole option, may deposit the funds on deposit with Bank or a portion thereof with the clerk of a court of competent jurisdiction in a proceeding to which all parties in interest are joined. Upon the deposit by Bank of such funds with the clerk of any court, Bank shall be relieved of any and all further obligations and released from any and all liability hereunder. Bank shall have the right to deduct any fees or expenses (including reasonable fees and disbursements of counsel) incurred by it in such matter from the funds in the account deposited into court.

4.6    Bank shall not be liable for any error in judgment, action taken or omitted hereunder, or for the misconduct of any of its partners, employees, agent's or attorneys appointed by it, except in the case of willful misconduct or gross negligence. Bank shall be entitled to consult with counsel of its own choosing, including itself, and shall not be liable for any action taken, suffered or omitted by it in accordance with the advice of such counsel.

## SECTION 5 - COMPENSATION, EXPENSES AND INDEMNIFICATION

5.1    Bank shall be entitled to such compensation for its services hereunder as may be agreed upon from time to time by Bank and Charter Operator in writing. The Charter Operator agrees to pay to the Bank all its normal account charges incurred in connection with each account.

5.2    Charter Operator agrees to pay Bank in addition (i) all out-of-pocket expenses of Bank in connection with the preparation, execution and delivery of this Agreement, including reasonable fees and disbursements of counsel to Bank, (ii) all out-of-pocket expenses in connection with the preparation, execution and delivery of any amendment relating to this Agreement, including reasonable fees and disbursements of counsel to Bank and (iii) all costs of obtaining performance under this Agreement by Charter Operator or Carrier, including reasonable fees and disbursements of counsel to Bank.

5.3    (a)    Charter Operator shall indemnify Bank and its partners, employees, agents and attorneys (collectively, the "Indemnitees") against, and hold them harmless of and from, any and all loss, liability, cost, damage and expense, including, without limitation, reasonable

5

counsel fees and expenses, which the Indemnitees may suffer or incur by reason of any action, claim or proceeding brought against the Indemnitees arising out of or relating in any way to this Agreement or any transaction to which this Agreement relates, unless such action, claim or proceeding is the result of the willful misconduct or gross negligence of the Indemnitees.

        (b)    If the indemnification provided for in this Section 5.3 is applicable, but for any reason is held to be unavailable, Charter Operator shall contribute such amounts as are just and equitable to pay, or to reimburse the Indemnitees for, the aggregate of any and all losses, liabilities, costs, damages and expenses, including counsel fees, actually incurred by the Indemnitees as a result of or in connection with, and any amount paid in settlement of, any action, claim or proceeding arising out of or relating in any way to any actions or omissions of Charter Operator.

        5.4    As security for the payment of amounts due pursuant to this Section 5, Charter Operator hereby assigns to Bank and grants Bank a continuing lien and right of set-off upon any and all amounts which may now or hereafter become due and payable to Charter Operator pursuant to Section 2 of this Agreement and agrees that no payment shall be made to Charter Operator pursuant to such section until all amounts then due and payable to Bank are paid in full.

        5.5    The provisions of this Section 5 shall survive any termination of this Agreement, whether by distribution of any funds on deposit with Bank or otherwise.

## SECTION 6 - TERMINATION AND AMENDMENT

        6.1    Any party hereto may terminate this Agreement at any time by mailing a notice of its intention to terminate by registered mail to the other party and the DOT; provided, however, that any such termination by Carrier or Charter Operator shall be subject to approval by the DOT. For the purposes of this Agreement, Bank may assume DOT's approval of Charter Operator or Carrier's termination of this Agreement so long as Bank does not receive a written objection from the DOT within thirty (30) days from the date of such notice. Termination by Bank shall become effective fifteen (15) days from date of such notice; termination by Carrier or Charter Operator shall be effective thirty (30) days from the date of such notice. Notwithstanding the foregoing, no termination of this Agreement shall affect any obligations of Charter Operator with respect to any amounts payable under this Agreement, which shall survive any termination of this Agreement. Should this Agreement terminate as herein provided, then Bank automatically shall resign as the depository bank and Bank shall not be required to accept any deposits, make any disbursement or otherwise dispose of the funds on deposit with Bank, but its only duty shall be to hold such funds for a period of not more than five (5) Business Days following the effective date of the termination of this Agreement, at which time if a successor depository bank shall have been appointed and written notice thereof (including the name and address of such successor depository bank) shall have been given to the resigning Bank, then Bank shall pay over to the successor depository bank any funds Bank holds with respect hereto, less any portion thereof previously paid out in accordance with this Agreement; whereupon, Bank shall be relieved of all further obligations and released from any and all liability under this Agreement. In addition to any other fees payable to Bank pursuant hereunder, Bank shall be entitled to be reimbursed by Charter Operator and Charter Operator shall be liable for any

expenses incurred in connection with the termination of this Agreement, the transfer of any funds to a successor depository bank or the distribution of any funds pursuant to this Section 6.1.

## SECTION 7 - MISCELLANEOUS

7.1    Notices relating to this Agreement shall be sent to:

**Charterer:**    Southern Sky Air & Tours
1600 Oak Street, Suite B
Myrtle Beach, SC  29577
Fax Number: (843) 293- 7506
Confirmation Number: (843) 916-9700

**Carrier:**    Swift Air
2710 East Oak Tower Road
Phoenix, AZ  85034
Fax: (602) 273-3773
Confirmation: 602) 273-3773

**Bank:**    VALLEY NATIONAL BANK
1460 Valley Road
Wayne, NJ  07470
Attention: Global Escrow
Fax Number (973) 709-0364
Confirmation Number:  (973) 686-4812

Any notice or other communication under the provisions of this Agreement shall be in writing effective the date of the notice, and shall be given by facsimile (with confirmation), or by postage prepaid, registered or certified mail, return receipt requested, by hand delivery with receipt acknowledged, or any recognized express mail service, directed to the parties at the addresses set forth above or to any new address of which any party hereto shall have informed the others by the giving of notice in the manner provided herein.

7.2    No party hereto may assign its rights or obligations hereunder without the prior written consent of the other parties and until such notice of assignment is filed with the DOT.

7.3    As used in this Agreement, the term "Business Day" shall mean any day which is *not a day for which New Jersey banks are authorized to close. Initial capped terms not otherwise* defined herein, which are defined in the Regulations, are used herein with the meaning therein provided.

7.4    This Agreement may be executed in one or more counterparts, and by different parties hereto in separate counterparts, each of which when executed shall be deemed to be an original but all of which when taken together shall constitute one and the same agreement.  A facsimile signature hereto shall be deemed an original for all purposes.

7

7.5    The parties hereto agree to do such further acts and things and to execute and deliver such statements, assignments, agreements, instruments and other documents as the Bank may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Agreement in order (a) to give Bank confirmation and assurance of Bank's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better enable Bank to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Agreement, each in such form and substance as may be acceptable to Bank.

7.6    The rights and remedies granted to the Bank in this Agreement are cumulative and not exclusive, and are in addition to any and all other rights and remedies granted and permitted under and pursuant to law.

7.7    The failure of any of the signatories hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

7.8    This Agreement, together with the rules and regulations of the Bank with respect to the account, constitutes the entire agreement and understanding of the signatories hereto and no amendment, modification or waiver of any provision herein shall be effective unless in writing, executed by the party charged therewith.

7.9    This Agreement shall be construed, interpreted and enforced in accordance with and shall be governed by the laws of the State of New Jersey without regard to the principles of conflicts of laws.

7.10    This Agreement shall bind and inure to the benefit of the parties, their successors and assigns.

7.11    If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic and legal substance of the transactions contemplated by this Agreement is not effected in any manner materially adverse to any party. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated by this Agreement be consummated as originally contemplated to the fullest extent possible.

7.12    Except as otherwise may be provided by law, this Agreement is for the sole benefit of the parties hereto and their permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

7.13    The parties hereto hereby irrevocably agree that they will not initiate any action or proceeding arising out of or relating to this Agreement in any court other than a court of the State of New Jersey sitting in Bergen, Passaic or Essex Counties (the "Counties") and any Federal court sitting in the Counties and any appellate court therefrom.

8

7.14    The parties hereto hereby irrevocably submit to the jurisdiction of any court of the State of New Jersey sitting in the Counties and any Federal court sitting in the Counties and any appellate court therefrom in any action or proceeding arising out of or relating to this Agreement.

**7.15    The parties hereto hereby irrevocably waive the right to trial by jury in any action, proceeding, claim or counterclaim whether in contract or tort, at law or in equity, in any manner connected with this Agreement or any transactions hereunder.**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement in counterparts by their officers thereunto duly authorized as of the day and year first above written.

Charter Operator:              **SOUTHERN SKY AIR & TOURS
D/B/A MYRTLE BEACH DIRECT AIR & TOURS**

_____
Print Name of Authorized Officer

_____
Title

By:_____
        Signature

Carrier:                       **SWIFT AIR**

NICK HUSKA
Print Name of Authorized Officer

DIRECTOR OF FINANCE
Title

By:_____
        Signature

Bank:                          **VALLEY NATIONAL BANK**

LORI E ROONEY
Print Name of Authorized Officer

VICE President
Title

By:_____
        Signature

9

7.14    The parties hereto hereby irrevocably submit to the jurisdiction of any court of the State of New Jersey sitting in the Counties and any Federal court sitting in the Counties and any appellate court therefrom in any action or proceeding arising out of or relating to this Agreement.

**7.15    The parties hereto hereby irrevocably waive the right to trial by jury in any action, proceeding, claim or counterclaim whether in contract or tort, at law or in equity, in any manner connected with this Agreement or any transactions hereunder.**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement in counterparts by their officers thereunto duly authorized as of the day and year first above written.

**Charter Operator:**　　　　　　**SOUTHERN SKY AIR & TOURS
D/B/A MYRTLE BEACH DIRECT AIR & TOURS**

*Wayne N. Greene*
Print Name of Authorized Officer

*CFO*
Title

By: _____
　　　　Signature

**Carrier:**　　　　　　　　　　**SWIFT AIR**

_____
Print Name of Authorized Officer

_____
Title

By: _____
　　　　Signature

**Bank:**　　　　　　　　　　**VALLEY NATIONAL BANK**

*LORI E ROONEY*
Print Name of Authorized Officer

*VICE President*
Title

By: _____
　　　　Signature

9