UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | |
|---|---|
| In re:<br><br>SOUTHERN SKY AIR & TOURS, LLC<br>d/b/a DIRECT AIR,<br><br>Debtor. | Chapter 7<br>Case No. 12-40944-MSH |

**MOTION OF CHAPTER 7 TRUSTEE FOR ORDER (I) APPROVING
CHARTER PARTICIPANT CLAIM RECONCILIATION PROCESS, INCLUDING
FORM OF NOTICE TO CHARTER PARTICIPANTS, (II) DISALLOWING CERTAIN
CHARTER PARTICIPANT CLAIMS, AND (III) EXTENDING
<u>CLAIM BAR DATE FOR CHARTER PARTICIPANTS</u>**

To the Honorable Melvin S. Hoffman, United States Bankruptcy Judge:

NOW COMES Joseph H. Baldiga, the Chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Southern Sky Air & Tours, LLC d/b/a Direct Air (the "Debtor"), and hereby moves this Court to enter an Order (I) approving the process for reconciliation of all claims asserted by Charter Participants (defined below) against (a) the Estate, (b) the bond guaranteed by Platte River Insurance Company, and (c) certain accounts maintained by Valley National Bank, (II) disallowing certain claims asserted by Charter Participants, and (III) extending the claims bar date for Charter Participants from January 15, 2013 to the date that is seven (7) days after entry of an Order approving this Motion. In connection with the foregoing, the Trustee also requests approval of a form of notice (the "Claim Notice"), a copy of which is attached hereto as <u>Exhibit A</u>, that the Trustee intends to mail to all Charter Participants that asserted claims.

In support of this Motion, the Trustee states as follows:

## I. BACKGROUND

### A. Bankruptcy Case Background.

1. On March 15, 2012 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

2. Prior to the Petition Date, the Debtor was a public charter operator (tour operator) with charter programs servicing various points in the United States. On March 13, 2012 (two days prior to the Petition Date), the Debtor ceased operation of its tour programs, stopped accepting flight reservations and terminated reservation capabilities on its web-site. The Debtor never resumed operations. By the time of these actions, the Debtor had previously accepted flight reservations from thousands of charter participants (the "Charter Participants"), who were then unable to fly with the Debtor, and who were left with claims for the monies lost in connection with the Debtor's cancelled flights and ceased operations and for expenses incurred due to the cancellations and the cessation of operations.

3. On April 11, 2012 (the "Conversion Date"), this Court converted the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.

4. On the Conversion Date, the United States Trustee appointed the Trustee as Chapter 7 trustee of this proceeding and he continues to serve as such.

### B. Sources of Funding for Charter Participant Reimbursement.

5. Since the Petition Date, thousands of Charter Participants have asserted claims against various sources for the monies lost in connection with the Debtor's cancelled flights. While a large number of those claimants have by now been reimbursed via their credit or debit cards, a number of those Charter Participants remain unreimbursed (the "Unreimbursed Charter

Participants"). As discussed herein, funds totaling $250,000 are now available for payment to Unreimbursed Charter Participants on account of their claims. The sources of the available funds include (a) a portion ($175,000.00) of the proceeds of the bond guaranteed by Platte River Insurance Company and (b) a portion ($75,000.00) of funds that are in certain accounts maintained by Valley National Bank. (As previously noted, Charter Participants' credit cards and debit cards have also been a source of reimbursement throughout the bankruptcy case.) These sources of funds are discussed below.

i. **Platte River Insurance Company.**

6. As a public charter operator, the Debtor's operations were governed by, among other thing, regulations promulgated by the United States Department of Transportation (the "DOT"), 14 C.F.R. Part 380.

7. Pursuant to 14 C.F.R. § 380.34, while operating, the Debtor was required to maintain a security agreement, such as a bond, to protect passenger monies deposited for airline travel in the event services were cancelled and incidental passenger expenses reasonably incurred as a result of such cancellations.

8. In accordance with 14 C.F.R. § 380.34, on October 12, 2006, the Debtor posted a Public Charter Operator's Surety Bond, Bond No. 41060098 (the "Bond"), in the amount of $200,000.00 (the "Bond Amount") to ensure the Debtor's compliance with applicable DOT regulations. Platte River Insurance Company ("Platte River") guaranteed the Bond as the surety, subject to cancellation by the Debtor or Platte River, with notice to the DOT. The Bond provided that Platte River's liability under the Bond is limited to the Bond Amount.

9. On October 1, 2012, this Court approved a Stipulation and Release Between the Trustee and Platte River Regarding Public Charter Operator's Surety Bond (the "Bond Stipulation").

10. Pursuant to the terms of the Bond Stipulation, among other things, Platte River agreed to pay to the Trustee, on behalf of the Estate, the full $200,000.00 Bond Amount, in exchange for a full release of Platte River of any and all further liability under the Bond. In consideration of the turnover of the Bond Amount, the Trustee agreed to assume all responsibility relating to the administration and reconciliation of any and all claims asserted against the Bond in conjunction with the Trustee's normal claim administration process in the Debtor's bankruptcy Estate, including, without limitation (a) comprehensively reviewing and evaluating any and all potential claims to the Bond Amount, (b) determining whether such claims are invalid or duplicative, and (c) establishing which claims shall be allowed claims, including whether such claims are valid under 14 C.F.R. § 380.34. The Trustee further agreed to require potential claimants against the Bond (the "Bond Claimants") to first exhaust all efforts to obtain a reimbursement from those claimants' credit card and debit card companies and, if unsuccessful, demonstrate evidence of the claimants' inability to recover payment from such credit card and debit card companies.

11. The Bond Stipulation further provided that the Bond Amount shall become general property of the Estate pursuant to Bankruptcy Code § 541; provided, however, that if allowed claims against the Bond ("Bond Claims") total at least $175,000.00, then $175,000.00 of the Bond Amount shall be used to pay those allowed Bond Claims (*pro rata* as applicable), while the balance of the Bond Amount ($25,000.00) shall become general property of the Estate, to be administered by the Trustee in the normal course of his administration of the Estate.

12. The Trustee is currently holding the full Bond Amount pending completion of the claim reconciliation process.

13. Based on the Trustee's preliminary review, Bond Claims far exceed $175,000. Accordingly, $175,000 of the Bond Amount is available for payment of Bond Claims.

### ii. The Valley National Bank Accounts.

14. As previously noted, the Debtor, as a public charter operator, was required to comply with regulations regarding security and depository agreements. See 14 C.F.R. § 380.34.

15. Pursuant to 14 C.F.R. § 380.34, public charter operators may, in lieu of furnishing a certain type of security agreement, instead elect to: (a) furnish a surety bond, a surety trust agreement, or a letter of credit in the amount of at least $10,000 times the number of flights, except that the amount need not exceed $200,000;[1] and (b) enter into an agreement with the company directly engaging in the operation of aircraft (known as the "direct air carrier") and a designated bank, the terms of which shall provide that "all payments by charter participants paid to charter operators… shall be deposited with and maintained by the bank subject to […certain…] conditions[.]" 14 C.F.R. § 380.34(b).

16. Prior to the Petition Date, the Debtor entered into Public Charter Depository Agreements (the "Depository Agreements") with various direct air carriers and Valley National Bank ("VNB"). Pursuant to the Depository Agreements, VNB agreed to act as depository bank within the meaning of 14 C.F.R. § 380 and the Debtor was required to deliver to VNB all amounts received from each Charter Participant in accordance with 14 C.F.R. § 380.34.

17. As of the Petition Date, VNB maintained two accounts for and on behalf of Direct Air, a money market account and a DDA account (together, the "VNB Account"). As of the Petition Date, the VNB Account held a balance of approximately $1,016,926.00.

---

[1] The Bond satisfied the first part of this requirement.

18. On June 5, 2013, this Court entered an Order approving, among other things, an agreement between the Trustee, VNB, and certain other parties regarding the release by VNB of the funds in the VNB Account (the "VNB Agreement"). Pursuant to the VNB Agreement, VNB shall make the following disbursements from the VNB Account:

    a.     $25,000 to VNB;

    b.     $250,000 to the Trustee (discussed in further detail below);

    c.     90% of the remaining balance to Merrick Bank Corporation ("Merrick"); and

    d.     10% of the remaining balance to American Express Travel Related Services Company, Inc. ("AMEX").

19. With respect to the $250,000 to be paid to the Trustee pursuant to the VNB Agreement, that amount consists of the following:[2]

    a.     $100,000 to be distributed to the Estate to (at least partially) compensate the Trustee and his professionals (subject to fee applications) for allowed administrative expenses incurred in connection with an investigation into the "shortfall" of funds in the VNB account;

    b.     $75,000 to be distributed to the Estate to pay claims (including administrative claims) in accordance with the normal bankruptcy priorities; and

    c.     $75,000 to be distributed to the Estate exclusively to partially or fully pay the Charter Participants who did not receive a full refund or chargeback, or who otherwise were not fully reimbursed in connection with money

---

[2] Allocation of the $250,000 to be paid to the Trustee pursuant to the VNB Agreement was memorialized in an earlier agreement approved by this Court by Order dated October 4, 2012.

paid by them into the VNB Account, but only to the extent that such Charter Participants have a valid claim against the VNB Account.

20. Based on the foregoing, $75,000 from the VNB Account is now available for payment of Unreimbursed Charter Participants with valid claims against the VNB Account.

### iii. The Credit Cards.

21. Since the Petition Date and the cancellation of the Debtor's flights, thousands of customers have sought "chargebacks" for flights purchased on their credit cards and debit cards. The only transaction cards Charter Participants could use to purchase tickets from the Debtor were those issued by AMEX, Visa, MasterCard and Discover. JetPay Merchant Services, LLC ("JetPay") processed all of the credit and debit card transactions for Visa, MasterCard and Discover, in accordance with certain agreements among the Debtor, JetPay and Merrick, among other parties. All such transactions were funded by Merrick. AMEX itself processes and funds all AMEX transactions. Merrick and AMEX have collectively reimbursed Charter Participants (where applicable, via their credit card and debit card issuing banks) in amounts far exceeding the VNB Account balance.

22. JetPay has informed the Trustee that as of August 28, 2012, it had processed chargebacks and refunds for Charter Participants totaling more than $25 million. AMEX, meanwhile, has informed the Trustee that, as of August 28, 2012, AMEX had credited American Express cardholders over $3.5 million for disputed charges related to purchases from the Debtor. Upon information and belief, the credits by both JetPay and AMEX have increased since August 28, 2012, albeit in slower and lower amounts.

### C. Charter Participants' Asserted Claims.

23. Charter Participants have asserted claims in multiple forums for monies lost in connection with the Debtor's cancelled flights: (i) claims have been asserted against the Bond (i.e., the Bond Claims); (ii) claims have been asserted against VNB and the VNB Account (the "VNB Claims"); and (iii) claims have been filed in this bankruptcy case in the form of proofs of claim (the "Filed Claims"; collectively with the Bond Claims and the VNB Claims, the "Claims").

24. The Trustee has conducted a preliminary review of the Claims. The totals are set forth in the table below:

| Source | Approximate Number of Claims | Approximate Amount of Claims |
| --- | --- | --- |
| Platte River Claims | 2,300 | $1,085,000 |
| VNB Claims | 1,800 | $ 855,000 |
| Filed Claims | 1,822 | $ 892,000[3] |
| **Total Claims:** | **5,922** | **$2,832,000** |

25. A random comparison of the Claims shows a substantial amount of duplication among the Bond Claims, the VNB Claims, and the Filed Claims. In addition, the Trustee suspects that many of the Charter Participants that filed Claims have since been reimbursed in part or in whole by their credit card or debit card companies, since thousands of such reimbursement requests were processed in the months after the Petition Date. Based on the foregoing, the Trustee estimates that the actual total of allowed claims (i.e., the non-duplicative claims of Unreimbursed Charter Participants) will be significantly less than the total number of Claims.

---

[3] Based on the Trustee's review of the Claims Register, excluding all non-individual claims. Since the inclusion of all claims filed by individuals includes many non-consumer claims, this estimate represents the likely maximum of Filed Claims.

**D.     The Chapter 7 Bar Date.**

26.    This Court initially established September 11, 2012 as the deadline for creditors asserting pre-petition claims to file such claims against the Estate (the "Chapter 7 Bar Date").

27.    Pursuant to 14 C.F.R. § 380.34(d) and the Bond, claimants were required to file any claims under the Bond within 60 days from the date of a claimant's cancelled return flight. Upon information and belief, prior to the Petition Date, the Debtor scheduled operating flights through approximately November 16, 2012. Accordingly, it is possible that Claims could have been timely asserted against the Bond through January 15, 2013.

28.    Based on the foregoing, the Trustee filed a motion (the "Bar Date and Agreement Motion") on September 10, 2012, in which he requested, among other things, that the Court extend the Chapter 7 Bar Date for Charter Participants (only) to file pre-petition claims to January 15, 2013.

29.    In the Bar Date and Agreement Motion, the Trustee indicated that (a) at the Department of Transportation's request, JetPay, Merrick, and Amex had agreed to honor credit card and debit card chargeback requests received from Charter Participants by or before January 15, 2013, provided that such requests are otherwise valid and (b) the Trustee had agreed not to object to claims filed by Charter Participants after the Chapter 7 Bar Date on the basis of being untimely filed, provided that such claims were filed on or before January 15, 2013. These terms were also memorialized in an "Addendum to Term Sheet," which was attached to the Bar Date and Agreement Motion.

30.    The Court approved the Bar Date and Agreement Motion by Order dated October 11, 2012, thereby extending the Chapter 7 Bar Date to January 15, 2013 for Charter Participants (only) to file their pre-petition claims.

31.     Notwithstanding the Chapter 7 Bar Date of January 15, 2013, the Trustee has previously represented to this Court that he would agree to permit the continued filing of proofs of claim by Charter Participants until an undetermined date certain.

## II.    THE CLAIMS

32.     As discussed previously, since the Petition Date, Charter Participants have filed Claims against the Bond, the VNB Account and the Estate. The Trustee has begun the process of attempting to reconcile the Claims.

### A.    The Trustee's Efforts to Gather Claim Information.

33.     Platte River has provided the Trustee with copies of all Bond Claims, VNB has provided the Trustee with a list of all VNB Claims, and the Trustee has obtained copies of all Filed Claims from the Bankruptcy Court. The approximate total number of Claims is 6,000.

34.     In addition to gathering information about the Claims from Platte River, VNB, and the Bankruptcy Court, the Trustee has also gathered information regarding chargebacks to customers awarded by AMEX. He also has attempted to gather information regarding chargebacks to customers awarded by Visa, MasterCard, and Discover.

35.     At the Trustee's request, counsel for Merrick provided the Trustee with a list of approximately 2,300 bank identification numbers issued by Visa, MasterCard, and Discover regarding the credit card and debit card issuing banks that provided chargeback credits to their customers with respect to a purchase from the Debtor. Unfortunately, that list does not identify those banks by name. In order for the Trustee to identify the names of the individuals that received chargeback credits, it would be necessary for Visa, MasterCard, and Discover to first identify by name the 2,300 credit card or debit card issuing banks that provided those chargeback credits.

36. On March 29, 2013, the Trustee filed a Motion for Authority to Conduct Rule 2004 Examinations (the "2004 Motion") seeking authority to conduct examinations of the persons most knowledgeable at Visa, MasterCard, Discover, and any and all relevant debit card or credit card issuing banks. The 2004 Motion is currently pending before this Court.

**B.   The Trustee's Initial Reconciliation Efforts.**

37. Through the Trustee's initial reconciliation of the Claims, it has become increasingly apparent that the process of obtaining bank identification information from Visa, MasterCard, and Discover, and then seeking *another* layer of information (i.e., the names of the individuals that received chargeback credits) from those credit card or debit card issuing banks, will be cumbersome, inefficient, and unlikely to result in the receipt of complete records regarding chargeback credits from which the Trustee can identify Claims that have been fully or partially satisfied.

38. Moreover, as previously noted, a random comparison of the Claims shows a substantial amount of duplication among the Bond Claims, the VNB claims, and the Filed Claims. Additionally, the Trustee has identified other issues and discrepancies regarding the Claims. For example, some of the Claims: (a) are not submitted to the Bankruptcy Court on an official proof of claim form (Official Form B-10), (b) are unsigned, (c) fail to include copies of supporting documents, (d) fail to assert a claim amount, (e) are filed by one individual on behalf of several individuals, (f) fail to assert any priority (e.g., under Bankruptcy Code § 507(a)(7)), or (g) assert an incorrect priority (e.g., secured, domestic support obligations).

39. Finally, since there is so much duplication among the Claims, it will be nearly impossible to determine the specific source of funds (i.e., the available funds from the Bond

Amount or the available funds from the VNB Account, plus any distribution from the Estate at some later time) that should technically be used to pay each individual allowed Claim.

40. Based on the foregoing, the Trustee has determined that a new reconciliation process is needed to promote efficiency and expedite the delivery of funds to Unreimbursed Charter Participants. Absent such a reconciliation process, the Trustee anticipates that it will be nearly impossible to obtain appropriate records regarding chargebacks, for the Trustee to then be able to determine which Claims, if any, have already been satisfied, and for the Trustee to identify the most appropriate source of funds from which to pay each allowed Claim.

### III. PROPOSED CLAIM RECONCILIATION PROCESS

#### A. Consolidation of Funds.

41. Based on the duplication evident among the Claims, it will be nearly impossible to determine which specific source of funds is most appropriately used to reimburse in whole or in part any given claimant. Accordingly, the Trustee requests that this Court authorize him to consolidate the portion of the Bond Amount (i.e., $175,000) and the portion of the VNB Account (i.e., $75,000) that are available to pay Unreimbursed Charter Participants.

42. Consolidation of these sources of available funds will promote efficiency, and therefore a faster distribution. In addition, it is the fairest way to allocate funds among all Unreimbursed Charter Participants, many of whom filed multiple claims for the same monies lost.

#### B. The Claim Notice.

43. Based on the volume of claims asserted and the amount of time necessary to obtain all information required to perform a comprehensive review of all claims asserted, the Trustee proposes to provide all Charter Participants that have asserted Claims with a new, final

proof of claim form (i.e., the Claim Notice) which must be completed and returned to the Trustee within 30 days. The Claim Notice, if approved by this Court, will provide the Trustee with the amount of the Unreimbursed Charter Participants' final claims, net of all credits and/or chargebacks received by the claimant via his or her debit card or credit card. A copy of the proposed Claim Notice is attached hereto as **Exhibit A**.

44. The Claim Notice requests that claimants provide: (a) complete current contact information; (b) either (i) a specific claim amount, asserted as a priority claim pursuant to Bankruptcy Code § 507(a)(7) or (ii) confirmation that such claimant no longer asserts any claim, and (c) a signature, indicating that the information on the Claim Notice is true and correct and reflects all credits and chargebacks received by the claimant. The Claim Notice is designed to elicit all relevant information from claimants such that (a) returned Claim Notices will supersede any and all Claims previously asserted against any of the Bond, the VNB Account, and the Estate and (b) the returned Claim Notices will serve as the new, complete claims of any Unreimbursed Charter Participants.

45. If approved by this Court, the Trustee proposes to mail the Claim Notice to all Charter Participants that have asserted Claims against the Bond, the VNB Account, and/or the Estate (i.e., claimants that asserted Bond Claims, VNB Claims, and/or Filed Claims). The Trustee intends to mail the Claim Notice not more than ten (10) days from entry of Court order approving this Motion.

C. **Disallowance of Certain Claims.**

46. The Trustee further proposes that all Claims asserted by Charter Participants through the Extended Bar Date (defined below) against the Bond, the VNB Account, and/or the Estate shall be deemed <u>disallowed</u>. Since all such claimants will receive a copy of the Claim

Notice, and will have an opportunity to assert an amended or superseding claim pursuant to this new claim reconciliation process, the claimants will not be unduly prejudiced by the disallowance of their current claims.

C. **Extension of Claims Bar Date for Charter Participants Only.**

47. The Trustee acknowledges that Claims may have been filed by Charter Participants after the January 15, 2013 Chapter 7 Bar Date and that additional Claims may be filed in response to this Motion. In order to ensure that all Chapter Participants who late-file Claims, if any, receive the Claims Notice (and, therefore, an opportunity to participate in the new claim reconciliation process), the Trustee requests that this Court extend the Chapter 7 Bar Date for Charter Participants (only) to a date that is seven (7) days after entry of an order by this Court allowing this Motion (the "Extended Bar Date'). Any such late-filing Charter Participants will then be included in the mailing of the Claim Notice and be entitled to participate in the claim reconciliation process described herein.

WHEREFORE, the Trustee respectfully requests that this Court enter an Order:

    A.    Approving this Motion;

    B.    Approving the proposed Claim Notice attached hereto as **Exhibit A**;

    C.    Extending to seven (7) days after entry of such Order, the deadline by which Charter Participants (only) may file prepetition claims against the Estate;

    D.    Disallowing all Claims asserted by Charter Participants through the Extended Bar Date; and

E.  Granting the Trustee such other and further relief as is just.

Respectfully submitted,

JOSEPH H. BALDIGA,
CHAPTER 7 TRUSTEE

By his counsel,

/s/ Gina Barbieri O'Neil
Joseph H. Baldiga, BBO #549963
Gina Barbieri O'Neil, BBO #670596
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581
Phone: (508) 898.1501
Fax:    (508) 898.1502
Email: jbaldiga@mirickoconnell.com
Email: goneil@mirickoconnell.com

Dated: June 24, 2013

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | |
|---|---|
| In re:<br><br>SOUTHERN SKY AIR & TOURS, LLC<br>d/b/a DIRECT AIR,<br><br>Debtor. | Chapter 7<br>Case No. 12-40944-MSH |

### ORDER APPROVING MOTION OF CHAPTER 7 TRUSTEE FOR ORDER (I) APPROVING CHARTER PARTICIPANT CLAIM RECONCILIATION PROCESS, INCLUDING FORM OF NOTICE TO CHARTER PARTICIPANTS, (II) DISALLOWING CERTAIN CHARTER PARTICIPANT CLAIMS AND (III) EXTENDING CLAIM BAR DATE FOR CHARTER PARTICIPANTS

Upon the motion (the "Motion") filed on June 24, 2013 by Joseph H. Baldiga, Chapter 7 trustee of the bankruptcy estate (the "Estate") of Southern Sky Air & Tours, LLC d/b/a Direct Air (the "Debtor"), (I) Approving Charter Participant Claim Reconciliation Process, Including Form of Notice to Charter Participants, (II) Disallowing Certain Charter Participant Claims and (III) Extending Claim Bar date for Charter Participants; the Court finding that the Motion is in the best interest of the Estate; and no objection to the Motion having been filed or any such objection having been withdrawn or overruled;

NOW THEREFORE IT IS HEREBY ORDERED THAT:

1. The Motion is allowed;

2. The Claim Notice attached to the Motion as Exhibit A is approved;

3. The deadline for Charter Participants (as defined in the Motion) to file prepetition claims against the Estate is hereby extended to seven (7) days following entry of this Order (the "Extended Bar Date");

4. No later than ten (10) days after entry of this Order, the Trustee shall mail the Claim Notice to all Charter Participants that asserted Claims against the Bond, the VNB Account, and the Estate; and

5. All Claims (as defined in the Motion) filed through the Extended Bar Date are deemed disallowed.

Dated: _____, 2013

_____
The Honorable Melvin S. Hoffman
United States Bankruptcy Judge