UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | |
|---|---|
| In re:<br><br>SOUTHERN SKY AIR & TOURS, LLC<br>d/b/a DIRECT AIR,<br><br>Debtor. | Chapter 7<br>Case No. 12-40944-MSH |

**MOTION OF CHAPTER 7 TRUSTEE FOR ORDER (I) APPROVING
PROPOSED INTERIM DISTRIBUTION TO CHARTER PARTICIPANT CLAIMANTS,
(II) RESOLVING AND DISALLOWING CERTAIN OBJECTIONABLE
CHARTER PARTICIPANT CLAIMS AND (III) EXTENDING
DEADLINE FOR SUBMISSION OF COMPLETED CLAIM FORMS**

To the Honorable Melvin S. Hoffman, United States Bankruptcy Judge:

NOW COMES Joseph H. Baldiga, the Chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Southern Sky Air & Tours, LLC d/b/a Direct Air (the "Debtor"), and hereby moves (the "Motion") this Court to enter an Order (I) approving the Trustee's proposed interim distribution for all claims asserted by Charter Participants (defined below) against the Estate, (II) approving the Trustee's proposed treatment and/or disallowance of certain objectionable Charter Participant claims and (III) extending the deadline for submission of the Claim Notice (defined below). **Charter Participant claimants receiving a copy of this Motion should review <u>Exhibit C</u> attached hereto to determine whether this Motion includes an objection to claims filed by such claimant.**

In support of this Motion, the Trustee states as follows:

{Practice Areas/CORP/15008/14190/A2421913.DOC}

## I. BACKGROUND

### A. Bankruptcy Case Background.

1. On March 15, 2012 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

2. Prior to the Petition Date, the Debtor was a public charter operator (tour operator) with charter programs servicing various points in the United States. On March 13, 2012 (two days prior to the Petition Date), the Debtor ceased operation of its tour programs, stopped accepting flight reservations and terminated reservation capabilities on its web-site. The Debtor never resumed operations. By the time of these actions, the Debtor had previously accepted flight reservations from thousands of charter participants (the "Charter Participants"), who were then unable to fly with the Debtor, and who were left with claims for the monies lost in connection with the Debtor's cancelled flights and ceased operations and for expenses incurred due to the cancellations and the cessation of operations.

3. On April 11, 2012 (the "Conversion Date"), this Court converted the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.

4. On the Conversion Date, the United States Trustee appointed the Trustee as Chapter 7 trustee of this proceeding and he continues to serve as such.

### B. Sources of Funding for Charter Participant Reimbursement.

5. Since the Petition Date, thousands of Charter Participants have asserted claims against various sources for the monies lost in connection with the Debtor's cancelled flights. While a large number of those claimants have by now been reimbursed via their credit or debit cards, a number of those Charter Participants remain unreimbursed (the "Unreimbursed Charter

Participants"). As set forth previously, in detail, in the Claim Reconciliation Motion (as defined below), funds totaling $250,000 are immediately available for payment to Unreimbursed Charter Participants on account of their claims (the "Charter Participant Claim Funds"). The sources of the Charter Participant Claim Funds include (a) a portion ($175,000.00) of the proceeds of the bond (the "Bond") guaranteed by Platte River Insurance Company ("Platte River") and (b) a portion ($75,000.00) of funds that were in certain accounts (the "VNB Accounts") maintained by Valley National Bank ("VNB"). The Trustee is currently holding the Charter Participant Claim Funds pending completion of the Charter Participant claim reconciliation process and the distribution proposed herein. These sources of funds are discussed below.

i. **Platte River Insurance Company.**

6. On October 1, 2012, this Court approved a Stipulation and Release Between the Trustee and Platte River Regarding Public Charter Operator's Surety Bond (the "Bond Stipulation").

7. Pursuant to the terms of the Bond Stipulation, among other things, Platte River agreed to pay to the Trustee, on behalf of the Estate, the full $200,000.00 Bond Amount, in exchange for a full release of Platte River of any and all further liability under the Bond. In consideration of the turnover of the Bond Amount, the Trustee agreed to assume all responsibility relating to the administration and reconciliation of any and all claims asserted against the Bond in conjunction with the Trustee's normal claim administration process in the Debtor's bankruptcy Estate, including, without limitation (a) comprehensively reviewing and evaluating any and all potential claims to the Bond Amount, (b) determining whether such claims are invalid or duplicative, and (c) establishing which claims shall be allowed claims, including whether such claims are valid under 14 C.F.R. § 380.34. The Trustee further agreed to

require potential claimants against the Bond (the "Bond Claimants") to first exhaust all efforts to obtain a reimbursement from those claimants' credit card and debit card companies and, if unsuccessful, demonstrate evidence of the claimants' inability to recover payment from such credit card and debit card companies.

8.  The Bond Stipulation further provided that the Bond Amount shall become general property of the Estate pursuant to Bankruptcy Code § 541; provided, however, that if allowed claims against the Bond ("Bond Claims") total at least $175,000.00, then $175,000.00 of the Bond Amount shall be used to pay those allowed Bond Claims (*pro rata* as applicable), while the balance of the Bond Amount ($25,000.00) shall become general property of the Estate, to be administered by the Trustee in the normal course of his administration of the Estate.

### ii. The Valley National Bank Accounts.

9.  Prior to the Petition Date, the Debtor entered into Public Charter Depository Agreements (the "Depository Agreements") with various direct air carriers and Valley National Bank ("VNB"). Pursuant to the Depository Agreements, VNB agreed to act as depository bank within the meaning of 14 C.F.R. § 380 and the Debtor was required to deliver to VNB all amounts received from each Charter Participant in accordance with 14 C.F.R. § 380.34.

10.  As of the Petition Date, VNB maintained two accounts for and on behalf of Direct Air, a money market account and a DDA account (together, the "VNB Account"). As of the Petition Date, the VNB Account held a balance of approximately $1,016,926.00.

11.  On June 5, 2013, this Court entered an Order approving, among other things, an agreement between the Trustee, VNB, and certain other parties regarding the release by VNB of the funds in the VNB Account (the "VNB Agreement"). Pursuant to the VNB Agreement,

among other disbursements, VNB shall disburse from the VNB Account $250,000.00 to the Trustee and, of the $250,000.00, the amount of $75,000.00 shall be distributed to the Estate exclusively to partially or fully pay the Charter Participants who did not receive a full refund or chargeback, or who otherwise were not fully reimbursed in connection with money paid by them into the VNB Account, but only to the extent that such Charter Participants have a valid claim against the VNB Account.

12.     As further provided in the Claim Reconciliation Motion (defined below), the Court authorized the Trustee to consolidate Charter Participant Claim Funds consisting of the portion of the Bond Amount (i.e., $175,000.00) and the portion of the VNB Account (i.e., $75,000.00) to promote efficiency, a faster distribution, and the fairest way to allocate funds among all Unreimbursed Charter Participants, many of whom filed multiple claims for the same monies lost.

C.     **Charter Participants' Asserted Claims.**

13.     As discussed previously in the Claim Reconciliation Motion (as defined below), Charter Participants have asserted claims in multiple forums for monies lost in connection with the Debtor's cancelled flights: (i) claims have been asserted against the Bond (i.e., the Bond Claims); (ii) claims have been asserted against VNB and the VNB Account (the "VNB Claims"); and (iii) claims have been filed in this bankruptcy case in the form of proofs of claim (the "Filed Claims"; collectively with the Bond Claims and the VNB Claims, the "Claims").

14.     On June 24, 2013, the Trustee filed a Motion For Order (I) Approving Charter Participant Claim Reconciliation Process, Including Form of Notice to Charter Participants, (II) Disallowing Certain Charter Participant Claims, and (III) Extending Claim Bar Date For Charter Participants (the "Claim Reconciliation Motion") seeking an Order, among other things,

(a) approving the process for the reconciliation of all claims asserted by Charter Participants against (i) the Estate, (ii) the Bond guaranteed by Platte River, and (iii) certain accounts maintained by VNB, (b) approving the proposed Claim Notice and Mandatory Claim Form (the "Claim Notice") and setting forth requirements for mailing the Claim Notice to all known Charter Participants for completion and submission to the Trustee, and (c) providing for the pro rata distribution to Charter Participants.

15. On August 8, 2013, the Claim Reconciliation Motion was approved by this Court. A copy of the order approving the Claim Reconciliation Motion (the "Claim Reconciliation Order"), as well as a copy of the Court-approved Claim Notice (the "Claim Notice"), is attached hereto as **Exhibit A**.

**D.    The Chapter 7 Bar Date.**

16. This Court initially established September 11, 2012 as the deadline for creditors asserting pre-petition claims to file such claims against the Estate (the "Chapter 7 Bar Date").

17. Pursuant to 14 C.F.R. § 380.34(d) and the Bond, claimants were required to file any claims under the Bond within 60 days from the date of a claimant's cancelled return flight. Upon information and belief, prior to the Petition Date, the Debtor scheduled operating flights through approximately November 16, 2012. Accordingly, it is possible that Claims could have been timely asserted against the Bond through January 15, 2013.

18. Based on the foregoing, the Trustee filed a motion (the "Bar Date and Agreement Motion") on September 10, 2012, in which he requested, among other things, that the Court extend the Chapter 7 Bar Date for Charter Participants (only) to file pre-petition claims to January 15, 2013.

19. The Court approved the Bar Date and Agreement Motion by Order dated October 11, 2012, thereby extending the Chapter 7 Bar Date to January 15, 2013 for Charter Participants

(only) to file their pre-petition claims. Subsequently, as provided by the Claim Reconciliation Motion Order, the deadline for Charter Participants to file prepetition claims against the Estate was extended to seven (7) days following entry of the Claim Reconciliation Motion Order (i.e., August 15, 2013) (the "Extended Chapter 7 Bar Date").

20.  Notwithstanding the Extended Chapter 7 Bar Date, the Trustee has previously represented to this Court that he would agree to permit the continued filing of proofs of claim by Charter Participants until an undetermined date certain, in order to maximize the pool of eligible Charter Participants otherwise entitled to participate in any distribution.

## II. THE CHARTER PARTICIPANT CLAIM NOTICE

21.  As discussed previously, since the Petition Date, Charter Participants have filed Claims against the Bond, the VNB Account and the Estate. During the Trustee's initial efforts to gather and reconcile the Claims pursuant to the terms of the Claim Reconciliation Motion, Platte River provided the Trustee with copies of all Bond Claims, VNB provided the Trustee with a list of all VNB Claims, and the Trustee obtained copies of all Filed Claims from the Bankruptcy Court. Based on all claim information obtained by the Trustee from the Bankruptcy Court, and claim information provided to the Trustee by Platte River and VNB, the Trustee created a master database of all claims asserted against the Bond, the VNB Account and the Estate, including all consumer and non-consumer Filed Claims (the "Master Database"). The Master Database contained, among other things, claimant name, contact information, if known, and claim amount. The total number of Claims on the Master Database, including non-consumer and duplicate claims, is approximately 5,922.

A.  **Service of the Claim Notice to Charter Participants.**

22. Pursuant to the Claim Reconciliation Motion Order, the Trustee began preparations to mail the Court-approved Claim Notice to all Charter Participants who asserted Claims against the Bond, the VNB Account, and the Estate.

23. As provided in the Claim Reconciliation Motion, the Court-approved Claim Notice is intended to elicit all relevant information from Claimants such that (a) completed and returned Claim Notices will supersede any and all claims previously asserted against any of the Bond, the VNB Account, and the Estate and (b) the completed and returned Claim Notices will serve as the new, complete claims of any Unreimbursed Charter Participants. The completed Claim Notice, once returned to the Trustee, will also provide the Trustee with the amount of the Charter Participant's final claim, net of all credits and/or chargebacks received by the claimant via his or her debit card or credit card.

24. The Claim Notice set the deadline for submission of the completed Claim Notice to the Trustee as September 25, 2013 (the "Claim Notice Deadline").

25. As expected, a review of the Master Database indicated a substantial amount of duplication among the asserted Bond Claims, the VNB claims, and the Filed Claims. Additionally, the Trustee identified other issues regarding the Claims comprising the Master Database. For example, (a) some Charter Participants asserted multiple claims that provided the same mailing address for the Charter Participant on each of the Claims, (b) some Charter Participants asserted multiple claims that provided different mailing addresses for the Charter Participant on each of the Claims, (c) some Charter Participants asserted multiple claims in differing amounts, and (d) some Charter Participants asserted claims on behalf of themselves as well as other claimants (for example, school groups or family members). In addition, many of

the Charter Participants that filed Claims prior to the issuance of the Claim Notice have since been reimbursed in whole, or in part, by their credit card or debit card companies, since thousands of such reimbursement requests were processed in the months after the Petition Date.

26. Based on the amount of duplication evident on the Master Database, the Trustee created a second database for the purpose of mailing the Claim Notice to all Charter Participant claimants and to record the completed Claim Notices once they were returned to the Trustee (the "Claim Notice Database").

27. The creation of the Claim Notice Database allowed the Trustee to be as cost-efficient as possible by not mailing the Claim Notice to duplicate addresses or to claimants without contact information. After conducting an extensive review of the Claim Notice Database, the following Claims were eliminated from the Claim Notice Database: (a) non-consumer Filed Claims, (b) those claims without any contact information and (c) those claims with duplicate addresses. If more than one claim was asserted by a Charter Participant, but the claims provided different addresses, the Trustee included all known addresses for that particular claimant in the Claim Notice Database.

28. The Trustee identified twenty-eight (28) claimants on the Master Database that asserted VNB Claims but did not include any contact information. To the extent possible, the Trustee conducted an on-line search to locate contact information. In addition, the Trustee contacted counsel for VNB to determine if any contact information was available in their records for the twenty-eight (28) claimants. Ultimately, the Trustee was unable to mail the Claim Notice to those twenty-eight (28) claimants with no contact information. Those claimants are identified on **Exhibit B** attached hereto.

29. Ultimately, on August 15, 16, 19, 20 and 21, 2013, the Trustee caused to be mailed to all Charter Participants that asserted Claims against the Bond, the VNB Account, and/or the Estate, and that were listed on the Claim Notice Database, a copy of the Claim Notice, which included the Claim Notice Deadline of September 25, 2013. The Claim Notice was mailed to approximately 4,539 Charter Participants.

B. **Completed Claim Notices Received by Trustee.**

30. Upon receipt by the Trustee of the completed Claim Notices, the Trustee reviewed the claims for current contact information, claim amount and supporting documentation, compared the information provided in the completed Claim Notice to the Claim Notice Database, and entered the current information into the Claim Notice Database. In some instances, the Claim Notice was returned without the amount filled in and the claimant referred the Trustee to the previously filed claim and in some instances the claim amount was not filled in and the claimant made no mention of a previously filed claim. In those instances, the Trustee entered the amount of the Charter Participant's previously filed claim. The Trustee and his staff responded to hundreds of inquiries from claimants via telephone and electronic mail requesting confirmation of the Trustee's receipt of the claims and requests for information as to the timing and amount of the distribution.

31. The Trustee received approximately 1,922 completed Claim Notices via the United States Postal Service, facsimile transmission and electronic mail, in the aggregate amount of $944,754.06.

32. Additionally, approximately 63 envelopes were returned to the Trustee via the United States Postal Service and marked "Return to Sender - Unable to Forward" (the "Returned Claim Notices"). Upon receipt of the Returned Claim Notices, the Trustee caused the Master

Database, Claim Notice Database and the respective claim to be reviewed for additional contact information for the Returned Claim Notices. Of the Returned Claim Notices, electronic mail addresses were located for approximately twenty-four (24) of the Returned Claim Notices and were re-sent via electronic mail, of which delivery failed to two (2) electronic mail addresses. Additionally, numerous Claim Notices were returned to the Trustee via the United States Postal Service with a forwarding address noted on the envelope. In those instances, the Claim Notice Database was updated as to the claimant's current address and the Claim Notice was re-sent to those claimants at the forwarding address provided.

33.    In addition, two (2) Charter Participants returned incomplete claims to the Trustee via facsimile transmission (the "Incomplete Faxed Claims"). Despite clear instructions in the Claim Notice, both Incomplete Faxed Claims contained the signature page *only* and the signatures on both Incomplete Faxed Claims were illegible. Since the Incomplete Faxed Claims were submitted without a cover sheet or the first page of the Claim Notice, the Incomplete Faxed Claims included no claim amounts or contact information. The signature page of one of the Incomplete Faxed Claims contained an originating facsimile number imbedded at the top of the page and, in an attempt to identify the claimant and request additional information, the Trustee sent a fax to the originating fax number, addressed to "To Whom It May Concern" requesting that the complete claim form be forwarded to the Trustee by the Claim Notice Deadline. The second Incomplete Faxed Claim did not contain an originating fax number. Additionally, since the signatures on both Incomplete Faxed Claims are illegible, the Trustee is unable to identify the claimant on either the Master Database or Claim Notice Database and request additional information via regular mail.

C. **New Claimants.**

34. Included in the approximately 1,922 completed Claim Notices received by the Trustee were approximately 13 timely-filed, completed Claim Notices, in the aggregate amount of $4,477.00, from creditors that were not included in either the Master Database or the Claim Notice Database (the "New Claimants"). On September 19, 2013, six days prior to the Claim Notice Deadline, an on-line news article was published on MyrtleBeachOnline.com which provided an update as to the status of the Debtor's bankruptcy case. The writer consulted with the Trustee as to the current status and informed its readers, among other things, of the pending Claim Notice Deadline. The Trustee asserts that it is possible numerous creditors that had not yet submitted claims were prompted to do so by the news article. The Trustee has reviewed the completed Claim Notices submitted by the New Claimants, determined the claims asserted by the New Claimants to be valid and proposes that the Claim Notices submitted by the New Claimants be allowed.

D. **Late Claims.**

35. As discussed previously, and as indicated on the Court-approved Claim Notice (see, Exhibit A), the Claim Notice Deadline was set as September 25, 2013. Subsequent to the Claim Notice Deadline, the Trustee continued to receive completed Claim Notices from Charter Participants and New Claimants based on various reasons. Many of the claimants indicated that they were out of town and did not receive the Claim Notice until their return after the Claim Notice Deadline and many others offered various medical excuses. The Trustee has received approximately 55 late claims from Charter Participants in the aggregate amount of $32,993.83 and 1 late claim from a New Claimant in the amount of $738.80.

36. Notwithstanding the current Claim Notice Deadline, and in an effort to be overly inclusive, the Trustee proposes that the Claim Notices received by the Trustee from Charter Participants and New Claimants after the Claim Notice Deadline (i.e., September 25, 2013), but on or before to November 8, 2013, shall be deemed allowed as timely-filed Claim Notices. Any Claim Notice received after November 8, 2013 (more than six weeks after the original Claim Notice Deadline) shall be disallowed as untimely filed, without need for further objection or notice by the Trustee.

### III. OBJECTIONABLE CLAIMS.

37. Of the completed Claim Notices received by the Trustee, the following four (4) Charter Participants asserted completed Claim Notices to the Trustee that the Trustee has reviewed and determined to be objectionable (the "Objectionable Claims"):

**A.   Steven Saunders.**

38. On September 27, 2013, after the Claim Notice Deadline, Steven Saunders ("Mr. Saunders") submitted a completed Claim Notice to the Trustee in the amount of $5,000.00 via electronic mail (the "Saunders Claim"). The Saunders Claim asserted that a portion of the claim amount includes a membership fee for the Debtor's "Friends and Family" program in the amount of $490.00. However, the Saunders Claim did not include any back-up information and, upon review of the Master Database and Claim Notice Database, the Trustee determined that Mr. Saunders had previously asserted a claim with the Bankruptcy Court (Claim No. 1594) in the amount of $847.90. Claim No. 1594 included copies of two confirmation/itinerary sheets in support of the $847.90 claim amount. Upon receipt of the Saunders Claim, a representative of the Trustee contacted Mr. Saunders via electronic mail to request additional back-up information to account for the discrepancy in the claim amounts. Mr. Saunders responded via electronic mail

that he listed one flight only on the claim, but that he had purchased additional tickets through the Debtor's Friends and Family award program. Mr. Saunders indicated that he would provide the requested information. To date, the Trustee has not yet received any additional back-up documents from Mr. Saunders to substantiate the claim amount of $5,000.00. Based on the foregoing, the Trustee has determined that the Saunders Claim is overstated in amount and lacks sufficient documentation to support the Saunders Claim. Therefore, the Trustee requests that the Saunders Claim be allowed as a timely-filed claim in the amount of $847.90.

**B.    Robert N. Maki.**

39.    Robert N. Maki ("Mr. Maki") submitted a completed Claim Notice to the Trustee in the amount of $1,492.30 (the "Maki Claim"). The Maki Claim asserted, among other amounts, an amount of $1,000.00 for Mr. Maki's time and anxiety. On October 3, 2013, via electronic mail, a representative of the Trustee requested that Mr. Maki provide an amended Claim Notice to exclude the $1,000.00 claim for time and anxiety. To date, the Trustee has not yet received an amended Claim Notice from Mr. Maki. Based on the foregoing, the Trustee has determined that the Maki Claim is overstated in amount. Therefore, the Trustee requests that the Maki Claim be allowed as a timely-filed claim in the amount of $492.30.

**C.    Annette L. Tate.**

40.    Annette L. Tate ("Ms. Tate") submitted a completed Claim Notice to the Trustee in the amount of $2,500.00 on behalf of herself, Nicholas J. Tate and Christopher J. Tate (the "Tate Claim"). The Tate Claim did not include any back-up information. The Trustee contacted Ms. Tate via telephone and Ms. Tate indicated that she would provide copies of documents to support the claim amount. Upon review of the Master Database and Claim Notice Database, the Trustee determined that Ms. Tate previously asserted a Bond Claim in the amount of $338.99

and a VNB Claim in the amount of $472.50. Subsequent attempts to reach Ms. Tate via telephone in follow-up to the request for back-up information were unsuccessful. On November 5, 2013, a representative of the Trustee spoke to Ms. Tate and again requested copies of documents in support of the Tate Claim. In response to the request, Ms. Tate forwarded a copy of a prior e-mail she sent to the Trustee, at an incorrect e-mail address, in which she asserted a claim amount of $1,185.00, plus an unknown amount for additional expenses related to hotels, meals, transportation and luggage. Ms. Tate still has not provided copies of documents in support of her claim and the Trustee has determined that the Tate Claim is overstated in amount and lacks sufficient supporting documentation. Therefore, the Trustee requests that the Tate Claim be allowed as a timely-filed claim in the amount of $472.50.

**D.     Mary Kirby.**

41.    Mary Kirby ("Ms. Kirby") submitted a completed Claim Notice to the Trustee in the amount of $600.00 (the "Kirby Claim"). Ms. Kirby indicated on the Kirby Claim that she had received a refund on her credit card, but that the refund could possibly be withdrawn if a settlement is reached between her credit card company and the Debtor. Therefore, the Trustee requests that the Kirby Claim be disallowed in full on the basis that Ms. Kirby has already received reimbursement for the Kirby Claim.

42.    The Objectionable Claims are listed on the attached **Exhibit C**, including the Trustee's recommendations regarding the allowance of each Objectionable Claim.

### IV.    PROPOSED DISTRIBUTION

43.    As discussed previously herein, and in the Claim Reconciliation Motion, consolidated funds totaling $250,000.00 are immediately available for payment to Unreimbursed Charter Participants on account of their claims (i.e., the Charter Participant Claim Funds).

44.     The Trustee has tracked and accounted for all completed Claim Notices submitted to the Trustee by Charter Participants and New Claimants and determined that, subject to approval of the extension of the Claim Notice Deadline (as requested below) and approval of the Trustee's requested treatment of the Objectionable Claims (as discussed previously), there are a total of 1,922 claims, in the aggregate amount of $944,754.06, eligible to participate in the distribution, resulting in an interim distribution of 26% of allowed Charter Participant Claims. The Trustee has further determined that all of the Charter Participant claims, including those submitted by the New Claimants, are clearly intended as priority claims pursuant to 11 U.S.C. § 507(a)(7) and should be allowed as such.

45.     Therefore, subject to Bankruptcy Court approval, and based on the Charter Participant Claim Funds available for distribution to allowed claims of Charter Participants and New Claimants, and further based on the objections and allowances proposed herein, the Trustee seeks authority to distribute the Charter Participant Claim Funds, on a pro rata basis, to allowed Charter Participant claims. A copy of the Trustee's proposed distribution is attached hereto as **Exhibit D.** [1]

46.     Despite the Trustee's normal practice of not sending checks of less than $5.00 to creditors, in this case, the Trustee will send checks to all allowed Charter Participant and New Claimant claims regardless of the amount. Additionally, the Trustee proposes to enclose a transmittal letter with each distribution check, a copy of which is attached hereto as **Exhibit E.**

---

[1]  A copy of the proposed distribution (approximately 88 pages long) shall be served on all parties entitled to receive notice in this bankruptcy case via the Bankruptcy Court's electronic case filing system (ECF). Otherwise, parties wishing to receive a copy of the proposed distribution may request a copy from the undersigned.

## V. EXTENSION OF DEADLINE FOR SUBMISSION OF COMPLETED CLAIM NOTICES

47. The Trustee acknowledges that he has continued to receive and accept completed Claim Notices submitted by Charter Participants and New Claimants after the Claim Notice Deadline (i.e., September 25, 2013). In order to ensure that as many Charter Participants and New Claimants as possible are allowed to submit Claim Notices and participate in the distribution described herein, the Trustee requests that this Court extend the Claim Notice Deadline for Charter Participants and New Claimants to November 8, 2013 (the "Extended Claim Notice Deadline").

48. Additionally, the Trustee anticipates that a few additional Claim Notices may be received after the Extended Claim Notice Deadline. In order to maintain the proposed distribution attached hereto as **Exhibit D**, and in consideration of the Trustee's acceptance of Claim Notices received from the Claim Notice Deadline (i.e., September 25, 2013) through the Extended Claim Notice Deadline (i.e., November 8, 2013), a grace period of 44 days, the Trustee requests that any Claim Notices received by the Trustee after November 8, 2013 be deemed disallowed, without need for further objection or notice by the Trustee.

49. The Trustee reserves the right to object to any claims asserted against the Estate or the Trustee for any reason, except as expressly provided herein.

WHEREFORE, the Trustee respectfully requests that this Court enter an Order:

    A.    Approving this Motion;

    B.    Approving the proposed distribution attached hereto as **Exhibit D**;

    C.    Extending to November 8, 2013 the deadline by which Charter Participants and New Claimants may have submitted completed Claim Notices;

D. Allowing completed Claim Notices timely submitted by New Claimants;

E. Allowing any completed Claim Notices submitted by Charter Participants and New Claimants on or before November 8, 2013;

F. Approving the Trustee's recommended treatment of the Objectionable Claims attached hereto as **Exhibit C**;

G. Disallowing any Claim Notices received by the Trustee after November 8, 2013, without the need for further objection or notice by the Trustee; and

H. Granting the Trustee such other and further relief as is just.

Respectfully submitted,

JOSEPH H. BALDIGA,
CHAPTER 7 TRUSTEE

By his counsel,

/s/ Joseph H. Baldiga
Joseph H. Baldiga, BBO #549963
Gina Barbieri O'Neil, BBO #670596
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581
Phone: (508) 898.1501
Fax: (508) 898.1502
Email: bankrupt@mirickoconnell.com
Email: goneil@mirickoconnell.com

Dated: November 12, 2013

{Practice Areas/CORP/15008/14190/A2421913.DOC}    18

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | |
|---|---|
| **In re:**<br><br>SOUTHERN SKY AIR & TOURS, LLC<br>d/b/a DIRECT AIR,<br><br>Debtor. | Chapter 7<br>Case No. 12-40944-MSH |

## ORDER APPROVING MOTION OF CHAPTER 7 TRUSTEE FOR ORDER (I) APPROVING PROPOSED INTERIM DISTRIBUTION TO CHARTER PARTICIPANT CLAIMANTS, (II) RESOLVING AND DISALLOWING CERTAIN OBJECTIONABLE CHARTER PARTICIPANT CLAIMS AND (III) EXTENDING DEADLINE FOR SUBMISSION OF COMPLETED CLAIM NOTICES

Upon the motion (the "Motion") filed on November 12, 2013 by Joseph H. Baldiga, Chapter 7 trustee of the bankruptcy estate (the "Estate") of Southern Sky Air & Tours, LLC d/b/a Direct Air (the "Debtor"), For Order (I) Approving Proposed Interim Distribution to Charter Participant Claimants, (II) Resolving and Disallowing Certain Objectionable Charter Participant Claims and (III) Extending Deadline for Submission of Completed Claim Notices; the Court finding that the Motion is in the best interest of the Estate; and no objection to the Motion having been filed or any such objection having been withdrawn or overruled;

NOW THEREFORE IT IS HEREBY ORDERED THAT:

1. The Motion is allowed;

2. The proposed distribution and proposed transmittal letter attached to the Motion as Exhibits D and E, respectively, are approved;

3. The deadline by which Charter Participants (as defined in the Motion) and New Claimants (as defined in the Motion) may have submitted completed Claim Notices (as defined in the Motion) is extended to November 8, 2013;

{Practice Areas/CORP/15008/14190/A2421913.DOC}

4. Claim Notices timely submitted by New Claimants are hereby deemed allowed;

5. Claim Notices submitted by Charter Participants and New Claimants on or before November 8, 2013 are allowed, subject to any adjustments by the Trustee and approved by this Court;

6. Any Claim Notices received by the Trustee after November 8, 2013 are hereby disallowed in full, without the need for further objection or notice by the Trustee; and

7. The Trustee's recommended treatment of the Objectionable Claims (as defined in the Motion) as attached to the Motion as <u>Exhibit C</u> is approved.

Dated: _____, 2013

_____
Honorable Melvin S. Hoffman
United States Bankruptcy Judge