**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)**

| | |
|---|---|
| **In re:**<br><br>**SOUTHERN SKY AIR & TOURS, LLC d/b/a DIRECT AIR,**<br><br>    **Debtor.** | **Chapter 7**<br>**Case No. 12-40944-MSH** |

**LIMITED OBJECTION OF MERRICK BANK CORPORATION TO THE CHAPTER 7 TRUSTEE'S MOTION FOR AN ORDER (I) APPROVING PROPOSED REVISED INTERIM DISTRIBUTION TO CHARTER PARTICIPANT CLAIMANTS, (II) RESOLVING AND DISALLOWING CERTAIN OBJECTIONABLE CHARTER PARTICIPANT CLAIMS AND (III) EXTENDING DEADLINE FOR SUBMISSION OF COMPLETED CLAIM FORMS AND THE TRUSTEE'S SUPPLEMENT THERETO**

To the Honorable Melvin S. Hoffman, United States Bankruptcy Judge:

NOW COMES Merrick Bank Corporation ("Merrick"), and hereby files this limited objection (the "Objection") in response to the Motion (the "Motion") [ECF No. 408] filed by Joseph H. Baldiga, the chapter 7 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Southern Sky Air & Tours, LLC d/b/a Direct Air (the "Debtor") in the above-captioned bankruptcy case (the "Bankruptcy Case") for an order (I) approving his proposed interim distribution to charter participant claimants, (II) resolving and disallowing certain objectionable claims and (III) extending deadline for submission of completed claim forms, as supplemented and modified by the Trustee's Supplement (the "Supplement") thereto [ECF No. 424].[1] The Court has set the Motion for hearing (the "Hearing") at January 9, 2014 at 2:00 pm.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion and, where applicable, the Trustee's Claims Reconciliation Motion [ECF No. 360].

1837959_7

## **MERRICK'S LIMITED OBJECTION**

1. Merrick has no objections as such to the claims reconciliation process (the "Claims Reconciliation Process") commenced by the Trustee with his Claims Reconciliation Motion [ECF No. 360]. Merrick also does not object to the Trustee's distributing the designated $250,000 in Charter Participant Claim Funds to genuinely Unreimbursed Charter Participants.

2. Merrick, however, makes the following observations and criticisms: first, the distribution will almost certainly include specifically-identifiable Charter Participants seeking reimbursement for payments made for outlays, such as for costs of "cover" (*i.e.*, amounts paid to others than the Debtor, such as, for example, hotel charges and alternate transportation charges); and, second, the distribution will also almost certainly include specifically-identifiable Charter Participants who have already been fully reimbursed, through making Chargebacks to their credit or debit cards, for payments made to Direct Air.

3. Although Merrick takes no stance as to the disposition of the Charter Participant Claim Funds, it sees these two outcomes as unfortunate because they have adverse impacts that are at least twofold: first, they drive down the dividend that genuinely Unreimbursed Charter Participants will receive (by, respectively, vesting priority to claims that ought not receive such priority, and by allowing outright duplicative claims). Second, and assuming future distributions may be available, these unfortunate outcomes steer monies away from deserving priority claimants whose claims must be paid in full before general unsecured claimants receive anything; general unsecured creditors thereby are prejudiced.

4. For the foregoing reasons, Merrick does hereby object to the limited extent that the Trustee would Allow, and vest Section 507(a)(7) priority to, Charter Participant claims where any future distributions from the Debtor's Estate are concerned.

1837959_7

5.     Merrick has historically expressed concerns that flawed determinations made in the present Claims Reconciliation Process will be carried forward to distributions from the Estate.  See Merrick Limited Objection ("Process Objection") [ECF No. 375] to Claims Reconciliation Motion at ¶¶ 9-13 ("To the extent that the Motion and relief to be granted by the Court on the Motion extends initially only to the right of, and Section 507(a)(7) priority held by, Charter Participants to the foregoing $250,000 and does not apply irrevocably to the remainder of the Estate, Merrick does not object to the relief presently sought by the Trustee.").

6.     For example, in its Process Objection, Merrick had expressed concerns, among other things, about "costs of cover" receiving Section 507(a)(7) priority, noted its attempt to add questions to the Claim Form meant to "flag" such claims, see id. at ¶¶ 6-7, and reserved all rights as to the Allowance and priority to be accorded to Charter Participants claims where subsequent distributions from the Estate were concerned. See id. at ¶¶ 14-16.[2]

7.     Another concern arose after the Trustee received some 1,922 executed Claim Forms submitted by Charter Participants (which Merrick has not had a chance to review) in response to the Claims Notice and filed the present Motion, *i.e.*, that a potentially significant portion of the Claim Forms had been submitted by Charter Participants already reimbursed through their having received Chargebacks to their credit or debit cards.

8.     Merrick sought to resolve this concern with the Trustee amicably and informally, and the intended initial stage of these efforts led to the activities described by the Trustee in

---

[2] As a consequence of the Court's August 7, 2013 hearing on the Claims Reconciliation Motion, the Claim Form was indeed further revised to include the precise kind of questions previously advocated by Merrick, *i.e.*, two "check the box" questions, one of which asked if "any portion of your claim includes any amounts paid to any party other than the Debtor (Direct Air), please check this box and provide details."  The Trustee, however, has "further determined that all of the Charter Participant claims, including those submitted by the New Claimants, are clearly intended as priority claims pursuant to 11 U.S.C.§ 507(a)(7) and should be allowed as such." Mot. at ¶ 44.  Is the Trustee implicitly making the dubious assertion that none of the 1,922 Charter Participant had "checked the box" on the Claim Forms submitted in response to the Claims Notice?

1837959_7

Paragraph 4 of his Supplement filed on December 18, 2013 [ECF No. 418], culminating in Merrick's sharing information with the Trustee including, but not limited to, data pertaining to 101 specific Charter Participant claims. That data showed that 94 of those Charter Participants submitting Claim Forms (totaling $43,263.94) had already been fully reimbursed by Merrick via Chargeback in the exact amount (to the penny) sought in the Claim Forms, thereby establishing duplicative claims, to a near absolute certainty. (The remaining seven of the 101 Charter Participants submitted Claim Forms that were not quite exactly identical to-the-penny for received Chargebacks, but nearly so, likewise rendering them also almost certainly duplicative.)

9.  Merrick thereby proposed that the Trustee modify his approach to the present Motion such that the Trustee would object at a minimum to such facially duplicative claims, at the very least requiring such Charter Participants to produce proofs sufficient to overcome Merrick's data.

10. Instead, the Trustee took the expedient position that he would prefer to take the 101 Charter Participants, who are either mistakenly or possibly even intentionally pursuing duplicative claims, at their unsupported word rather than challenging them further.[3] See, e.g., Supp. at ¶ 4. Presumably, the Trustee's position to some degree reflects a concern over costs.

11. Nevertheless it is regrettable that the Trustee would virtually ignore Merrick's data categorically. Moreover, notwithstanding the Trustee's contrary innuendo, Merrick avers that its data is unassailable and that there is any number of alternate ways the Trustee could have proceeded appropriately.

---

[3] That the 101 Charter Participants had checked the appropriate box on the Claim Form for maintaining their claims (as supposedly borne out by the Trustee's sampling a third of the 101 Charter Participants via telephone, who reaffirmed that they had received no refund via Chargeback) apparently comprises sufficient proof in and of itself for overcoming Merrick's information. Only one additional Charter Participant claimant now faces Disallowance, and only because she was the sole claimant contacted by the Trustee who apparently admitted to having received some form of Chargeback, i.e., that her charge had been "suspended." (Supp. at ¶ 4.)

4

12. Merrick's analysis of the total body of information available to it has led Merrick to conclude that the combined amount of claims that should be either disallowed, or allowed but denied priority treatment, is $174,134.06 (or 18.4% out of the Trustee's proposed total allowance of $944,250.06), affecting 337 specific claims (or 17.5% of the Claim Forms), inclusive of the 101 claims referenced above. Because the Trustee has seemed unreceptive to interposing any additional objections at this juncture, Merrick's full analysis as to the remaining 236 claims (337 minus the 101) has not been shared with the Trustee.

13. As with the "check the box" question issue, Merrick has endeavored to give the Trustee cost-effective tools that could have led to the fairest possible distribution of the Charter Participant Claim Funds, which, perhaps more importantly, would create the fairest and soundest foundation for the Trustee's ultimate determination of whether Charter Participant claims ought to be Allowed or Disallowed, in whole or in relevant part, and with or without (as warranted in relevant part) Section 507(a)(7) priority, as to future distributions from the Estate.

14. That the Trustee has chosen to make little or no use of such tools at the present time also seems regrettable. But Merrick again defers to the Trustee's business judgment as to the distribution of the Charter Participant Claim Funds. See, e.g., Process Objection at ¶¶ 9-12.

15. Despite the Trustee's ongoing assurances to Merrick that Merrick could reserve all of its rights and object to any Charter Participant claims (which the Supplement does not mention), the draft form of Order does not appear to explicitly preserve Merrick's rights.

16. Merrick therefore continues to reserve all of its rights as to the Trustee's future distributions from the Estate (after the Interim Distribution sought herein), including, especially in light of the foregoing, its right to re-open the Charter Participant claims process, which would minimally include Merrick receiving a reasonable opportunity (but no obligation) to review the

5

Claim Forms submitted by Charter Participants and to thereafter file one or more omnibus objections to such claims before such claims are Allowed and the Charter Participants receive further distributions from the Estate (after the Interim Distribution sought herein).

### Conclusion

In light of the foregoing, Merrick is making this Limited Objection to the Motion, as modified by the Supplement, without prejudice to its filing any Objections to any claims. Merrick therefore respectfully asks that, prior to the Court entering same, that the Order granting the Motion be modified to make clear that all of Merrick's rights to review the Claim Forms and to file one or more omnibus claims objections to any claims filed by Charter Participants are preserved as to any future distributions to be made by the Trustee from the Debtor's Estate.

        Respectfully submitted,

        MERRICK BANK CORPORATION

        By its counsel,

          /s Timothy T. Brock
        Timothy T. Brock
        Daniel G. Gurfein
        Satterlee Stephens Burke & Burke LLP
        230 Park Avenue, 11th Floor
        New York, NY 10169
        Phone:  (212) 818-9200
        Fax:  (212) 818-9607
        Email:  tbrock@ssbbcom
        Email:  dgurfein@ssbb.com

Dated: January 7, 2014

## CERTIFICATE OF SERVICE

IT IS CERTIFIED that the foregoing document was filed this 7th day of January, 2014 through the ECF filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s Timothy T. Brock

1837959_7