UNITED STATES BANKRUPTCY COURT
DICTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | |
|---|---|
| In re;<br><br>SOUTHERN SKY AIR & TOURS, LLC d/b/a DIRECT AIR<br><br>Debtor.<br><br>MERRICK BANK CORPORATION,<br><br>Plaintiff,<br><br>v.-<br><br>JOSEPH H. BALDIGA, as TRUSTEE OF THE ESTATE OF SOUTHERN SKY AIR & TOURS, LLC d/b/a DIRECT AIR,<br><br>Defendant. | **Chapter 7**<br>**Case No. 12-40944-MSH**<br><br><br><br>**ADVERSARY PROCEEDING NO.** |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Merrick Bank Corporation ("Merrick") brings this action against Defendant Joseph H. Baldiga, as trustee of the bankruptcy estate of Southern Sky Air & Tours, LLC d/b/a Direct Air (the "Debtor") (the "Estate") seeking a declaration that prosecution by Merrick of certain claims belonging to Merrick against Valley National Bank ("VNB") does not violate the automatic stay applicable to the Estate.

### Parties, Jurisdiction and Venue

1. Plaintiff Merrick Bank Corporation is a corporation organized and existing under the laws of the state of Utah with its principal place of business in South Jordan, Utah.

1

2. Defendant Joseph H. Baldiga is the duly appointed Chapter 7 trustee (the "Trustee") of the Estate.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).

4. Venue is proper for this adversary proceeding pursuant to 28 U.S.C. § 1409.

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## Bankruptcy Case Background

6. On March 15, 2012 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

7. Prior to the Petition Date, the Debtor was a public charter operator (tour operator) with charter programs servicing various points in the United States. On March 13, 2012 (two days prior to the Petition Date), the Debtor ceased operation of its tour programs, stopped accepting flight reservations and terminated reservation capabilities on its web-site. The Debtor never resumed operations. By the time of this cessation of operations, the Debtor had previously accepted flight reservations from thousands of its customers, denoted as "charter participants" (the "Charter Participants") by the applicable federal regulations, who were then unable to fly with the Debtor, and who were left with claims for the monies lost in connection with the Debtor's cancelled flights and ceased operations.

8. On April 11, 2012 (the "Conversion Date"), this Court converted the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.

9. On the Conversion Date, the United States Trustee appointed the Trustee as Chapter 7 trustee of this proceeding and he continues to serve as such.

10. As a public charter operator, the Debtor's operations were governed by, among other things, regulations promulgated by the United States Department of Transportation

2

("DOT"), 14 C.F.R. Part 380.  Pursuant to 14 C.F.R. § 380.34, one of the Debtor's obligations was compliance with regulations regarding security and depository agreements.

11.     Pursuant to 14 C.F.R. § 380.34, public charter operators may, in lieu of furnishing a certain type of security agreement, elect to: (a) furnish a surety bond, a surety trust agreement, or a letter of credit in the amount of at least $10,000 times the number of flights, except that the amount need not exceed $200,000; and (b) enter into a three party agreement with the company directly engaging in the operation of aircraft (known as the "direct air carrier") and a designated bank, the terms of which shall provide that "all payments by charter participants paid to charter operators… shall be deposited with and maintained by the bank subject to […certain…] conditions[.]"

12.     Prior to the Petition Date, the Debtor entered into Public Charter Depository Agreements (the "Depository Agreements") with various direct air carriers and VNB.

13.     Pursuant to the Depository Agreements, VNB agreed to act as depository bank within the meaning of 14 C.F.R. § 380.  The Debtor was required to deliver or cause to be delivered to VNB all amounts received from each Charter Participant in accordance with 14 C.F.R. § 380.34.  Subject to certain additional terms, VNB agreed to accept such payments for deposit.  VNB agreed to maintain a separate account for each charter, flight, or rotation, but was permitted to use deposited funds in its general banking business.

14.     Federal regulations govern further disbursement of funds after payments from Charter Participants have been deposited into depository banks, such as VNB.  Pursuant to 14 C.F.R. § 380.34(b)(2)(ii) and 14 C.F.R. § 212.8(a), depository banks are permitted to pay the direct air carrier, by deposit into such carrier's DOT-regulated escrow account, for the charter price for transportation no earlier than 60 days prior to the scheduled day of departure, upon

3

certification of the departure date by such carrier. With some exceptions (including payment to direct air carriers as noted above), pursuant to 14 C.F.R. § 380.34(b)(2)(ix), the depository bank "shall not pay out any funds from the account prior to 2 banking days after completion of each charter, when the balance in the account shall be paid [to] the charter operator…, upon certification of the completion date by the air carrier." Pursuant to 14 C.F.R. § 380.34(b)(2)(iv), if a charter operator notifies its depository bank that a charter has been canceled, the bank is required to make applicable refunds directly to the Charter Participants.

15. The Depository Agreements contain provisions regarding disbursement of funds that are consistent with the above-described requirements of 14 C.F.R. § 380.34.

16. As of the Petition Date, VNB maintained two depository accounts for Direct Air, a money market account and a demand deposit account (the latter the "DDA Account" and, collectively with the money market account, the "Direct Air Accounts"). On information and belief, funds were "swept" from the DDA Account into the money market account periodically to earn interest. On information and belief, as of the Petition Date, the VNB DDA account held a balance of approximately $.01, and the money market account held a balance of approximately $1,016,935.90 (collectively with the one cent in the DDA account, the "Petition Date Funds").

**The Shortfall**

17. Since the Petition Date and the cancellation of the Debtor's flights, thousands of customers have sought "chargebacks" for flights purchased on their credit cards and debit cards (the "Chargebacks"). In accordance with detailed card association regulations by which member banks are contractually bound, as a so-called "acquiring bank," Merrick was obligated to fund the chargebacks to the customers' issuing banks. As of this date, Merrick has – by contractual

4

obligation – refunded over $26 million in chargebacks, for the ultimate benefit of the Charter Participants who booked flights that did not fly due to Debtor's ceasing operations.

18.     A forensic investigation has revealed that the overall shortfall between what was in the VNB escrow accounts and what should have been (as per applicable federal regulation and the Depository Agreements) is at least $30 million.  Upon information and belief, approximately $3.7 million of the shortfall represents chargebacks generated in connection with American Express transactions.  At least $26.2 million of the remaining balance of the shortfall represents Merrick's chargeback losses arising from VNB's failure to have maintained sufficient funds in the escrow accounts to fund customer refunds for cancelled flights.

## Merrick's Suit Against VNB

19.     The Depository Agreements provide that New Jersey law govern and that New Jersey is the proper venue for hearing disputes arising out of the Depository Agreements.

20.     On December 20, 2013, Merrick commenced an action in the United States District Court for the District of New Jersey against VNB to recover Merrick's losses (the "VNB Action").  A copy of the complaint Merrick filed against VNB (the "Complaint") is attached hereto as Exhibit A.

21.     The Complaint sets forth claims that belong to Merrick, either directly against VNB or by way of subrogation into the claims that individual Charter Participants, whose chargeback claims were funded by Merrick, would have had against VNB but for their chargeback rights against the credit or debit card issuing banks.

22.     As set forth in the Complaint, the causes of action include (i) breach of contract by way of equitable subrogation into the claims that Charter Participants have against VNB as third-party beneficiaries (Complaint, First Cause of Action); (ii) negligence by way of equitable

5

subrogation into the claims of Charter Participants to whom VNB owed duties of care (Id., Second Cause of Action); (iii) direct claims of negligent misrepresentation (Id., Third Cause of Action;  (iv) aiding and abetting the Debtor's fraud on Charter Participants by way of equitable subrogation into the claims of Charter Participants (Id., Fourth Cause of Action); (v) aiding and abetting the Debtor's conversion of property by way of equitable subrogation into the claims of Charter Participants who had property rights in and to the escrowed funds (Id., Fifth Cause of Action); (vi) failure to comply with applicable federal regulations by way of equitable subrogation into the claims of Charter Participants for whose benefit such regulations were promulgated (Id., Sixth Cause of Action); (vii) consumer fraud by way of equitable subrogation into the claims of Charter Participants arising from VNB's misleading, deceptive, unconscionable, unfair and unlawful business practices (Id., Seventh Cause of Action); and (viii) indemnification arising from Merrick's obligation to reimburse Charter Participants as a result of the shortfall and through no fault of Merrick (Id., Eight Cause of Action).

## Controversy With Trustee

23. On December 23, 2013, Merrick provided the Trustee with a copy of the Complaint.

24. On December 24, 2013, the Trustee advised counsel to Merrick of his contention that Merrick's action against VNB violated the Estate's automatic stay because the Complaint asserts claims that belong to the Estate.

25. Merrick contends that the Complaint asserts claims that only belong to Merrick – either directly or by way of subrogation into the claims of individual Charter Participants who, among other things, had rights in the escrow created by the Depository Agreements and for whose benefit the federal regulations had been promulgated.

6

26. Merrick further contends that the Estate has no interest in the escrow because, pursuant to applicable provisions of the Depository Agreements, the Estate's interest in escrowed funds arises only upon the fulfillment of flights; whereas, upon cancellation of flights as occurred here, only the Charter Participants have an interest in the funds deposited into the escrow account.

27. Out of respect for the continuing jurisdiction of this Court over property of the estate, and out of an abundance of caution, in response to the Trustee's contentions, Merrick has agreed voluntarily to stay prosecution of the VNB Action pending a timely resolution of their dispute as to whether the VNB Action violates the automatic stay.

28. A real controversy exists between Merrick and the Trustee as to whether the VNB Action violates the automatic stay of the Estate and whether the claims asserted by Merrick in the VNB Action belong to the Estate.

WHEREFORE, Plaintiff Merrick Bank Corporation respectfully requests that this Court enter judgment,

    a. Declaring and adjudging that the claims asserted by Merrick against VNB in the VNB Action are not property of the Estate;

    b. Declaring and adjudging that Merrick's prosecution of the VNB Action is not a violation of the automatic stay; and

    c. Granting such other and further relief as the Court deems just and proper.

1534620v3/19238-2

MERRICK BANK CORPORATION

By its attorneys (admitted pro hac vice),

/s/ Daniel G. Gurfein
Daniel G. Gurfein
SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue
New York, NY 10169
Telephone:  212 404 8702
Facsimile:  212 818 9606
Email:  dgurfein@ssbb.com


And by its Local Counsel,

/s/ David J. Reier
David J. Reier (BBO No. 546202)
Laura A. Otenti (BBO No. 660301)
POSTERNAK BLANKSTEIN & LUND LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-8004
Telephone:  617 973 6145
Facsimile:   617 722 4937
Email:  dreier@pbl.com
Email:  lotenti@pbl.com

Dated: January 15, 2014

1534620v3/19238-2