# EXHIBIT A

Case 12-40944  Doc 435-1  Filed 01/15/14  Entered 01/15/14 11:09:35  Desc Exhibit
Case 2:13-cv-07286-ES-JAD  Document 1  Filed 12/04/13  Page 2 of 22  PageID: 1
A- Complaint against Valley National Bank    Page 2 of 23

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MERRICK BANK CORPORATION,

                Plaintiff,

     -against-                             **COMPLAINT**

VALLEY NATIONAL BANK,

                Defendant.

---

       Plaintiff MERRICK BANK CORPORATION ("Merrick"), for its complaint against

defendant VALLEY NATIONAL BANK ("VNB"), alleges as follows:

       1.       This is an action arising out of VNB's egregious mismanagement of an escrow

account established, pursuant to regulations of the U.S. Department of Transportation ("DOT"),

for the purpose of protecting customers of a charter air operator called Direct Air.

       2.       The escrow account was intended to hold all payments by Direct Air passengers

until VNB received specific confirmation that the flights and related charges for which the

payments had been received had, in fact, been completed.

       3.       In other words, the escrow account, if properly supervised and controlled, should

have at all times held sufficient funds to refund to passengers whose flights were, for whatever

reason, cancelled.

       4.       However, when Direct Air shut down and entered bankruptcy in March 2012, the

escrow account was short by approximately $32 million.

       5.       This massive shortfall could not have occurred were it not for the systemic failure

of VNB to follow the proper procedures with respect to the escrow, as found in DOT regulations,

1

Case 12-40944  Doc 435-1  Filed 01/15/14  Entered 01/15/14 11:09:35  Desc Exhibit
Case 2:13-cv-07266-ES-JAD  Document 1  Filed 12/20/13  Page 2 of 22  PageID: 2
A- Complaint against Valley National Bank    Page 3 of 23

the contracts governing the escrow, and sound banking practices (including VNB's own internal operating guidelines).

6.      VNB's failure to properly oversee the Direct Air escrow (and the escrow for another charter operator) led to a DOT Consent Order in September 2013 finding VNB in violation of federal statutes and regulations and imposing $125,000 in civil penalties.

7.      The Consent Order also found that VNB's operation of the escrow constituted an unfair and deceptive business practice.

8.      Merrick Bank, as Direct Air's "acquiring bank" in the Visa, MasterCard and Discover systems, was required to reimburse passengers approximately $26.2 million in payments for flights and related charges that were cancelled when Direct Air shut down. Sufficient funds to cover these payments should have been in the escrow managed by VNB, but due to VNB's breaches, only approximately $1 million was actually in the account.

9.       Merrick now sues to recover the losses it has sustained due to VNB's numerous failures to follow its obligations with respect to the Direct Air escrow.

## PARTIES

10.     Plaintiff Merrick Bank Corporation is a corporation organized and existing under the laws of Utah with its principal place of business in South Jordan, Utah.

11.     Defendant Valley National Bank is a national banking association with its main office located in Passaic, New Jersey.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a)(1), in that it is a civil action between citizens of different states where the matter in controversy exceeds $75,000, exclusive of interest and costs.  The Court also has jurisdiction over this matter under

1825232_5

Case 12-40944   Doc 435-1   Filed 01/15/14   Entered 01/15/14 11:09:35   Page Exhibit
Case 2:13-cv-07306-ES-JAD   Document 1   Filed 12/04/13   Page 3 of 22   PageID: 3
A- Complaint against Valley National Bank    Page 4 of 23

28 U.S.C. § 1331 and 1367, in that it is a civil action arising under the laws of the United States

and any state-law claims form part of the same case or controversy.

13.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2), in that

defendant VNB resides in this district and a substantial part of the events or omissions giving rise

to the claims occurred in this district.

## FACTUAL ALLEGATIONS

14.     Merrick serves as an "acquiring bank" for merchants under the Visa, MasterCard

and Discover credit card networks.

15.     When a customer uses a credit card to make a purchase of goods or services, that

customer's own bank – the "issuing bank" – transmits funds through the card network to the

acquiring bank for that merchant, which then transmits those funds to the merchant.

16.     If a customer properly disputes a credit card charge – for example, if the service

or good is not provided by the merchant – the customer can demand repayment from its issuing

bank.  The issuing bank then initiates a "chargeback," which, in accordance with detailed card

association regulations by which member banks are contractually bound, requires the acquiring

bank to immediately return the funds back to the issuing bank.  The acquiring bank is then left to

attempt recoupment from the merchant.

17.     One of the merchants for which Merrick served as acquiring bank was Southern

Sky Air & Tours LLC, which did business under the name of Myrtle Beach Direct Air (hereafter,

"Direct Air").

18.     Merrick agreed to act as Direct Air's acquiring bank pursuant to a tri-party

agreement between Merrick, Direct Air and JetPay Merchant Services, LLC ("JetPay").  JetPay

is an Independent Sales Organization ("ISO") which, *inter alia*, identifies for Merrick potential

3

Case 12-40944  Doc 435-1  Filed 01/15/14  Entered 01/15/14 11:09:35  Desc Exhibit
A- Complaint against Valley National Bank    Page 5 of 23
Case 2:13-cv-07806-ES-JAD   Document 1   Filed 12/20/13   Page 9 of 22 PageID: 9

merchants for which Merrick could serve as acquiring bank and reports to Merrick the results of its due diligence of such potential merchants which Merrick uses, in conjunction with its own due diligence, in its determination as to whether to do business with any such merchant so identified.

19.    From 2007 until it filed for bankruptcy protection in March 2012, Direct Air operated a charter air service based in Myrtle Beach, South Carolina.

20.    As a charter operator, Direct Air arranged flights and other tour accommodations for passengers, but did not actually operate the flights itself.  For that, Direct Air contracted with a number of "direct air carriers," themselves subject to DOT regulation.

21.    As a "public charter operator," Direct Air was subject to a comprehensive regime of regulation by the United States Department of Transportation ("DOT").  These regulations are found primarily in Part 380 of Title 14 of the Code of Federal Regulations (the "DOT Regulations").

22.    One requirement of the DOT regulations is that a public charter operator must provide security to protect passengers, who typically pay for charter services in advance, from losing their payments should a charter operator fail to deliver as promised.

23.    Charter operators may provide such security in one of two ways: (1) furnishing of a security agreement in an amount equal to (or in some case, equal to multiples of) the charter price; or (2) establishment of a depository account with a designated FDIC-insured bank, accompanied by a smaller security agreement.

24.    Direct Air chose to use the second, depository account method.

25.    VNB was the depository bank for Direct Air.

4

1825232_5

Case 2:13-cv-07086-ES-JAD   Document 1   Filed 12/20/13   Page 9 of 22   PageID: 9

26.     VNB received fees for serving as the depository bank for Direct Air.  These fees included, *inter alia*, a flat administration fee per completed flight.

27.     In its role as depository bank, VNB entered into a number of tripartite Depository Agreements, each among VNB, Direct Air and either a direct air carrier (which, as noted above, provided the actual air transportation) or another charter operator (which would arrange for the air transportation).

28.     An example Depository Agreement is attached hereto as Exhibit A.

29.     All Depository Agreements to which VNB and Direct Air were parties had materially identical terms to those of Exhibit A.

30.     The terms of the Depository Agreements reflect the requirements for such agreements specified by the DOT Regulations.

31.     In addition, before a charter operator such as Direct Air is allowed to collect any payments from passengers, it must file a certification, signed by the depository bank, agreeing to abide both by the Depository Agreement and the DOT Regulation.

32.     VNB signed such certifications, an example of which is attached hereto as Exhibit B.

33.     The Depository Agreements state that they are incorporated as part of the agreement between Direct Air and the charter participants (those that purchase flights from Direct Air).

34.     On its website, Direct Air assured charter participants that "monies paid by customers toward airfares are deposited in a DOT-approved Charter Escrow Account until the passenger's Charter flight departs.  This is a measure designed to protect Charter customers."

Case 12-40944   Doc 435-1   Filed 01/15/14   Entered 01/15/14 11:09:35   Page Exhibit
A- Complaint against Valley National Bank    Page 7 of 23
Case 2:13-cv-07286-ES-JAD   Document 1   Filed 12/20/13   Page 9 of 22   PageID: 9

35.     Among the requirements of the DOT Regulations, as reflected in the Depository

Agreements, are the following:

      a.   All payments received from charter participants must be placed in the

         depository account;

      b.   The depository bank must segregate the funds by charter, flight or rotation;

      c.   The depository bank can release funds to the direct air carrier's own DOT-

         required escrow for its portion of the charter price no earlier than 60 days

         prior to the scheduled flight date;

      d.   The depository bank can release funds to vendors supplying services for a

         particular charter only after the direct air carrier has been paid in full and upon

         presentation of certified invoices or bills from the vendors;

      e.   The depository bank can release funds for a given charter to the charter

         operator only after the direct air carrier has certified the flight(s) have been

         completed; and

      f.   Upon notice by the charter operator that a charter has been cancelled, the

         depository bank is required to issue refunds directly to the passengers.

36.     DOT Regulations specifically prohibit any disbursement from a depository

account except under the conditions outlined in the regulations.

37.     In short, the depository account serves as an escrow, protecting consumers by

holding funds for future charters paid in advance by passengers until the charter services booked

have been provided.

38.     Both the DOT Regulations and VNB's own internal operating guidelines refer to

depository accounts as an "escrow."

Case 2:13-cv-07036-ES-JAD   Document 1   Filed 12/20/13   Page 8 of 22 PageID: 1

39.     If the depository account is managed correctly, therefore, it should always have a balance sufficient to refund to passengers any payments made for flights and related charges that are, for whatever reason, not provided.

40.     The security provided by a properly managed depository account was essential to Merrick's assessment of the risk of taking on Direct Air as a client.

41.     Prior to Merrick agreeing to serve as Direct Air's acquiring bank, Merrick required, and received confirmation from VNB through JetPay, that VNB had agreed to serve as Direct Air's depository bank pursuant to the DOT Regulations

42.     Merrick relied on the representations by VNB that it was serving as Direct Air's depository bank in accordance with DOT Regulations in making the decision to become Direct Air's acquiring bank.

43.     Payments from Merrick to Direct Air as a result of passenger charges via Visa, MasterCard or Discover were made through the Automated Clearing House (ACH) network directly to the depository account at VNB.

44.     In March 2012, Direct Air abruptly ceased operations.

45.     Shortly thereafter, Direct Air filed for bankruptcy protection.

46.     Direct Air's shutdown resulted in the cancellation of tens of thousands of prepaid charter reservations.

47.     As a result of the cancelled services, Merrick paid chargeback requests from passengers' issuing banks pursuant to the card association rules in excess of $26.2 million, representing the payments made by passengers for the flight services that were ultimately cancelled.

Case 12-40944   Doc 435-1   Filed 01/15/14   Entered 01/15/14 11:09:35   Page Exhibit
Case 2:13-cv-07667-ES-JAD   Document 1   Filed 12/20/13   Page 9 of 22   PageID: 9
A- Complaint against Valley National Bank    Page 9 of 23

48.     Thus, Merrick has suffered the losses that passengers would otherwise have had to bear.

49.     Merrick has, however, been unable to recoup any of these chargebacks from Direct Air due to its bankruptcy, and it is not expected to receive any material payout from the estate.

50.     The approximately $26.2 million in Visa/MasterCard/Discover chargebacks for cancelled flights imply that a balance of approximately that amount should have been in the VNB depository account in respect of such chargebacks.[1]

51.     At the time Direct Air shut down, however, the VNB depository account held a balance of only approximately $1 million.[2]

52.     Upon information and belief, Direct Air improperly depleted the VNB depository account by, among other things, submitting false reports to VNB (a) seeking to withdraw fictitious revenue allegedly generated by flights that had flown, (b) seeking to withdraw the same monies twice, and (c) seeking to withdraw "cash" that had never been deposited.

53.     Had VNB fulfilled its obligations as a DOT depository bank or as an escrow fiduciary, it would have prevented such wrongful activity and prevented the improper withdrawals from the depository account.

54.     Forensic investigation has revealed that the overall shortfall between what was in the escrow and what should have been (as per DOT Regulations and the Depository Agreements) is over $32 million.

---

[1] Upon information and belief, there was approximately $3.7 million Direct Air chargebacks generated in connection with American Express transactions, thus creating an approximate $32 million dollar VNB depository account shortfall.

[2] Heretofore, VNB, Merrick and other interested parties entered a stipulation so ordered by the Direct Air bankruptcy judge pursuant to which Merrick received $669,886.06 from the VNB depository account. Damages sought herein are net of such payment.

8

1825232_5

Case 12-40944   Doc 435-1   Filed 01/15/14   Entered 01/15/14 11:09:35   Page Exhibit
A- Complaint against Valley National Bank   Page 10 of 23
Case 2:13-cv-07096-ES-JAD   Document 1   Filed 11/20/13   Page 9 of 22   PageID: 9

55.     This vast mismatch between the amount of chargebacks and the amount in the depository account is itself proof that VNB did not manage the Direct Air depository account according to DOT Regulations, the terms of the Depository Agreements, or the common-law standards of care owed by an escrow agent.

56.     While discovery in this action is expected to uncover further evidence, investigation to date of how VNB managed the account has, in fact, confirmed a number of ways in which VNB failed to fulfill its obligations, including (but not limited to) the following:

57.     VNB did not segregate funds, either by charter group, flight or rotation.

   a.   Virtually all receipts into the escrow account were transfers from credit cards through the ACH system.  Instances of receipts into the escrow account via check were extremely rare (and are believed to number fewer than five), while Merrick knows of no reported instances of transfers into the escrow account via cash or wire transfer.

   b.   VNB placed these daily receipts into an "Unallocated" sub-account, not into sub-accounts corresponding to the future flights for which those receipts represented prepayment.

   c.   VNB only transferred funds from the "Unallocated" sub-account to Direct Air after Direct Air requested the release of its portion of the charter price, i.e., after the flight had flown.

   d.   In such requests pertaining to current, just-completed flights, Direct Air would, for the first time, identify purported amounts of receipts attributable to those flights.

9

Case 12-49944 Doc 485-1 Filed 01/15/14 Entered 01/15/14 11:09:35 Page Exhibit
A- Complaint against Valley National Bank    Page 11 of 23
Case 2:13-cv-07776-ES-JAD    Document 14    Filed 12/20/13    Page 16 of 33    PageID: 190

e. VNB would then transfer whatever amounts Direct Air claimed, aggregate the amounts from multiple flights, and then immediately (that same day or the next, typically) wired the requested, aggregated amount to Direct Air's operating account at a bank in South Carolina.

f. VNB never attempted to match up the receipts claimed by Direct Air in its disbursement requests against the actual receipts into the depository account.

g. Rather, VNB would simply randomly reduce the "Unallocated" entries to fund the payments to Direct Air.

h. Over the life of the account, the vast majority of the funds in the account at any given time resided in such "Unallocated" sub-account.

i. At no time, therefore, was VNB capable of identifying which future flights or passengers it was holding money for, or in what amounts, thus completely eviscerating the purpose of the depository account and the applicable regulations and contractual restrictions on payment.

58. VNB did not record the names of passengers whose monies were received.

a. Under the terms of the Depository Agreements, Direct Air was required to provide, along with any deposits to the account, the amounts and names of the Charter Participants (i.e., passengers) with respect to which the deposit was made.

b. VNB's own internal operating guidelines note that passenger lists are utilized to assist in the refund process should the Charter Operator shut down.

c. Such information would not only be necessary should VNB be required to process refunds to passengers in the event of a cancellation (as required by the

10

Case 12-40944 Doc 485-1 Filed 01/15/14 Entered 01/15/14 11:09:35 Page Exhibit
Case 2:13-cv-07736-ES-JAD Document 14 Filed 12/20/13 Page 12 of 22 PageID: 111
A- Complaint against Valley National Bank    Page 12 of 23

DOT Regulations and the Depository Agreements), but such information

would also have enabled a match against the receipts claimed by Direct Air in

its release requests.

    d.  VNB, however, did not ask Direct Air for such information.  Indeed, when

early in the relationship Direct Air attempted to provide it, VNB rejected the

information as being "too large" for it to process.

59.    VNB routinely allowed large disbursements of receipts from "Family Ties"

vouchers not associated with particular flights.

    a.  Direct Air operated a voucher program from time to time called "Family

Ties."

    b.  Under this voucher program, customers could purportedly purchase a coupon,

at a set rate, which could be redeemed at a date of the customer's choosing (up

to a set expiration date) for a flight on Direct Air (assuming availability).

    c.  The purchase price purported to include a "membership fee," typically $60, in

addition to an air fare, typically $109.

    d.  The full amount of the receipts for such coupons was received into the

depository account.

    e.  Direct Air would then request, and VNB would disburse, the purported

"membership fee" portion of the coupon price, despite the fact that neither the

DOT Regulations nor the Depository Agreements allowed disbursement of

funds from the account in this manner and despite the fact that the flight for

which such fee had allegedly been paid had yet to fly.

11

Case 12-40944    Doc 435-1    Filed 01/15/14    Entered 01/15/14 11:09:35    Desc Exhibit
Case 2:13-cv-07436-ES-JAD    Document 14    Filed 12/20/13    Page 12 of 22    PageID: 121
A- Complaint against Valley National Bank    Page 13 of 23

    f.   Even the portions purportedly for airfare could not, as required, be kept in the account for a specific flight because the passengers were allowed to specify the flight at a later date, thus violating the DOT Regulations and Depository Agreements, which required segregating funds by flight or charter group.

    g.   VNB, admittedly aware of this program, never objected to or questioned Direct Air's operation of it.

    h.   Nor did VNB ever ask to see any documentation that a given passenger had used a coupon on any given flight for which reimbursement was claimed, or that such money had been received from such passenger for a coupon.

60.    VNB released funds to Direct Air without certification from the air carrier that the flights had taken place.

    a.   Under DOT Regulations and the Depository Agreements, VNB could not release funds to Direct Air until at least two business days after receiving a certification from the direct air carrier that the flights for which funds were being held had taken place.

    b.   As the DOT found in its Consent Order, however, VNB at times released funds without receiving such a certification.

    c.   VNB would also at times release funds based on a certification from Direct Air, rather than the direct air carrier.

61.    VNB released funds to vendors without being presented with certified receipts/invoices.

1825232_5

Case 1-2-49944  Doc 485-1  Filed 01/15/14  Entered 01/15/14 11:09:35  Page Exhibit
Case 2:13-cv-07590-ES-JAD  Document 1-4  Filed 12/20/13  Page 15 of 22  PageID: 191
A- Complaint against Valley National Bank   Page 14 of 23

      a.  Under DOT Regulations and the Depository Agreements, VNB could not release funds to vendors until presented with invoices or receipts and a certification by Direct Air of the correctness of those receipts.

      b.  However, as the DOT found in the Consent Order, VNB at times released funds without such certified invoices.

62.    VNB never made any attempt to check Direct Air's claimed receipts against actual receipts or the reservations system.

      a.  As noted above, VNB did not keep funds received into the depository account segregated by flight, which would have enabled a check against the receipts claimed by Direct Air in its release requests.

      b.  However, information about passenger and flight bookings was also available to VNB through Direct Air's reservations booking vendor, Radixx International.

      c.  It would have been possible to check Direct Air's requests against the information in the Radixx system.

      d.  VNB never, even as a spot audit, sought to verify the receipts claimed by Direct Air.

63.    VNB never questioned whether the balance in the account was appropriate given the amount of advanced bookings.

      a.  As reflected in the amount of chargebacks to Merrick (and Amex), Direct Air at the time of its shutdown had approximately $32 million in payments for future flights and related charges.

Case 12-40944 Doc 485-1 Filed 01/15/14 Entered 01/15/14 11:09:35 Page Exhibit
Case 2:13-cv-07058-ES-JAD Document 1 Filed 12/20/13 Page 14 of 22 PageID: 14
A- Complaint against Valley National Bank    Page 15 of 23

  b. There is no indication that there was an unusual amount of booking activity in the period leading up to the shutdown, and it is expected that discovery will verify that $32 million was not an unusual level of advance bookings over the operating life of Direct Air.

  c. Accordingly, the balance in the depository account, while varying at times, should on average have stayed in the $32 million range over the life of the account.

  d. The actual balance in the depository account, however, was routinely more like $1 to $2 million.

  e. Despite its own internal guidelines requiring familiarity with its customer's business, VNB never questioned whether the balance in the account was consistent with the level of business Direct Air was booking.

64. VNB accepted as true facially implausible claims of receipts by Direct Air.

  a. In requests for release of funds, Direct Air categorized its purported passenger receipts by the source, i.e., Visa, MasterCard, Discover, American Express or "Cash."

  b. The amounts attributed to "Cash" receipts were often a substantial portion, 20% or more, of the claimed receipts for a given release request.

  c. Direct Air virtually never received funds other than through credit card transfers, and certainly not in the form of cash. Indeed, four checks, all deposited in January 2008, represent the entirety of any non-credit card receipts known to have been placed into the depository account.

     d.   VNB knew that any receipts other than credit cards were a very rare occurrence for Direct Air.

     e.   Despite these repeated facially implausible claims of receipts by Direct Air, and despite VNB's internal policy guidelines specifically requiring it not to disburse funds from the depository account based on such implausible claims, VNB never questioned Direct Air or asked for explanation or substantiation of these asserted "cash" receipts.

65.     In short, VNB allowed Direct Air to operate the depository account as, effectively, a checking or demand account, disbursing funds at times, and in amounts, completely as directed by Direct Air.

66.     Doing so was in direct contravention of VNB's own internal operating guidelines, which stated that such accounts "are all escrow accounts (not checking/operating accounts)."

67.     Each of the foregoing failures was not only a failure by VNB to follow its own internal guidelines, but constitutes a breach of the duties or obligations imposed upon VNB by the DOT Regulations, the Depository Agreements, or the common law.

68.     The foregoing breaches, individually and together, caused some or all of the shortfall in the depository account.

69.     This shortfall caused losses to the passengers of Direct Air whose flights were cancelled, or would have were it not for the fact that Merrick, pursuant to card association regulations, reimbursed the passengers through chargeback payments to the passengers' issuing banks and thus assumed the losses itself.

70.     Merrick is thus equitably subrogated to the claims of passengers for losses caused by VNB's breaches.

Case 2:12-cv-07758-JAD Document 14 Filed 12/20/13 Page 18 of 22 PageID: 191
Case 1:12-40944 Doc 485-1 Filed 01/15/14 Entered 01/15/14 11:09:35 Page Exhibit
A- Complaint against Valley National Bank    Page 17 of 23

71.     Merrick was similarly subject to losses by its justifiable reliance on VNB's representation that it was operating the depository account in accordance with DOT Regulations. This representation was false when made and VNB was negligent or grossly negligent in not knowing of its falsity.

### FIRST CAUSE OF ACTION (Breach of Contract)

72.     VNB entered into the Depository Agreements which specified VNB's obligations to manage the Direct Air escrow and to disburse money from that account only on specified terms, for which VNB would receive certain fees per completed flight.

73.     VNB also agreed in certifications to the Department of Transportation that it would follow the terms of the Depository Agreements and DOT Regulations regarding the Direct Air escrow.

74.     This certification was required before Direct Air was allowed to accept payments into the escrow from passengers (and thus, for VNB to earn its account fees).

75.     Passengers who booked charters with Direct Air were either direct parties to these agreements or intended third-party beneficiaries.

76.     As detailed above, VNB breached its obligations to follow the terms of the Depository Agreements and the DOT Regulations.

77.     These breaches resulted in damages to the passengers who had paid in advance for flights that did not take place once Direct Air shut down.

78.     To the extent such passengers paid by Visa, MasterCard or Discover, Merrick refunded the advance payments to the passengers pursuant to card association rules.

79.     By making whole the passengers for their losses, Merrick is equitably subrogated into the claims these passengers had against VNB for breach of contract.

1825232_5

Case 1-2-49944 07 Doc 495-1 Filed 01/15/14 Entered 01/15/14 11:09:35 Desc Exhibit
Case 2-13-cv-07236-ES-JAD Document 14 Filed 12/20/13 Page 17 of 22 PageID: 171
A- Complaint against Valley National Bank    Page 18 of 23

## SECOND CAUSE OF ACTION (Negligence/Gross Negligence)

80.     As an escrow agent, VNB owed a fiduciary duty of care to the depositors into the

escrow account – i.e., the passengers of Direct Air or, Merrick to the extent said passengers were

reimbursed by Merrick.

81.     For the reasons stated above, VNB breached this duty by supervising the

depository account in a negligent or grossly negligent manner.

82.     As a proximate result of these breaches, passengers and Merrick, by subrogation,

suffered losses due to the failure of the escrow to have sufficient funds when Direct Air shut

down.

83.     To the extent passengers suffered losses and were reimbursed by Merrick,

Merrick is equitably subrogated into the claims of those passengers.

## THIRD CAUSE OF ACTION (Negligent Misrepresentation)

84.     VNB represented to Merrick that it was serving as the depository bank for Direct

Air and that it was doing so in accordance with DOT Regulations.

85.     This representation was material to Merrick's decision to become the acquiring

bank for Direct Air, and to maintain that relationship.

86.     Merrick reasonably and justifiably relied upon VNB's representation in deciding

to become the acquiring bank for Direct Air and in deciding to maintain that relationship.

87.     VNB's representation that it was managing Direct Air's depository account

according to DOT regulations was false, and VNB was negligent or grossly negligent in not

knowing it was false.

Case 12-40944 Doc 485-1 Filed 01/15/14 Entered 01/15/14 11:09:35 Page Exhibit
Case 2-13-cv-07758-ES-JAD Document 14 Filed 12/20/13 Page 18 of 22 PageID: 191
A- Complaint against Valley National Bank Page 19 of 23

88.     VNB's misrepresentation was the proximate cause of losses to Merrick, which were incurred when Direct Air shut down and Merrick was forced to reimburse passengers because VNB's mismanagement had left the escrow severely underfunded.

### FOURTH CAUSE OF ACTION (Aiding and Abetting Fraud)

89.     Direct Air committed fraud against charter participants in two ways.

90.     First, Direct Air made representations through its website to passengers that advance monies were, and would be in the future, directed to an escrow account operated in accordance with DOT guidelines that prevented release of the monies until the passenger's flight had been completed.

91.     Direct Air knew this statement was and would continue to be false and did not intend to fulfill this promise to future passengers, and Direct Air intended to deceive passengers into relying upon this statement.

92.     Passengers reasonably relied upon this statement in deciding to pay money to Direct Air.

93.     Passengers were damaged by this reliance upon Direct Air's fraudulent representations when Direct Air shut down.

94.     VNB gave substantial assistance to Direct Air in committing the foregoing fraud by VNB's breach of its duty to charter participants to properly manage the escrow account.

95.     VNB also gave substantial assistance to Direct Air in committing the foregoing fraud by its negligent misrepresentation to Merrick that it was properly managing the escrow account.

96.     To the extent passengers suffered losses and were reimbursed by Merrick, Merrick is equitably subrogated into the claims of those passengers.

18

Case 1:12-40944-07 Doc 485-1 Filed 01/15/14 Entered 01/15/14 11:09:35 Page Exhibit
Case 2:13-cv-07058-ES-JAD Document 14 Filed 12/20/13 Page 19 of 22 PageID: 19
A- Complaint against Valley National Bank   Page 20 of 23

**FIFTH CAUSE OF ACTION (Conversion/Aiding & Abetting Conversion)**

97.     Merrick, on behalf of supposed future passengers of Direct Air, deposited money into the escrow account managed by VNB.

98.     Such money was to be released by VNB from the escrow only upon the occurrence of certain conditions.

99.     Such money was identifiable property in which passengers and/or Merrick maintained a possessory interest until the escrow conditions were met.

100.    VNB improperly and without authorization released money from the Direct Air account in violation of the terms of the escrow.

101.    VNB thus interfered with the possessory rights of passengers and/or Merrick in the money in the escrow account, thus damaging the passengers and/or Merrick.

102.    Alternatively, or in addition to the foregoing, Direct Air interfered with the possessory rights of passengers and/or Merrick in the money in the escrow account, and VNB substantially assisted Direct Air's conversion by its breach of duty to both the charter participants and to Merrick.

103.    To the extent Merrick reimbursed passengers for their losses, Merrick is equitably subrogated to their claims against VNB.

**SIXTH CAUSE OF ACTION (Violation of 14 CFR Part 380)**

104.     As depository bank for Direct Air, VNB was bound to manage the account in accordance with the DOT Regulations found in 14 CFR Part 380.

105.    For the reasons stated above, VNB failed to follow these regulations in its management of the Direct Air escrow account.

1825232_5

Case 12-49944 Doc 435-1 Filed 01/15/14 Entered 01/15/14 11:29:35 Page Exhibit
Case 2:13-cv-07286-ES-JAD Document 14 Filed 12/20/13 Page 20 of 22 PageID: 190
A- Complaint against Valley National Bank    Page 21 of 23

106.    VNB's failure to follow the regulations caused losses to passengers who did not receive the refunds to which they were entitled due to inadequate amounts in the Direct Air escrow.

107.    To the extent Merrick paid these passengers' losses, it is equitably subrogated to the passengers' claims.

<u>**SEVENTH CAUSE OF ACTION**</u> (Consumer Fraud)

108.    VNB publicly represented and promised that it would operate the Direct Air escrow account in accordance with DOT Regulations, the Depository Agreements, sound banking principles, its own internal guidelines, and the fiduciary duties owed as an escrow agent, but as stated above, it did not do so and knew that it was not doing so.

109.    VNB's conduct was misleading, deceptive, unconscionable, unfair, outside of reasonable business practices and unlawful.

110.    Merrick and charter participants suffered an ascertainable loss caused by VNB's misconduct.

111.    To the extent Merrick paid passengers' losses, it is equitably subrogated to the passengers' claims.

<u>**EIGHTH CAUSE OF ACTION (Indemnification)**</u>

112.    Merrick was legally obligated to, and did, reimburse passengers for the losses they would have otherwise suffered due to the lack of adequate funds in the escrow account when Direct Air shut down.

113.    Merrick's obligation to reimburse these passengers was not due to any fault on the part of Merrick.

1825232_5

Case 12-40944  Doc 485-1  Filed 01/15/14  Entered 01/15/14 11:29:35  Desc Exhibit
A- Complaint against Valley National Bank    Page 22 of 23
Case 2:13-cv-07758-ES-JAD  Document 14  Filed 12/20/13  Page 22 of 22  PageID: 211

114.    These losses to passengers were caused by the negligence or gross negligence of
VNB, i.e., its failure to properly operate and supervise the escrow account.

115.    Merrick is entitled to indemnification for its losses from VNB, who more properly
should bear these losses.

WHEREFORE, Plaintiff Merrick Bank Corporation prays for judgment against defendant
Valley National Bank for the following relief:

    a.  Damages in an amount to be proven at trial, but believed to be no less than $25.5
million;

    b.  Treble damages;

    c.  Disgorgement of all fees received by Valley National Bank in its role as
depository bank for Direct Air;

    d.  Costs of this litigation, including reasonable attorneys' fees; and

    e.  Such other relief as the Court deems just and proper.

Case 12-49944 Doc 485-1 Filed 01/15/14 Entered 01/15/14 11:09:35 Page Exhibit
Case 2:13-cv-07758-ES-JAD Document 14 Filed 12/20/13 Page 22 of 22 PageID: 221
A- Complaint against Valley National Bank    Page 23 of 23

Dated: December 20, 2013

SATTERLEE STEPHENS BURKE & BURKE LLP


*/s/ Walter J. Saurack*
Walter J. Saurack

51 John F. Kennedy Parkway
First Floor West
Short Hills, NJ  07078-2713
(973) 218-2509; Fax (973) 218-2401

230 Park Avenue, Suite 1130
New York, NY 10169
(212) 818-9200
(212) 818-9606/7 (fax)

22