B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

**PLAINTIFFS**
Joseph H. Baldiga, Chapter 7 Trustee of the
Bankruptcy Estate of Southern Sky Air & Tours, LLC
d/b/a Direct Air

**DEFENDANTS**
Robert Keilman

**ATTORNEYS** (Firm Name, Address, and Telephone No.)
Joseph H. Baldiga, Esq.
Jessica E. Murphy, Esq.
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Dr., Suite 400
Westborough, MA 01581
Phone:  508.898.1501
Fax:     508.898.1502
Email:   bankrupt@mirickoconnell.com
Email:   jmurphy@mirickoconnell.com

**ATTORNEYS** (If Known)

**PARTY** (Check One Box Only)
☐ Debtor                    ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor                  ☐ Other
☒ Trustee

**PARTY** (Check One Box Only)
☐ Debtor                    ☐ U.S. Trustee/Bankruptcy Admin
☒ Creditor                  ☐ Other
☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Trustee action under 11 U.S.C. §§ 502, 544(b), 547, 548 and 550, Fed. R. Bankr. P. 7001, Mass. Gen. Laws Ch. 109A, S.C. Code § 33-8-420, and S.C. Code § 33-44-409 (I) for avoidance, preservation and recovery of transfers as constructive fraudulent transfers, (II) for avoidance and recovery of fraudulent transfers, (III) for avoidance and recovery of preferential transfers, (IV) for breach of fiduciary duty, (V) for injunctive relief, (VI) for a finding of deepening insolvency, and (VII) to disallow any claims the Defendant may have against the Estate.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☒ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection/revocation of discharge - §727(c), (d), (e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1), (14), (14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief - imposition of stay
☒ 72-Injunctive relief - other

**FRBP 7001(8) – Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) – Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) – Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case - 15 U.S.C. §§78aaa et.seq.
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand: not less than $30,000,000 |

Other Relief Sought

{Practice Areas/CORP/15008/14190/A2536214.DOC{Ver:2}}

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>**Southern Sky Air & Tours, LLC d/b/a Direct Air** | | BANKRUPTCY CASE NO.<br>**12-40944-MSH** |
| DISTRICT IN WHICH CASE IS PENDING<br>**Massachusetts** | DIVISIONAL OFFICE<br>**Central** | NAME OF JUDGE<br>**Melvin S. Hoffman** |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Jessica E. Murphy | | |
| DATE<br>3-13-14 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Jessica E. Murphy | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding cover sheet electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney.) A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants**. Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

{Practice Areas/CORP/15008/14190/A2536214.DOC(Ver:2)}

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## (CENTRAL DIVISION)

| | |
|---|---|
| **In re:**<br><br>**SOUTHERN SKY AIR & TOURS, LLC**<br>**d/b/a DIRECT AIR,**<br><br>    **Debtor.** | **Chapter 7**<br>**Case No. 12-40944-MSH** |
| **JOSEPH H. BALDIGA, CHAPTER 7**<br>**TRUSTEE OF THE BANKRUPTCY**<br>**ESTATE OF SOUTHERN SKY AIR &**<br>**TOURS, LLC d/b/a DIRECT AIR,**<br>    **Plaintiff,**<br><br>    **v.**<br><br>**ROBERT KEILMAN,**<br><br>    **Defendant.** | **Adversary Proceeding**<br>**No. _____** |

## VERIFIED COMPLAINT

Joseph H. Baldiga (the "Trustee"), the Chapter 7 trustee of the bankruptcy estate (the "Estate") of Southern Sky Air & Tours, LLC d/b/a Direct Air (the "Debtor"), after completing his investigation and report on the Debtor's operations and the shortfall from Debtor's depository accounts, brings this action against Robert Keilman (the "Defendant"), the Debtor's former Chief Financial Officer and one of the Debtor's founding members, for his breaches of duty to the Debtor that significantly damaged the Debtor. In addition, the Trustee seeks to avoid and recover certain pre-petition transfers that the Debtor made to the Defendant to the maximum extent allowable by law.

## PARTIES

1.     The Trustee is the duly appointed, acting, and qualified Chapter 7 trustee of the

Estate.

2.     The Defendant is an individual residing at 194 Scarborough Way, Marlboro, New

Jersey 07746.

## JURISDICTION AND VENUE

3.     This is an adversary proceeding brought to recover money or property of the

Estate pursuant to, among other causes of action, 11 U.S.C. §§ 502, 544(b), 547, 548 and 550 of

the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Mass.

Gen. Laws Ch. 109A, S.C. Code §33-8-420, S.C. Code §33-44-409 and Fed. R. Bankr. P. 7001.

4.     Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 157(b)(1) and

28 U.S.C. § 1334(a).

5.     This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (F),

(H) and (O).

6.     This district is the proper venue for this proceeding pursuant to 28 U.S.C. § 1409.

## FACTS COMMON TO ALL COUNTS

7.     The Trustee reasserts the allegations set forth in the above paragraphs as if

expressly restated and realleged.

8.     On March 15, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under Chapter 11 of the Bankruptcy Code.

9.      On April 11, 2012 (the "Conversion Date"), the Court converted the Debtor's

bankruptcy case to one administered under Chapter 7 of the Bankruptcy Code.

10.     Also on the Conversion Date, the U.S. Trustee appointed the Trustee as Chapter 7

trustee of the Debtor's case and he continues to serve in this capacity.

### A. The Debtor's Background

11.     Prior to the Petition Date, the Debtor was a public charter operator authorized

under and subject to 14 C.F.R. §380, et seq. of the Special Regulations (the "DOT Regulations")

of the United States Department of Transportation, Office of Aviation.

12.     The Debtor incorporated in South Carolina on June 26, 2006 as a statutorily close

corporation.

13.     From the Debtor's inception through at least September 29, 2011, the Defendant

was and acted as the Chief Financial Officer (CFO) of the Debtor.

14.     The Defendant was part of the Debtor's management team, which also included:

(a) Judy Tull as Chief Executive Officer (CEO); (b) Ed Warneck as President; (c) Kay Ellison as

Vice President of System Operations, and later Managing Partner; and (d) Stanley Marshall

Ellison as Vice President of Reservations & Technology, and later Chairman (collectively with

the Defendant, the "Management Team").

15.     From the Debtor's inception through September 29, 2011, each member of the

Management Team owned a 15.8% interest in the Debtor.

16.     On February 19, 2008, the Debtor filed an amendment with the South Carolina

Secretary of State to convert from a corporation into a limited liability company.  The

Management Team thereafter jointly managed the Debtor, which was a manager-managed limited liability company.

## B. Mr. Keilman's Investment in the Debtor

17.    The other members of the Management Team brought the Defendant on board at the Debtor in 2006 for his financial experience and ability to fund the startup and operations of the Debtor, both directly and through his connections with other potential investors.

18.    Estimates for the initial capital investment required to start up the Debtor's operations were between $600,000 and $1 million.  The Defendant originally invested $200,000 in 2006 during the startup of the Debtor.

19.    Although the Debtor had four (4) other investors contributing an aggregate of $400,000 during the startup of the Debtor and despite the Debtor also obtaining traditional financing, the Debtor's operations as a public charter operator were still underfunded and undercapitalized.  Consequently, the Defendant invested additional funds in the Debtor.

20.    Specifically, the Defendant invested the following additional amounts in the Debtor: $300,000 in or about August 2008 and $500,000 in or about August 2009.

21.    While certain of the Defendant's investments in the Debtor were characterized by the Defendant as loans, the Defendant's investments were not properly treated as loans by the Defendant and the Debtor because, among other things, the "loans" were neither contemporaneously documented nor recorded as loans on the Debtor  and the Defendant's financial statements.

### C.  The Debtor's Operations

22.    The Debtor began accepting customer reservations in 2006 and began flight operations on March 7, 2007.

23.    As a public charter operator, the Debtor was required to comply with the DOT Regulations regarding security and depository agreements to protect customer payments.  See 14 C.F.R. § 380.34.

24.    In accordance with the DOT Regulations, the Debtor entered into various Public Charter Depository Agreements (the "Depository Agreements") with various air carriers and Valley National Bank ("VNB") as the depository bank.  VNB thereafter maintained two accounts for and on behalf of the Debtor (together, the "depository accounts"). Pursuant to the Depository Agreements and the DOT Regulations, the Debtor deposited with VNB payments received from the Debtor's customers to be held in its depository accounts pending certification of completion of the customers' flights.  VNB agreed to maintain a flight by flight accounting for all payments received, thereby ensuring that there would be sufficient funds in the Debtor's depository accounts for each flight, and that funds paid for future flights would not be used for current flights for which there were insufficient funds.

25.    After the Debtor's flights were completed, members of the Debtor's Management Team submitted by fax and email a request (each, a "release request") to VNB to release revenue associated with the completed flights.  The release request identified the amount paid in advance to air carriers or fuel suppliers for the flights and included a request that the remaining balance

(gross flight revenue less expenses paid) be paid to the Debtor or on occasion, to one or more of the Debtor's vendors.

26.    Additionally, members of the Debtor's Management Team submitted release requests to VNB to withdraw membership fees associated with the Debtor's Family Ties Program vouchers.

27.    Two days prior the Petition Date, the Debtor abruptly ceased operations. At the time that it shut down, the Debtor had already accepted advance travel reservations and payment from thousands of customers.

28.    As of the Petition Date, the aggregate balance in the Debtor's depository accounts at VNB was $1,016,935.91. To have complied with the DOT Regulations, the aggregate balance should have been $31,406,299.70. Accordingly, there was a shortfall from the Debtor's depository accounts at VNB (the "Shortfall") in the amount of $30,389,363.79 as of the Petition Date. The Trustee discovered the Shortfall after the Conversion Date.

29.    The Shortfall was caused primarily by the funds requested and released from the Debtor's depository accounts at VNB as follows: (a) $12,175,928.50 for duplicative withdrawals of Family Ties membership fees; (b) $ 8,323,734.82 in withdrawals for "ghost" transactions that did not represent actual customers or revenue to the Debtor; and (c) $5,543,750.80 in withdrawals for revenue that was never deposited into the depository accounts at VNB.

30.    On occasion, the Defendant signed and submitted release requests to VNB for the release of funds from the Debtor's depository accounts for completed flights as well as for the

separate release of Family Ties membership fees. The Defendant's release requests improperly dissipated the Debtor's depository accounts at VNB.

31.    At a minimum, the Defendant had actual knowledge of the Shortfall by the end of 2009. To the extent that the Defendant did not have actual knowledge of the existence or amount of the Shortfall prior to the end of 2009, the Defendant should have known and was in a position to know about the Shortfall before then.

32.    Among other things, the Defendant knew at all times that the Debtor was not profitable and that the Debtor operated at a loss every year.

33.    Despite knowledge of the Shortfall, the Defendant, along with the rest of the Management Team, failed to make changes to the release request procedure or stop the improper dissipation of funds causing the Shortfall. By his failure to act, the Defendant allowed the Shortfall to worsen by over $18 million from December 31, 2009 through September 29, 2011.

34.    The Shortfall would not exist at its current magnitude if the Defendant and the other members of the Management Team ceased operations when it became apparent that the Debtor's depository accounts at VNB contained insufficient funds to cover all current operating expenses and all customer funds for advance flights pursuant to the DOT Regulations.

35.    Avondale Aviation I, LLC ("Avondale") and Stukes Atwood, LLC acquired the majority interest in the Debtor on September 29, 2011. As part of the acquisition, Avondale issued a Promissory Note in the amount of $750,000 in favor of the entire Management Team. After September 29, 2011, the Defendant was no longer the CFO and was uninvolved in the daily operations of the Debtor.

## D. The Transfers

36.     On or within four years prior to the Petition Date, the Debtor transferred funds to the Defendant totaling at least $841,757.68 (the "Transfers"). The Transfers are comprised of various payments from the Debtor to the Defendant, a list of which is attached hereto as **Exhibit A**.

37.     Upon information and belief, the Debtor paid the Defendant $29,257.80 between May 22, 2008 and March 3, 2012 in salary, consulting fees or other amounts as compensation for his work as CFO of the Debtor (the "Compensation Transfers").

38.     Upon information and belief, the Debtor paid the Defendant $800,000.00 between October 15, 2008 and September 8, 2011 as repayment of his financial investment in the Debtor (the "Investment Repayment Transfers").

39.     Upon information and belief, the Debtor paid the Defendant $12,499.88 between January 6, 2012 and the Petition Date as repayment of Avondale's Promissory Note obligations to the Defendant (the "Acquisition Loan Transfers").

40.     The Transfers from the Debtor to the Defendant resulted in the transfer of funds from the Debtor to the Defendant totaling at least $36,591.16 within one year prior to the Petition Date (the "One Year Transfers"). The One Year Transfers include the Acquisition Loan Transfers, and a portion of both the Compensation Transfers and the Investment Repayment Transfers.

41.     Within two years prior to the Petition Date, the Debtor transferred funds to the Defendant totaling at least $432,591.16 (the "Two Year Transfers"). The Two Year Transfers

include the Acquisition Loan Transfers, and a portion of both the Compensation Transfers and

the Investment Repayment Transfers.

     42.     Within four years prior to the Petition Date, the Debtor transferred funds to the

Defendant totaling at least $841,757.68 (i.e., the Transfers).  The Transfers include all of the

Acquisition Loan Transfers, the Compensation Transfers and the Investment Repayment

Transfers.

     43.     The Trustee reserves the right to amend this Complaint including, without

limitation, to add any subsequently discovered transfers to or for the benefit of the Defendant.

### COUNT I – CONSTRUCTIVE FRAUDULENT TRANSFER
**(Avoidance and Preservation of the Transfer as a Constructive
Fraudulent Transfer pursuant to Bankruptcy Code §§ 548 and 550)**

     44.     The Trustee reasserts the allegations set forth in the above paragraphs as if

expressly restated and realleged.

     45.     Under Bankruptcy Code § 548(a)(1)(B), the Trustee may avoid any transfer of the

Debtor's interest in property made within two years prior to the Petition Date, if the Debtor

received less than a reasonably equivalent value in exchange for such transfer and the Debtor

was insolvent on the date that such transfer was made or became insolvent as a result of such

transfer.

     46.     The Debtor made the Two Year Transfers within two years prior to the Petition

Date.

     47.     The Debtor received no reasonably equivalent value in exchange for each of the

Two Year Transfers.  Despite receiving the Compensation Transfers for the Defendant's role as

CFO, the Defendant failed to provide any value to the Debtor in this role. Among other things, the Defendant failed to properly manage the Debtor's finances, contributed to the Shortfall from the Debtor's depository accounts at VNB and failed to limit the increasing Shortfall of the Debtor's depository accounts at VNB by others, which damaged the Debtor significantly. As a result of the Defendant's actions and/or failure to act, the Defendant provided no value to the Debtor and, in fact, caused significant harm to the Debtor.

48.    In addition, the Two Year Transfers encompass a portion of the Investment Repayment Transfers made by the Debtor to the Defendant. All investments of funds from the Defendant to the Debtor, however, were capital contributions for which the Debtor received no reasonably equivalent value for repaying while the Debtor was operating at a loss.

49.    To the extent that the Defendant's investments were actually loans, the Debtor was at all times significantly undercapitalized. In equity, any loans from the Defendant to the Debtor should be re-characterized as capital contributions. George Hyman Const. Co. v. Gateman, 16 F. Supp. 2d 129, 153 (D. Mass. 1998), citing Hanson v. Bradley, 298 Mass. 371, 380 (1937). The Debtor received no reasonably equivalent value in exchange for repaying the Defendant the Investment Repayment Transfers while the Debtor was operating at a loss.

50.    Further, the Debtor did not receive any reasonably equivalent value for the Acquisition Loan Transfers which were never obligations of the Debtor and for which the Debtor received no benefit.

51.    The Debtor was insolvent on the date that each of the Two Year Transfers was made or became insolvent as a result of the collective Two Year Transfers.

52.     Based on the foregoing, the Trustee may avoid the Two Year Transfers, pursuant

to Bankruptcy Code § 548(a)(1)(B), and the Trustee may recover the Two Year Transfers (or the

value thereof) from the respective transferees pursuant to Bankruptcy Code § 550.

### COUNT II – CONSTRUCTIVE FRAUDULENT TRANSFER
**(Avoidance and Recovery of Fraudulent Transfer Pursuant to
Bankruptcy Code § 544(b) and Mass. Gen. Laws ch. 109A § 5(a)(2))**

53.     The Trustee reasserts the allegations set forth in the above paragraphs as if

expressly restated and realleged.

54.     Under Mass. Gen. Laws ch. 109A § 5(a)(2) (made applicable here by Bankruptcy

Code § 544(b)), a transfer by a debtor is fraudulent as to a creditor, whether the creditor's claim

arose before or after the transfer was made, if the debtor made the transfer without receiving a

reasonably equivalent value in exchange for the transfer, and the debtor intended to incur, or

believed or reasonably should have believed that it would incur, debts beyond its ability to pay as

they became due.

55.     To the extent that the Defendant's investments in the Debtor were valid and

enforceable loans, the Defendant was at all times a creditor of the Debtor.  Alternatively, the

Defendant was a creditor of the Debtor at all times as a result of the Defendant's consulting and

other services provided to the Debtor for which he expected compensation.

56.     The Debtor received less than reasonably equivalent value in exchange for the

Transfers. Specifically, due to the Shortfall and the Defendant's role in worsening the Shortfall,

the Defendant provided no reasonable consideration in exchange for the Compensation

Transfers.

57.     In addition, the Debtor received no reasonably equivalent value in exchange for repaying the Defendant the Investment Repayment Transfers while the Debtor was operating at a loss.

58.     Further, the Debtor did not receive any reasonably equivalent value for the Acquisition Loan Transfers which were never obligations of the Debtor and for which the Debtor received no benefit.

59.     The Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due and, in fact, did incur debts beyond its ability to pay as those debts became due.

60.     Based on the foregoing, the Trustee is entitled to avoid the Transfers as fraudulent transfers pursuant to Mass. Gen. Laws ch. 109A § 5(a)(2) and Bankruptcy Code § 544(b), and the Trustee may recover the Transfers (or the value thereof) from the transferee.

### COUNT III – CONSTRUCTIVE FRAUDULENT TRANSFER
### (Avoidance and Recovery of Fraudulent Transfer Pursuant to
### Bankruptcy Code § 544(b) and Mass. Gen. Laws ch. 109A § 6(a))

61.     The Trustee reasserts the allegations set forth in the above paragraphs as if expressly restated and realleged.

62.     Under Mass. Gen. Laws ch. 109A § 6(a) (made applicable here by Bankruptcy Code § 544(b)), a transfer by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer, and the debtor was insolvent at that time, or the debtor became insolvent as a result of the transfer.

63.    To the extent that the Defendant's investments in the Debtor were valid and enforceable loans, the Defendant was at all times a creditor of the Debtor.  Alternatively, the Defendant was a creditor of the Debtor at all times as a result of the Defendant's consulting and other services provided to the Debtor for which he expected compensation.

64.    The Debtor made the Transfers without receiving a reasonably equivalent value in exchange for the Transfers. Specifically, due to the Shortfall and the Defendant's role in worsening the Shortfall, the Defendant provided no reasonable consideration in exchange for the Compensation Transfers.

65.    In addition, the Debtor received no reasonably equivalent value in exchange for repaying the Defendant the Investment Repayment Transfers while the Debtor was operating at a loss.

66.    Further, the Debtor did not receive any reasonably equivalent value for the Acquisition Loan Transfers which were never obligations of the Debtor and for which the Debtor received no benefit.

67.    The Debtor was insolvent on the date that each of the Transfers was made or became insolvent as a result of the Transfers.

68.    Specifically, the Shortfall was between $2 million and $30 million at all times within the four years prior to the Petition Date, and the Debtor's outstanding debts exceeded its cash and assets during that entire period.

69.    On account of the Transfers, the Debtor had no ability to perform on its obligations to creditors and customers.

70.    Based on the foregoing, the Trustee is entitled to avoid the Transfers as fraudulent transfers pursuant to Mass. Gen. Laws ch. 109A § 6(a) and Bankruptcy Code § 544(b), and the Trustee may recover the Transfers (or the value thereof) from the transferee.

### COUNT IV – PREFERENCE
**(Avoidance and Recovery of Preferential Transfers Pursuant to
Bankruptcy Code §§ 547 and 550)**

71.    The Trustee reasserts the allegations set forth in the above paragraphs as if expressly restated and realleged.

72.    Pursuant to Bankruptcy Code § 547(b), the Trustee may avoid any transfer of an interest of the Debtor in property:

    a.    to or for the benefit of a creditor;

    b.    for or on account of an antecedent debt owed by the Debtor before such transfer was made;

    c.    made while the Debtor was insolvent;

    d.    made on or within 90 days before the Petition Date, or within one year before the Petition Date if the creditor is an insider; and

    e.    that enables such creditor to receive more than such creditor would receive if:

        i.    the case were a case under chapter 7 of the Bankruptcy Code;

        ii.    the transfer had not been made; and

        iii.    such creditor received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

73.    To the extent that the Defendant's investments in the Debtor were valid and enforceable loans, the Defendant was at all times a creditor of the Debtor.  Alternatively, the

Defendant was a creditor of the Debtor at all times as a result of the Defendant's consulting and other services provided to the Debtor for which he expected compensation.

74.    Based on the existence of the Shortfall, the Debtor was insolvent at the time of the One Year Transfers.

75.    As the CFO and part owner of the Debtor, the Defendant was an insider of the Debtor.

76.    Due to the One Year Transfers, the Defendant received more than he would have received if:

    a.    the proceeding was one under Chapter 7 of the Bankruptcy Code;

    b.    the Transfers had not been made; and

    c.    the Defendant received payment of such debt to the extent provided by the Bankruptcy Code.

77.    Based on the foregoing, the Trustee may avoid the One Year Transfers as preferential transfers pursuant to Bankruptcy Code § 547, and the Trustee may recover the One Year Transfers from the Defendant pursuant to Bankruptcy Code § 550.

## COUNT V – BREACH OF FIDUCIARY DUTY
### (Pursuant to S.C. Code §33-8-420)

78.    The Trustee reasserts the allegations set forth in the above paragraphs as if expressly restated and realleged.

79.    As an officer of the Debtor while the Debtor was a corporation incorporated in South Carolina, the Defendant owed the Debtor the duty to act in good faith with the care an ordinary prudent person would exercise.  S.C. Code §33-8-420.

80.     The Defendant breached the duties he owed to the Debtor by, among other things, depleting the Debtor's depository accounts at VNB, failing to prevent further dissipation of the Debtor's depository accounts at VNB, depriving the Debtor of the opportunity to pay off its debts, and depleting funds that were essential for its continued operations.

81.     The Estate was damaged as a direct and proximate result of the Defendant's breach of his duties and the Estate should be awarded its actual damages and punitive damages.

### COUNT VI – BREACH OF FIDUCIARY DUTY
**(Pursuant to S.C. Code §33-44-409)**

82.     The Trustee reasserts the allegations set forth in the above paragraphs as if expressly restated and realleged.

83.     As a manager of the Debtor while the Debtor was a South Carolina limited liability company, the Defendant owed the Debtor the fiduciary duties of loyalty and due care. S.C. Code §33-44-409.

84.     The Defendant breached the duties he owed to the Debtor by, among other things, depleting the Debtor's depository accounts at VNB, failing to prevent further dissipation of the Debtor's depository accounts at VNB, depriving the Debtor of the opportunity to pay off its debts, and depleting funds that were essential for its continued operations.  The Defendant's conduct in connection with the Shortfall was grossly negligent, reckless, or intentional, or a knowing violation of the law.

85.     The Estate was damaged as a direct and proximate result of the Defendant's breach of his fiduciary duties and the Estate should be awarded its actual damages and punitive

damages.

## COUNT VII – DEEPENING INSOLVENCY

86.     The Trustee reasserts the allegations set forth in the above paragraphs as if expressly restated and realleged.

87.     At all times during the Debtor's operations, the Debtor had a Shortfall in its depository accounts at VNB.  As of January 31, 2009, the Shortfall was in excess of $6 million and it continued to climb each month until it ultimately reached $30,389,363.79 as of the Petition Date.

88.     Upon information and belief, the Defendant, together with the rest of the Management Team, intentionally prolonged the Debtor's operations years past the Debtor's insolvency until the Management Team could sell their interests in the Debtor to a third party, resulting in personal gain for the Management Team.

89.     The Defendant's conduct fraudulently prolonged the life of the Debtor years beyond insolvency and deepened the Debtor's insolvency until it reached over $30 million.

90.     As a result of the Defendant's conduct, the Debtor suffered damages by incurring additional debt without the ability to repay such debt, to the determinant of the company and its creditors.  Baena v. KPMG LLP, 389 F. Supp. 2d 112, 117 (D. Mass. 2005).

## COUNT VIII – DISALLOWANCE OF CLAIM
### (Disallowance of Any Claim the Defendant May Have
### Against the Estate Pursuant to Bankruptcy Code § 502)

91.     The Trustee reasserts the allegations set forth in the above paragraphs as if expressly restated and realleged.

92.   Bankruptcy Code § 502(d) provides, in relevant part, that unless an entity or

transferee from which property is avoidable under Bankruptcy Code § 547, has paid the amount

for which such entity or transferee is liable under Bankruptcy Code § 550, or has turned over

such property, any claim of such entity or transferee shall be disallowed.

93.   The Defendant has not paid or surrendered to the Trustee the Transfers (or the

value thereof) and, therefore, any unsecured claim that he has, or may assert, should be

disallowed.

## COUNT IX – INJUNCTION ON TRANSFERS

94.   The Trustee reasserts the allegations set forth in the above paragraphs as if

expressly restated and realleged.

95.   There is a reasonable likelihood that the Trustee will prevail on the merits of his

claims against the Defendant and recover a judgment for the Estate and against the Defendant in

excess of $800,000.00.

96.   In light of the significant amount of damages to the Estate caused by the

Defendant, the Trustee seeks an injunction to prevent the Defendant dissipating his personal

assets while his obligation to the Estate is unsatisfied.  Specifically, the Trustee seeks an

injunction preventing the Defendant from transferring, encumbering, assigning, pledging,

dissipating or spending assets other than purchases necessary for living expenses until his

obligation to the Estate has been satisfied in full.

97.   In 2009, the Defendant transferred his interest in his home and other valuable

assets to his wife for nominal or no consideration.  The Trustee reasonably fears that absent a

grant of preliminary, and thereafter permanent, injunction on transfers of the Defendant's assets,

the Defendant will transfer his remaining assets to put them beyond the reach of the Estate.

98.    Without an injunction preventing the Defendant from transferring, encumbering,

assigning, pledging, dissipating or spending assets other than purchases necessary for living

expenses, the Estate will suffer irreparable harm by having no ability to recover its significant

damages from the Defendant, and such harm to the Estate outweighs any potential harm to the

Defendant if an injunction is not granted.

WHEREFORE, the Trustee respectfully requests that this Court enter Judgment for

Joseph H. Baldiga, the Chapter 7 trustee of the bankruptcy estate of Southern Sky Air & Tours,

LLC d/b/a Direct Air, and against Robert Keilman as follows:

a.    On Counts I-IV, avoiding the Transfers to Robert Keilman and preserving the Transfers for the benefit of the Estate of Southern Sky Air & Tours, LLC d/b/a Direct Air;

b.    On Counts V and VI, finding Robert Keilman breached his duties to Southern Sky Air & Tours, LLC d/b/a Direct Air and award actual and punitive damages;

c.    On Count VII, finding that Robert Keilman caused a deepening insolvency of Southern Sky Air & Tours, LLC d/b/a Direct Air and award actual damages;

d.    On Count VIII, disallowing any and all of Robert Keilman's claims against the Estate of Southern Sky Air & Tours, LLC d/b/a Direct Air;

e.    On Count IX, entering a preliminary, and thereafter permanent, injunction enjoining Robert Keilman from transferring, encumbering, assigning, pledging, dissipating or spending any assets, other than purchases necessary for living expenses until his obligation to the Estate of Southern Sky Air & Tours, LLC d/b/a Direct Air has been satisfied in full; and

f.    Granting the Trustee such other and further relief as this Court deems just.

Respectfully submitted,

JOSEPH H. BALDIGA,
CHAPTER 7 TRUSTEE

By his counsel,

/s/ Jessica E. Murphy
Joseph H. Baldiga, Esq. BBO #549963
Jessica E. Murphy, Esq. BBO #664361
Gina Barbieri O'Neil, Esq. BBO #670596
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581
Phone: 508.898.1501
Fax:   508.898.1502
Email: bankrupt@mirickoconnell.com
Email: jmurphy@mirickoconnell.com
Email: goneil@mirickoconnell.com

Dated: March 13, 2014

## VERIFICATION

I, Joseph H. Baldiga, the Chapter 7 trustee of the bankruptcy estate of Southern Sky Air & Tours, LLC d/b/a Direct Air, state under the penalties of perjury that I have reviewed the factual allegations of this Verified Complaint and attest that they are true to the best of my knowledge. I further certify that I am unaware of any liability insurance available to the defendant for payment of the subject debt.

By: _____

Joseph H. Baldiga, Chapter 7 trustee

Dated: March 13, 2014

# Exhibit A

| Date | Check No. | Name | Amount |
|------|-----------|------|--------|
| 5/22/2008 | 10932 | DA Consultants | $ 450.00 |
| 10/15/2008 | 11398 | Robert Keilman | $ 25,000.00 |
| 11/15/2008 | 11494 | Robert Keilman | $ 25,000.00 |
| 11/17/2008 | 11540 | Robert Keilman | $ 10,000.00 |
| 11/25/2008 | 11565 | Robert Keilman | $ 10,000.00 |
| 12/03/2008 | 11602 | Robert Keilman | $ 10,000.00 |
| 12/11/2008 | 11636 | Robert Keilman | $ 10,000.00 |
| 12/18/2008 | 11663 | Robert Keilman | $ 10,000.00 |
| 12/26/2008 | 11664 | Robert Keilman | $ 10,000.00 |
| 12/31/2008 | 11716 | Robert Keilman | $ 10,000.00 |
| 01/09/2009 | 11765 | Robert Keilman | $ 10,000.00 |
| 01/16/2009 | 11797 | Robert Keilman | $ 10,000.00 |
| 01/22/2009 | 11832 | Robert Keilman | $ 10,000.00 |
| 01/30/2009 | 11869 | Robert Keilman | $ 10,000.00 |
| 02/05/2009 | 11908 | Robert Keilman | $ 10,000.00 |
| 02/15/2009 | 11943 | Robert Keilman | $ 10,000.00 |
| 02/19/2009 | 11984 | Robert Keilman | $ 10,000.00 |
| 02/27/2009 | 12053 | Robert Keilman | $ 10,000.00 |
| 03/06/2009 | 12076 | Robert Keilman | $ 10,000.00 |
| 03/13/2009 | 12105 | Robert Keilman | $ 10,000.00 |
| 03/20/2009 | 12153 | Robert Keilman | $ 10,000.00 |
| 03/26/2009 | 12161 | Robert Keilman | $ 10,000.00 |
| 04/09/2009 | 12210 | Robert Keilman | $ 20,000.00 |
| 04/27/2009 | 12280 | Robert Keilman | $ 5,000.00 |
| 05/14/2009 | 12856 | Robert Keilman | $ 3,000.00 |
| 05/14/2009 | 12855 | Robert Keilman | $ 1,947.63 |
| 09/30/2009 | 12978 | Robert Keilman | $ 3,000.00 |
| 11/18/2009 | 13348 | Robert Keilman | $ 768.89 |
| 12/11/2009 | 13444 | Robert Keilman | $ 10,000.00 |
| 12/18/2009 | 13486 | Robert Keilman | $ 10,000.00 |
| 12/23/2009 | 13512 | Robert Keilman | $ 10,000.00 |
| 12/31/2009 | 13568 | Robert Keilman | $ 10,000.00 |
| 01/04/2010 | 13581 | Robert Keilman | $ 5,000.00 |
| 01/07/2010 | 13595 | Robert Keilman | $ 10,000.00 |
| 01/15/2010 | 13642 | Robert Keilman | $ 10,000.00 |
| 01/22/2010 | 13676 | Robert Keilman | $ 10,000.00 |
| 01/28/2010 | 13692 | Robert Keilman | $ 10,000.00 |
| 02/05/2010 | 13759 | Robert Keilman | $ 10,000.00 |
| 02/12/2010 | 13777 | Robert Keilman | $ 10,000.00 |
| 02/19/2010 | 13818 | Robert Keilman | $ 10,000.00 |
| 02/26/2010 | 13841 | Robert Keilman | $ 10,000.00 |
| 03/05/2010 | 13892 | Robert Keilman | $ 10,000.00 |
| 03/19/2010 | 13948 | Robert Keilman | $ 10,000.00 |
| 03/19/2010 | 13949 | Robert Keilman | $ 10,000.00 |
| 03/25/2010 | 1035 | Robert Keilman | $ 10,000.00 |
| 04/02/2010 | 1052 | Robert Keilman | $ 10,000.00 |
| 04/09/2010 | 1097 | Robert Keilman | $ 10,000.00 |
| 04/16/2010 | 1156 | Robert Keilman | $ 10,000.00 |

| Date | Check No. | Name | Amount |
|------|-----------|------|--------|
| 04/22/2010 | 13996 | Robert Keilman | $ 10,000.00 |
| 04/29/2010 | 1222 | Robert Keilman | $ 10,000.00 |
| 05/07/2010 | 1243 | Robert Keilman | $ 10,000.00 |
| 05/13/2010 | 1329 | Robert Keilman | $ 10,000.00 |
| 05/21/2010 | 1405 | Robert Keilman | $ 10,000.00 |
| 05/28/2010 | 1445 | Robert Keilman | $ 10,000.00 |
| 06/04/2010 | 13999 | Robert Keilman | $ 10,000.00 |
| 06/18/2010 | 14007 | Robert Keilman | $ 10,000.00 |
| 06/18/2010 | 1568 | Robert Keilman | $ 10,000.00 |
| 06/25/2010 | 1610 | Robert Keilman | $ 5,000.00 |
| 07/08/2010 | 1701 | Robert Keilman | $ 5,000.00 |
| 07/28/2010 | 14009 | Robert Keilman | $ 10,000.00 |
| 08/03/2010 | 1857 | Robert Keilman | $ 10,000.00 |
| 08/06/2010 | 1886 | Robert Keilman | $ 10,000.00 |
| 08/12/2010 | 1910 | Robert Keilman | $ 10,000.00 |
| 08/27/2010 | 14013 | Robert Keilman | $ 10,000.00 |
| 09/01/2010 | 2069 | Robert Keilman | $ 10,000.00 |
| 09/09/2010 | 2094 | Robert Keilman | $ 10,000.00 |
| 09/15/2010 | 2144 | Robert Keilman | $ 10,000.00 |
| 09/23/2010 | 2192 | Robert Keilman | $ 10,000.00 |
| 09/30/2010 | 2230 | Robert Keilman | $ 10,000.00 |
| 10/08/2010 | 2265 | Robert Keilman | $ 10,000.00 |
| 10/14/2010 | 2323 | Robert Keilman | $ 10,000.00 |
| 10/21/2010 | 2376 | Robert Keilman | $ 10,000.00 |
| 10/28/2010 | 2397 | Robert Keilman | $ 10,000.00 |
| 11/03/2010 | 2457 | Robert Keilman | $ 3,000.00 |
| 11/03/2010 | 2456 | Robert Keilman | $ 10,000.00 |
| 11/12/2010 | 2580 | Robert Keilman | $ 10,000.00 |
| 11/16/2010 | 2612 | Robert Keilman | $ 10,000.00 |
| 11/23/2010 | 2631 | Robert Keilman | $ 10,000.00 |
| 12/02/2010 | 2712 | Robert Keilman | $ 10,000.00 |
| 12/08/2010 | 14099 | Robert Keilman | $ 3,000.00 |
| 12/09/2010 | 2750 | Robert Keilman | $ 10,000.00 |
| 12/22/2010 | 2815 | Robert Keilman | $ 10,000.00 |
| 12/22/2010 | 2816 | Robert Keilman | $ 10,000.00 |
| 01/19/2011 | 2955 | Robert Keilman | $ 10,000.00 |
| 09/01/2011 | 16011 | Robert Keilman | $ 558.00 |
| 09/08/2011 | 15018 | Robert Keilman | $ 501.19 |
| 09/08/2011 | 4097 | Robert Keilman | $ 10,000.00 |
| 09/20/2011 | 4098 | Robert Keilman | $ 695.00 |
| 09/28/2011 | 4194 | Robert Keilman | $ 602.80 |
| 10/11/2011 | wire | Robert Keilman | $ 1,982.00 |
| 10/28/2011 | 4331 | Robert Keilman | $ 469.30 |
| 11/18/2011 | 4429 | Robert Keilman | $ 2,007.00 |
| 11/30/2011 | 4460 | Robert Keilman | $ 2,083.33 |
| 12/07/2011 | 15693 | Robert Keilman | $ 2,083.30 |
| 01/06/2012 | 15709 | Robert Keilman | $ 4,166.60 |
| 02/01/2012 | 4661 | Robert Keilman | $ 4,166.60 |

| Date | Check No. | Name | Amount |
|---|---|---|---|
| 02/01/2012 | 15715 | Robert Keilman | $ 1,153.36 |
| 03/02/2012 | wire | Robert Keilman | $ 1,956.00 |
| 03/05/2012 | 4823 | Robert Keilman | $ 4,166.68 |

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### (CENTRAL DIVISION)

In re:

**SOUTHERN SKY AIR & TOURS, LLC
d/b/a DIRECT AIR,**

      Debtor.

**Chapter 7
Case No. 12-40944-MSH**

**JOSEPH H. BALDIGA, CHAPTER 7
TRUSTEE OF THE BANKRUPTCY
ESTATE OF SOUTHERN SKY AIR &
TOURS, LLC d/b/a DIRECT AIR,**

      Plaintiff,

      v.

**ROBERT KEILMAN,**

      Defendant.

**Adversary Proceeding
No. _____**

## DECLARATION RE: ELECTRONIC FILING

      I, Joseph H. Baldiga, **hereby declare under penalty of perjury** that all of the

information contained in the Verified Complaint (singularly or jointly the "Document"), filed

electronically, is true and correct.  I understand that this DECLARATION is to be filed with the

Clerk of Court electronically concurrently with the electronic filing of the Document.  I

understand that failure to file this DECLARATION may cause the Document to be struck and

any request contained or relying thereon to be denied, without further notice.

      I further understand that pursuant to the Massachusetts Electronic Filing Local Rule

(MEFLR)-7(a) all paper documents containing original signatures executed under the penalties

of perjury and filed electronically with the Court are the property of the bankruptcy estate and

shall be maintained by the authorized CM/ECF Registered User for a period of five (5) years

after the closing of this case.

Dated: March 13, 2014                           _____ (Affiant)

{Practice Areas/CORP/15008/14190/A2536709.DOC}