B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Joseph H. Baldiga, Chapter 7 Trustee of the<br>Bankruptcy Estate of Southern Sky Air & Tours, LLC<br>d/b/a Direct Air | DEFENDANTS<br>Judy Tull and Kay Ellison |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Joseph H. Baldiga, Esq.<br>Jessica E. Murphy, Esq.<br>Mirick, O'Connell, DeMallie & Lougee, LLP<br>1800 West Park Dr., Suite 400<br>Westborough, MA 01581<br>Phone:   508.898.1501<br>Fax:      508.898.1502<br>Email:   bankrupt@mirickoconnell.com<br>Email:   jmurphy@mirickoconnell.com | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor                          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor                        ☐ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>☐ Debtor                          ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor                        ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
**Trustee action under 11 U.S.C. §§ 502, 544(b), 547, 548 and 550, Fed. R. Bankr. P. 7001, Mass. Gen. Laws Ch. 109A, S.C. Code § 33-8-420, and S.C. Code § 33-44-409 (I) for avoidance, preservation and recovery of transfers as constructive fraudulent transfers, (II) for avoidance and recovery of fraudulent transfers, (III) for avoidance and recovery of preferential transfers, (IV) for breach of fiduciary duty, (V) for injunctive relief, (VI) for a finding of deepening insolvency, and (VII) to disallow any claims the Defendant may have against the Estate.**

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☒ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection/revocation of discharge - §727(c), (d), (e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1), (14), (14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief - imposition of stay
☒ 72-Injunctive relief - other

**FRBP 7001(8) – Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) – Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) – Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case - 15 U.S.C. §§78aaa et.seq.
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐   Check if this case involves a substantive issue of state law | ☐   Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐   Check if a jury trial is demanded in complaint | Demand: not less than $30,000,000 |

Other Relief Sought

Damages under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §1962

{Practice Areas/CORP/15008/14190/A2536214.DOC[Ver:4]}

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
|---|---|
| NAME OF DEBTOR<br>**Southern Sky Air & Tours, LLC d/b/a Direct Air** | BANKRUPTCY CASE NO.<br>**12-40944-MSH** |

| DISTRICT IN WHICH CASE IS PENDING<br>**Massachusetts** | DIVISIONAL OFFICE<br>**Central** | NAME OF JUDGE<br>**Melvin S. Hoffman** |
|---|---|---|

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |

| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| /s/ Jessica E. Murphy | |
| DATE<br>3-13-14 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Jessica E. Murphy |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding cover sheet electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney.) A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants**. Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## (CENTRAL DIVISION)

| | |
|---|---|
| In re:<br><br>**SOUTHERN SKY AIR & TOURS, LLC**<br>**d/b/a DIRECT AIR,**<br><br>**Debtor.** | **Chapter 7**<br>**Case No. 12-40944-MSH** |
| **JOSEPH H. BALDIGA, CHAPTER 7**<br>**TRUSTEE OF THE BANKRUPTCY**<br>**ESTATE OF SOUTHERN SKY AIR &**<br>**TOURS, LLC d/b/a DIRECT AIR,**<br>         **Plaintiff,**<br><br>         **v.**<br><br>**JUDY TULL and KAY ELLISON,**<br><br>         **Defendants.** | **Adversary Proceeding**<br>**No. _____** |

## VERIFIED COMPLAINT

Joseph H. Baldiga (the "Trustee"), the Chapter 7 trustee of the bankruptcy estate (the "Estate") of Southern Sky Air & Tours, LLC d/b/a Direct Air (the "Debtor"), after completing his investigation and report on the Debtor's operations and the shortfall from Debtor's depository accounts, brings this action against Judy Tull ("Ms. Tull"), the Debtor's former Chief Executive Officer (CEO), and Kay Ellison ("Ms. Ellison; together with Ms. Tull, the "Defendants"), the Debtor's former Managing Partner, both founding members and owners of the Debtor, for their conduct causing the shortfall, breaches of their duty to the Debtor and violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act that significantly damaged the Debtor.  In

addition, the Trustee seeks to avoid and recover certain pre-petition transfers that the Debtor

made to the Defendants to the maximum extent allowable by law.

## PARTIES

1.      The Trustee is the duly appointed, acting, and qualified Chapter 7 trustee of the

Estate.

2.      Upon information and belief, Ms. Tull is an individual residing at 701 Sklyer

Street, Argyle, Texas 76226.

3.      Upon information and belief, Ms. Ellison is an individual residing at 5601 North

Ocean Boulevard, Unit B-208, Myrtle Beach, South Carolina 29577.

## JURISDICTION AND VENUE

4.      This is an adversary proceeding brought to recover money or property of the

Estate pursuant to, among other causes of action, 11 U.S.C. §§ 502, 544(b), 547, 548 and 550 of

the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), 18 U.S.C.

§1962, Mass. Gen. Laws Ch. 109A, S.C. Code §33-8-420, S.C. Code §33-44-409 and Fed. R.

Bankr. P. 7001.

5.      Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 157(b)(1),

28 U.S.C. § 1334(a) and 18 U.S.C. § 1964(c).

6.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (F),

(H) and (O).

7.      This district is the proper venue for this proceeding pursuant to 28 U.S.C. § 1409.

## **FACTS COMMON TO ALL COUNTS**

8.      The Trustee reasserts the allegations set forth in the above paragraphs as if
expressly restated and realleged.

9.      On March 15, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for
relief under Chapter 11 of the Bankruptcy Code.

10.     On April 11, 2012 (the "Conversion Date"), the Court converted the Debtor's
bankruptcy case to one administered under Chapter 7 of the Bankruptcy Code.

11.     Also on the Conversion Date, the U.S. Trustee appointed the Trustee as Chapter 7
trustee of the Debtor's case and he continues to serve in this capacity.

### **A.  The Debtor's Background**

12.     Prior to the Petition Date, the Debtor was a public charter operator authorized
under and subject to 14 C.F.R. §380, et seq. of the Special Regulations (the "DOT Regulations")
of the United States Department of Transportation, Office of Aviation.

13.     The Debtor incorporated in South Carolina on June 26, 2006 as a statutorily close
corporation.

14.     From the beginning of Debtor's operations through February 2012, Ms. Tull was
and acted as CEO of the Debtor.

15.     At the beginning of the Debtor's operations, Ms. Ellison was and acted as the
Vice President of System Operations.  In or after 2008, Ms. Ellison became and thereafter acted
as the Managing Partner of the Debtor.

16.     The Defendants were part of the Debtor's management team, which also included: (a) Ed Warneck as President; (b) Stanley Marshall Ellison as Vice President of Reservations & Technology, and later Chairman; and (c) Robert Keilman as Chief Financial Officer (CFO) (collectively with the Defendants, the "Management Team").

17.     From the Debtor's inception through September 29, 2011, each member of the Management Team owned a 15.8% interest in the Debtor.

18.     On February 19, 2008, the Debtor filed an amendment with the South Carolina Secretary of State to convert from a corporation into a limited liability company. The Management Team thereafter jointly managed the Debtor, which was a manager-managed limited liability company.

### B. The Debtor's Operations

19.     The Debtor began accepting customer reservations in 2006 and began flight operations on March 7, 2007.

20.     As a public charter operator, the Debtor was required to comply with the DOT Regulations regarding security and depository agreements to protect customer payments. See 14 C.F.R. § 380.34.

21.     In accordance with the DOT Regulations, the Debtor entered into various Public Charter Depository Agreements (the "Depository Agreements") with various air carriers and Valley National Bank ("VNB") as the depository bank. VNB thereafter maintained two accounts for and on behalf of the Debtor (together, the "depository accounts"). Pursuant to the Depository Agreements and the DOT Regulations, the Debtor deposited with VNB payments received from

the Debtor's customers to be held in its depository accounts pending certification of completion of the customers' flights. VNB agreed to maintain a flight by flight accounting for all payments received, thereby ensuring that there would be sufficient funds in the Debtor's depository accounts for each flight, and that funds paid for future flights would not be used for current flights for which there were insufficient funds.

22.     After the Debtor's flights were completed, members of the Debtor's Management Team submitted by fax and email a request (each, a "release request") to VNB to release revenue associated with the completed flights. The release request identified the amount paid in advance to air carriers or fuel suppliers for the flights and included a request that the remaining balance (gross flight revenue less expenses paid) be paid to the Debtor or on occasion, to one or more of the Debtor's vendors.

23.     Additionally, members of the Debtor's Management Team submitted release requests to VNB to withdraw membership fees associated with the Debtor's Family Ties Program vouchers.

24.     The Defendants prepared, signed and submitted nearly all of the release requests to VNB.

25.     Two days prior the Petition Date, the Debtor abruptly ceased operations. At the time that it shut down, the Debtor had already accepted advance travel reservations and payment from thousands of customers.

26.     As of the Petition Date, the aggregate balance in the Debtor's depository accounts at VNB was $1,016,935.91. To have complied with the DOT Regulations, the aggregate balance

should have been $31,406,299.70. Accordingly, there was a shortfall from the Debtor's depository accounts at VNB (the "Shortfall") in the amount of $30,389,363.79 as of the Petition Date. The Trustee discovered the Shortfall after the Conversion Date.

27.     The Shortfall was caused primarily by the funds requested and released from the Debtor's depository accounts at VNB as follows: (a) $12,175,928.50 for duplicative withdrawals of Family Ties membership fees; (b) $8,323,734.82 in withdrawals for "ghost" transactions that did not represent actual customers or revenue to the Debtor; and (c) $5,543,750.80 in withdrawals for revenue that was never deposited into the depository accounts at VNB.

28.     The Defendants themselves prepared, signed and submitted fraudulent release requests to VNB that improperly dissipated the Debtor's depository accounts at VNB by, among other things, requesting duplicative withdrawals for Family Ties membership fees, requesting withdrawals for "ghost" transactions and requesting revenue that was never deposited into the depository accounts at VNB.

29.     At a minimum, the Defendants had actual knowledge of the Shortfall by the end of 2009. To the extent that the Defendants did not have actual knowledge of the existence or amount of the Shortfall prior to the end of 2009, the Defendants should have known about the Shortfall before then.

30.     Among other things, upon information and belief, the Defendants knew at all times that the Debtor was not profitable and that the Debtor operated at a loss every year.

31.     Despite knowledge of the Shortfall, the Defendants, along with the rest of the Management Team, failed to make changes to the release request procedure or stop the improper

dissipation of funds causing the Shortfall.  By their failure to act, the Defendants allowed the

Shortfall to worsen by over $18 million from December 31, 2009 through September 29, 2011.

32.      The Shortfall would not exist at its current magnitude if the Defendants and the

other members of the Management Team ceased operations when it became apparent that the

Debtor's depository accounts at VNB contained insufficient funds to cover all current operating

expenses and all customer funds for advance flights pursuant to the DOT Regulations.

33.      Avondale Aviation I, LLC ("Avondale") and Stukes Atwood, LLC acquired the

majority interest in the Debtor on September 29, 2011.  As part of the acquisition, Avondale

issued a Promissory Note in the amount of $750,000 in favor of the entire Management Team.

34.      After September 29, 2011, Ms. Tull continued her employment with the Debtor

doing the same type of work she had done before until she resigned in or about February 2012.

Ms. Tull returned before the Petition Date as a consultant for the Debtor.

35.      After September 29, 2011, Ms. Ellison continued her employment with the Debtor

doing the same type of work she had done prior to the acquisition.

### C. The Transfers to Ms. Tull

36.      On or within four years prior to the Petition Date, the Debtor transferred funds to

Ms. Tull totaling at least $657,252.57 (the "Tull Transfers"). The Tull Transfers are comprised of

various payments from the Debtor to Ms. Tull, a list of which is attached hereto as **Exhibit A**.

37.      Upon information and belief, the Debtor paid Ms. Tull $644,752.71 between

March 31, 2008 and March 5, 2012 in salary, consulting fees or other amounts as compensation

for her work for the Debtor (the "Tull Compensation Transfers").

38.     Upon information and belief, the Debtor paid Ms. Tull $12,499.86 between January 6, 2012 and the Petition Date as repayment of Avondale's Promissory Note obligations to Ms. Tull (the "Tull Acquisition Loan Transfers").

39.     The Tull Transfers resulted in the transfer of funds from the Debtor to Ms. Tull totaling at least $167,841.56 within one year prior to the Petition Date (the "Tull One Year Transfers").  The Tull One Year Transfers include the Tull Acquisition Loan Transfers and a portion of the Tull Compensation Transfers.

40.     Within two years prior to the Petition Date, the Debtor transferred funds to Ms. Tull totaling at least $329,628.37 (the "Tull Two Year Transfers").  The Tull Two Year Transfers include the Tull Acquisition Loan Transfers and a portion of the Tull Compensation Transfers.

41.     Within four years prior to the Petition Date, the Debtor transferred funds to Ms. Tull totaling at least $657,252.57 (i.e., the Tull Transfers).  The Tull Transfers include all of the Tull Acquisition Loan Transfers and the Tull Compensation Transfers.

### D.  The Transfers to Ms. Ellison

42.     On or within four years prior to the Petition Date, the Debtor transferred funds to Ms. Ellison totaling at least $602,392.48 (the "Ellison Transfers"). The Ellison Transfers are comprised of various payments from the Debtor to Ms. Ellison, a list of which is attached hereto as **Exhibit B**.

43.     Upon information and belief, the Debtor paid Ms. Ellison $589,892.62 between March 31, 2008 and March 7, 2012 in salary, consulting fees or other amounts as compensation

for her work as Vice President of System Operations and later Managing Director of the Debtor (the "Ellison Compensation Transfers").

44.     Upon information and belief, the Debtor paid Ms. Ellison $12,499.86 between January 6, 2012 and the Petition Date as repayment of Avondale's Promissory Note obligations to Ms. Ellison (the "Ellison Acquisition Loan Transfers").

45.     The Ellison Transfers resulted in the transfer of funds from the Debtor to Ms. Ellison totaling at least $197,570.48 within one year prior to the Petition Date (the "Ellison One Year Transfers"). The Ellison One Year Transfers include the Ellison Acquisition Loan Transfers and a portion of the Ellison Compensation Transfers.

46.     Within two years prior to the Petition Date, the Debtor transferred funds to Ms. Ellison totaling at least $345,092.48 (the "Ellison Two Year Transfers"). The Ellison Two Year Transfers include the Ellison Acquisition Loan Transfers and a portion of the Ellison Compensation Transfers.

47.     Within four years prior to the Petition Date, the Debtor transferred funds to Ms. Ellison totaling at least $602,392.48 (i.e., the Ellison Transfers). The Ellison Transfers include all of the Ellison Acquisition Loan Transfers and the Ellison Compensation Transfers.

48.     The Trustee reserves the right to amend this Complaint including, without limitation, to add any subsequently discovered transfers to or for the benefit of the Defendants.

## COUNT I – CONSTRUCTIVE FRAUDULENT TRANSFER
### (Avoidance and Preservation of the Transfer as a Constructive
### Fraudulent Transfer pursuant to Bankruptcy Code §§ 548 and 550)

49.     The Trustee reasserts the allegations set forth in the above paragraphs as if
expressly restated and realleged.

50.     Under Bankruptcy Code § 548(a)(1)(B), the Trustee may avoid any transfer of the
Debtor's interest in property made within two years prior to the Petition Date, if the Debtor
received less than a reasonably equivalent value in exchange for such transfer and the Debtor
was insolvent on the date that such transfer was made or became insolvent as a result of such
transfer.

51.     The Debtor made the Tull Two Year Transfers and the Ellison Two Year
Transfers within two years prior to the Petition Date.

52.     The Debtor received no reasonably equivalent value in exchange for each of the
Tull Two Year Transfers and the Ellison Two Year Transfers.  Despite Ms. Tull receiving the
Tull Compensation Transfers and Ms. Ellison receiving the Ellison Compensation Transfers for
their roles with the Debtor, the Defendants failed to provide any value to the Debtor.  Among
other things, the Defendants contributed to the Shortfall from the Debtor's depository account at
VNB, failed to properly manage the Debtor's finances and failed to limit the increasing Shortfall
of the Debtor's depository accounts at VNB by others, which damaged the Debtor significantly.
As a result of the Defendants' actions and/or failure to act, the Defendants provided no value to
the Debtor and, in fact, caused significant harm to the Debtor.

53.    In addition, the Tull Two Year Transfers and the Ellison Two Year Transfers encompass the Tull Acquisition Loan Transfers and the Ellison Acquisition Loan Transfers.  The Debtor did not receive any reasonably equivalent value for the Tull Acquisition Loan Transfers and the Ellison Acquisition Loan Transfers because Avondale's Promissory Note obligations to Ms. Tull and Ms. Ellison were never obligations of the Debtor and for which the Debtor received no benefit.

54.    The Debtor was insolvent on the date that each of the Tull Two Year Transfers and the Ellison Two Year Transfers were made or became insolvent as a result of the Tull Two Year Transfers and the Ellison Two Year Transfers.

55.    Based on the foregoing, the Trustee may avoid the Tull Two Year Transfers and the Ellison Two Year Transfers pursuant to Bankruptcy Code § 548(a)(1)(B), and the Trustee may recover the Tull Two Year Transfers and the Ellison Two Year Transfers (or the value thereof) from the respective transferees pursuant to Bankruptcy Code § 550.

### COUNT II – CONSTRUCTIVE FRAUDULENT TRANSFER
**(Avoidance and Recovery of Fraudulent Transfer Pursuant to
Bankruptcy Code § 544(b) and Mass. Gen. Laws ch. 109A § 5(a)(2))**

56.    The Trustee reasserts the allegations set forth in the above paragraphs as if expressly restated and realleged.

57.    Under Mass. Gen. Laws ch. 109A § 5(a)(2) (made applicable here by Bankruptcy Code § 544(b)), a transfer by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer, and the debtor intended to incur, or

believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

58.     The Defendants were creditors of the Debtor at all times as a result of the Defendants' services to or for the benefit of the Debtor for which the Defendants expected compensation from the Debtor.

59.     The Debtor received less than reasonably equivalent value in exchange for the Tull Transfers and the Ellison Transfers. Specifically, due to the Shortfall and the Defendants' role in worsening the Shortfall, the Defendants provided no reasonable consideration in exchange for the Tull Compensation Transfers and the Ellison Compensation Transfers.

60.     In addition, the Debtor did not receive any reasonably equivalent value for the Tull Acquisition Loan Transfers and Ellison Acquisition Loan Transfers which were never obligations of the Debtor and for which the Debtor received no benefit.

61.     The Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due and, in fact, did incur debts beyond its ability to pay as those debts became due.

62.     Based on the foregoing, the Trustee is entitled to avoid the Tull Transfers and Ellison Transfers as fraudulent transfers pursuant to Mass. Gen. Laws ch. 109A § 5(a)(2) and Bankruptcy Code § 544(b), and the Trustee may recover the Tull Transfers and Ellison Transfers (or the value thereof) from the transferee.

## COUNT III – CONSTRUCTIVE FRAUDULENT TRANSFER
### (Avoidance and Recovery of Fraudulent Transfer Pursuant to
### Bankruptcy Code § 544(b) and Mass. Gen. Laws ch. 109A § 6(a))

63.    The Trustee reasserts the allegations set forth in the above paragraphs as if expressly restated and realleged.

64.    Under Mass. Gen. Laws ch. 109A § 6(a) (made applicable here by Bankruptcy Code § 544(b)), a transfer by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer, and the debtor was insolvent at that time, or the debtor became insolvent as a result of the transfer.

65.    The Defendants were creditors of the Debtor at all times as a result of the Defendants' services to or for the benefit of the Debtor for which the Defendants expected compensation from the Debtor.

66.    The Debtor made the Tull Transfers and the Ellison Transfers without receiving a reasonably equivalent value in exchange for the same. Specifically, due to the Shortfall and the Defendants' role in worsening the Shortfall, the Defendants provided no reasonable consideration in exchange for the Tull Compensation Transfers and the Ellison Compensation Transfers.

67.    In addition, the Debtor did not receive any reasonably equivalent value for the Tull Acquisition Loan Transfers and the Ellison Acquisition Loan Transfers which were never obligations of the Debtor and for which the Debtor received no benefit.

68.    The Debtor was insolvent on the date that each of the Tull Transfers and Ellison Transfers were made or became insolvent as a result of the Tull Transfers and Ellison Transfers.

69.    Specifically, the Shortfall was between $2 million and $30 million at all times within the four years prior to the Petition Date, and the Debtor's outstanding debts exceeded its cash and assets during that entire period.

70.    On account of the Tull Transfers and Ellison Transfers, the Debtor had no ability to perform on its obligations to creditors and customers.

71.    Based on the foregoing, the Trustee is entitled to avoid the Tull Transfers and Ellison Transfers as fraudulent transfers pursuant to Mass. Gen. Laws ch. 109A § 6(a) and Bankruptcy Code § 544(b), and the Trustee may recover the Tull Transfers and Ellison Transfers (or the value thereof) from the transferee.

## COUNT IV – PREFERENCE
### (Avoidance and Recovery of Preferential Transfers Pursuant to Bankruptcy Code §§ 547 and 550)

72.    The Trustee reasserts the allegations set forth in the above paragraphs as if expressly restated and realleged.

73.    Pursuant to Bankruptcy Code § 547(b), the Trustee may avoid any transfer of an interest of the Debtor in property:

  a.    to or for the benefit of a creditor;

  b.    for or on account of an antecedent debt owed by the Debtor before such transfer was made;

  c.    made while the Debtor was insolvent;

     d.     made on or within 90 days before the Petition Date, or within one year before the Petition Date if the creditor is an insider; and

     e.     that enables such creditor to receive more than such creditor would receive if:

          i.     the case were a case under chapter 7 of the Bankruptcy Code;

          ii.     the transfer had not been made; and

          iii.     such creditor received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

74.     The Defendants were creditors of the Debtor at all times as a result of the Defendants' services to or for the benefit of the Debtor for which the Defendants expected compensation from the Debtor.

75.     Based on the existence of the Shortfall, the Debtor was insolvent at the time of the One Year Transfers.

76.     As the CEO and part owner of the Debtor, Ms. Tull was an insider of the Debtor.

77.     As Managing Partner and part owner of the Debtor, Ms. Ellison was an insider of the Debtor.

78.     Due to the One Year Transfers, the Defendants received more than they would have received if:

     a.     the proceeding was one under Chapter 7 of the Bankruptcy Code;

     b.     the Tull Transfers and Ellison Transfers had not been made; and

     c.     the Defendants received payment of such debt to the extent provided by the Bankruptcy Code.

79.    Based on the foregoing, the Trustee may avoid the One Year Transfers as preferential transfers pursuant to Bankruptcy Code § 547, and the Trustee may recover the One Year Transfers from the Defendants pursuant to Bankruptcy Code § 550.

## COUNT V – BREACH OF FIDUCIARY DUTY
### (Pursuant to S.C. Code §33-8-420)

80.    The Trustee reasserts the allegations set forth in the above paragraphs as if expressly restated and realleged.

81.    As officers of the Debtor while the Debtor was a corporation incorporated in South Carolina, the Defendants owed the Debtor the duty to act in good faith with the care an ordinary prudent person would exercise.  S.C. Code §33-8-420.

82.    The Defendants breached the duties they owed to the Debtor by, among other things, contributing to the Shortfall from the Debtor's depository accounts at VNB, failing to properly manage the Debtor's finances, failing to prevent dissipation of the Debtor's depository accounts at VNB by others and depriving the Debtor of the opportunity to pay off its debts.

83.    The Estate was damaged as a direct and proximate result of the Defendants' breach of their duties and the Estate should be awarded its actual damages and punitive damages.

## COUNT VI – BREACH OF FIDUCIARY DUTY
### (Pursuant to S.C. Code §33-44-409)

84.    The Trustee reasserts the allegations set forth in the above paragraphs as if expressly restated and realleged.

85.    As managers of the Debtor while the Debtor was a South Carolina limited liability company, the Defendants owed the Debtor the fiduciary duties of loyalty and due care.  S.C. Code §33-44-409.

86.    The Defendants breached the duties they owed to the Debtor by, among other things, contributing to the Shortfall from the Debtor's depository accounts at VNB, failing to properly manage the Debtor's finances, failing to prevent dissipation of the Debtor's depository accounts at VNB by others and depriving the Debtor of the opportunity to pay off its debts.  The Defendants' conduct in connection with the Shortfall was grossly negligent, reckless, or intentional, or a knowing violation of the law.

87.    The Estate was damaged as a direct and proximate result of the Defendants' breach of their fiduciary duties and the Estate should be awarded its actual damages and punitive damages.

## COUNT VII – DEEPENING INSOLVENCY

88.    The Trustee reasserts the allegations set forth in the above paragraphs as if expressly restated and realleged.

89.    At all times during the Debtor's operations, the Debtor had a Shortfall in its depository accounts at VNB.  As of January 31, 2009, the Shortfall was in excess of $6 million and it continued to climb each month until it ultimately reached $30,389,363.79 as of the Petition Date.

90.    Upon information and belief, the Defendants, together with the rest of the Management Team, intentionally prolonged the Debtor's operations years past the Debtor's

insolvency until the Management Team could sell their interests in the Debtor to a third party,

resulting in personal gain for the Management Team.

91.    The Defendants' conduct fraudulently prolonged the life of the Debtor years

beyond insolvency and deepened the Debtor's insolvency until it reached over $30 million.

92.    As a result of the Defendants' conduct, the Debtor suffered damages by incurring

additional debt without the ability to repay such debt, to the determinant of the company and its

creditors. Baena v. KPMG LLP, 389 F. Supp. 2d 112, 117 (D. Mass. 2005).

## COUNT VIII – RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)
### (Pursuant to 18 U.S.C. § 1962)

93.    The Trustee reasserts the allegations set forth in the above paragraphs as if

expressly restated and realleged.

94.    The Defendants were a group of individuals who associated together to

improperly dissipate the Debtor's depository accounts by preparing and submitting fraudulent

request releases to VNB for the common purpose of funneling money to the Debtor that it was

not entitled to, and thereby benefiting the Defendants as owners of the Debtor. The Defendants'

association existed from at least December 21, 2007 through at least March 1, 2012.

95.    The Defendants were an association-in-fact enterprise pursuant to 18 U.S.C. §

1961(4).

96.    The Defendants' conduct preparing, signing and submitting fraudulent release

requests by email and fax to VNB across state lines that improperly dissipated the Debtor's

depository accounts at VNB violated 18 U.S.C. § 1343, which prohibits fraud by wire, radio or

television.

97.    A violation of 18 U.S.C. § 1343 constitutes "racketeering activity" pursuant to 18

U.S.C. § 1961(1)(B).

98.    Upon information and belief, between December 21, 2007 and March 1, 2013, the

Defendants submitted at least one fraudulent release request to VNB each month, amounting to a

regular pattern of racketeering activity.

99.    The Defendants' fraudulent release requests improperly dissipated the Debtor's

depository accounts at VNB and damaged the Debtor at least $30 million for which the Debtor is

entitled to an award of three time Debtor's damages, plus costs and attorneys' fees, pursuant to

18 U.S.C. §1964(a).

## COUNT IX – DISALLOWANCE OF CLAIM
### (Disallowance of Any Claim the Defendants May Have
### Against the Estate Pursuant to Bankruptcy Code § 502)

100.    The Trustee reasserts the allegations set forth in the above paragraphs as if

expressly restated and realleged.

101.    Bankruptcy Code § 502(d) provides, in relevant part, that unless an entity or

transferee from which property is avoidable under Bankruptcy Code § 547, has paid the amount

for which such entity or transferee is liable under Bankruptcy Code § 550, or has turned over

such property, any claim of such entity or transferee shall be disallowed.

102.    The Defendants have not paid or surrendered to the Trustee the Tull Transfers or the Ellison Transfers (or the value thereof) and, therefore, any unsecured claim that they have, or may assert, should be disallowed.

## COUNT X – INJUNCTION ON TRANSFERS

103.    The Trustee reasserts the allegations set forth in the above paragraphs as if expressly restated and realleged.

104.    There is a reasonable likelihood that the Trustee will prevail on the merits of his claims against the Defendants and recover a judgment for the Estate and against Ms. Tull and Ms. Ellison in excess of $600,000.00 each.

105.    In light of the significant amount of damages to the Estate caused by the Defendants' conduct in connection with preparing and submitting fraudulent release requests, the Trustee seeks an injunction to prevent the Defendants from dissipating their personal assets while their obligations to the Estate are unsatisfied.  Specifically, the Trustee seeks an injunction preventing Ms. Tull and Ms. Ellison from transferring, encumbering, assigning, pledging, dissipating or spending assets other than purchases necessary for living expenses until their obligations to the Estate have been satisfied in full.

106.    The Trustee reasonably fears that absent the grant of a preliminary and thereafter permanent injunction on transfers of the Defendants' assets, the Defendants will transfer or dissipate their assets to put them beyond the reach of the Estate.

107.    Without an injunction preventing the Defendants from transferring, encumbering, assigning, pledging, dissipating or spending assets other than purchases necessary for living

g.    Granting the Trustee such other and further relief as this Court deems just.

Respectfully submitted,

JOSEPH H. BALDIGA,
CHAPTER 7 TRUSTEE

By his counsel,

/s/ Jessica E. Murphy
Joseph H. Baldiga, Esq. BBO #549963
Jessica E. Murphy, Esq. BBO #664361
Gina Barbieri O'Neil, Esq. BBO #670596
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581
Phone: 508.898.1501
Fax:    508.898.1502
Email: bankrupt@mirickoconnell.com
Email: jmurphy@mirickoconnell.com
Email: goneil@mirickoconnell.com

Dated: March 13, 2014

## VERIFICATION

I, Joseph H. Baldiga, the Chapter 7 trustee of the bankruptcy estate of Southern Sky Air
& Tours, LLC d/b/a Direct Air, state under the penalties of perjury that I have reviewed the
factual allegations of this Verified Complaint and attest that they are true to the best of my
knowledge.  I further certify that I am unaware of any liability insurance available to the
defendant for payment of the subject debt.

By: _____

Dated: March 13, 2014                                    Joseph H. Baldiga, Chapter 7 trustee

# Exhibit A

| Date | Check No. | Name | Amount |
|------|-----------|------|--------|
| 03/31/2008 | 10779 | Judy K Tull | $ 10,000.00 |
| 04/16/2008 | 10810 | Judy K Tull | $ 7,000.00 |
| 04/30/2008 | 10865 | Judy K Tull | $ 10,000.00 |
| 05/30/2008 | 10976 | Judy K Tull | $ 10,000.00 |
| 07/03/2008 | 11093 | Judy K Tull | $ 10,000.00 |
| 08/01/2008 | 11184 | Judy K Tull | $ 10,000.00 |
| 09/30/2008 | 11343 | Judy K Tull | $ 7,000.00 |
| 10/17/2008 | 11422 | Judy K Tull | $ 2,300.00 |
| 10/31/2008 | 11464 | Judy K Tull | $ 7,000.00 |
| 11/15/2008 | 11504 | Judy K Tull | $ 2,370.00 |
| 11/17/2008 | 11534 | Judy K Tull | $ 1,066.50 |
| 11/25/2008 | 11559 | Judy K Tull | $ 1,013.17 |
| 12/01/2008 | 11589 | Judy K Tull | $ 10,000.00 |
| 12/03/2008 | 11597 | Judy K Tull | $ 962.50 |
| 12/11/2008 | 11628 | Judy K Tull | $ 914.39 |
| 12/19/2008 | 11676 | Judy K Tull | $ 867.15 |
| 12/26/2008 | 11686 | Judy K Tull | $ 825.32 |
| 12/31/2008 | 11713 | Judy K Tull | $ 10,000.00 |
| 12/31/2008 | 11707 | Judy K Tull | $ 784.05 |
| 01/09/2009 | 11776 | Judy K Tull | $ 1,925.33 |
| 01/16/2009 | 11793 | Judy K Tull | $ 778.58 |
| 01/20/2009 | 11816 | Judy K Tull | $ 2,280.51 |
| 01/22/2009 | 11825 | Judy K Tull | $ 1,430.00 |
| 01/30/2009 | 11856 | Judy K Tull | $ 10,000.00 |
| 01/30/2009 | 11855 | Judy K Tull | $ 1,430.00 |
| 02/05/2009 | 11896 | Judy K Tull | $ 1,430.00 |
| 02/15/2009 | 11937 | Judy K Tull | $ 1,430.00 |
| 02/19/2009 | 11972 | Judy K Tull | $ 1,430.00 |
| 02/23/2009 | 12021 | Judy K Tull | $ 2,500.00 |
| 02/27/2009 | 12046 | Judy K Tull | $ 10,000.00 |
| 02/28/2009 | 12047 | Judy K Tull | $ 1,430.00 |
| 03/06/2009 | 12070 | Judy K Tull | $ 1,430.00 |
| 03/13/2009 | 12102 | Judy K Tull | $ 1,430.00 |
| 03/20/2009 | 12143 | Judy K Tull | $ 1,072.50 |
| 03/31/2009 | 12196 | Judy K Tull | $ 10,000.00 |
| 04/30/2009 | 12305 | Judy K Tull | $ 5,000.00 |
| 05/08/2009 | 12336 | Judy K Tull | $ 5,000.00 |
| 06/03/2009 | 12443 | Judy K Tull | $ 5,000.00 |
| 06/12/2009 | 12495 | Judy K Tull | $ 2,500.00 |
| 06/23/2009 | 12540 | Judy K Tull | $ 2,500.00 |
| 07/01/2009 | 12584 | Judy K Tull | $ 5,000.00 |
| 07/06/2009 | 12589 | Judy K Tull | $ 5,000.00 |
| 08/14/2009 | 12718 | Judy K Tull | $ 2,500.00 |
| 08/21/2009 | 12779 | Judy K Tull | $ 5,000.00 |
| 08/31/2009 | 12842 | Judy K Tull | $ 7,500.00 |
| 09/25/2009 | 12932 | Judy K Tull | $ 7,500.00 |
| 10/14/2009 | 13118 | Judy K Tull | $ 2,500.00 |
| 10/22/2009 | 13187 | Judy K Tull | $ 5,000.00 |
| 11/03/2009 | 13256 | Judy K Tull | $ 5,000.00 |
| 11/25/2009 | 13366 | Judy K Tull | $ 10,000.00 |
| 11/30/2009 | 13407 | Judy K Tull | $ 4,301.00 |
| 12/04/2009 | 13517 | Judy K Tull | $ 3,700.00 |
| 12/11/2009 | 13443 | Judy K Tull | $ 5,000.00 |
| 12/18/2009 | 13481 | Judy K Tull | $ 10,000.00 |

| Date | Check No. | Name | Amount |
|------|-----------|------|--------|
| 12/18/2009 | 13480 | Judy K Tull | $ 5,000.00 |
| 12/23/2009 | 13507 | Judy K Tull | $ 5,000.00 |
| 12/30/2009 | 13524 | Judy K Tull | $ 5,000.00 |
| 12/31/2009 | 13653 | Judy K Tull | $ 5,000.00 |
| 01/04/2010 | 13578 | Judy K Tull | $ 5,000.00 |
| 01/07/2010 | 13589 | Judy K Tull | $ 5,000.00 |
| 01/11/2010 | 13601 | Judy K Tull | $ 2,523.20 |
| 01/15/2010 | 13637 | Judy K Tull | $ 5,000.00 |
| 01/22/2010 | 13668 | Judy K Tull | $ 10,000.00 |
| 01/22/2010 | 13667 | Judy K Tull | $ 5,000.00 |
| 01/29/2010 | 13707 | Judy K Tull | $ 5,000.00 |
| 02/05/2010 | 13751 | Judy K Tull | $ 5,000.00 |
| 02/12/2010 | 13774 | Judy K Tull | $ 5,000.00 |
| 02/19/2010 | 13821 | Judy K Tull | $ 10,000.00 |
| 03/19/2010 | 13941 | Judy K Tull | $ 5,000.00 |
| 03/25/2010 | 1030 | Judy K Tull | $ 5,000.00 |
| 04/05/2010 | 1061 | Judy K Tull | $ 5,000.00 |
| 04/22/2010 | 1169 | Judy K Tull | $ 5,000.00 |
| 05/04/2010 | 1232 | Judy K Tull | $ 10,371.23 |
| 05/07/2010 | 1238 | Judy K Tull | $ 5,000.00 |
| 05/21/2010 | 1392 | Judy K Tull | $ 5,000.00 |
| 06/04/2010 | 1503 | Judy K Tull | $ 5,000.00 |
| 06/18/2010 | 1573 | Judy K Tull | $ 5,000.00 |
| 06/25/2010 | 1597 | Judy K Tull | $ 5,000.00 |
| 07/08/2010 | 1694 | Judy K Tull | $ 5,000.00 |
| 07/23/2010 | 1781 | Judy K Tull | $ 5,000.00 |
| 08/06/2010 | 1880 | Judy K Tull | $ 5,000.00 |
| 08/19/2010 | 2052 | Judy K Tull | $ 5,000.00 |
| 09/01/2010 | 2076 | Judy K Tull | $ 5,000.00 |
| 09/14/2010 | 2151 | Judy K Tull | $ 5,000.00 |
| 09/30/2010 | 2219 | Judy K Tull | $ 5,000.00 |
| 10/08/2010 | 2251 | Judy K Tull | $ 5,000.00 |
| 10/22/2010 | 2382 | Judy K Tull | $ 5,000.00 |
| 11/03/2010 | 2475 | Judy K Tull | $ 5,000.00 |
| 11/08/2010 | 2496 | Judy K Tull | $ 3,180.16 |
| 11/16/2010 | 2600 | Judy K Tull | $ 5,000.00 |
| 12/01/2010 | 2689 | Judy K Tull | $ 5,000.00 |
| 12/15/2010 | 2799 | Judy K Tull | $ 5,000.00 |
| 12/28/2010 | 2834 | Judy K Tull | $ 5,000.00 |
| 01/13/2011 | 2893 | Judy K Tull | $ 6,500.00 |
| 01/13/2011 | 2913 | Judy K Tull | $ 735.42 |
| 01/27/2011 | 2979 | Judy K Tull | $ 6,500.00 |
| 02/09/2011 | 3038 | Judy K Tull | $ 6,500.00 |
| 02/24/2011 | 3093 | Judy K Tull | $ 6,500.00 |
| 03/10/2011 | 3183 | Judy K Tull | $ 6,500.00 |
| 03/24/2011 | 3189 | Judy K Tull | $ 6,500.00 |
| 04/08/2011 | 3254 | Judy K Tull | $ 6,500.00 |
| 04/29/2011 | 3304 | Judy K Tull | $ 6,500.00 |
| 05/05/2011 | 3334 | Judy K Tull | $ 6,500.00 |
| 05/20/2011 | 3447 | Judy K Tull | $ 6,500.00 |
| 06/03/2011 | 3524 | Judy K Tull | $ 6,500.00 |
| 06/17/2011 | 3580 | Judy K Tull | $ 6,500.00 |
| 07/01/2011 | 3661 | Judy K Tull | $ 6,500.00 |
| 07/15/2011 | 3729 | Judy K Tull | $ 6,500.00 |

| Date | Check No. | Name | Amount |
|---|---|---|---|
| 07/29/2011 | 3929 | Judy K Tull | $ 6,500.00 |
| 08/12/2011 | 3938 | Judy K Tull | $ 6,500.00 |
| 08/26/2011 | 4028 | Judy K Tull | $ 6,500.00 |
| 09/09/2011 | 4058 | Judy K Tull | $ 6,500.00 |
| 09/22/2011 | 4099 | Judy K Tull | $ 6,500.00 |
| 10/12/2011 | 4246 | Judy Tull | $ 6,500.00 |
| 10/15/2011 | 15256 | Judy K Tull | $ 5,235.15 |
| 10/31/2011 | 15325 | Judy K Tull | $ 5,235.15 |
| 11/15/2011 | 15451 | Judy K Tull | $ 5,235.15 |
| 11/30/2011 | 15537 | Judy K Tull | $ 5,235.14 |
| 11/30/2011 | 4464 | Judy K Tull | $ 2,083.30 |
| 12/07/2011 | 15690 | Judy K Tull | $ 2,083.30 |
| 12/15/2011 | 15645 | Judy K Tull | $ 5,235.15 |
| 12/31/2011 | 15745 | Judy K Tull | $ 5,235.16 |
| 01/06/2012 | 15705 | Judy K Tull | $ 4,166.60 |
| 01/15/2012 | 15823 | Judy K Tull | $ 5,258.69 |
| 01/31/2012 | 15874 | Judy K Tull | $ 2,952.26 |
| 02/01/2012 | 4658 | Judy K Tull | $ 4,166.60 |
| 02/15/2012 | 15928 | Judy K Tull | $ 1,511.53 |
| 02/29/2012 | 15998 | Judy K Tull | $ 2,952.28 |
| 03/05/2012 | 4821 | Judy K Tull | $ 9,589.44 |
| 03/05/2012 | 4728 | Judy K Tull | $ 4,166.66 |

Exhibit B

| Date | Check No. | Name | Amount |
|------|-----------|------|--------|
| 03/31/2008 | 10778 | Kay Ellison | $ 10,000.00 |
| 04/16/2008 | 10808 | Kay Ellison | $ 7,000.00 |
| 04/30/2008 | 10866 | Kay Ellison | $ 10,000.00 |
| 05/30/2008 | 10977 | Kay Ellison | $ 10,000.00 |
| 07/03/2008 | 11094 | Kay Ellison | $ 10,000.00 |
| 08/01/2008 | 11180 | Kay Ellison | $ 10,000.00 |
| 09/30/2008 | 11344 | Kay Ellison | $ 7,000.00 |
| 10/17/2008 | 11423 | Kay Ellison | $ 1,300.00 |
| 10/31/2008 | 11465 | Kay Ellison | $ 7,000.00 |
| 10/31/2008 | 11503 | Kay Ellison | $ 1,470.00 |
| 11/17/2008 | 11535 | Kay Ellison | $ 661.50 |
| 11/25/2008 | 11560 | Kay Ellison | $ 628.42 |
| 12/01/2008 | 11587 | Kay Ellison | $ 10,000.00 |
| 12/03/2008 | 11598 | Kay Ellison | $ 597.00 |
| 12/11/2008 | 11629 | Kay Ellison | $ 567.15 |
| 12/19/2008 | 11678 | Kay Ellison | $ 537.79 |
| 12/26/2008 | 11687 | Kay Ellison | $ 511.91 |
| 12/31/2008 | 11714 | Kay Ellison | $ 10,000.00 |
| 12/31/2008 | 11708 | Kay Ellison | $ 486.31 |
| 01/09/2009 | 11752 | Kay Ellison | $ 1,184.21 |
| 01/16/2009 | 11794 | Kay Ellison | $ 482.79 |
| 01/20/2009 | 11818 | Kay Ellison | $ 1,472.92 |
| 01/22/2009 | 11826 | Kay Ellison | $ 880.00 |
| 01/30/2009 | 11859 | Kay Ellison | $ 10,000.00 |
| 01/30/2009 | 11858 | Kay Ellison | $ 880.00 |
| 02/05/2009 | 11898 | Kay Ellison | $ 880.00 |
| 02/15/2009 | 11938 | Kay Ellison | $ 880.00 |
| 02/19/2009 | 11974 | Kay Ellison | $ 880.00 |
| 02/27/2009 | 12048 | Kay Ellison | $ 10,000.00 |
| 02/28/2009 | 12049 | Kay Ellison | $ 880.00 |
| 03/06/2009 | 12071 | Kay Ellison | $ 880.00 |
| 03/13/2009 | 12103 | Kay Ellison | $ 880.00 |
| 03/20/2009 | 12145 | Kay Ellison | $ 660.00 |
| 03/31/2009 | 12197 | Kay Ellison | $ 10,000.00 |
| 04/30/2009 | 12306 | Kay Ellison | $ 5,000.00 |
| 05/08/2009 | 12337 | Kay Ellison | $ 5,000.00 |
| 06/03/2009 | 12442 | Kay Ellison | $ 5,000.00 |
| 06/12/2009 | 12496 | Kay Ellison | $ 2,500.00 |
| 06/23/2009 | 12539 | Kay Ellison | $ 2,500.00 |
| 07/01/2009 | 12586 | Kay Ellison | $ 5,000.00 |
| 07/06/2009 | 12591 | Kay Ellison | $ 5,000.00 |
| 08/14/2009 | 12719 | Kay Ellison | $ 2,500.00 |
| 08/21/2009 | 12780 | Kay Ellison | $ 5,000.00 |
| 08/31/2009 | 12843 | Kay Ellison | $ 7,500.00 |
| 09/25/2009 | 12933 | Kay Ellison | $ 7,500.00 |
| 10/14/2009 | 13119 | Kay Ellison | $ 2,500.00 |
| 10/22/2009 | 13190 | Kay Ellison | $ 5,000.00 |
| 11/03/2009 | 13255 | Kay Ellison | $ 5,000.00 |

| Date | Check No. | Name | Amount |
|------|-----------|------|--------|
| 11/25/2009 | 13369 | Kay Ellison | $ 10,000.00 |
| 12/04/2009 | 13516 | Kay Ellison | $ 3,700.00 |
| 12/18/2009 | 13482 | Kay Ellison | $ 10,000.00 |
| 12/31/2009 | 13654 | Kay Ellison | $ 5,000.00 |
| 01/04/2010 | 13579 | Kay Ellison | $ 5,000.00 |
| 01/22/2010 | 13670 | Kay Ellison | $ 10,000.00 |
| 02/19/2010 | 13822 | Kay Ellison | $ 10,000.00 |
| 03/19/2010 | 13942 | Kay Ellison | $ 5,000.00 |
| 03/25/2010 | 1031 | Kay Ellison | $ 5,000.00 |
| 04/05/2010 | 1062 | Kay Ellison | $ 5,000.00 |
| 04/22/2010 | 1170 | Kay Ellison | $ 5,000.00 |
| 05/07/2010 | 1239 | Kay Ellison | $ 5,000.00 |
| 05/21/2010 | 1394 | Kay Ellison | $ 5,000.00 |
| 06/04/2010 | 1505 | Kay Ellison | $ 5,000.00 |
| 06/18/2010 | 1574 | Kay Ellison | $ 5,000.00 |
| 06/25/2010 | 1600 | Kay Ellison | $ 5,000.00 |
| 07/08/2010 | 1695 | Kay Ellison | $ 5,000.00 |
| 07/23/2010 | 1783 | Kay Ellison | $ 5,000.00 |
| 08/06/2010 | 1881 | Kay Ellison | $ 5,000.00 |
| 08/19/2010 | 2051 | Kay Ellison | $ 5,000.00 |
| 09/01/2010 | 2077 | Kay Ellison | $ 5,000.00 |
| 09/14/2010 | 2152 | Kay Ellison | $ 5,000.00 |
| 09/30/2010 | 2220 | Kay Ellison | $ 5,000.00 |
| 10/08/2010 | 2253 | Kay Ellison | $ 5,000.00 |
| 10/22/2010 | 2383 | Kay Ellison | $ 5,000.00 |
| 11/03/2010 | 2476 | Kay Ellison | $ 5,000.00 |
| 11/16/2010 | 2603 | Kay Ellison | $ 5,000.00 |
| 12/01/2010 | 2687 | Kay Ellison | $ 5,022.00 |
| 12/15/2010 | 2800 | Kay Ellison | $ 5,000.00 |
| 12/28/2010 | 2835 | Kay Ellison | $ 5,000.00 |
| 01/13/2011 | 2894 | Kay Ellison | $ 6,500.00 |
| 01/27/2011 | 2980 | Kay Ellison | $ 6,500.00 |
| 02/09/2011 | 3039 | Kay Ellison | $ 6,500.00 |
| 02/24/2011 | 3094 | Kay Ellison | $ 6,500.00 |
| 03/10/2011 | 3184 | Kay Ellison | $ 6,500.00 |
| 03/24/2011 | 3190 | Kay Ellison | $ 6,500.00 |
| 04/08/2011 | 3256 | Kay Ellison | $ 6,500.00 |
| 04/29/2011 | 3305 | Kay Ellison | $ 6,500.00 |
| 05/05/2011 | 3337 | Kay Ellison | $ 6,500.00 |
| 05/20/2011 | 3450 | Kay Ellison | $ 6,500.00 |
| 06/03/2011 | 3527 | Kay Ellison | $ 6,500.00 |
| 06/17/2011 | 3583 | Kay Ellison | $ 6,500.00 |
| 07/01/2011 | 3662 | Kay Ellison | $ 6,500.00 |
| 07/15/2011 | 3726 | Kay Ellison | $ 6,500.00 |
| 07/29/2011 | 3930 | Kay Ellison | $ 6,500.00 |
| 08/12/2011 | 3939 | Kay Ellison | $ 6,500.00 |
| 08/26/2011 | 4029 | Kay Ellison | $ 6,500.00 |
| 09/09/2011 | 4059 | Kay Ellison | $ 6,500.00 |

| Date | Check No. | Name | Amount | |
|---|---|---|---|---|
| 10/03/2011 | 4103 | Kay Ellison | $ | 6,500.00 |
| 10/14/2011 | 4247 | Kay Ellison | $ | 6,500.00 |
| 10/15/2011 | 15250 | Kay Ellison | $ | 5,235.15 |
| 10/18/2011 | wire | Kay Ellison | $ | 2,105.30 |
| 10/31/2011 | 15275 | Kay Ellison | $ | 5,235.15 |
| 11/25/2011 | 15354 | Kay Ellison | $ | 5,235.15 |
| 11/30/2011 | 4462 | Kay Ellison | $ | 2,083.30 |
| 11/30/2011 | 15490 | Kay Ellison | $ | 5,235.14 |
| 12/07/2011 | 15692 | Kay Ellison | $ | 2,083.30 |
| 12/15/2011 | 15608 | Kay Ellison | $ | 5,235.15 |
| 01/03/2012 | 15688 | Kay Ellison | $ | 5,258.69 |
| 01/06/2012 | 15707 | Kay Ellison | $ | 4,166.60 |
| 01/12/2012 | 4619 | Kay Ellison | $ | 9,204.65 |
| 01/15/2012 | 15775 | Kay Ellison | $ | 5,258.70 |
| 01/30/2012 | 15843 | Kay Ellison | $ | 2,952.26 |
| 02/01/2012 | 4659 | Kay Ellison | $ | 4,166.60 |
| 02/15/2012 | 15891 | Kay Ellison | $ | 2,952.27 |
| 02/22/2012 | 15931 | Kay Ellison | $ | 2,152.19 |
| 02/29/2012 | 15946 | Kay Ellison | $ | 2,952.26 |
| 03/05/2012 | 4822 | Kay Ellison | $ | 16,547.92 |
| 03/05/2012 | 4727 | Kay Ellison | $ | 4,166.66 |
| 03/07/2012 | 16010 | Kay Ellison | $ | 7,844.04 |

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### (CENTRAL DIVISION)

| | |
|---|---|
| **In re:**<br><br>**SOUTHERN SKY AIR & TOURS, LLC d/b/a DIRECT AIR,**<br><br>     **Debtor.** | **Chapter 7**<br>**Case No. 12-40944-MSH** |
| **JOSEPH H. BALDIGA, CHAPTER 7 TRUSTEE OF THE BANKRUPTCY ESTATE OF SOUTHERN SKY AIR & TOURS, LLC d/b/a DIRECT AIR,**<br>     **Plaintiff,**<br><br>     **v.**<br><br>**JUDY TULL and KAY ELLISON,**<br><br>     **Defendants.** | **Adversary Proceeding**<br>**No. _____** |

## DECLARATION RE: ELECTRONIC FILING

I, Joseph H. Baldiga, **hereby declare under penalty of perjury** that all of the information contained in the Verified Complaint (singularly or jointly the "Document"), filed electronically, is true and correct. I understand that this DECLARATION is to be filed with the Clerk of Court electronically concurrently with the electronic filing of the Document. I understand that failure to file this DECLARATION may cause the Document to be struck and any request contained or relying thereon to be denied, without further notice.

I further understand that pursuant to the Massachusetts Electronic Filing Local Rule (MEFLR)-7(a) all paper documents containing original signatures executed under the penalties of perjury and filed electronically with the Court are the property of the bankruptcy estate and shall be maintained by the authorized CM/ECF Registered User for a period of five (5) years after the closing of this case.

Dated: March 13, 2014          _____ (Affiant)

{Practice Areas/CORP/15008/14190/A2536736.DOC}