**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**(CENTRAL DIVISION)**

| | |
|---|---|
| **In re:**<br><br>**SOUTHERN SKY AIR & TOURS, LLC d/b/a DIRECT AIR,**<br><br>**Debtor.** | **Chapter 7**<br>**Case No. 12-40944-MSH** |

**MOTION OF CHAPTER 7 TRUSTEE FOR ORDER APPROVING**
**ASSIGNMENT AND SETTLEMENT AGREEMENT**
**WITH MERRICK BANK CORPORATION REGARDING**
**CLAIMS AGAINST VALLEY NATIONAL BANK**

To the Honorable Melvin S. Hoffman, United States Bankruptcy Judge:

NOW COMES Joseph H. Baldiga, the Chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Southern Sky Air & Tours, LLC d/b/a Direct Air (the "Debtor"), and hereby moves this Court to enter an order approving an Assignment and Settlement Agreement (the "Agreement") between the Trustee and Merrick Bank Corporation ("Merrick") regarding the Estate's claims against Valley National Bank ("VNB") for VNB's conduct in connection with the Debtor's depository accounts at VNB (collectively, the "Depository Accounts").  A copy of the Agreement is attached hereto as **Exhibit A**.

In support of this Motion, the Trustee states as follows:

### I.     BACKGROUND

**A.     Bankruptcy Case Background**

1.     On March 15, 2012 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

{Practice Areas/CORP/15008/14190/A2545751.DOC}

2. Prior to the Petition Date, the Debtor was a public charter operator servicing several destinations in the United States. On March 13, 2012 (two days prior to the Petition Date), the Debtor ceased operation of its tour programs, stopped accepting flight reservations and terminated reservation capabilities on its web-site. The Debtor never resumed operations. By the time of these actions, the Debtor had previously accepted flight reservations from thousands of customers who were then unable to fly with the Debtor, and who were left with claims for the monies lost in connection with the Debtor's cancelled flights and ceased operations and for expenses incurred due to the cancellations and the Debtor's cessation of operations.

3. On April 11, 2012 (the "Conversion Date"), this Court converted the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.

4. On the Conversion Date, the United States Trustee appointed the Trustee as Chapter 7 trustee of this proceeding and he continues to serve as such. Since his appointment, the Trustee secured assets and records of the Debtor and investigated the many allegations of fraud raised by interested parties during the Debtor's Chapter 11 case and to the Trustee post-conversion.

### B. The Valley National Bank Accounts

5. As a public charter operator, the Debtor's operations were governed by, among other things, regulations promulgated by the United States Department of Transportation ("DOT"), 14 C.F.R. Part 380. One of the Debtor's obligations was compliance with regulations regarding security and depository agreements. See 14 C.F.R. § 380.34.

6. Pursuant to 14 C.F.R. § 380.34, public charter operators may, in lieu of furnishing a certain type of security agreement, instead elect to: (a) furnish a surety bond, a surety trust agreement, or a letter of credit in the amount of at least $10,000 times the number of flights,

except that the amount need not exceed $200,000;[1] and (b) enter into an agreement with the company directly engaging in the operation of aircraft (known as the "direct air carrier") and a designated bank, the terms of which shall provide that "all payments by [customers] paid to charter operators… shall be deposited with and maintained by the bank subject to […certain…] conditions[.]" 14 C.F.R. § 380.34(b).

7. Prior to the Petition Date, the Debtor entered into Public Charter Depository Agreements (the "Depository Agreements") with various direct air carriers and VNB. The Depository Agreements are substantially similar; a copy of one of the Depository Agreements is attached hereto for reference as **Exhibit B**.

8. Pursuant to the Depository Agreements, VNB agreed to act as depository bank within the meaning of 14 C.F.R. § 380 and set up the Depository Accounts for the Debtor. See Depository Agreements at page 1. The Debtor was required to deliver to VNB all amounts received from each customer in accordance with 14 C.F.R. § 380.34. Id. at § 1.2. Subject to certain additional terms, VNB agreed to accept such payments from the Debtor for deposit. Id. at § 1.1. VNB was required by the DOT Regulations, the Depository Agreements and VNB's own policies to maintain a separate account for each flight, but was permitted to use deposited funds in its general banking business. Id. at § 1.3.

9. Federal regulations govern further disbursement of funds after payments from customers have been deposited into depository banks, such as VNB. Depository banks are permitted to pay the direct air carrier for the charter price for transportation no earlier than 60 days prior to the scheduled day of departure, upon certification of the departure date by such carrier. 14 C.F.R. § 380.34(b)(2)(ii). With some exceptions (including payment to direct air

---

[1] The Debtor carried a surety bond through Platte River Insurance Company in the amount of $200,000. The proceeds of that surety bond have been turned over to the Trustee pursuant to an order dated September 5, 2012 approving an agreement between the Trustee and Platte River [Dkt. No. 214].

{Practice Areas/CORP/15008/14190/A2545751.DOC}    3

carriers as noted above), the depository bank "shall not pay out any funds from the account prior to 2 banking days after completion of each charter, when the balance in the account shall be paid [to] the charter operator…, upon certification of the completion date by the air carrier." 14 C.F.R. § 380.34(b)(2)(ix). If a charter operator notifies its depository bank that a charter has been canceled, the bank is required to make applicable refunds directly to the customers. 14 C.F.R. § 380.34(b)(2)(iv).

10. The Depository Agreements contain provisions regarding disbursement of funds that are in line with the above-described requirements of 14 C.F.R. § 380.34. See Depository Agreements at § 2.1.

11. As of the Petition Date, VNB maintained the Depository Accounts for and on behalf of Direct Air, which were comprised of a money market account and a DDA account. According to VNB, funds were "swept" from the DDA account into the money market account periodically to earn interest. As of the Petition Date, the Debtor's money market account at VNB had a balance of $1,016,925.90 and the Debtor's DDA account at VNB had a balance of $.01.

    C.    **The Shortfall**

12. In the Trustee's review of the Debtor's assets and liabilities, he determined that as of the Petition Date, the balance of the Debtor's Depository Accounts at VNB should have been $31,406,299.70. As a result, a shortfall existed in the Debtor's Depository Accounts at VNB in the amount of $30,389,363.79 (the "Shortfall") on the Petition Date.

13. Pursuant to an agreement by and among the Trustee, JetPay Merchant Services, LLC, Merrick, and American Express Travel Related Services Company, Inc., which this Court approved on October 11, 2012 [Dkt. No. 240], the Trustee undertook primary responsibility for

investigating Direct Air's operations and dissipation of funds from its depository accounts at VNB that created the shortfall.

14. The Trustee's investigation identified the main sources of the shortfall from the Debtor's Depository Accounts at VNB: (a) $12,175,928.50 released by VNB for duplicative Family Ties membership fees; (b) $8,323,734.82 released by VNB for "ghost" transactions that did not represent actual customers or revenue to the Debtor; and (c) $5,543,750.80 released by VNB for funds that were never deposited to the Depository Accounts at VNB. Details regarding the results of the Trustee's investigation into the Shortfall are set forth in the Trustee's Report on Direct Air's Operations and Shortfall (the "Report") dated and filed March 3, 2014 [Dkt. No. 446].

    **D.**    <u>**Claims of Merrick and the Trustee Against VNB**</u>

15. Merrick is an "acquiring bank" for merchants under the Visa, MasterCard and Discover credit card networks. Specifically, Merrick was an acquiring bank for the Debtor and funded customer purchases of the Debtor's charter flights. Payments made by Merrick to fund customer purchases were paid directly into the Debtor's Depository Accounts at VNB.

16. As a result of customer chargebacks after the Petition Date for the cancellation of Debtor's flights and cessation of operations, Merrick paid chargeback requests from customers' issuing banks in excess of $26.2 million. The Depository Accounts at VNB should have held sufficient funds to reimburse Merrick for customer chargebacks. With the Shortfall, however, insufficient funds remained in the Depository Accounts for Merrick to recover the full amount of customer chargebacks. Merrick alleges that it has incurred damages of in excess of $26.2 million for chargebacks for the Debtor's customers.

17. On December 20, 2013, Merrick commenced an action against VNB in the Federal District Court for the District of New Jersey asserting claims for losses in excess of $26.2 million that Merrick alleges it incurred in connection with VNB's maintenance and administration of the Debtor's Depository Accounts (hereinafter the "VNB Action"). Merrick asserts that its claims against VNB are based on damages actually incurred by Merrick ("Merrick Claims"), and contends that the Merrick Claims are separate and distinct from any claims the Estate may have against VNB.

18. Although the Trustee has not yet commenced any action against VNB, the Trustee asserts that the Estate has been damaged by VNB's gross negligence and willful misconduct in connection with VNB's operation of the Depository Accounts. The Trustee believes that the Estate has claims against VNB. The Trustee further contends that at least some of the Merrick Claims belong to the Estate, and that the prosecution of such claims by Merrick violates the automatic stay in the Debtor's bankruptcy case arising under Section 362 of the Bankruptcy Code.

19. On January 15, 2014, Merrick initiated adversary proceeding No. 14-04005 against the Trustee before this Court seeking, among other things, a declaration that the Merrick Claims are not property of the Estate, and that prosecution of such claims by Merrick does not violate the automatic stay (the "Adversary Proceeding"). Based on the Trustee's assertion that some or all of the Merrick Claims were Estate Claims and only properly pursued by the Trustee, the Trustee denied the claims in the Adversary Proceeding. In conjunction with his answer, the Trustee asserted a counterclaim against Merrick seeking damages as a result of Merrick's alleged stay violations ("Trustee Counterclaim").

20. The Trustee and Merrick deny each others' claims in the Adversary Proceeding.

## II. SUMMARY OF THE AGREEMENT[2]

21. As set forth in the Agreement, the Trustee and Merrick agree as follows:

    a. The Trustee sells, assigns, transfers and conveys to Merrick all of the right, title and interest in any and all claims of the Estate against VNB, including, without limitation, any and all claims arising out of or under state law, common law, nonbankruptcy federal law, or the Bankruptcy Code (the "Estate Claims").

    b. Merrick shall pay the Trustee five percent (5%) of Merrick's actual net recovery from VNB (gross recovery, less Merrick's costs and expenses, including legal fees) obtained through prosecution (including settlement) of the VNB Action, regardless of whether such recovery is based in whole or in part on either the Estate Claims and/or the Merrick Claims. Under the Agreement, Merrick shall not be obligated to assert or prosecute any Estate Claims or Merrick Claims, or to obtain the consent of the Trustee or the Bankruptcy Court to settle any such claims, with Merrick retaining sole and exclusive prosecutorial discretion, including exclusive settlement power and authority, regarding any and all such claims.

    c. Promptly following this Court's approval of the Agreement, the Adversary Proceeding, including the claims asserted by Merrick and the Trustee Counterclaim, shall be dismissed with prejudice and Merrick shall be released and discharged from any and all claims asserted or which could have been asserted by the Trustee in the Adversary Proceeding.

    d. Merrick submits to the exclusive jurisdiction of this Court for any action, suit, or proceeding to interpret or enforce the Agreement; provided, however, that nothing contained in the Agreement shall be construed to require Merrick to obtain approval of this Court as a condition to settling the Merrick Claims or the Estate Claims with VNB, and no such approval

---

[2] The following is a summary only. Interested parties are directed to the attached Agreement for the full and complete terms of the Agreement. See Exhibit A.

{Practice Areas/CORP/15008/14190/A2545751.DOC}    7

shall be required, it being expressly understood and agreed that once the Agreement is approved by this Court, the Merrick Claims and the Estate Claims shall belong exclusively to Merrick.

### III.     REASONABLENESS OF THE SETTLEMENT

22.     In determining whether a settlement agreement should be approved, a bankruptcy court should "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995), quoting In re GHR Cos., 50 B.R. 925, 931 (Bankr. D. Mass. 1985) (additional citation omitted).  The Trustee's judgment as to the propriety of the proposed settlement is to be accorded some deference.  Hill v. Burdick (In re Moorhead Corp.), 208 B.R. 87 (1st Cir. BAP 1997).

23.     The Trustee believes that the Agreement is in the best interest of the Estate.  The Trustee is in suit in the Adversary Proceeding with Merrick regarding the ownership of the Estate Claims against VNB related to the Depository Accounts.  Merrick has asserted in the Adversary Proceeding—and VNB has previously expressed the belief—that the Depository Accounts may not be the property of the Estate.  The Trustee disagrees. The assignment of the Estate's claims against VNB to Merrick, however, will resolve the ownership issue and moot any defense that VNB may assert that the Depository Accounts may not be property of the Estate.  By assigning the Estate's claims to Merrick, Merrick will be able to pursue claims against VNB regardless of whether Merrick or the Estate owns them.  Resolution of the issue of ownership of the Depository Accounts provides certainty of result to the Trustee and avoids an adverse ruling from this Court in the Adversary Proceeding regarding the Debtor's ownership of the Estate Claims in connection with the Depository Accounts at VNB.

24. Assigning the Estate's claims to Merrick will also allow the Estate to avoid the <u>in pari delicto</u> defense that VNB may assert against the Estate for the wrongful conduct of the Debtor's managers. This defense, if successful, would defeat the Estate's claims against VNB related to the Depository Accounts on the ground that both the Debtor and VNB contributed to the wrongful conduct.  See, e.g., <u>Baena v. KPMG LLP</u>, 453 F.3e 1, 6-7 (1st Cir. 2006); <u>DeGiacomo v. Tobin & Associates, P.C. (In re: Inofin)</u>, Adv. P. No. 12-1091 (Bankr. D. Mass. Nov. 8, 2012). While the Trustee denies that the <u>in pari delicto</u> defense would be successful against the Estate as a bar to the Estate's recovery, the Trustee acknowledges that it is a potential impediment to the Estate pursuing claims directly against VNB.

25. The Debtor's creditors will benefit from the assignment because it provides five (5%) percent of Merrick's net recovery from VNB, which is greater than the proportion of the Estate's claims for individual customers in relation to the Shortfall.[3]  Given Merrick's damages that arose from the Shortfall in the Debtor's Depository Accounts at VNB, Merrick has strong incentive to seek the maximum possible recovery from VNB.  In addition, the Agreement will relieve the Estate of the additional financial burden of the Adversary Proceeding as well as a new action by the Estate against VNB.  Absent the Agreement, the Estate would likely incur substantial administrative costs to pursue claims against VNB related to the Depository Accounts that may well exceed the recovery from VNB.

26. Based on the foregoing, the Trustee believes that the Agreement is fair and equitable and will result in a material benefit to the Estate.  Accordingly, the Trustee submits that the Agreement represents the most efficient and cost-effective structure for addressing the ownership of the Debtor's Depository Accounts at VNB and related claims.

---

[3] Direct customer claims against the Estate total $943,014.06, or approximately 3.7% of Merrick's claims against VNB.

WHEREFORE, the Trustee respectfully requests that this Court enter an order:

a. Approving the Agreement; and

b. Granting the Trustee such other and further relief as is just.

Respectfully submitted,

JOSEPH H. BALDIGA,
CHAPTER 7 TRUSTEE

By his counsel,

/s/ Jessica E. Murphy
Joseph H. Baldiga, BBO #549963
Jessica E. Murphy, BBO #664361
Gina B. O'Neil, BBO #670596
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA  01581
Phone: (508) 898.1501
Fax:    (508) 898.1502
Email: jbaldiga@mirickoconnell.com
Email: jmurphy@mirickoconnell.com
Email: goneil@mirickoconnell.com

Dated: March 19, 2014

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)**

| | |
|---|---|
| **In re:**<br><br>**SOUTHERN SKY AIR & TOURS, LLC d/b/a DIRECT AIR,**<br><br>Debtor. | **Chapter 7**<br>**Case No. 12-40944-MSH** |

**ORDER APPROVING
ASSIGNMENT AND SETTLEMENT AGREEMENT
WITH MERRICK BANK CORPORATION REGARDING
CLAIMS AGAINST VALLEY NATIONAL BANK**

Upon the motion filed on March 19, 2014 by Joseph H. Baldiga, Chapter 7 trustee ("Trustee") of the bankruptcy estate ("Estate") of Southern Sky Air & Tours, LLC d/b/a Direct Air (the "Debtor"), to approve the Agreement (the "Agreement") between the Trustee and Merrick Bank Corporation, regarding the Debtor's claims against Valley National Bank ("VNB") for VNB's conduct in connection with the Debtor's depository accounts at VNB; the Court finding that the Motion is in the best interest of the Estate; and no objection to the Motion having been filed or any such objection having been withdrawn or overruled;

NOW THEREFORE IT IS HEREBY ORDERED THAT:

1. The Motion is allowed; and

2. The Agreement is approved.

Dated: _____, 2014      _____
Honorable Melvin S. Hoffman
United States Bankruptcy Judge

{Practice Areas/CORP/15008/14190/A2545751.DOC}