UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | Chapter 7 |
| SOUTHERN SKY AIR & TOURS, LLC | ) | Case No. 12-40944-MSH |
| d/b/a DIRECT AIR, | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |
| JOSEPH H. BALDIGA, CH. 7 TRUSTEE | ) | |
| OF THE BANKRUPTCY ESTATE OF | ) | |
| SOUTHERN SKY AIR & TOURS, LLC | ) | |
| d/b/a DIRECT AIR, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding |
| | ) | No. 14-04024-MSH |
| v. | ) | |
| | ) | |
| JUDY TULL & KAY ELLISON, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION OF DEFENDANT KAY ELLISON TO WITHDRAW THE REFERENCE**

Defendant Kay Ellison hereby moves for an order by the District Court withdrawing the reference of this adversary proceeding, filed by Joseph H. Baldiga (the "Trustee"), the Chapter 7 Trustee of Debtor Southern Sky Air & Tours, LLC, d/b/a/ Direct Air (the "Debtor"), to the Bankruptcy Court. As set forth more fully herein: (a) the United States Supreme Court, in *Stern v. Marshall*, has already determined that this Court lacks the constitutional authority to determine the non-core counts raised in the Complaint (Counts V-VIII); (b) most courts opining on the issue have determined, as should this Court, that the reasoning of *Stern v. Marshall* should be expanded to include fraudulent transfer claims (Counts I-III); and (c) in the interests of

2785007

judicial economy, the remaining counts should be withdrawn as well.  In support of this Motion, Ellison states:

## BACKGROUND

Significant background procedural facts are not in dispute.  The Defendant disputes many substantial "factual averments" of the Plaintiff, and does not waive said dispute. However, for purposes of analysis of the relief sought in this Motion facts referenced herein as alleged by the Trustee are taken as true, although Ellison substantially disputes the material facts alleged in this case:

1. On March 15, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  On April 11, 2012, the case was converted to one under Chapter 7, and the Trustee was appointed as Chapter 7 trustee.

2. Prior to the Petition Date, the Debtor was a South Carolina company engaged in the business of providing charter airline flights to various locations throughout the country. Although, on information and belief, the Debtor was permitted to file it petition in this jurisdiction because certain of its flights arrived to and departed from Worcester Regional Airport, substantially all of the Debtor's business operations were conducted in South Carolina.

3. Ellison, who was formerly a member of the Debtor, resided in and worked for the Debtor in South Carolina. Ellison continues to be a resident of the State of South Carolina. There is no allegation that Ellison ever resided in Massachusetts or performed services on behalf of the Debtor in Massachusetts.

4. On March 13, 2014, Trustee commenced this adversary proceeding against Ellison seeking recovery of over $30 million under various theories.  The substantive claims at issue in this Motion can fairly be placed in three (3) categories:  (a) non-core claims seeking $30

2

million, based on state law theories of recovery (Counts V - VII, the "State Law Claims"); (b) non-core claims seeking treble damages, attorneys fees and other relief, based on Federal Law Theories (Count VIII, "the 18 USC § 1962 Claims"; and (c) constructive fraudulent transfer claims under Sections 544, 548 and 550 of the Code (Counts I – III, the 'Fraudulent Transfer Claims").

5. In connection with his Complaint, the Trustee sought, on an emergency basis, the entry of an order enjoining Ellison from transferring assets outside the ordinary course of business. To avoid expensive emergency litigation far away from all fact witnesses and for which Ellison could not have been adequately prepared, Ellison and the Trustee reached agreement on the terms of an injunction, which was approved by the Court.

6. Ellison has otherwise not appeared in the bankruptcy case. Significantly, she has not filed a proof of claim.

## ARGUMENT

### I. The Bankruptcy Court Lacks the Constitutional Authority to Determine the State Law Claims.

7. Courts have recognized since *Northern Pipeline* that bankruptcy courts could not constitutionally be vested with the authority to decide a state law claim against an entity that was not otherwise part of the bankruptcy proceedings. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 87 (1982). More recently, the Supreme Court reinforced the holding of *Northern Pipeline*, in the context of a state-law-based counterclaim not resolved in the process of ruling on a creditor's proof of claim, holding that a bankruptcy court did not have constitutional authority to enter a final judgment in such a case. *See Stern v. Marshall*, 131 S. Ct 2594, 2620 (2011).

8. In *Stern,* the Court went beyond *Northern Pipeline* to examine whether the case before it, involving a state-law defamation claim, could properly have been heard by the bankruptcy court because it fit into a potential (but not necessarily recognized) exception to the *Northern Pipeline* rule. The Court looked at whether the so-called "public rights exception" – possibly applicable in a case involving the government and persons subject to its authority – applied to the case. In determining that state law claims between private parties who were not subject to the public rights exception, the Court concluded:

> What is plain here is that this case involves the most prototypical exercise of judicial power: the entry of a final, binding judgment by a court with broad substantive jurisdiction, on a common law cause of action, when the action neither derives from nor depends upon any agency regulatory scheme. If such an exercise of judicial power may nonetheless be taken from the Article III Judiciary simply by deeming it part of some amorphous "public right," then Article III would be transformed from the guardian of individual liberty and separation of powers we have long recognized into mere wishful thinking.

*Stern*, 131 S. Ct at 2615.

9. The State Law Claims are for damages arising from alleged breach of fiduciary duty and "deepening insolvency." Those claims are, at best, based on state common law, not causes of action under any federal law. "When a suit is made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789, and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts." <u>Stern</u>, 131 S. Ct. at 2608. By bringing the State Law Claims, the Trustee ostensibly "attempts to augment the bankruptcy estate" by invoking state-law private rights of action, and that is "the very type of claim that [the Supreme Court] held in *Northern Pipeline* and *Granfinanciera* must be decided by an Article III court." *See Stern*, 131 S. Ct. at 2616. Because Ellison has not filed a proof of claim in the bankruptcy case, the claims against her could not be resolved *at all* in the proof of claim adjudication process. After *Stern*, no

4

argument can be made that the bankruptcy court has authority to adjudicate the State Law Claims against Ellison. Moreover, Ellison does not consent to the Court's hearing and determining, and entering orders and judgments on, the State Law Claims. *See* 28 U.S.C. § 157(c)(2).

**II.     Ellison Has a Right to a Jury Trial Outside of this Court.**

10.     Even absent the mandate of *Stern*, withdrawal of the reference with respect to the State Law Claims as well as the 18 USC § 1962 Claims is appropriate because Ellison is entitled to a jury trial and does not consent to the bankruptcy court conducting that trial.

11.     The Seventh Amendment to the United States Constitution provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved..." U.S. Const., Amend. VII. In assessing whether a party is entitled to a jury trial, a district court must "analyze whether: (1) the party seeking a jury trial would be entitled to one at common law; (2) the remedies sought are legal rather than equitable in nature; and (3) Congress has withdrawn jurisdiction over the type of action from courts of law and assigned it exclusively to non-Article III tribunals sitting without juries." *In re Bank of New England Corp.*, 360 B.R. 1, 6 (D. Mass. 2007) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989))). The second consideration, whether "the remedy sought...is legal or equitable in nature...is more important than the first." *Granfinanciera,* 592 U.S. at 42 (citations omitted).

12.     With respect to the first prong of the test, the Supreme Court has:

> "consistently interpreted the phrase 'Suits at common law' to refer to 'suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered. Although 'the thrust of the Amendment was to preserve the right to jury trial as it existed in 1791,' the Seventh Amendment also applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty."

*Id.* at 41-42.

13. Here, the $30 million in money damages sought by the Trustee to remedy the State Law Claims as well as the 18 USC § 1962 Claims are legal rather than equitable in nature. *See FleetBoston Financial Corp. v. Alt*, 668 F.Supp.2d 274, 276 (D. Mass. 2009) ("A remedy is legal when a Trustee seeks money damages for a loss he alleges he suffered. In contrast, a remedy is equitable when a Trustee seeks restitution for funds or property held by the defendant that actually belong to the Trustee." (citations omitted)). Here, the Trustee seeks damages for a loss that he maintains was suffered as well as punitive damages as a result of Ellison's actions. Because the Trustee seeks "compensation for a loss, as opposed to a gain", his remedy is legal in nature. *Id.* Accordingly, the remedy sought by the Trustee is legal in nature, and Ellison has a jury trial right. *Id.*

### III.  The Bankruptcy Court Lacks the Constitutional Authority to Determine the Constructive Fraudulent Transfer Claims.

14. Although the Supreme Court made it clear that its decision in *Stern* was narrowly tailored to the case before it, subsequent cases interpreting *Stern* have widely held that, by its reasoning, bankruptcy courts cannot enter final judgment on fraudulent transfer claims against nonclaimants to the bankruptcy estate. The leading case is *Exec. Benefits Ins. Agency, Inc. v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553, 565 (9th Cir. 2012), *cert. granted* 133 S. Ct. 2880 (2013), in which the Ninth Circuit concluded that: "*Granfinanciera* and *Stern* settle the question of whether bankruptcy courts have the general authority to enter final judgments on fraudulent conveyance claims asserted against noncreditors to the bankruptcy estate. They do not." (emphasis added). *See also, e.g.*, *Kirschner v. Agoglia (In re Refco Securities Litigation)*, 476 B.R. 75, 81 (S.D.N.Y. 2012) ("This Court concludes that simple logic dictates unequivocally that fraudulent conveyance claims like those brought here [by nonclaimants] . . . must be finally decided by an Article III Court."); *Sitka Enters. v. Segarra-*

6

*Miranda (In re Sitka Enters.)*, 2011 U.S. Dist. LEXIS 90243 (D.P.R. Aug. 12, 2011) (holding that bankruptcy courts cannot enter final judgments on fraudulent transfer claims); *Lain v. Erickson (In re Erickson Ret. Cmtys., LLC)*, 2012 WL 1999493, at *3 (D. Md. June 01, 2012) (stating that under *Stern* "fraudulent conveyance claims must be finally decided by Article III courts, not bankruptcy courts"). Although the First Circuit has not yet spoken on the issue, courts in this district have recognized that the bankruptcy court's constitutional authority to decide fraudulent transfer claims may be in doubt. *See also Burdick v. Shanahan (In re Shanahan)*, 2013 WL 6528812, at *1 & n.2 (Bankr. D. Mass. Dec. 12, 2013) (Hoffman, J.) (stating that the bankruptcy court's constitutional authority to decide fraudulent transfer claims is not without controversy); *Miller v. Grosso (In re Miller)*, 467 B.R. 677, 683 (Bankr. D. Mass. 2012) (leaving open the prospect that bankruptcy courts may not enter final judgment in fraudulent transfer cases).

15. Further, in *Granfinanciera,* 492 U.S. 33, the Supreme Court rejected a bankruptcy trustee's argument that a fraudulent conveyance action against a non-creditor in a bankruptcy proceeding fell within the "public rights" exception. The Supreme Court held that, "[i]f a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court." *Id.* at 2614. The Court reasoned that fraudulent conveyance suits were "'quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Id*. The Court concluded that fraudulent conveyance actions were "more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions." *Id*.

7

(citations omitted). The bankruptcy court lacks constitutional authority to hear and finally adjudicate the Fraudulent Transfer Claims, particularly because Ellison has not filed a proof of claim in the Debtor's case.

### IV.    Local Rule 206 does Not Apply to this Case

16.    Local Rule 206 provides that, in *core proceedings*, the Bankruptcy Court shall hear the proceedings and submit proposed findings of fact and conclusions of law to the District Court. The majority of the Trustee's claims against Ellison, in which the Trustee seeks over $30 million in monetary damages as well as the claims under 18 USC § 1962 for punitive damages, are not core matters. Rather, they are claims for which Ellison is entitled to a jury trial outside of the Bankruptcy Court.

17.    It is in the interest of efficiency to withdraw the reference of the entire adversary proceeding. *See Weiss ex rel. Fibercore. Inc. v. OFS Fitel. LLC*, 361 B.R.315, 317 n.1 (D. Mass. 2007).[1] Furthermore, "[w]hen a lawsuit involves both legal and equitable claims, the legal claims must be decided by the jury before the court resolves the equitable claims. This ordering of events is required so that the judge's decision with respect to the equitable claims does not bind the jury's decision-making ability with regard to factual issues common to both the legal and equitable claims, thereby undermining the guarantees of the Seventh Amendment." *Snider v. Consolidation Coal Co.*, 973 F.2d 555, 559 (7th Cir. 1992) (citing *Parklane Hose Co. v. Shore*, 439 U.S. 322, 334 (1979)). *See also Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472-73 (1962).

### CONCLUSION

18.    Based on the foregoing, the Court should withdrawal the reference with respect to this adversary proceeding, and/or grant such other and further relief as is just and proper.

---

[1] The economics further support withdrawal of the reference because appeal of the bankruptcy court's ruling with respect to Trustee's Application for Preliminary Injunction would be heard in this Court.

Case 12-40944    Doc 537    Filed 05/16/14    Entered 05/16/14 15:31:20    Desc Main
Document    Page 9 of 11

Respectfully submitted this 16th day of May, 2014.

             KAY ELLISON

             By counsel,


             /s/  James R. Sheatsley
             James R. Sheatsley
             Gorman, Sheatsley & Co.
             WV Bar No. 3359
             P.O. Box 5518
             343 Prince Street
             Beckley, WV 25801
             304-252-5321
             jsheatsley@suddenlinkmail.com
             *Pro Hac Vice* admission April 10, 2014

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**(CENTRAL DIVISION)**

---

In re                                                    Chapter 7, No. 12-40944-MSH

**SOUTHERN SKY AIR & TOURS, LLC**
**d/b/a DIRECT AIR,**
       Debtor


**JOSEPH H. BALDIA, CHAPTER 7**
**TRUSTEE OF THE BANKRUPTCY**
**ESTATE OF SOUTHERN SKY AIR &**
**TOURS, LLC d/b/a DIRECT AIR,**

       **Plaintiff**

                                               Adversary Proceeding
       v.                                         No. 14-04024

**JUDY TULL AND KAY ELLISON**

       **Defendants**

### CERTIFICATE OF SERVICE

I, JAMES R. SHEATSLEY, ESQ. of the law firm of Gorman, Sheatsley & Company, L.C., 343 Prince Street, Beckley, West Virginia, do hereby certify that on the 16th day of May, 2014, I filed the MOTION OF DEFENDANT KAY ELLISON TO WITHDRAW THE REFERENCE. A copy of said Motion will be served electronically and by first class mail, postage prepaid, to the parties listed below, said service being made on the 16th day of May, 2014:

Richard T. King, Esq.
OFFICE OF THE U.S. TRUSTEE
446 Main Street, 14th Floor
Worcester, MA 01608

Jessica E. Murphy, Esq.
MIRICK O'CONNELL DEMALLIE & LOUGEE
1800 West Park Drive, Suite 400
Westborough, MA 01581

      /s/ James R. Sheatsley
      JAMES R. SHEATSLEY, ESQ.
      For GORMAN, SHEATSLEY
      & COMPANY, L.C.
      P.O. Box 5518
      Beckley, WV 25801-5518
      Tel. (304) 252-5321
      jsheatsley@suddenlinkmail.com
      *Pro Hac Vice* admission April 10, 2014

cc: client
Joseph B. Collins