UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

|  |  |  |
|---|---|---|
| In re )<br>)<br>SOUTHERN SKY AIR & TOURS, LLC )<br>d/b/a DIRECT AIR, )<br>)<br>Debtor ) | | Chapter 7<br>Case No. 12-40944-MSH |
| JOSEPH H. BALDIGA, CH. 7 TRUSTEE )<br>OF THE BANKRUPTCY ESTATE OF )<br>SOUTHERN SKY AIR & TOURS, LLC )<br>d/b/a DIRECT AIR, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ED WARNECK & )<br>STANLEY MARSHALL ELLISON, )<br>)<br>Defendants. ) | | Adversary Proceeding<br>No. 14-04026-MSH |

## **DEFENDANT'S MOTION TO DISMISS**

Defendant Stanley Marshall Ellison ("Ellison") hereby moves to dismiss several of the Counts of the Complaint filed by Joseph H. Baldiga (the "Trustee"), the Chapter 7 Trustee of Debtor Southern Sky Air & Tours, LLC, d/b/a/ Direct Air (the "Debtor"), as more specifically described below.  As grounds, Ellison states that:  (a) Counts II and III seek to avoid  fraudulent transfers under Massachusetts law, which does not apply to the transactions alleged in those Counts; (b) Counts V, VI and VII, seeking recovery for breach of fiduciary duty and deepening insolvency, are barred by in pari delicto, because the Debtor received the benefits of the cash shortfall for which Plaintiff seeks to hold Ellison liable; (c) Count IX, objecting to Ellison's

proof of claim, fails to state a claim, because Ellison has not filed a proof of claim in the Debtor's case; and (d) Count X, seeking an injunction, should be dismissed because it falls with the other counts and, pursuant to *Grupo Mexicano*, the Court lacks authority to enter an injunction in this proceeding. In support of his Motion, Ellison states:

## BANKRUPTCY RULE 7012 STATEMENT

Ellison denies that Counts V through X of the Complaint are core matters. As to Counts I through IV and V through X, Ellison does not consent to this Court's entry of final orders or judgments, and does not consent to a jury trial in this Court.[1]

## BACKGROUND

Significant background procedural facts are not in dispute. The Defendant disputes many "factual averments" of the Plaintiff and does not waive said dispute. However, for purposes of analysis of the relief sought in this Motion only, all facts alleged by the Trustee are taken as true, although Ellison substantially disputes the material facts alleged in this case:

1.On March 15, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On April 11, 2012, the case was converted to one under Chapter 7, and the Trustee was appointed as Chapter 7 trustee.

2.Prior to the Petition Date, the Debtor was a South Carolina company engaged in the business of providing charter airline flights to various locations throughout the country. Although, on information and belief, the Debtor was permitted to file its petition in this jurisdiction because certain of its flights arrived to and departed from Worcester Regional Airport, substantially all of the Debtor's business operations were conducted in South Carolina.

---

[1] Concurrently herewith, Ellison has filed a Motion to Withdraw the Reference of this proceeding. Accordingly, decision of this Motion to Dismiss should be stayed, and subsequently decided by the District Court.

3. Ellison, who was formerly a member of the Debtor, resided in and worked for the Debtor in South Carolina. Ellison continues to be a resident of the State of South Carolina. There is no allegation that Mr. Ellison ever resided in Massachusetts or performed no services on behalf of the Debtor in Massachusetts.

4. On March 13, 2014, Trustee commenced this adversary proceeding against Ellison seeking recovery of over $30 million under various theories. The substantive claims at issue in this Motion can fairly be placed in two (2) categories: (a) non-core claims seeking $30 million, based on state law theories of recovery (Counts V - VII, the "State Law Claims"); and (b) preference constructive fraudulent transfer claims under Sections 544, 547, 548 and 550 of the Code (Counts I – III, the 'Fraudulent Transfer Claims").

5. In connection with his Complaint, the Trustee sought, on an emergency basis, the entry of an order enjoining Ellison from transferring assets outside the ordinary course of business. To avoid expensive emergency litigation far away from the fact witnesses and in which Mr. Ellison could not have been adequately prepared., Ellison and the Trustee reached agreement on the terms of an injunction, which was approved by the Court.

6. Ellison has otherwise not appeared in the bankruptcy case. Significantly, he has not filed a proof of claim.

## ARGUMENT

### A. Several Counts Fail to State a Claim upon which Relief may be Granted

#### I. The Legal Standard for Dismissal

7. Fed. R. Civ. P. 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." In *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st

Cir. 2012), the First Circuit described the proper handling of a motion to dismiss pursuant to Rule 12(b)(6) as follows:

> Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements. *Id.* at 12 (discussing, among other cases, *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Step two: take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief. *Id.* (again, discussing *Iqbal* and *Twombly*, among others); *see also S.E.C. v. Tambone*, 597 F.3d 436, 441-42 (1st Cir. 2010) (en banc). Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a "context-specific" job that compels us "to draw on" our "judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1949, 1950.

669 F.3d at 56 (citing *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 7, 11-13 (1st Cir. 2011)) (internal footnote call numbers omitted).

8. Here, looking at the pled facts as true, and drawing all reasonable inferences in favor of the Trustee, the following Counts must be dismissed:

### II.     Counts II and III Improperly Apply Massachusetts Law

9. Counts II and III of the Complaint seek to avoid alleged fraudulent transfers under Mass. Gen. L. Ch. 109A, made applicable by Bankruptcy Code § 544(b). But, South Carolina law governs the Trustee's fraudulent transfer claims, not Massachusetts law. *See In re Morse Tool, Inc.*, 108 B.R. 384, 384-85, 387 (Bankr. D. Mass 1989) (enumerating factors to be considered and noting that "[t]he authorities accordingly have shown a preference for applying the law of the site of the conveyed property" (citing 4 COLLIER ON BANKRUPTCY ¶ 544.02 (15th ed. 1989))).

10. The "applicable law" for purposes of Bankruptcy Code § 544(b) is determined according to the "multiple factor," "interest analysis" or "most significant relationship" analysis set forth by the Restatement (Second) of Conflict of Laws, considering the following factors:

    a. the needs of the interstate and international systems,

    b. the relevant policies of the forum,

    c. the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

    d. the protection of justified expectations,

    e. the basic polices underlying the particular field of law,

    f. certainty, predictability, and uniformity of result, and

    g. ease in the determination and application of the law to be applied.

*In re O'Day Corp.*, 126 B.R. 370, 390 (Bankr. D. Mass. 1991).  In both *O'Day Corp.*, *id.* at 391, and *Morse Tool, Inc.*, 108 B.R. at 385-86, the court looked primarily to the location of the assets involved in the allegedly fraudulent transfer to determine which state's law applies.  The court further remarked in *Morse Tool* that:

> Although the site of the conveyed property will not always and necessarily be the state with the most significant relationship to a fraudulent conveyance action, it often will be, just by the nature of the action. The authorities accordingly have shown a preference for applying the law of the site of the conveyed property.

*Id.* at 387 (citing 4 COLLIER ON BANKRUPTCY ¶ 544.02 (15th ed. 1989)).

    11.    Here, the assets alleged to have been fraudulently transferred by the Debtor to Ellison were located in South Carolina, because the Debtor was both originally incorporated and later converted to a limited liability company in that State. *See* Complaint at ¶¶ 12 & 18.  South Carolina was also the location of the Debtor's headquarters and principal place of business as well as Mr. Ellison's residence of and location at which he provided services for the Debtor. Indeed, there is no apparent connection between Massachusetts and the alleged fraudulent transfers.  Significantly, the Trustee recognizes in his Complaint that South Carolina law governs

his breach of fiduciary duty claims, yet relies on Massachusetts law for his fraudulent transfer claims.

12. South Carolina law follows the Statute of Elizabeth, not the Uniform Fraudulent Transfer Act followed in Massachusetts. *See* S.C. Code § 27-23-10; *Footman v. Pendergrass*, 24 S.C. Eq. 33, 38 (1850). Under the law of Massachusetts (following the Uniform Fraudulent Transfer Act), the Trustee must generally demonstrate that the transfer was made without "a reasonably equivalent value in exchange." *See* Mass. Gen. Laws ch. 109A §§ 5(a)(2) and 6(a). By contrast, under South Carolina law (following the Statute of Elizabeth), more than the lack of "a reasonably equivalent value in exchange" is needed. A plaintiff must instead demonstrate a complete lack of "valuable consideration" or that the transfer was "'voluntary,' that is, without consideration," among other things. *In re Haddock*, 246 B.R. 810, 814 (Bankr. D.S.C. 2000).

13. While the Trustee has alleged that the Debtor received less than reasonably equivalent value, Complaint at ¶¶ 50, 56, 63, & 64, the Trustee has failed to allege in Counts II and III that the transfers were "not made on valuable consideration" or that they were "'voluntary,' that is, without consideration." Accordingly, Counts II and III should be dismissed.

### III.    The State Law Claims Are Barred by *In Pari Delicto.*

14. The State Law Claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim based on the doctrine of *in pari delicto*. **Indeed, the Trustee acknowledges that the *in pari delicto* defense may constitute an impediment to the Estate's recovery.** *See* Motion of Chapter 7 Trustee for Order Approving Assignment and Settlement

6

Agreement with Merrick Bank Corporation Regarding Claims against Valley National Bank (Main Case Dkt. No. 483) at ¶ 24.[2]

15. *In pari delicto* "has long been woven into the fabric of federal law," *Nisselson v. Lenout*, 469 F.3d 143, 151 (1st Cir. 2006), and is recognized under both Massachusetts and South Carolina law, *id.* at 151-52; *In re Infinity Business Grp., Inc.*, 497 B.R. 794, 804-16 (Bankr. D.S.C. 2013). The *in pari delicto* defense applies where "'the plaintiff, as compared to the defendant, bears at least substantially equal responsibility for the wrong he seeks to address and (ii) preclusion of the suit would not interfere with the underlying law or otherwise contravene the public interest.'" *Gray v. Evercore Restructuring, L.L.C.*, 544 F.3d 320, 324 (1st Cir. 2006) (quoting *Nisselson*, 469 F.3d at 152).

16. The First Circuit recently reaffirmed that "the *in pari delicto* defense can be successfully asserted at the motion to dismiss stage so long as the facts establishing the defense are: (1) 'definitively ascertainable from the complaint and other allowable sources of information,' and (2) 'suffice to establish the affirmative defense with certitude.'" *Gray*, 544 F.3d at 325 (quoting *Nisselson*, 469 F.3d at 150).

17. In *Baena v. KPMG LLP*, 453 F.3d 1 (1st Cir. 2006), the First Circuit affirmed dismissal of a bankruptcy trustee's claim against an accounting firm arising from its approval of allegedly fraudulent financial statements on the basis of *in pari delicto*. At issue was whether the actions of the company's managers in making the fraudulent financial statements could be imputed to the company, so that the adverse interest exception to *in pari delicto* would not apply. The court stated:

---

[2] The Court can take judicial notice of the Motion. See, e.g., Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004) (stating that courts may "look to public records . . . in deciding a motion to dismiss").

> A fraud by top management to overstate earnings, and so facilitate stock sales or acquisitions, is not in the long-term interest of the company; but, like price-fixing, it profits the company in the first instance and the company is still civilly and criminally liable. Nor does it matter that the implicated managers also may have seen benefits to themselves— that alone does not make their interests adverse.
>
> * * *
>
> "Adverse interest" in the context of imputation means that the manager is motivated by a desire to serve himself or a third party, and not the company, the classic example being looting. If there were raw facts at issue that (if credited by a factfinder) might make out a claim for looting, or if the case for imputation were merely a close one, we might agree with the trustee's argument and leave this question to the factfinder.

*Id.* at 7-8 (citations and footnote call number omitted).

18.   Here, the Debtor participated in and shared any benefits of the Shortfall. The factual basis of Plaintiff's breach of fiduciary duty claims, as alleged, is that Mr. Ellison: (1) "fail[ing] to properly manage the Debtor's finances;" (2) "fail[ing] to prevent dissipation of the Debtor's depository accounts at VNB;" and (3) "depriv[ing] the Debtor of its opportunity to pay off its debts." *See* Complaint at ¶¶ 79 & 83. The Trustee does not allege, however, that Mr. Ellison and/or the Management Team directed that the funds in the VNB depository accounts be paid to themselves. To the contrary, the Trustee alleges that the funds were directed to be "paid in advance to air carriers or fuel suppliers," and that the remaining balance would "be paid to the Debtor or on occasion, to one or more of the Debtor's vendors." *Id.* at ¶ 22.

19.   The Debtor's participation is reinforced by the Trustee's acknowledgement in the Report that "[a]ll funds VNB released from Direct Air's depository accounts to Direct Air — whether properly released or not — were paid by wire to Direct Air's operating accounts at other banks or to Direct Air vendors." *See* Trustee's Report on Direct Air's Operations and Shortfall (Main Case Dkt. No. 446) (the "<u>Report</u>") at pp. 34-35. "There is no evidence of money transfers

8

to off-shore accounts or large amounts of unidentified case withdrawals," but rather "a review of Direct Air's bank statements, invoices and payroll suggests that payments made by Direct Air to businesses and individuals were consistent with Direct Air's business operations." *Id.* at p. 35.

20. That Mr. Ellison and/or the Management Team may have also have benefitted is inconsequential. *See Baena*, 453 F.3d at 7-8 ("Nor does it matter that the implicated managers also may have seen benefits to themselves—that alone does not make their interests adverse."). Nor does it matter that the Trustee alleges that this conduct was ultimately harmful to the Debtor in the long run. The *in pari delicto* doctrine focuses on "the corporation's present interests." *Nisselson*, 469 F.3d at 156 (emphasis added). Thus, Counts V through VII should be dismissed for failure to state a claim upon which relief may be granted.

B. **Counts VIII and IX should be Dismissed as Moot and Because the Court Lacks Authority to Grant the Relief Sought.**

21. Count VIII seeks disallowance of Ellison's claim pursuant to 11 U.S.C. § 502. Because there is no allegation Ellison filed a proof of claim, Count VIII should be dismissed.

22. Count IX seeks to enjoin Ellison from transferring his assets out of the ordinary course of business. The Court has entered an Agreed Order temporarily restraining any such transfers pending a full hearing on the matter. However, since all counts, except Count IV seeking to recover an unspecified preferential transfer, should be dismissed, Count IX should also be dismissed or, in the alternative, limited to assets with a value equivalent to the payments made to Mr. Ellison within the requisite ninety (90) day statutory period (see Exhibit B to Complaint, approximately $74,000.00).

23. Further, it has been recognized, since the Supreme Court's decision in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*, 527 U.S. 308 (1999), that a United States

District Court does not have the power to issue a preliminary injunction preventing a defendant from transferring assets in which no lien or equitable interest is claimed. *Id.* In *Grupo Mexicano*, the Court reasoned that the equitable power of the federal courts under the Judiciary Act of 1789 is limited to those remedies "traditionally accorded by courts of equity." *Id.* at 319. The courts of equity under the common law would only permit a creditor's bill "brought . . . by a creditor who had already obtained a judgment establishing the debt." *Id.* The holding in *Grupo Mexicano* extends to bankruptcy courts because they derive their power from the district courts. *See* 28 U.S.C. §§ 1334(a)-(b), 157(a).[3] Thus, Count X should be dismissed for failure to state a claim.

C.      **The Trustee's Requests for Punitive Damages Should be Dismissed.**

24.     The Trustee's request for punitive damages on Counts V and VI is improper. *See* Complaint at ¶¶ 80 & 84. Under South Carolina law, "punitive damages are only available where defendant's conduct is willful, wanton, or reckless," to be proved by clear and convincing evidence. *Blanton Enters., Inc. v. Burger King Corp.*, 680 F. Supp. 753, 776 n.24 (D.S.C. 1988); *Cody P. v. Bank of America, N.A.*, 720 S.E.2d 473, 480 (S.C. 2011). These counts are subject to heightened pleading standards under Federal Rule 9(b) because they concern fraud or mistake. *See Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 464 (S.D.N.Y. 2006) ("Rule 9(b)'s heightened pleading standards apply to breach of fiduciary duty claims where the breach is premised on the defendant's fraudulent conduct."); *Shapiro v. Miami Oil Producer's, Inc.*, 84 F.R.D. 234, 236 (D. Mass. 1979) ("[Rule 9(b)] extends to averments of fraud or mistake,

---

[3] Although courts have stated that *Grupo Mexicano* does not apply in cases alleging fraudulent conveyance, such exception applies only in jurisdictions following the Uniform Fraudulent Conveyance Act or the Uniform Fraudulent Transfer Act. *Grupo Mexicano*, 527 U.S. at 324 n.7; *AngioDynamics, Inc. v. Biolitec AG*, 711 F.3d 248, 250-51 (1st Cir. 2013). Here, as set forth above, South Carolina law governs the Trustee's fraudulent conveyance claims, not Massachusetts law; and South Carolina law follows the Statute of Elizabeth, not the Uniform Fraudulent Conveyance Act or the Uniform Fraudulent Transfer Act. *See* S.C. Code § 27-23-10; *Footman v. Pendergrass*, 24 S.C. Eq. 33, 38 (1850).

whatever may be the theory of legal duty statutory, tort, contractual or fiduciary."). The Trustee does not adequately allege that Mr. Ellison acted in a "willful, wanton, or reckless manner."

25. To the extent that the allegations of paragraphs 26 to 30 are intended to show that Mr. Ellison acted in a "willful, wanton, or reckless" manner, they cannot do so as to Count V, which solely concerns Mr. Ellison's duty to a corporation that had ceased to exist nearly two years earlier. See Complaint at ¶¶ 18 & 26 to 30.

26. As to Count VI, the Trustee alleges that Mr. Ellison's conduct was "grossly negligent, reckless, or intentional, or a knowing violation of the law." See Complaint at ¶ 83. The Trustee's vague characterization of Mr. Ellison's conduct does not even commit to "willful, wanton, or reckless," but instead concedes that his actions may have been merely "grossly negligent." Under South Carolina law "exemplary damages should not be awarded for mere gross negligence." *Hicks v. McCordish, 70 S.E.2d 629, 631 (S.C. 1952).*

## CONCLUSION

27. Based on the foregoing, Counts II, III, and V though IX of the Complaint should be dismissed, and/or such other and further relief as is just and proper should be granted

Respectfully submitted this 16th day of May, 2014.

        STANLEY MARSHALL ELLISON
        By his attorney,

        By: /s/ James R.Sheatsley_____
        JAMES R. SHEATSLEY, ESQ.
        For GORMAN, SHEATSLEY
        & COMPANY, L.C.
        P.O. Box 5518
        Beckley, WV 25801-5518
        Tel. (304) 252-5321
        jsheatsley@suddenlinkmail.con
        *Pro Hac Vice* admission April 16, 2014

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

In re                                              Chapter 7, No. 12-40944-MSH

**SOUTHERN SKY AIR & TOURS, LLC**
**d/b/a DIRECT AIR,**
          Debtor


**JOSEPH H. BALDIA, CHAPTER 7**
**TRUSTEE OF THE BANKRUPTCY**
**ESTATE OF SOUTHERN SKY AIR &**
**TOURS, LLC d/b/a DIRECT AIR,**

          **Plaintiff**
                                                   **Adversary Proceeding**
          v.                                       **No. 14-04026**

**ED WARNECK and**
**STANLEY MARSHALL ELLISON**

          **Defendants**


**CERTIFICATE OF SERVICE**

   I, JAMES R. SHEATSLEY, ESQ. of the law firm of Gorman, Sheatsley & Company, L.C., 343 Prince Street, Beckley, West Virginia, do hereby certify that on the 16th day of May, 2014, I filed Motion of Defendant Stanley Marshall Ellison to Dismiss. A copy of said Motion will be filed and served electronically and by first class mail; postage prepaid, to the parties listed below, said service being made on the 16th day of May, 2014:

Richard T. King, Esq.
OFFICE OF THE U.S. TRUSTEE
446 Main Street, 14th Floor
Worcester, MA 01608

Jessica E. Murphy, Esq.
MIRICK O'CONNELL DEMALLIE & LOUGEE
1800 West Park Drive, Suite 400
Westborough, MA 01581

/s/ James R.Sheatsley
JAMES R. SHEATSLEY, ESQ.
For GORMAN, SHEATSLEY
& COMPANY, L.C.
P.O. Box 5518
Beckley, WV 25801-5518
Tel. (304) 252-5321
jsheatsley@suddenlinkmail.com
*Pro Hac Vice* admission April 16, 2014

cc: client
Joseph Collins