UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| In re:<br>SOUTHERN SKY AIR & TOURS, LLC<br>d/b/a DIRECT AIR,<br>    Debtor. | Chapter 7<br>Case No. 12-40944-MSH |
|---|---|

## MOTION TO APPROVE SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS
(Re: Arrow Energy, Inc.)

To the Honorable Melvin S. Hoffman, United States Bankruptcy Judge:

NOW COMES Joseph H. Baldiga, the Chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Southern Sky Air & Tours, LLC d/b/a Direct Air, the debtor herein (the "Debtor"), and hereby moves (the "Motion") this Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for an order approving the Settlement Agreement and Release of Claims (the "Settlement Agreement") entered into by the Trustee and Arrow Energy, Inc. ("Arrow"; together with the Trustee, the "Parties"), a copy of which is filed contemporaneously herewith.

In support of this Motion, the Trustee states as follows:

### I.    BACKGROUND

#### A.    Bankruptcy Case Background

1.    On March 15, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

2.    Prior to the Petition Date, the Debtor was a public charter operator (tour operator) with charter programs servicing various points in the United States. On March 13, 2012, the Debtor ceased operations of its tour programs, stopped accepting flight reservations and terminated reservation capabilities on its web-site. The Debtor never resumed operations.

{Practice Areas/CORP/15008/14190/A2574547.DOC}

3. On April 11, 2012 (the "Conversion Date"), this Court converted the Debtor's bankruptcy case to one under Chapter 7 of the Bankruptcy Code.

4. On the Conversion Date, the United States Trustee appointed Joseph H. Baldiga Chapter 7 trustee of this proceeding and he continues to serve as such.

5. On June 13, 2012, this Court granted the Trustee's application to employ Robert M. Dees and the law firm of Milam Howard Nicandri Dees & Gillam, P.A. as special counsel to the Trustee ("Special Counsel"), on a contingency basis, for the purpose of continuing prosecution regarding garnishment by Arrow (discussed below).

6. On September 18, 2013, the Trustee filed an Amended Application to Employ Special Counsel (the "Amended Application to Employ") seeking to narrow the scope of Special Counsel's representation. On or about October 3, 2013, this Court entered an order allowing the Amended Application to Employ.

**B.    The Complaint**

7. On or about March 12, 2014, the Trustee filed a Complaint against Arrow and Sun Trust Bank ("Sun Trust"; together with Arrow, the "Defendants") (I) for Declaratory Relief, (II) to Avoid and Recover Fraudulent Transfers, and (III) To Disallow Claims (the "Complaint") pursuant to Bankruptcy Code §§ 502, 548 and 550, commencing adversary proceeding number 14-04022 (the "Adversary Proceeding). In the Complaint, the Trustee seeks (a) a declaration that Arrow's prosecution of a garnishment action violates the automatic stay, (b) to avoid and recover pre-petition transfers that the Debtor made to Arrow and/or Sun Trust, and (c) to disallow any claims that the Defendants may have against the Estate.

    i.  **Garnishment Cases – Pre-Petition Background.**

8. As detailed in the Complaint, prior to the Petition Date, on December 22, 2010, Arrow filed an action (the "Garnishment Action") in the Circuit Court of Broward County (the

"Florida Trial Court") as a domestication of a final judgment Arrow had obtained in Michigan against Aviation Fuel International, Inc. ("AFI") and Sean Wagner.

9. Thereafter, Arrow served a writ of garnishment on the Debtor on March 3, 2011, claiming that the Debtor owed money to AFI, and that Arrow was entitled to such funds by virtue of the garnishment.

10. In the Complaint, the Trustee alleges that the Debtor did not owe any money to AFI because AFI had overcharged the Debtor for airport fees, fuel fees, and excise taxes.

### ii. The 200K Transfer.

11. Additionally, the Complaint alleges that, on April 28, 2011, the court in the Garnishment Action entered a Final Judgment in Garnishment (the "Garnishment Judgment") against the Debtor in the amount of $329,138.97, over the Debtor's objection. The Debtor subsequently appealed the Garnishment Judgment by filing an appeal in the District Court of Appeal, Fourth District, State of Florida (Case No. 4D11-2018) (the "Garnishment Appeal Action").

12. On September 30, 2011, during the pendency of the Garnishment Appeal Action, Arrow executed on the Garnishment Judgment against the Debtor, and forced the Debtor to pay $200,000.00 to Arrow (the "200K Transfer").

13. In the Complaint, the Trustee asserts that the 200K Transfer is avoidable as a constructive fraudulent transfer.

### iii. The 104K Transfer.

14. In addition, in the Complaint, the Trustee asserts that, on April 13, 2011, the Debtor inadvertently wired $104,000.00 to AFI's account at SunTrust (the "104K Transfer"; together with the 200K Transfer, the "Transfers") instead of sending such funds to the intended recipient.

15. The funds constituting the 104K Transfer remain in the SunTrust bank account, subject to Arrow's garnishment claim.

16. Subsequent to the occurrence of the 104K Transfer, Arrow served a writ of garnishment on the SunTrust account. The Florida Trial Court then issued a Judgment in Garnishment with respect to the SunTrust account, which is currently on appeal.

17. In the Complaint, the Trustee asserts that the 104K Transfer is avoidable from both Arrow and Sun Trust as a constructive fraudulent transfer.

18. The deadline for the Defendants to answer or otherwise respond to the Complaint was April 11, 2014. Neither Arrow nor SunTrust responded to the Complaint.

19. Based on his analysis, the Trustee has negotiated an agreement (i.e., the Settlement Agreement) with Arrow to resolve the Parties' disputes and all of the claims and causes of action among them. Details regarding the Settlement Agreement are set forth below.

20. The Settlement Agreement is subject to Bankruptcy Court approval pursuant to MLBR 9019-1. Absent such approval, the Settlement Agreement shall be of no force or effect.

## II. SUMMARY OF THE SETTLEMENT AGREEMENT[1]

21. The Settlement Agreement between the Trustee and Arrow provides that, within five business days following the Bankruptcy Court's approval of this Settlement Agreement (the "Effective Date") the Trustee will (a) dismiss the Adversary Proceeding with prejudice and without costs, (b) dismiss the Garnishment Appeal Action, and (c) withdraw any motions pending in the Garnishment Action.

22. The Settlement Agreement further provides that, within ten (10) days of Arrow being paid by Sun Trust on Arrow's garnishment against Sun Trust in the Garnishment Action, Arrow shall pay to the Trustee the total sum of $30,000.00 (the "Settlement Amount").

---

[1] This is a summary only. Parties wishing to review the full terms of the settlement should carefully review the Settlement Agreement filed herewith.

{Practice Areas/CORP/15008/14190/A2574547.DOC}   4

23. The Settlement Agreement provides that, on the Effective Date, the Trustee, and the Debtor's Estate release, acquit, and discharge Arrow and all of its past and current officers, directors, employees, members, owners, agents, assigns, accountants, attorneys, legal representatives, divisions, parents, subsidiaries, affiliates, joint ventures, shareholders, trustees, successors, assigns, and representatives, from all claims, liabilities, demands, actions, causes of action, losses, damages, costs, expenses, rights, compensation, of whatever kind or nature, at law or in equity, foreseen or unforeseen, contingent or liquidated, matured or unmatured, known or unknown, that exist now, or have ever existed, including, without limitation, all of the claims that the Trustee asserted or could have asserted in the Complaint or in the Adversary Proceeding, including any claims under section 547 and 548 of the Bankruptcy Code. The Trustee's foregoing releases do not include any release of claims for breach of the Settlement Agreement.

24. The Settlement Agreement also provides that, on the Effective Date, Arrow, on behalf of itself and all of its officers, directors, employees, members, owners, agents assigns, accountants, attorneys, legal representatives, divisions, parents, subsidiaries, affiliates, joint ventures, shareholders, trustees, successors, assigns, and representatives, shall release, acquit, and discharge Trustee and his agents, assigns, accounts, attorneys, and representatives, the Debtor, and the Estate from all claims, liabilities, demands, actions, causes of action, losses, damages, costs, expenses, rights, compensation, of whatever kind or nature, at law or in equity, foreseen or unforeseen, contingent or liquidated, matured or unmatured, known or unknown, that exist now, or have ever existed. The Defendant's foregoing releases do not include any release of claims for breach of the Settlement Agreement.

25. Finally, the Settlement Agreement provides that if the Bankruptcy Court enters an order approving the Settlement Agreement, but such order is subsequently appealed, modified, reconsidered, or vacated, the Settlement Agreement shall terminate according to its terms.

26. The Parties represent in the Settlement Agreement that the settlement is done solely to compromise disputed claims and shall not constitute an admission of liability by either of the parties.

### III. REASONABLENESS OF THE SETTLEMENTS

27. In determining whether a settlement agreement should be approved, a bankruptcy court should "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995), quoting In re GHR Cos., 50 B.R. 925, 931 (Bankr. D. Mass. 1985) (additional citations omitted). The Trustee's judgment as to the propriety of the proposed settlement is to be accorded some deference. Hill v. Burdick (In re Moorhead Corp.), 208 B.R. 87, 89 (1st Cir. BAP 1997).

28. The Trustee has determined that the Settlement Agreement considers the strengths and weaknesses of the claims and defenses of each of the Parties. As a result, the Trustee believes that the Settlement Agreement is fair and equitable.

29. In addition, the amount paid by Arrow pursuant to the Settlement Agreement is appropriate since the cost of further litigation would be substantial and could result in a smaller net recovery for the Estate. Pursuant to the terms of the Fee Agreement, Special Counsel will receive 40%, plus expenses, of the Settlement Amount, resulting in a net amount of approximately $18,000.00 to be paid to the Estate.

30. The Trustee has determined that the Settlement Agreement stems the legal costs and expenses which would otherwise be incurred through further litigation. In order to prevail at trial, the Trustee would have to demonstrate that the Debtor received less than reasonably equivalent value on account of the Transfers. However, the underlying facts are complex. The Debtor engaged an auditor prior to the Petition Date who determined that AFI overcharged the Debtor for substantial fuel-related charges. Unfortunately, that auditor has since indicated to the

Trustee that he refuses to testify at a trial, making it extremely difficult for the Trustee to present the necessary detailed, highly-specific evidence that would be needed to prevail.

31. In addition, due to the Garnishment Action and the Garnishment Appeal Action in Florida, the "law of the case" now includes some facts and rulings unfavorable to the Trustee. While the Trustee does not concede the finality of any Florida court orders in connection with the garnishment actions, the Trustee recognizes that any attempt to "unwind" the orders would likely be of significant expense.

32. The Trustee further states that the Settlement Agreement will result in an immediate material benefit to the Estate.

WHEREFORE, the Trustee respectfully requests that this Court enter an Order:

A. Approving the Settlement Agreement as it is in the best interest of the Estate; and

B. Granting the Trustee such other and further relief as is just.

Respectfully submitted,

JOSEPH H. BALDIGA,
CHAPTER 7 TRUSTEE

By his counsel,

/s/ Gina Barbieri O'Neil
Joseph H. Baldiga, BBO #549963
Gina Barbieri O'Neil, BBO #670596
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581
Phone: 508.898.1501
Fax:   508.898.1502
Email: bankrupt@mirickoconnell.com
Email: goneil@mirickoconnell.com

Dated: June 26, 2014

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | |
|---|---|
| In re:<br><br>SOUTHERN SKY AIR & TOURS, LLC<br>d/b/a DIRECT AIR,<br><br>Debtor. | Chapter 7<br>Case No. 12-40944-MSH |

## ORDER APPROVING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS
(Re: Arrow Energy, Inc.)

Upon the Motion to Approve Settlement Agreement and Release of Claims (the "Motion") filed by Joseph H. Baldiga, Chapter 7 trustee of the above-captioned Debtor (the "Trustee"), on June 26, 2014, for an order approving the Settlement Agreement and Release of Claims with Arrow Energy, Inc.; and the Court finding that the Motion is in the best interest of the estate; and no objection to the Motion having been filed or any such objection having been withdrawn or overruled;

NOW THEREFORE IT IS HEREBY ORDERED THAT:

A. The Motion is allowed; and

B. The Settlement Agreement and Release of Claims is approved.

Dated:_____, 2014

_____
Honorable Melvin S. Hoffman
United States Bankruptcy Judge

{Practice Areas/CORP/15008/14190/A2574547.DOC}