UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | |
|---|---|
| **In re:** | |
| **SOUTHERN SKY AIR & TOURS, LLC d/b/a DIRECT AIR,** | **Chapter 7** |
| | **Case No. 12-40944-MSH** |
| **Debtor.** | |

**MOTION OF CHAPTER 7 TRUSTEE FOR ORDER (I) ALLOWING CERTAIN
ADDITIONAL CHARTER PARTICIPANT CLAIMS,
(II) DISALLOWING CERTAIN CHARTER PARTICIPANT CLAIMS,
(III) APPROVING PROPOSED RE-DISTRIBUTION OF REMAINING CHARTER
PARTICIPANT CLAIM FUNDS TO CERTAIN ADDITIONAL
CHARTER PARTICIPANT CLAIMANTS, AND (IV) AUTHORIZING
MANNER OF FUTURE DISTRIBUTIONS TO
ADDITIONAL CHARTER PARTICIPANT CLAIMANTS**

To the Honorable Melvin S. Hoffman, United States Bankruptcy Judge:

NOW COMES Joseph H. Baldiga, the Chapter 7 trustee (the "Trustee") of the

bankruptcy estate (the "Estate") of Southern Sky Air & Tours, LLC d/b/a Direct Air (the

"Debtor"), and hereby moves (the "Motion") this Court to enter an Order (I) allowing certain

additional Charter Participant (as defined below) claims, (II) disallowing the claims of certain

Charter Participants, (III) approving the Trustee's proposed re-distribution of Remaining Charter

Participant Claim Funds (as defined below) for claims asserted by Additional Claimants (as

defined below) against the Estate and who did not receive payment in connection with the

Trustee's Interim Distribution (as defined below), and (IV) authorizing the manner in which any

future distributions, if any, to Charter Participants will be made with respect to Additional

Claimants. **Charter Participant claimants receiving a copy of this Motion should review**

**Exhibits A and B attached hereto to determine whether this Motion affects the treatment to**

**their claims.**

In support of this Motion, the Trustee states as follows:

## I.    BACKGROUND

**A.    Bankruptcy Case Background.**

1.    On March 15, 2012 (the "Petition Date"), the Debtor filed a petition for relief

under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the

"Bankruptcy Code").

2.    Prior to the Petition Date, the Debtor was a public charter operator (tour operator)

with charter programs servicing various points in the United States.  On March 13, 2012 (two

days prior to the Petition Date), the Debtor ceased operation of its tour programs, stopped

accepting flight reservations and terminated reservation capabilities on its web-site.  The Debtor

never resumed operations.  By the time of these actions, the Debtor had previously accepted

flight reservations (and payment) from thousands of charter participants (the "Charter

Participants"), who were then unable to fly with the Debtor, and who were left with claims for

the monies lost in connection with the Debtor's cancelled flights and ceased operations and for

expenses incurred due to the cancellations and the cessation of operations.

3.    On April 11, 2012 (the "Conversion Date"), this Court converted the Debtor's

Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.

4.    On the Conversion Date, the United States Trustee appointed the Trustee as

Chapter 7 trustee of this proceeding and he continues to serve as such.

**B.    Sources of Funding for Charter Participant Reimbursement.**

5.    Since the Petition Date, thousands of Charter Participants have asserted claims

against various sources for the monies lost in connection with the Debtor's cancelled flights.

While a large number of those claimants have by now been reimbursed via their credit or debit

cards, a number of those Charter Participants remain unreimbursed (the "Unreimbursed Charter

Participants"). As set forth in the Claim Reconciliation Motion (as defined in Paragraph C

below), the Trustee succeeded in obtaining funds totaling $250,000 for payment to

Unreimbursed Charter Participants on account of their claims (the "Charter Participant Claim

Funds"). The sources of the Charter Participant Claim Funds include (a) a portion ($175,000.00)

of the proceeds of the bond (the "Bond") guaranteed by Platte River Insurance Company ("Platte

River") and (b) a portion ($75,000.00) of funds that were in certain accounts (the "VNB

Accounts") maintained by Valley National Bank ("VNB"). The Trustee was holding the Charter

Participant Claim Funds pending completion of the Trustee's Charter Participant claim

reconciliation process and the interim distribution proposed by the Trustee in the Claim

Distribution Motion (as defined below) and approved by this Court. These sources of funds are

discussed below.

### 1.    Platte River Insurance Company.

6.      On October 1, 2012, this Court approved a Stipulation and Release Between the

Trustee and Platte River Regarding Public Charter Operator's Surety Bond (the "Bond

Stipulation").

7.      Pursuant to the terms of the Bond Stipulation, among other things, Platte River

agreed to pay to the Trustee, on behalf of the Estate, the full $200,000.00 Bond Amount, in

exchange for a full release of Platte River of any and all further liability under the Bond. In

consideration of the turnover of the Bond Amount, the Trustee agreed to assume all

responsibility relating to the administration and reconciliation of any and all claims asserted

against the Bond in conjunction with the Trustee's normal claim administration process in the

Debtor's bankruptcy Estate, including, without limitation (a) comprehensively reviewing and

evaluating any and all potential claims to the Bond Amount, (b) determining whether such

claims are invalid or duplicative, and (c) establishing which claims shall be allowed claims,

including whether such claims are valid under 14 C.F.R. § 380.34 (the applicable Department of

Transportation regulation). The Trustee further agreed to require potential claimants against the

Bond (the "Bond Claimants") to first exhaust all efforts to obtain a reimbursement from those

claimants' credit card and debit card companies and, if unsuccessful, demonstrate evidence of

the claimants' inability to recover payment from such credit card and debit card companies.

8.      The Bond Stipulation further provided that the Bond Amount would become

general property of the Estate pursuant to Bankruptcy Code § 541; provided, however, that if

allowed claims against the Bond ("Bond Claims") totaled at least $175,000.00, then $175,000.00

of the Bond Amount would be used to pay those allowed Bond Claims (*pro rata* as applicable),

while the balance of the Bond Amount ($25,000.00) would become general property of the

Estate, to be administered by the Trustee in the normal course of his administration of the Estate.

## 2.      The Valley National Bank Accounts.

9.      Prior to the Petition Date, the Debtor entered into Public Charter Depository

Agreements (the "Depository Agreements") with various direct air carriers and Valley National

Bank ("VNB"). Pursuant to the Depository Agreements, VNB agreed to act as depository bank

within the meaning of 14 C.F.R. § 380 and the Debtor was required to deliver to VNB all

amounts received from each Charter Participant in accordance with 14 C.F.R. § 380.34.

10.     As of the Petition Date, VNB maintained two accounts for and on behalf of Direct

Air, a money market account and a DDA account (together, the "VNB Account"). As of the

Petition Date, the VNB Account held a balance of approximately $1,016,926.00.

11.    On June 5, 2013, this Court entered an Order approving, among other things, an agreement between the Trustee, VNB, and certain other parties regarding the release by VNB of the funds in the VNB Account (the "VNB Agreement").  Pursuant to the VNB Agreement, among other disbursements, VNB disbursed from the VNB Account $250,000.00 to the Trustee. Of the $250,000.00, $75,000.00 was distributed to the Estate exclusively to partially or fully pay the Charter Participants who did not receive a full refund or chargeback, or who otherwise were not fully reimbursed in connection with money paid by them into the VNB Account, but only to the extent that such Charter Participants have a valid claim against the VNB Account.

12.    As further provided in the Claim Reconciliation Motion (as defined below in paragraph 14), the Court authorized the Trustee to consolidate Charter Participant Claim Funds consisting of the portion of the Bond Amount (i.e., $175,000.00) and the portion of the VNB Account (i.e., $75,000.00) to promote efficiency, a faster distribution, and the fairest way to allocate funds among all Unreimbursed Charter Participants, many of whom filed multiple claims against multiple entities for the same monies lost.

C.    **Charter Participants' Asserted Claims.**

13.    As set forth in the Claim Reconciliation Motion, Charter Participants asserted claims in multiple forums for monies lost in connection with the Debtor's cancelled flights: (i) claims asserted against the Bond (i.e., the Bond Claims); (ii) claims asserted against VNB and the VNB Account (the "VNB Claims"); and (iii) claims filed in this bankruptcy case in the form of proofs of claim (the "Filed Claims"; collectively with the Bond Claims and the VNB Claims, the "Claims").

14.    On June 24, 2013, the Trustee filed a Motion For Order (I) Approving Charter Participant Claim Reconciliation Process, Including Form of Notice to Charter Participants, (II)

Disallowing Certain Charter Participant Claims, and (III) Extending Claim Bar Date For Charter

Participants (the "Claim Reconciliation Motion") seeking an Order, among other things,

(a) approving the process for the reconciliation of all claims asserted by Charter Participants

against (i) the Estate, (ii) the Bond guaranteed by Platte River, and (iii) certain accounts

maintained by VNB, (b) approving the proposed Claim Notice and Mandatory Claim Form (the

"Claim Notice") and setting forth requirements for mailing the Claim Notice to all known

Charter Participants for completion and submission to the Trustee, and (c) providing for the pro

rata distribution to Charter Participants.

15.     On July 26, 2013, the Trustee filed a Supplement to Motion for Order (I)

Approving Charter Participant Claim Reconciliation Process, Including Form of Notice to

Charter Participants, (II) Disallowing Certain Charter Participant Claims, and (III) Extending

Claim Bar Date For Charter Participants in order to submit a revised proposed Claim Notice and

a revised proposed Order.

16.     On August 7, 2013, this Court conducted a hearing on the Claim Reconciliation

Motion (the "Claim Reconciliation Motion Hearing").

17.     On August 8, 2013, this Court entered an order approving the Claim

Reconciliation Motion, as supplemented (the "Claim Reconciliation Order").

18.     On August 8, 2013, the Trustee filed a Second Supplement to Motion for Order

(I) Approving Charter Participant Claim Reconciliation Process, Including Form of Notice to

Charter Participants, (II) Disallowing Certain Charter Participant Claims, and (III) Extending

Claim Bar Date for Charter Participants in order in order to submit a further-revised Claim

Notice and a further-revised proposed Order as instructed by this Court at the Claim

Reconciliation Motion Hearing.

**D.**     **The Chapter 7 Bar Date.**

19.     This Court initially established September 11, 2012 as the deadline for creditors asserting pre-petition claims to file such claims against the Estate (the "Chapter 7 Bar Date").

20.     Pursuant to 14 C.F.R. § 380.34(d) and the Bond, claimants were required to file any claims under the Bond within 60 days from the date of a claimant's cancelled return flight. Upon information and belief, prior to the Petition Date, the Debtor scheduled operating flights through approximately November 16, 2012. Accordingly, it is possible that Claims could have been timely asserted against the Bond through January 15, 2013.

21.     Based on the foregoing, on September 10, 2012, the Trustee filed a motion (the "Bar Date and Agreement Motion") in which he requested, among other things, that the Court extend the Chapter 7 Bar Date for Charter Participants (only) to file pre-petition claims to January 15, 2013.

22.     The Court approved the Bar Date and Agreement Motion by Order dated October 11, 2012, thereby extending the Chapter 7 Bar Date to January 15, 2013 for Charter Participants (only) to file their pre-petition claims. Subsequently, as provided by the Claim Reconciliation Order, the deadline for Charter Participants to file prepetition claims against the Estate was extended to seven (7) days following entry of the Claim Reconciliation Order (i.e., August 15, 2013) (the "Extended Chapter 7 Bar Date").

23.     Notwithstanding the Extended Chapter 7 Bar Date, the Trustee previously represented to this Court that he would agree to permit the continued filing of proofs of claim by Charter Participants until an undetermined date certain, in order to maximize the pool of eligible Charter Participants otherwise entitled to participate in any distribution.

## II.    THE CHARTER PARTICIPANT CLAIM NOTICE

24.    Since the Petition Date, Charter Participants have filed Claims against the Bond, the VNB Account and the Estate.  During the Trustee's initial efforts to gather and reconcile the Claims pursuant to the terms of the Claim Reconciliation Motion, Platte River provided the Trustee with copies of all Bond Claims, VNB provided the Trustee with a list of all VNB Claims, and the Trustee obtained copies of all Filed Claims from the Bankruptcy Court.  Based on all claim information obtained by the Trustee from the Bankruptcy Court, and claim information provided to the Trustee by Platte River and VNB, the Trustee created a master database of all claims asserted against the Bond, the VNB Account and the Estate, including all consumer and non-consumer Filed Claims  (the "Master Database").  The Master Database contained, among other things, claimant name, contact information, if known, and claim amount. The total number of Claims on the Master Database, including non-consumer and duplicate claims, is approximately 5,922.

A.    <u>Service of the Claim Notice to Charter Participants.</u>

25.    Pursuant to the Claim Reconciliation Order, the Trustee began preparations to mail the Court-approved Claim Notice to all Charter Participants who asserted Claims against the Bond, the VNB Account, and the Estate.

26.    As provided in the Claim Reconciliation Motion, the Court-approved Claim Notice was intended to elicit all relevant information from Claimants such that (a) completed and returned Claim Notices would supersede any and all claims previously asserted against any of the Bond, the VNB Account, and the Estate and (b) the completed and returned Claim Notices would serve as the new, complete claims of any Unreimbursed Charter Participants.  The completed Claim Notice, once returned to the Trustee, would also provide the Trustee with the

amount of the Charter Participant's final claim, net of all credits and/or chargebacks received by
the claimant via his or her debit card or credit card.

27.     The Claim Notice set the deadline for submission of the completed Claim Notice
to the Trustee as September 25, 2013 (the "Claim Notice Deadline").

28.     As expected, a review of the Master Database indicated a substantial amount of
duplication among the asserted Bond Claims, the VNB claims, and the Filed Claims.
Additionally, the Trustee identified other issues regarding the Claims comprising the Master
Database.  For example, (a) some Charter Participants asserted multiple claims that provided the
same mailing address for the Charter Participant on each of the Claims, (b) some Charter
Participants asserted multiple claims that provided different mailing addresses for the Charter
Participant on each of the Claims, (c) some Charter Participants asserted multiple claims in
differing amounts, and (d) some Charter Participants asserted claims on behalf of themselves as
well as other claimants (for example, school groups or family members).  In addition, many of
the Charter Participants that filed Claims prior to the issuance of the Claim Notice have since
been reimbursed in whole, or in part, by their credit card or debit card companies, since
thousands of such reimbursement requests were processed in the months after the Petition Date.

29.     Based on the amount of duplication evident on the Master Database, the Trustee
created a second database for the purpose of mailing the Claim Notice to all Charter Participant
claimants and to record the completed Claim Notices once they were returned to the Trustee (the
"Claim Notice Database").

30.     The creation of the Claim Notice Database allowed the Trustee to be as cost-
efficient as possible by not mailing the Claim Notice to duplicate addresses or to claimants
without contact information.  After conducting an extensive review of the Claim Notice

Database, the following Claims were eliminated from the Claim Notice Database:  (a) non-consumer Filed Claims, (b) those claims without any contact information and (c) those claims with duplicate addresses.  If more than one claim was asserted by a Charter Participant, but the claims provided different addresses, the Trustee included all known addresses for that particular claimant in the Claim Notice Database.

31.    The Trustee identified twenty-eight (28) claimants on the Master Database that asserted VNB Claims but did not include any contact information. To the extent possible, the Trustee conducted an on-line search to locate contact information.  In addition, the Trustee contacted counsel for VNB to determine if any contact information was available in their records for the twenty-eight (28) claimants.  Despite the Trustee's efforts, the Trustee was unable to mail the Claim Notice to those twenty-eight (28) claimants with no contact information.

32.    Ultimately, on August 15, 16, 19, 20 and 21, 2013, the Trustee caused to be mailed to all Charter Participants that asserted Claims against the Bond, the VNB Account, and/or the Estate, and that were listed on the Claim Notice Database, a copy of the Claim Notice, which included the Claim Notice Deadline of September 25, 2013.  The Claim Notice was mailed to approximately 4,539 Charter Participants.

**B.    Completed Claim Notices Received by Trustee.**

33.    Upon receipt by the Trustee of the completed Claim Notices, the Trustee reviewed the claims for current contact information, claim amount and supporting documentation, compared the information provided in the completed Claim Notice to the Claim Notice Database, and entered the current information into the Claim Notice Database.  In some instances, the Claim Notice was returned without the amount filled in and the claimant referred the Trustee to the previously filed claim and in some instances the claim amount was not filled in

and the claimant made no mention of a previously filed claim. In those instances, the Trustee

entered the amount of the Charter Participant's previously filed claim. The Trustee and his staff

responded to hundreds of inquiries from claimants via telephone and electronic mail requesting

confirmation of the Trustee's receipt of the claims and requests for information as to the timing

and amount of the distribution.

34.     The Trustee received approximately 1,922 completed Claim Notices via the

United States Postal Service, facsimile transmission and electronic mail, in the aggregate amount

of $944,754.06.

35.     Additionally, approximately 63 envelopes were returned to the Trustee via the

United States Postal Service and marked "Return to Sender - Unable to Forward" (the "Returned

Claim Notices"). Upon receipt of the Returned Claim Notices, the Trustee caused the Master

Database, Claim Notice Database and the respective claim to be reviewed for additional contact

information for the Returned Claim Notices. Of the Returned Claim Notices, electronic mail

addresses were located for approximately twenty-four (24) of the Returned Claim Notices and

were re-sent via electronic mail, of which delivery failed to two (2) electronic mail addresses.

Additionally, numerous Claim Notices were returned to the Trustee via the United States Postal

Service with a forwarding address noted on the envelope. In those instances, the Claim Notice

Database was updated as to the claimant's current address and the Claim Notice was re-sent to

those claimants at the forwarding address provided.

36.     In addition, two (2) Charter Participants returned incomplete claims to the Trustee

via facsimile transmission (the "Incomplete Faxed Claims"). Despite clear instructions in the

Claim Notice, both Incomplete Faxed Claims contained the signature page only and the

signatures on both Incomplete Faxed Claims were illegible. Since the Incomplete Faxed Claims

were submitted without a cover sheet or the first page of the Claim Notice, the Incomplete Faxed

Claims included no claim amounts or contact information.  The signature page of one of the

Incomplete Faxed Claims contained an originating facsimile number imbedded at the top of the

page and, in an attempt to identify the claimant and request additional information, the Trustee

sent a fax to the originating fax number, addressed to "To Whom It May Concern" requesting

that the complete claim form be forwarded to the Trustee by the Claim Notice Deadline.  The

second Incomplete Faxed Claim did not contain an originating fax number.  Additionally, since

the signatures on both Incomplete Faxed Claims are illegible, the Trustee is unable to identify the

claimant on either the Master Database or Claim Notice Database and request additional

information via regular mail.

## C.    New Claimants.

37.    Included in the approximately 1,922 completed Claim Notices received by the

Trustee were approximately 13 timely-filed, completed Claim Notices, in the aggregate amount

of $4,477.00, from creditors that were not included in either the Master Database or the Claim

Notice Database (the "New Claimants").  On September 19, 2013, six days prior to the Claim

Notice Deadline, an on-line news article was published on MyrtleBeachOnline.com which

provided an update as to the status of the Debtor's bankruptcy case.  The writer consulted with

the Trustee as to the current status and informed its readers, among other things, of the pending

Claim Notice Deadline.  The Trustee asserted that it was possible numerous creditors that had

not yet submitted claims were prompted to do so by the news article.  The Trustee reviewed the

completed Claim Notices submitted by the New Claimants, determined the claims asserted by

the New Claimants to be valid and proposed that the Claim Notices submitted by the New

Claimants be allowed.  Pursuant to the Claim Distribution Order (as defined below), the deadline

for Charter Participants and New Claimants to submit completed Claim Notices was extended to

November 14, 2013 and the Claim Notices submitted by the New Claimants were allowed as

timely-filed claims.

**D.    Late Claims.**

38.    As provided by the Court-approved Claim Notice, the Claim Notice Deadline was

set as September 25, 2013. Subsequent to the Claim Notice Deadline, the Trustee continued to

receive completed Claim Notices from Charter Participants and New Claimants based on various

reasons. Many of the claimants indicated that they were out of town and did not receive the

Claim Notice until their return after the Claim Notice Deadline and many others offered various

medical excuses. The Trustee received approximately 55 late claims from Charter Participants in

the aggregate amount of $32,993.83 and 1 late claim from a New Claimant in the amount of

$738.80.

39.    Notwithstanding the current Claim Notice Deadline, and in an effort to be overly

inclusive, the Trustee proposed in the Claim Distribution Motion that the Claim Notices received

by the Trustee from Charter Participants and New Claimants after the Claim Notice Deadline

(i.e., September 25, 2013), but on or before to November 8, 2013, shall be deemed allowed as

timely-filed Claim Notices. Pursuant to the Claim Distribution Order, the deadline for

submission of Completed Claim Notices was extended to November 14, 2013 and Claim Notices

timely submitted by Charter Participants and New Claimants were allowed.

**E.    Objectionable Claims.**

40.    Of the completed Claim Notices received by the Trustee, four (4) Charter

Participants (i.e., Steven Saunders, Robert N. Maki, Annette L. Tata and Mary Kirby) asserted

completed Claim Notices to the Trustee that the Trustee reviewed and determined to be

objectionable (the "Objectionable Claims"). Pursuant to the Claim Distribution Order, the

Trustee's recommended treatment of the Objectionable Claims as set forth in the Claim

Distribution Motion was approved.

### III.    INTERIM DISTRIBUTION

41.     On November 12, 2013, the Trustee filed a Motion for Order (I) Approving

Proposed Interim Distribution to Charter Participant Claimants, (II) Resolving and Disallowing

Certain Objectionable Charter Participant Claims and (III) Extending Deadline for Submission of

Completed Claim Forms (the "Claim Distribution Motion") seeking, among other things,

authority to distribute Charter Participant Claim Funds, on a pro rata basis, to allowed Charter

Participant claims. Additionally, in order to maintain the proposed distribution attached to the

Claim Distribution Motion in light of the anticipated receipt of additional Claim Notices, the

Trustee requested that the deadline by which Charter Participants and New Claimants may have

submitted completed Claim Notices be extended to November 8, 2013.

42.     On December 18, 2013, the Trustee filed a Supplement to Motion for Order (I)

Approving Revised Proposed Interim Distribution to Charter Participant Claimants, (II)

Disallowing the Charter Participant Claim of Jean Buonvicino, (III) Allowing The Charter

Participant Claims of Dennis Jerome Parker and Lois Satagaj and (IV) Extending Deadline for

Submission of Completed Forms seeking (a) approval of a revised proposed interim distribution

to Charter Participant Claimants, (b) disallowance of an additional objectionable Charter

Participant claim, (c) allowance of two late claims and extension of the deadline for submission

of the completed Claim Notice to November 14, 2013 in order to allow the two late claims.

43.     On January 9, 2014, this Court entered an order approving the Claim Distribution

Motion, as supplemented (the "Claim Distribution Order").

44.      As discussed previously herein, and as set forth in the Claim Reconciliation

Motion, the Trustee held consolidated funds totaling $250,000.00 that were immediately

available for payment to Unreimbursed Charter Participants on account of their claims (i.e., the

Charter Participant Claim Funds).

45.      The Trustee tracked and accounted for all completed Claim Notices submitted to

the Trustee by Charter Participants and New Claimants and determined that, based on the

provisions of the Claim Distribution Order, there were a total of 1,922 claims in the aggregate

amount of $944,754.06 eligible to participate in the interim distribution, resulting in an interim

distribution of 26% to allowed Charter Participant Claims (the "Interim Distribution").

46.      On or about January 15, 2014, the Trustee sent 1,922 checks in the aggregate

amount of $250,000.00 to all allowed Charter Participant and New Claimant claims (the "Interim

Distribution Checks").  Additionally, pursuant to the Claim Distribution Order, the Trustee

enclosed a transmittal letter with each distribution check.

## IV.    ADDITIONAL CLAIMANTS

47.      Subsequent to the Trustee's transmittal of the Interim Distribution Checks,

numerous claimants contacted the Trustee via telephone calls and electronic mails to inquire as

to the status of their respective Interim Distribution Check.  The Trustee reviewed the Claim

Notice Database, as well as the Trustee's master list of Interim Distribution Checks, and

determined that the majority of these claimants were mailed a Claim Notice, but had not returned

the completed Claim Notice to the Trustee by the deadline for submission of completed Claim

Notices.  Although the Trustee did not have any record of having received their completed Claim

Notices, four (4) specific additional Charter Participant claimants provided documents to support

their assertions that they had returned the completed Claim Notice to the Trustee (the

"Additional Claimants"). The Trustee reviewed the completed Claim Notices submitted by the

Additional Claimants, determined the claims asserted by the Additional Claimants to be valid

and proposes that the completed Claim Notices submitted by the Additional Claimants be

allowed as timely-filed claims.

A.    **Kristine and Lyle Underwood.**

48.    In March 2014, Kristine Underwood ("Ms. Underwood") inquired via electronic

mail as to the status of her completed Claim Notice in the amount of $99.90 (the "Underwood

Claim"). Upon review of the Master Database, the Trustee determined that Ms. Underwood

previously asserted a Bond Claim in the amount of $179.00. Upon review of the Claim Notice

Database, the Trustee determined that a Claim Notice had been mailed to Ms. Underwood for

completion, but the Trustee's records indicated that Ms. Underwood had not returned a

completed Claim Notice. Ms. Underwood provided the Trustee with a copy of a completed

Claim Notice including her hand written notes on the face page of the Claim Notice indicating

that she had submitted the Claim Notice via first-class mail on August 23, 2013. The Trustee

reviewed the supporting documents provided by Ms. Underwood and requests that the

Underwood Claim be allowed as a timely-filed claim in the amount of $99.90.

B.    **FC USA, Inc. d/b/a Liberty Travel.**

49.    In March 2014, Laurene Taylor ("Ms. Taylor") inquired via electronic mail as to

the status of completed Claim Notice submitted on behalf of FC USA, Inc. d/b/a Liberty Travel

in the amount of $2,642.50 (the "Liberty Travel Claim"). Upon review of the Master Database,

the Trustee determined that Liberty Travel previously asserted a Bond Claim in the amount of

$2,642.50 and a VNB Claim in the amount of $2,642.50. Upon review of the Claim Notice

Database, the Trustee determined that a Claim Notice had been mailed to Liberty Travel but that

Liberty Travel had not returned a completed Claim Notice to the Trustee. Ms. Taylor provided the Trustee with a copy of a completed Claim Notice that indicated that she had submitted the Claim Notice via electronic mail on September 23, 2013. The Trustee reviewed the completed Claim Notice and supporting documents provided by Ms. Taylor and requests that the Liberty Travel Claim be allowed as a timely-filed claim in the amount of $2,642.50.

## C.    Micah Kistler.

50.    In October 2014, Micah Kistler ("Mr. Kistler") contacted the Trustee via telephone to inquire as to the status of his claim. Upon review of the Master Database, the Trustee determined that Mr. Kistler previously asserted a VNB Claim in the amount of $84.50. Upon review of the Claim Notice Database, the Trustee further determined that a Claim Notice had been mailed to Mr. Kistler, but that the Trustee had not received a completed Claim Notice from Mr. Kistler. The Trustee requested that Mr. Kistler forward copies of his claim information via electronic mail or facsimile transmission, including a copy of the Claim Notice that was submitted previously. The Trustee reviewed the documents received from Mr. Kistler in support of a claim in the total amount of $392.60 (the "Kistler Claim") and requests that the Kistler Claim be allowed as a timely-filed claim in the amount of $392.60.

## D.    Jennifer Jones.

51.    In February 2014, Jennifer Jones ("Ms. Jones") inquired via telephone as to the status of her completed Claim Notice in the amount of $512.25 (the "Jones Claim"). Upon review of the Master Database, the Trustee determined that Ms. Jones previously asserted a Bond Claim in the amount of $1,024.50 and a Filed Claim (i.e., a proof of claim filed in this bankruptcy case with the Bankruptcy Court) in the amount of $512.25. Upon review of the Claim Notice Database, the Trustee determined that a Claim Notice had been mailed to Ms.

Jones for completion, but the Trustee's records indicated that Ms. Jones had not returned a

completed Claim Notice. Ms. Jones provided the Trustee with a copy of a completed Claim

Notice that indicated that she had submitted the Claim Notice via electronic mail on August 21,

2013. The Trustee reviewed the documents provided by Ms. Jones and requests that the Jones

Claim be allowed as a timely-filed claim in the amount of $512.25.

## V.   REMAINING CHARTER PARTICIPANT CLAIM FUNDS AVAILABLE FOR DISTRIBUTION AND PROPOSED RE-DISTRIBUTION

52.      Subsequent to the Trustee's transmittal of the Charter Participant Interim

Distribution Checks, the Trustee corresponded with numerous claimants via telephone calls and

electronic mails to follow-up and resolve issues with incorrect mailing addresses and uncashed

Interim Distribution Checks and, as a result of the Trustee's efforts, the Trustee re-issued

approximately twenty-five Interim Distribution Checks to Charter Participants. As of this date,

all Interim Distribution Checks have been cashed with the exception of: (a) two (2) checks in the

aggregate amount of $308.78 that have been returned to the Trustee by the Charter Participant

claimants as a result of the claimants subsequently receiving reimbursement from their credit

card companies and, despite the Trustee's efforts, (b) three (3) checks in the aggregate amount of

$331.79 that have not been returned to the Trustee and remain uncashed, for total funds available

for re-distribution, at this time, in the aggregate amount of $640.57 (the "Remaining Charter

Participant Claim Funds"). The uncashed Interim Distribution Checks are described as follows:

| Name of Claimant | Amount of Interim Distribution | Status of Uncashed Interim Distribution Check |
|---|---|---|
| Heather Daniel | $99.64 | Distribution check not cashed, not returned. Trustee sent e-mail to claimant requesting that claimant respond or cash check by 10/31/14. No response received. On 11/14/14, the Trustee placed a stop payment order on the distribution check, which was effective 11/17/14. |

{Practice Areas/CORP/15003/14190/A2729783.DOC}        18

| | | |
|---|---|---|
| Mark Humby | $91.49 | Distribution check not cashed, not returned. On 5/27/14, the Trustee called claimant and left voicemail and sent e-mail. On 9/23/14, the Trustee again called and left a voicemail and sent an e-mail. No response received. On 11/04/14, the Trustee placed a stop payment order on the distribution check, which was effective 11/06/14. |
| Ernest E. McCarthy | $115.49 | Distribution check not cashed and returned to Trustee by claimant due to reimbursement subsequently received by claimant. On 11/04/14, the Trustee placed a stop payment order on the distribution check, which was effective 11/06/14. |
| Mark & Mary Murray | $193.29 | Distribution check not cashed and returned to Trustee by claimants due to reimbursement subsequently received by claimants. On 11/04/14, the Trustee placed a stop payment order on the distribution check, which was effective 11/06/14. |
| Donald Ruppert | $140.66 | Distribution check not cashed, not returned. On 5/27/14, the Trustee called claimant and left voicemail. On 6/25/14, the claimant responded to confirm address and indicated he had not received the check. On 6/26/14, the Trustee mailed replacement check which has not been cashed or returned. On 9/23/14, the Trustee e-mailed claimant to confirmed e-mail address and has not received a response. On 9/23/14, the Trustee also left voice message at confirmed telephone number. On 10/14/14, the Trustee mailed another replacement check with a cover letter requesting that the check be cashed immediately and, if not cashed by 11/14/14, a stop payment will be issued. No response received and check uncashed. On 11/14/14, the Trustee placed a stop payment order on the distribution check, which was effective 11/17/14. |
| **TOTAL REMAINING** | **$640.57** | |

**CHARTER**
**PARTICIPANT**
**CLAIM FUNDS**

53.     The Remaining Charter Participant Claim Funds totaling $640.57 are immediately

available for re-distribution to Additional Claimants on account of their claims and on the basis

that the Additional Claimants did not participate in the Interim Distribution.

54.     Therefore, subject to approval by this Court, and based on the Remaining Charter

Participant Claim Funds available for re-distribution, and further based on the allowances

proposed herein, the Trustee seeks authority to re-distribute the Remaining Charter Participant

Claim Funds, on a pro-rata basis, to allowed Additional Claimants.  The Trustee's proposed re-

distribution of the Remaining Charter Participant Claim Funds will result in an interim

distribution to the Additional Claimants of approximately 17%.  A copy of the Trustee's

proposed re-distribution to Additional Claimants is attached hereto as **Exhibit A**.

55.     In addition, the Trustee requests that the Charter Participant claims of Mark

Humby, Heather Daniel and Donald Ruppert be disallowed in full as noted on **Exhibit B**

attached hereto.

### VI.     FUTURE DISTRIBUTIONS, IF ANY, TO CHARTER PARTICIPANTS AND ADDITIONAL CLAIMANTS

56.     As discussed previously herein, there were a total of 1,922 claims in the aggregate

amount of $944,754.06 eligible to participate in the Interim Distribution of 26% to allowed

Charter Participant Claims.

57.     Pending approval by this Court as requested herein, and based on total Remaining

Charter Participant Claims Funds in the amount of $640.57, and claims submitted by Additional

Claimants in the aggregate amount of $3,647.25, the Trustee's proposed re-distribution of the

Remaining Charter Participant Claim Funds will result in an interim distribution to Additional

Claimants of approximately 17%.

58.    In the event additional funds become available for distribution to Charter

Participant claimants in the future, the Trustee requests authority to first pay Additional

Claimants the amounts necessary to bring their interim distribution up from the 17% received as

a result of this motion to the 26% interim distribution received by allowed Charter Participant

Claims.  The balance of any additional funds shall then be paid pro-rata to all allowed Charter

Participant Claims, including Additional Claimants identified herein.

59.    The Trustee reserves the right to object to any claims asserted against the Estate

or the Trustee for any reason, except as expressly provided herein.

WHEREFORE, the Trustee respectfully requests that this Court enter an Order:

A.    Approving this Motion;

B.    Allowing completed Claim Notices submitted by Additional Claimants as

timely-filed claims;

C.    Approving the Trustee's recommended treatment of claims asserted by

Additional Claimants and the proposed distribution attached hereto as

**Exhibit A;**

D.    Disallowing Charter Participant claims submitted by Heather Daniel,

Mark Humby and Donald Ruppert as noted on **Exhibit B** attached hereto;

E.    Approving the Trustee's manner of payment for future distributions, if

any, to allowed Charter Participant Claims, including Additional

Claimants; and

F.    Granting the Trustee such other and further relief as is just.

Respectfully submitted,

JOSEPH H. BALDIGA,
CHAPTER 7 TRUSTEE

By his counsel,

/s/ Joseph H. Baldiga
Joseph H. Baldiga, BBO #549963
Gina Barbieri O'Neil, BBO #670596
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA  01581
Phone: (508) 898.1501
Fax:    (508) 898.1502
Email: bankrupt@mirickoconnell.com
Email: goneil@mirickoconnell.com

Dated: November 19, 2014

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (CENTRAL DIVISION)

| | |
|---|---|
| In re:<br><br>**SOUTHERN SKY AIR & TOURS, LLC**<br>**d/b/a DIRECT AIR,**<br><br>Debtor. | **Chapter 7**<br>**Case No. 12-40944-MSH** |

## ORDER APPROVING MOTION OF CHAPTER 7 TRUSTEE FOR ORDER (I) ALLOWING CERTAIN ADDITIONAL CHARTER PARTICIPANT CLAIMS AND (II) APPROVING PROPOSED DISTRIBUTION OF REMAINING CHARTER PARTICIPANT CLAIM FUNDS TO CERTAIN ADDITIONAL CHARTER PARTICIPANT CLAIMANTS

Upon the motion (the "Motion") filed on November 19, 2014 by Joseph H. Baldiga, Chapter 7 trustee of the bankruptcy estate (the "Estate") of Southern Sky Air & Tours, LLC d/b/a Direct Air (the "Debtor"), For Order (I) Allowing Certain Additional Charter Participant Claims and (II) Approving Proposed Distribution of Remaining Charter Participant Claim Funds to Certain Additional Charter Participant Claimants; the Court finding that the Motion is in the best interest of the Estate; and no objection to the Motion having been filed or any such objection having been withdrawn or overruled;

NOW THEREFORE IT IS HEREBY ORDERED THAT:

A.     The Motion is allowed;

B.     The proposed distribution attached to the Motion as Exhibit A is approved;

C.     The Claim Notices (as defined in the Motion) submitted by Additional Claimants (as defined in the Motion) are hereby deemed allowed;

D.   The Charter Participant claims submitted by Heather Daniel, Mark Humby and

Donald Ruppert as noted on <u>Exhibit B</u> attached to the Motion are hereby deemed

disallowed; and

E.   The Trustee's proposed manner of payment for future distributions, if any, to

allowed Charter Participant Claims, including Additional Claimants, is approved.

Dated: _____, 2014

_____
Honorable Melvin S. Hoffman
United States Bankruptcy Judge