# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re:   Southern Sky Air & Tours, LLC d/b/a Direct Air<br>Debtor, | Chapter: 7<br>Case No: 12−40944<br>Judge Melvin S. Hoffman |

## CERTIFICATE OF APPOINTMENT OF INTERIM TRUSTEE
## AND FIXING OF BOND

Pursuant to 11 U.S.C. § 701(a)(1)

Joseph H. Baldiga
Mirick, O'Connell, DeMallie & Lougee
1800 West Park Drive
Suite 400
Westborough, MA 01581−3926

is hereby appointed as Interim Trustee in the above−referenced proceeding and is designated to preside at the meeting of creditors. The Trustee's bond is fixed under the general blanket bond heretofore approved. The Trustee shall notify the United States Trustee immediately in the event that the liquid assets exceed $1,000,000.

Pursuant to FRBP 2008 the Trustee will be deemed to have accepted this appointment unless it is rejected within five (5) days of receipt of this notice. Unless another trustee is elected the Interim Trustee appointed herein shall serve as Trustee without further appointment as provided by 11 U.S.C. § 702(d).

Date:4/11/12

<u>William K. Harrington</u>
U.S. Trustee
(617) 788−0400

Original filed with Bankruptcy Court
Copy to trustee

## REJECTION

I, Joseph H. Baldiga , hereby REJECT appointment as Trustee.
Dated: This day of _____ .

Joseph H. Baldiga

Original filed with Bankruptcy Court
Copy to United States Trustee

85

# EXHIBIT B

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### (CENTRAL DIVISION)

In re:

**SOUTHERN SKY AIR & TOURS, LLC**
**d/b/a DIRECT AIR,**

            **Debtor.**

Chapter 7
Case No. 12-40944-MSH

## APPLICATION FOR AUTHORITY TO EMPLOY MIRICK, O'CONNELL, DeMALLIE & LOUGEE, LLP AS COUNSEL TO THE CHAPTER 7 TRUSTEE

To the Honorable Melvin S. Hoffman, United States Bankruptcy Judge:

NOW COMES Joseph H. Baldiga, Chapter 7 trustee (the "Trustee") of the Debtor's proceeding, and, pursuant to 11 U.S.C. § 327(a), Rule 2014 of the Federal Rules of Bankruptcy Procedure and MLBR 2014-1, hereby requests that this Court authorize the employment of Mirick, O'Connell, DeMallie & Lougee, LLP ("MODL") as counsel to the Trustee. In support hereof, the Trustee states as follows:

1.      On March 15, 2012, the Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

2.      On April 11, 2012 (the "Conversion Date"), the case was converted to one under Chapter 7 of the Bankruptcy Code.

3.      On the Conversion Date, the United States Trustee appointed Joseph H. Baldiga Chapter 7 trustee of this proceeding and he continues to serve as such. See attached **Exhibit A**.

4.      On May 16, 2012, the Trustee is scheduled to conduct the initial meeting of creditors pursuant to 11 U.S.C. § 341(a) (the "§ 341(a) Meeting").

{Practice Areas\CORP\15008\14190\A1985845.DOC}

5.     The Trustee has determined that the Debtor may have assets available for liquidation and distribution to unsecured creditors and further determined that he requires the assistance of counsel in this proceeding.

6.     The Trustee selected the firm of MODL to act as counsel on his behalf because of its experience and knowledge in the field of bankruptcy law, and believes that MODL is well qualified to represent him in this case.

7.     The Trustee wishes to employ MODL to perform the following services in connection with these proceedings:

A.     To assist, advise and represent the Trustee in the possible liquidation of the Debtor's assets, including, but not limited to, non-exempt (where applicable) real and personal property in which the Debtor has an interest;

B.     To assist, advise and represent the Trustee with respect to the identification and prosecution of claims and causes of action assertable by the Trustee on behalf of the estate including, but not limited to, preference and fraudulent conveyance actions;

C.     To assist, advise and represent the Trustee with respect to the collection of any and all account receivables due and owing to the Debtor;

D.     To assist, advise and represent the Trustee with respect to the examination of proofs of claim to be filed herein and the possible prosecution of objections to certain of such claims; and

E.     To perform such other legal services as may become necessary during the administration of these proceedings.

8.      It is the carefully considered view of the Trustee that representation of the Trustee by counsel is necessary and advisable.  Upon information and belief, MODL is fully qualified to render the services described above in this case.

9.      The firm of MODL has indicated its willingness to serve as counsel to the Trustee herein and to receive compensation for professional services rendered and expenses incurred in accordance with the provisions of §§ 328, 330 and 331 of the Bankruptcy Code.

10.     To the best of the Trustee's knowledge, information and belief, the members and associates of MODL have no connection with the Debtor, the creditors or any other party in interest, except as stated in the annexed affidavit of Joseph H. Baldiga, and represent no other entity having an adverse interest to the Debtor or the Trustee in connection with this case.

11.     Based upon the foregoing, the Trustee submits that the retention of MODL would be in the best interests of the estate and creditors herein.

12.     No previous application for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Trustee respectfully requests that the Court enter an Order:

(a)     Authorizing the Trustee to employ and retain the law firm of MODL as his counsel, on the terms and conditions set forth above, to perform the legal services recited herein;

(b)     Authorizing MODL to file interim applications from time-to-time for reimbursement of its fees and expenses incurred in connection with its representation of the Trustee in this proceeding; and

{Practice Areas\CORP\15008\14190\A1985845.DOC}

3

(c)      Granting such other and further relief as is just.

Respectfully submitted,

JOSEPH H. BALDIGA,
CHAPTER 7 TRUSTEE

By his counsel,

_____
/s/ Joseph H. Baldiga
Joseph H. Baldiga, BBO #549963
Gina M. Barbieri, BBO #670596
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581
Phone: 508.898.1501
Fax:    508.898.1502
Email: bankrupt@mirickoconnell.com
Email: gbarbieri@mirickoconnell.com

Dated: April 23, 2012

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (CENTRAL DIVISION)

In re:

**SOUTHERN SKY AIR & TOURS, LLC**
**d/b/a DIRECT AIR,**

       **Debtor.**

Chapter 7
Case No. 12-40944-MSH

## ATTORNEY'S AFFIDAVIT

COMMONWEALTH OF MASSACHUSETTS)
                   ) ss.:
COUNTY OF WORCESTER       )

Joseph H. Baldiga, being duly sworn, deposes and says:

1.      I am an attorney at law admitted to practice in the Commonwealth of Massachusetts and before the United States District Court for the District of Massachusetts. I am a partner in the law firm of Mirick, O'Connell, DeMallie & Lougee, LLP ("MODL"), which firm is located at 100 Front Street, Worcester, Massachusetts 01608-1477.

2.      This affidavit is submitted in connection with the Application (the "Application") for Authority to Employ Mirick, O'Connell, DeMallie & Lougee, LLP as Counsel to the Chapter 7 trustee (the "Trustee").

3.      Neither I, the firm of MODL, nor any member or associate thereof, insofar as I have been able to ascertain, holds or represents any interest adverse to that of the estate in the matters upon which said law firm is to be engaged. Thus, I believe the firm of MODL to be a "disinterested person" within the meaning of § 101(14) of the Bankruptcy Code.

{Practice Area\CORP\15008\14190\A1985843.DOC}

4.      Other than as stated in ¶3, above, my, and my firm's, connections with the Debtors, creditors, or other parties-in-interest, their respective attorneys and accountants are, to the best of my knowledge, as follows:

      A.      I am the Chapter 7 Trustee in this bankruptcy proceeding;

      B.      MODL has in the past represented Wells Fargo Equipment Finance, Inc. MODL has not represented Wells Fargo Equipment Finance, Inc. in the Debtor's proceeding. Wells Fargo is listed as a secured creditor on a certificate of service filed by the Debtor's counsel in this proceeding;

      C.      MODL has in the past represented Wachovia Bank in a matter in which the extent of MODL's representation was limited to obtaining discovery from a Massachusetts bank on behalf of Wachovia Bank. MODL had no direct communications with Wachovia Bank since all contact was through Wachovia Bank's local counsel in Pennsylvania. The matter has been closed and MODL does not presently represent Wachovia Bank. Wachovia Bank is listed as a secured creditor on a certificate of service filed by the Debtor's counsel in this proceeding;

      D.      Relatives of a very small number of MODL employees, not including the Trustee or, to the Trustee's knowledge, anyone related to the Trustee, have recently purchased tickets through the Debtor and are owed a refund or have already received refunds and/or credit card charge backs;

      E.      Other creditors of the Debtor may be vendors used by MODL in the past, or on occasion, in matters unrelated to the Debtor; and

F.    MODL may represent various creditors of the Debtor (and may represent other parties-in-interest) in matters unrelated to the Debtor, but has not identified any current representation of any party-in-interest in this case other than as set forth above.

5.    MODL does not and, while employed by the Trustee, will not represent any other entity having an adverse interest in connection with this proceeding.

6.    I have not agreed to share with any person the compensation to be paid for the services rendered in this case, other than among the members and employees of MODL.

7.    The rates charged by MODL for services rendered in cases pending before the Bankruptcy Court are the same as MODL's rates for services rendered in non-bankruptcy matters.

8.    The rates currently charged for those Partners, Associates, and Paralegals who are presently anticipated to perform, or who may perform, services in the above-captioned case are as follows:

| Name | Position | Hourly Rate |
| --- | --- | --- |
| Joseph H. Baldiga | Partner | $380 |
| Paul W. Carey | Partner | $360 |
| Christine E. Devine | Partner | $360 |
| Gina M. Barbieri | Associate | $240 |
| Kate P. Foley | Associate | $190 |
| Laura A. Keeler | Paralegal | $180 |
| Kimberly M. DelleChiaie | Paralegal | $180 |

Said rates are subject to change in the ordinary course of MODL's billing practices.

9.    MODL has not received a retainer in this case.

10.    I shall amend this statement immediately upon my learning that (a) any of the within representations are incorrect or (b) there is any change of circumstances relating thereto.

{Practice Areas\CORP\15008\14190\A1965843.DOC}                3

11.    I have reviewed the provisions of MLBR 2016-1.

12.    I have read the Application which this affidavit accompanies and, to the best of my knowledge, information and belief, the contents of said Application are true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  April 23, 2012                                            _____
                                                                            Joseph H. Baldiga, Esq.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

In re:

SOUTHERN SKY AIR & TOURS, LLC
d/b/a DIRECT AIR,

       Debtor.

Chapter 7
Case No. 12-40944-MSH

## DECLARATION RE: ELECTRONIC FILING

    I, Joseph H. Baldiga, hereby declare under penalty of perjury that all of the
information contained in my Attorney's Affidavit (the "Document"), filed electronically, is true
and correct.  I understand that this DECLARATION is to be filed with the Clerk of Court
electronically concurrently with the electronic filing of the Document.  I understand that failure
to file this DECLARATION may cause the Document to be struck and any request contained or
relying thereon to be denied, without further notice.

    I further understand that pursuant to the Massachusetts Electronic Filing Local Rule
(MEFLR)-7(a) all paper documents containing original signatures executed under the penalties
of perjury and filed electronically with the Court are the property of the bankruptcy estate and
shall be maintained by the authorized CM/ECF Registered User for a period of five (5) years
after the closing of this case.

Dated: April 2<u>3</u>, 2012        _____ (Affiant)
                              Joseph H. Baldiga, Esq.

{Practice Areas\CORP\15008\14190\A1585831.DOC}

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

In re:

SOUTHERN SKY AIR & TOURS, LLC,
d/b/a DIRECT AIR,

                              Debtor.

Chapter 7
Case No. 12-40944-MSH

SUPPLEMENTAL ATTORNEY'S AFFIDAVIT PURSUANT TO
11 U.S.C. § 327(a), BANKRUPTCY RULE 2014(a) AND MLBR 2014-1

COMMONWEALTH OF MASSACHUSETTS)
                                                    ) ss.:
COUNTY OF WORCESTER                    )

I, Joseph H. Baldiga, being duly sworn, depose and state as follows:

1.    I am a partner in the law firm of Mirick, O'Connell, DeMallie & Lougee, LLP

("MODL"), which firm is located at 100 Front Street, Worcester, Massachusetts 01608-1477. I

have been duly admitted and am a member in good standing before the Bars of the

Commonwealth of Massachusetts and the United States District Court for the District of

Massachusetts.

2.    On March 15, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the

"Bankruptcy Code").

3.    On April 11, 2012 (the "Conversion Date"), this Court converted the Debtor's

Chapter 11 case to one under Chapter 7 of the Bankruptcy Code.

4.    On the Conversion Date, the United States Trustee appointed me Chapter 7 trustee

(the "Trustee") of this proceeding and continue to serve as such.

{Practice Areas\CORP\15008\14190\A2000978.DOC}

5.    On April 23, 2012, I sought authority to retain MODL as my counsel by filing an

Application for Authority to Employ Mirick, O'Connell, DeMallie & Lougee, LLP as Counsel to

the Chapter 7 Trustee (the "Application"), and I filed an affidavit pursuant to 11 U.S.C. § 327(a),

Bankruptcy Rule 2014(a) and MLBR 2014-1 (the "Original Affidavit") in support of the

Application. The Application is currently scheduled for hearing on May 29, 2012.

6.    Since filing the Original Affidavit, certain additional information has come to my

attention which I believe should be disclosed to the Bankruptcy Court and to parties-in-interest.

More specifically, MLBR 2014-1(b)(1) appears to require disclosure, as "connections" and

"relationships", representations by a professional of a creditor against the debtor, at any time.

Although I believe, for the reasons set forth below, that this information does not interfere with

the ability of MODL to serve as counsel to the Trustee in this case, I submit this Supplemental

Affidavit for the purpose of providing full and continuing disclosure to the Bankruptcy Court and

parties-in-interest.

7.    In addition to the "connections" identified in paragraph 4 of the Original

Affidavit, the following "connections" are identified as follows:

(a)    MODL has in the past represented Federal Express, but has not represented
Federal Express in the Debtor's proceeding. FedEx is listed on the Debtor's
Schedule F as a creditor holding an unsecured non-priority claim;

(b)    MODL periodically represents Bank of America, successor to Fleet National
Bank, in various matters having no relation to this proceeding. MODL has not
represented Bank of America in the Debtor's proceeding. SSP America, Bank of
America is listed on the Debtor's Schedule F as a creditor holding an unsecured
non-priority claim;

8.    The additional "connections" identified above in the interest of full and

continuing disclosure are not such as would raise a conflict with MODL's representation of the

Trustee in this case. Accordingly, I continue to believe that MODL does not represent or hold,

2

nor has it represented or held, any interest adverse to the estate of the Debtor and that I and each

attorney at MODL are disinterested persons as that terms is defined in Bankruptcy Code §

101(14).

Signed under the pains and penalties of perjury this ____14th____ day of May, 2012.


_____
Joseph H. Baldiga, BBO#549963

{Practice Areas\CORP\15008\14150\A2000978.DOC}

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

In re:                                              Chapter 7

SOUTHERN SKY AIR & TOURS, LLC,                      Case No. 12-40944-MSH
d/b/a DIRECT AIR,

                Debtor.

SECOND SUPPLEMENTAL ATTORNEY'S AFFIDAVIT PURSUANT TO
11 U.S.C. § 327(a), BANKRUPTCY RULE 2014(a) AND MLBR 2014-1

COMMONWEALTH OF MASSACHUSETTS)
                                            ) ss.:
COUNTY OF WORCESTER                         )

I, Joseph H. Baldiga, being duly sworn, depose and state as follows:

1.      I am a partner in the law firm of Mirick, O'Connell, DeMallie & Lougee, LLP

("MODL"), which firm is located at 100 Front Street, Worcester, Massachusetts 01608-1477. I

have been duly admitted and am a member in good standing before the Bars of the

Commonwealth of Massachusetts and the United States District Court for the District of

Massachusetts.

2.      On March 15, 2012, the Debtor filed a voluntary petition for relief under Chapter

11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code").

3.      On April 11, 2012 (the "Conversion Date"), this Court converted the Debtor's

Chapter 11 case to one under Chapter 7 of the Bankruptcy Code.

4.      On the Conversion Date, the United States Trustee appointed me Chapter 7 trustee

of this case and I continue to serve as such.

{Practice Areas\CORP\15008\14190\A2078639.DOC}

5.      On April 23, 2012, I sought authority to retain MODL as my counsel by filing an

Application for Authority to Employ Mirick, O'Connell, DeMallie & Lougee, LLP as Counsel to

the Chapter 7 Trustee (the "Application"), and I filed an affidavit pursuant to 11 U.S.C. § 327(a),

Bankruptcy Rule 2014(a) and MLBR 2014-1 (the "Original Affidavit") in support of the

Application. On May 25, 2012, the Bankruptcy Court approved the Application. In addition, on

May 14, 2012, I filed a Supplemental Affidavit disclosing "connections" with other parties

involved in this proceeding, pursuant to 11 U.S.C. § 327(a) Bankruptcy Rule 2014(a) and MLBR

2014-1 (the "Supplemental Affidavit").

6.      Since filing the Supplemental Affidavit, in connection with my review of

payments made by the Debtor within ninety (90) days immediately preceding the commencement

of the case (the "Preference Payments"), certain additional information has come to my attention

which I believe should be disclosed to the Bankruptcy Court and to parties-in-interest. More

specifically, MLBR 2014-1(b)(1) appears to require disclosure, as "connections" and

"relationships", representations by a professional of a creditor against the debtor, at any time.

Although I believe, for the reasons set forth below, that this information does not interfere with

the ability of MODL to serve as counsel to the Trustee in this case, I submit this Second

Supplemental Affidavit for the purpose of providing full and continuing disclosure to the

Bankruptcy Court and parties-in-interest.

7.      In addition to the "connections" identified in paragraph 4 of the Original Affidavit

and in paragraph 7 of the Supplemental Affidavit, the following "connections" are identified as

follows:

(a)      Federal Express is listed on the Debtor's Amended Statement of Financial
         Affairs as a creditor receiving Preference Payments from the Debtor. I
         previously disclosed in the Supplemental Affidavit that Federal Express is a

Schedule F creditor of the Debtor and that MODL has in the past represented Federal Express Corporation, but does not presently represent Federal Express Corporation and has not represented Federal Express Corporation in the Debtor's proceeding. On August 28, 2012, at my request, MODL forwarded a demand to Federal Express for recovery of the Preference Payments made to Federal Express by the Debtor. At this time, no conflict appears to exist.

(b)    Wells Fargo is listed on the Debtor's bank statements as a creditor receiving Preference Payments from the Debtor. I previously disclosed in the Original Affidavit that Wells Fargo Equipment Finance, Inc. ("WFEF") is a secured creditor of the Debtor and that MODL has in the past represented WFEF, but does not presently represent WFEF and has not represented WFEF in the Debtor's proceeding. On August 28, 2012, at my request, MODL forwarded a demand to Wells Fargo for recovery of the Preference Payments made to Wells Fargo by the Debtor. At this time, no conflict appears to exist.

(c)    TNCI is listed in the Debtor's bank statements as a creditor receiving Preference Payments from the Debtor. Upon information and belief, "TNCI" is also known as Trans National Communications, Inc. ("Trans National"), which is itself a debtor in bankruptcy in the District of Massachusetts (Case No 11-19595-WCH). MODL currently represents the Universal Service Administrative Company ("USAC") in Trans National's bankruptcy case, including to prosecute USAC's administrative claims in that case. The Debtor's bankruptcy estate may also have administrative claims in TNCI's bankruptcy case on account of the Preference Payments. On August 28, 2012, the Trustee sent a demand letter to Trans National seeking to avoid and recover the Preference Payments unless Trans National sets forth complete defenses to such allegations. In the event that further pursuit of Preference Payments is required, the Trustee will seek to engage special counsel to assist him in his recovery efforts. MODL will continue to represent USAC in Trans National's bankruptcy case and MODL will not assist with or otherwise participate in the Trustee's recovery efforts from Trans National. Based on the foregoing, no conflict appears to exist.

8.    The additional "connections" identified above in the interest of full and continuing disclosure are not such as would raise a conflict with MODL's representation of the Trustee in this case. Accordingly, I continue to believe that MODL does not represent or hold, nor has it represented or held, any interest adverse to the estate of the Debtor and that I and each attorney at MODL are disinterested persons as that terms is defined in Bankruptcy Code § 101(14).

{Practice Areas\CORP\15009\14190\A2078639.DOC}    3

Signed under the pains and penalties of perjury this 5th day of September, 2012.

_____

Joseph H. Baldiga, BBO# 549963

# EXHIBIT C

05/25/2012 ALLOWED.  NO OBJECTIONS FILED.  THE HEARING SCHEDULED FOR 5/29/12 ON THE
APPLICATION IS CANCELED.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (CENTRAL DIVISION)

In re:

**SOUTHERN SKY AIR & TOURS, LLC**
**d/b/a DIRECT AIR,**

         **Debtor.**

**Chapter 7**
**Case No. 12-40944-MSH**

## APPLICATION FOR AUTHORITY TO EMPLOY MIRICK, O'CONNELL, DeMALLIE & LOUGEE, LLP AS COUNSEL TO THE CHAPTER 7 TRUSTEE

To the Honorable Melvin S. Hoffman, United States Bankruptcy Judge:

NOW COMES Joseph H. Baldiga, Chapter 7 trustee (the "Trustee") of the Debtor's

proceeding, and, pursuant to 11 U.S.C. § 327(a), Rule 2014 of the Federal Rules of Bankruptcy

Procedure and MLBR 2014-1, hereby requests that this Court authorize the employment of

Mirick, O'Connell, DeMallie & Lougee, LLP ("MODL") as counsel to the Trustee.  In support

hereof, the Trustee states as follows:

1.     On March 15, 2012, the Debtor filed a petition for relief under Chapter 11 of the

United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

2.     On April 11, 2012 (the "Conversion Date"), the case was converted to one under

Chapter 7 of the Bankruptcy Code.

3.     On the Conversion Date, the United States Trustee appointed Joseph H. Baldiga

Chapter 7 trustee of this proceeding and he continues to serve as such.  See attached **Exhibit A**.

4.     On May 16, 2012, the Trustee is scheduled to conduct the initial meeting of

creditors pursuant to 11 U.S.C. § 341(a) (the "§ 341(a) Meeting").

{Practice Areas\CORP\15008\14190\A1985845.DOC}

# EXHIBIT D

FORM 1

# INDIVIDUAL ESTATE PROPERTY RECORD AND REPORT
## ASSET CASES

Page: 1

Ver. 18.01

Case No.: 12-40944   MSH   Judge: Melvin S. Hoffman
Case Name: SOUTHERN SKY AIR & TOURS, LLC D/B/A
For Period Ending: 11/17/14

Trustee Name: Joseph H. Baldiga Chapter 7 Trustee
Date Filed (f) or Converted (c): 04/11/12 (c)
341(a) Meeting Date: 05/16/12
Claims Bar Date: 09/11/12

| 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|
| Asset Description (Scheduled and Unscheduled (u) Property) | Petition/ Unscheduled Values | Estimated Net Value (Value Determined by Trustee, Less Liens, Exemptions, and Other Costs) | Property Formally Abandoned OA=554(a) Abandon | Sale/Funds Received by the Estate | Asset Fully Administered (FA)/ Gross Value of Remaining Assets |
| 1. TD BANK ACCOUNT (u) | 0.00 | 3,028.44 | | 3,028.44 | FA |
| 2. HORRY COUNTY STATE BANK (u) | 0.00 | 22.33 | | 22.33 | FA |
| 3. Post-Petition Interest Deposits (u) | 0.00 | 0.12 | | 0.12 | FA |
| 4. CASH FROM MYRTLE BEACH SAFE (u) RECEIVED CASH THEN CONVERTED TO CASHIER'S CHECK TO DEPOSIT | 0.00 | 204.00 | | 204.00 | FA |
| 5. INSURANCE POLICIES - PLATTE RIVER COMPANY AVONDALE DOES NOT HAVE SUFFICIENT ACCESS TO THE DEBTOR'S FINANCIAL INFORMATION TO PROVIDE A DEFINITIVE RESPONSE. HOWEVER, OTHER THAN THE DEBTOR'S GENERAL LIABILITY INSURANCE, SEE ATTACHED SURETY BOND INFORMATION FROM PLATTE RIVER INSURANCE COMPANY | 151,000.00 | 200,000.00 | | 200,000.00 | FA |
| 6. ACCOUNTS RECEIVABLE UPON INFORMATION AND BELIEF, ACCOUNTS RECEIVABLE WAS ON THE BALANCE SHEET AS OF THE CLOSE IN OCTOBER AND WAS CARRIED FORWARD | 33,030.10 | 0.00 | | 0.00 | FA |
| 7. GENERAL INTANGIBLES SUSPENDED DOT LICENSE; SEE LIST IN SCHEDULE G | 0.00 | 0.00 | | 0.00 | FA |
| 8. CUSTOMER LISTS SEE SCHEDULE F; NO SUFFICIENT INFORMATION AS TO VALUE | 0.00 | 0.00 | | 0.00 | FA |
| 9. CONTINGENT CLAIMS AVONDALE DOES NOT HAVE SUFFICIENT ACCESS TO THE DEBTOR'S FINANCIAL INFORMATION TO PROVIDE A DEFINITIVE RESPONSE. HOWEVER, SEE SCHEDULE 4 OF STATEMENT OF FINANCIAL AFFAIRS | 0.00 | 0.00 | | 0.00 | 0.00 |

LFORM1

Page: 2

Ver: 18.01

FORM 1
INDIVIDUAL ESTATE PROPERTY RECORD AND REPORT
ASSET CASES

| Case No: | 12-40944 | MSH | Judge: Melvin S. Hoffman |
|---|---|---|---|
| Case Name: | SOUTHERN SKY AIR & TOURS, LLC D/B/A | | |

| Trustee Name: | Joseph H. Baldiga Chapter 7 Trustee |
|---|---|
| Date Filed (f) or Converted (c): | 04/11/12 (c) |
| 341(a) Meeting Date: | 05/16/12 |
| Claims Bar Date: | 09/11/12 |

| 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|
| Asset Description (Scheduled and Unscheduled (u) Property) | Petition/ Unscheduled Values | Estimated Net Value (Value Determined by Trustee, Less Liens, Exemptions, and Other Costs) | Property Formally Abandoned OA=554(a) Abandon | Sale/Funds Received by the Estate | Asset Fully Administered (FA)/ Gross Value of Remaining Assets |
| 10. OFFICE EQUIPMENT | 45,000.00 | 0.00 | OA | 0.00 | FA |
| AVONDALE DOES NOT HAVE SUFFICIENT ACCESS TO THE DEBTOR'S FINANCIAL INFORMATION TO PROVIDE A DEFINITIVE RESPONSE. | | | | | |
| SEE ATTACHED LIST OF STATION ASSETS. | | | | | |
| OFFICE FURNITURE, FIXTURES AND EQUIPMENT IN CORPORATE OFFICES IN MYRTLE BEACH (1600 OAK STREET, MYRTLE BEACH, SC 29577) - DETAILED LISTING IS NOT AVAILABLE (ESTIMATED AT $15K) | | | | | |
| OFFICE FURNITURE, FIXTURES AND EQUIPMENT IN LEASED RESERVATION CENTER IN WEST VIRGINIA (1334 RITTER AVENUE, GLEN DANIELS, WV 25832) - DETAILED LISTING IS NOT AVAILABLE (ESTIMATED AT $30K) | | | | | |
| 11. PREFERENCE SETTLEMENTS/COLLECTIONS (u) | 0.00 | 140,610.95 | | 561,523.89 | 0.00 |
| 12. ASSET ENTERED IN ERROR (u) | 0.00 | 0.00 | | 0.00 | 0.00 |
| 13. CASH ON HAND | 0.00 | 0.00 | | 0.00 | FA |
| 14. FINANCIAL ACCOUNTS | 0.00 | 0.00 | | 0.00 | FA |
| SEE SCHEDULE 11 OF STATEMENT OF FINANCIAL AFFAIRS | | | | | |
| 15. SECURITY DEPOSITS | 0.00 | 0.00 | | 0.00 | FA |
| SEE SCHEDULE 11 OF STATEMENT OF FINANCIAL AFFAIRS | | | | | |
| AVONDALE DOES NOT HAVE SUFFICIENT ACCESS TO THE DEBTOR'S FINANCIAL INFORMATION TO PROVIDE A DEFINITIVE RESPONSE | | | | | |
| 16. BOOKS/COLLECTIBLES | 0.00 | 0.00 | | 0.00 | FA |
| SEE ANSWER TO #28 | | | | | |
| 17. ANNUITIES | 0.00 | 0.00 | | 0.00 | FA |
| AVONDALE DOES NOT HAVE SUFFICIENT ACCESS TO THE | | | | | |

LF0RM1

FORM 1
# INDIVIDUAL ESTATE PROPERTY RECORD AND REPORT
## ASSET CASES

Page: 3

Case No: 12-40944    MSH    Judge: Melvin S. Hoffman
Case Name: SOUTHERN SKY AIR & TOURS, LLC D/B/A

Trustee Name: Joseph H. Baldiga Chapter 7 Trustee
Date Filed (f) or Converted (c): 04/11/12 (c)
341(a) Meeting Date: 05/16/12
Claims Bar Date: 09/11/12

| 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|
| Asset Description (Scheduled and Unscheduled (u) Property) | Petition/ Unscheduled Values | Estimated Net Value (Value Determined by Trustee, Less Liens, Exemptions, and Other Costs) | Property Formally Abandoned OA=554(a) Abandon | Sale/Funds Received by the Estate | Asset Fully Administered (FA)/ Gross Value of Remaining Assets |
| DEBTOR'S FINANCIAL INFORMATION TO PROVIDE A DEFINITIVE RESPONSE | | | | | |
| 18. LIQUIDATED CLAIMS AVONDALE DOES NOT HAVE SUFFICIENT ACCESS TO THE DEBTOR'S FINANCIAL INFORMATION TO PROVIDE A DEFINITIVE RESPONSE | 0.00 | 0.00 | | 0.00 | 0.00 |
| 19. VOID (u) | Unknown | 0.00 | | 0.00 | FA |
| 20. INTELLECTUAL PROPERTY AVONDALE DOES NOT HAVE SUFFICIENT ACCESS TO THE DEBTOR'S FINANCIAL INFORMATION TO PROVIDE A DEFINITIVE RESPONSE | 0.00 | 0.00 | | 0.00 | FA |
| 21. MACHINERY AND SUPPLIES AVONDALE DOES NOT HAVE SUFFICIENT ACCESS TO THE DEBTOR'S FINANCIAL INFORMATION TO PROVIDE A DEFINITIVE RESPONSE. SEE ATTACHED LIST OF STATION ASSETS. OFFICE FURNITURE, FIXTURES AND EQUIPMENT IN CORPORATE OFFICES IN MYRTLE BEACH (1600 OAK STREET, MYRTLE BEACH, SC 29577) – DETAILED LISTING IS NOT AVAILABLE (ESTIMATED AT $15K) OFFICE FURNITURE, FIXTURES AND EQUIPMENT IN LEASED RESERVATION CENTER IN WEST VIRGINIA (1334 RITTER AVENUE, GLEN DANIELS, WV 25832) – DETAILED LISTING IS NOT AVAILABLE (ESTIMATED AT $30K) | 0.00 | 0.00 | OA | 0.00 | FA |
| 22. OTHER PERSONAL PROPERTY AVONDALE DOES NOT HAVE SUFFICIENT ACCESS TO THE DEBTOR'S FINANCIAL INFORMATION TO PROVIDE A DEFINITIVE RESPONSE | 0.00 | 0.00 | OA | 0.00 | FA |

Ver. 18.01

LF0RM1

Page: 4

## INDIVIDUAL ESTATE PROPERTY RECORD AND REPORT
### ASSET CASES

Case No:      12-40944    MSH    Judge: Melvin S. Hoffman
Case Name:    SOUTHERN SKY AIR & TOURS, LLC D/B/A

Trustee Name:                              Joseph H. Baldiga Chapter 7 Trustee
Date Filed (f) or Converted (c):           04/11/12 (c)
341(a) Meeting Date:                       05/16/12
Claims Bar Date:                           09/11/12

| 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|
| Asset Description (Scheduled and Unscheduled (u) Property) | Petition/ Unscheduled Values | Estimated Net Value (Value Determined by Trustee, Less Liens, Exemptions, and Other Costs) | Property Formally Abandoned OA=554(a) Abandon | Sale/Funds Received by the Estate | Asset Fully Administered (FA)/ Gross Value of Remaining Assets |
| 23. CASH MONEY FOUND IN DEBTOR BOX (u) | 0.00 | 481.00 | | 481.00 | FA |
| 24. CHARGE FOR PHOTOCOPIES (u) | 0.00 | 194.00 | | 194.00 | FA |
| MADE FOR BRESSLER, AMERY & ROSS, P.C. | | | | | |
| 25. ARROW LITIGATION - BOND REFUND (u) | 0.00 | 42,000.00 | | 42,000.00 | FA |
| 26. AGREEMENT WITH VALLEY NATIONAL BANK (u) | 0.00 | 250,000.00 | | 250,000.00 | FA |
| TOTALS (Excluding Unknown Values) | $229,030.10 | $636,540.84 | | $1,057,453.78 | Gross Value of Remaining Assets $0.00 (Total Dollar Amount in Column 6) |

Major activities affecting case closing which are not reflected above, and matters pending, date of hearing or sale, and other action:

TRUSTEE CONTINUES TO INVESTIGATE AND PURSUE AVOIDANCE ACTIONS AND ESCROW SHORTAGE ACTIONS AND CONTINUES INVESTIGATION REGARDING CLAIMS.

Initial Projected Date of Final Report (TFR): 12/31/14        Current Projected Date of Final Report (TFR): 06/30/15

LFORM1                                                                                                Ver: 18.01

# EXHIBIT E

## Valley National Bank Investigation – 0001:

Prior to the Petition Date, the Debtor was operating as a public charter operator (tour operator) with charter programs servicing various points in the United States. Two days prior to the Petition Date, the Debtor ceased operations of its tour programs, stopped accepting flight reservations and terminated reservation capabilities on its web-site. The Debtor never resumed operations. By the time of these actions, the Debtor had previously accepted flight reservations (and payment) from thousands of charter participants (the "Charter Participants"), who were then unable to fly with the Debtor, and who were left with claims for the monies lost in connection with the Debtor's cancelled flights and ceased operations. Upon his appointment, the Trustee promptly began to secure assets and records of the Debtor and investigating the many allegations of fraud raised by interested parties during the Debtor's chapter 11 case and to the Trustee post-conversion.

As a public charter operator, the Debtor's operations were governed by, among other things, regulations promulgated by the United States Department of Transportation (the "DOT"). One of the Debtor's obligations was compliance with regulations regarding security and depository agreements. Pursuant to 14 C.F.R. § 380.34, public charter operators may, in lieu of furnishing a certain type of security agreement, elect to: (a) furnish a surety bond, a surety trust agreement, or a letter of credit in the amount of at least $10,000 times the number of flights, except that the amount need not exceed $200,000;[1] and (b) enter into an agreement with the company directly engaging in the operation of aircraft (known as the "direct air carrier") and a designated bank, the terms of which shall provide that "all payments by charter participants paid to charter operators… shall be deposited with and maintained by the bank subject to […certain…] conditions[.]" Prior to the Petition Date, the Debtor entered into Public Charter Depository Agreements (the "Depository Agreements") with various direct air carriers and Valley National Bank ("VNB"). Pursuant to the Depository Agreements, VNB agreed to act as depository bank within the meaning of 14 C.F.R. § 380. The Debtor was required to deliver to VNB all amounts received from each Charter Participant in accordance with 14 C.F.R. § 380.34. Subject to certain additional terms, VNB agreed to accept such payments from the Debtor for deposit and further agreed to maintain a separate account for each charter, flight, or rotation, but was permitted to use deposited funds in its general banking business.

Federal regulations govern further disbursement of funds after payments from charter participants have been deposited into depository banks, such as VNB. Depository banks are permitted to pay the direct air carrier, by deposit into such carrier's escrow account, for the charter price for transportation no earlier than 60 days prior to the scheduled day of departure, upon certification of the departure date by such carrier. With some exceptions (including payment to direct air carriers as noted above), the depository bank "shall not pay out any funds from the account prior to 2 banking days after completion of each charter, when the balance in the account shall be paid [to] the charter operator…, upon certification of the completion date by the air carrier." If a charter operator notifies its depository bank that a charter has been canceled, the bank is required to make applicable refunds directly to the charter participants.

---

[1]   The Debtor carried a surety bond through Platte River Insurance Company in the amount of $200,000. The proceeds of that surety bond are discussed under Task Code 9250.

As of the Petition Date, VNB maintained two accounts for and on behalf of Direct Air, a money
market account and a DDA account.[2]   According to VNB, funds were "swept" from the DDA
account into the money market account periodically to earn interest.  The Trustee determined
that the balance of the VNB money market account was approximately $1,016,925.90 and the
balance of the VNB DDA account was $.01.

Following the Petition Date and the cancellation of the Debtor's flights, thousands of customers
sought "chargebacks" for flights purchased on their credit cards and debit cards.  The only
transaction cards Charter Participants were able to use to purchase tickets from the Debtor were
those issued by Visa, Mastercard, Discover and American Express Travel Related Services Co.,
Inc. ("Amex").  JetPay Merchant Services, LLC ("JetPay") was the creditor card processor for
both credit card and debit card transactions made with Visa, Mastercard or Visa cards.  Merrick
Bank Corporation ("Merrick"; collectively with Amex and JetPay, the "Credit Card Companies")
funded the credit card or debit card payments processed by JetPay and deposited the funds into
Direct Air's depository accounts at VNB.  Amex itself processed and funded all Amex
transactions.  Merrick Bank and Amex have reimbursed those customers (via their credit card
and debit card-issuing banks in the case of Visa and MasterCard cardholders and via Discover
and Amex in the case of Discover and Amex cardholders) in amounts far exceeding the Escrow
Account balance but, due to VNB's refusal to release the limited funds in the Escrow Account,
neither Merrick nor Amex received reimbursement.  Based on the number of scheduled flights
that were canceled on account of the Debtor's bankruptcy filing, as well as the claims of
Merrick, JetPay and Amex for chargebacks, the Trustee estimated that the shortfall in the Escrow
Account could be as high as $30 million.  The proceeds of the Escrow Account were insufficient
to satisfy the claims of all Charter Participants and/or their agents (i.e., the credit card parties)
and, therefore, the Trustee commenced a preliminary investigation to determine the facts and
circumstances leading to the Escrow Account shortfall.  The Credit Card Companies asserted
that the funds comprising the Escrow Account (and any recoveries of the shortfall) did not
constitute property of the Estate, but recognized the benefit of having the Trustee and his
professionals investigate the Escrow Account shortfall.  The Trustee, without conceding that any
Escrow Account funds and recoveries might not be property of the Estate, was unwilling to
continue his investigation absent some material benefit to the Estate.  The Trustee, with MODL's
assistance, considered the Estate's role in a potential investigation of the Escrow Account and
also considered possible abandonment of the Estate's interest in the Escrow Account.  At the
Trustee's direction, MODL researched public charter depository account regulations and
reviewed and assessed the DOT's regulations regarding same.  Additionally, MODL researched
case law specific to the airline industry regarding whether or not a debtor's escrow accounts are
estate property, as well as related liability issues, in connection with the Credit Card Companies'
assertion that the Escrow Account funds are not property of the Estate.  MODL reviewed the
Debtor's agreements with VNB and conferred with the DOT regarding the investigation of the
Escrow Account.

Additionally, prior to the Conversion Date, JetPay filed an Emergency Motion for Relief From
Stay to Continue Processing Customer Chargebacks From Non-Estate Property Escrow Account
in the Ordinary Course (the "JetPay Motion for Relief") seeking an order granting relief from the

---

[2]   The money market account and the DDA account, along with any other accounts that VNB maintained for or on
behalf of the Debtor, comprise the "VNB Escrow Account".

automatic stay to permit affected parties to continue processing customer chargebacks and
refunds in the ordinary course of business. In the JetPay Motion for Relief, JetPay describes
itself as a "credit card processor" that, by virtue of a merchant agreement between itself, Merrick
and the Debtor, had responsibility for processing customers' Visa and MasterCard purchases of
the Debtor's charter flights. At the Trustee's direction, MODL reviewed and assessed the JetPay
Motion for Relief.

After extensive discussions and negotiations among the Trustee, the Credit Card Companies and
the DOT, the Trustee and the Credit Card Companies, with the DOT's approval, agreed to the
terms and conditions of an agreement (the "VNB Agreement") as to how the contents of the
Escrow Account (the "Escrow Proceeds") would be disbursed so as to facilitate the investigation
of the Escrow Account shortfall while simultaneously providing a benefit to the Estate. Despite
indications from VNB that is would likely refuse to turn over the Escrow Proceeds absent a
Bankruptcy Court order, at the Trustee's direction, MODL prepared a Motion for Order (1)
Approving Agreement Regarding Debtor's Accounts at Valley National Bank and (2) Extending
Claim Bar Date for Charter Participants to January 15, 2013 (the "Motion to Approve VNB
Agreement"), motion to limit notice and certificate of service. After substantial revisions to the
Motion to Approve VNB Agreement, including the VNB agreement and addendum, by the
Credit Card Companies and DOT, MODL attended to the filing and service of the Motion to
Approve VNB Agreement pleadings. At the Trustee's direction, MODL reviewed three (3)
motions prepared and filed by VNB, with the Trustee's assent, to enlarge the objection deadline
regarding the Motion to Approve VNB Agreement. Ultimately, the Motion to Approve VNB
Agreement was allowed by the Court without a hearing. Pursuant to the Motion to Approve
VNB Agreement, the parties agreed that, upon the Trustee's receipt of the Escrow Account from
VNB, the Escrow Account would be allocated among the parties as follows:

    (A)    the first $100,000 of Escrow Proceeds (the "Investigation Funds") would be
        distributed to the Estate to compensate the Trustee and his professionals (subject
        to fee applications) for allowed administrative expenses incurred in connection
        with the Investigation (defined below);

    (B)    the next $75,000 of Escrow Proceeds (the "Estate Funds") would be distributed to
        the Trustee on behalf of the Estate to pay claims (including administrative claims)
        in accordance with the normal bankruptcy priorities;

    (C)    the next $75,000 of Escrow Proceeds (the "Charter Participant Funds") would be
        distributed to the Estate exclusively to partially or fully pay the Charter
        Participants who did not receive a full refund or chargeback, or who otherwise
        were not fully reimbursed in connection with money paid by them into the
        Escrow Account, but only to the extent that such Charter Participants have a valid
        claim against the Escrow Account;

    (D)    any unused balance of the Charter Participant Funds would be distributed 90% to
        Merrick and 10% to Amex; and

    (E)    all remaining Escrow Proceeds would be distributed 90% to Merrick and 10% to
        Amex. Merrick and Amex may participate in distributions from the Estate, pro

rata, with other general unsecured claimants, but only after exhausting funds received under the Agreement toward application of their respective claims.

The VNB Agreement further provided that the Trustee would have primary responsibility for conducting an investigation (the "Investigation") into the dissipation of funds from the Escrow Account and that all Parties would have the right to use the results of the Investigation.

Upon approval of the Motion to Approve VNB Agreement, JetPay filed a Motion to Withdraw Without Prejudice the JetPay Motion for Relief and, at the Trustee's request, MODL reviewed and assessed JetPay's motion to withdraw.

Initially, the Trustee commenced an investigation into the dissipation of funds from the Escrow Account and the resulting shortfall in the ordinary course of his required duties as trustee. Due to the overlap of efforts to secure the Debtor's premises and retrieve the Debtor's records, which were needed for the Trustee's Investigation, some of the time entries related to Valley National Bank Investigation (Task Code 0001) are categorized under Asset Recovery (Task Code 9250). Once the Motion to Approve VNB Agreement was approved by the Court, the Investigation broadened to include all relevant individuals (i.e., the Founders (as defined and discussed in more detail under Task Code 0013 below), the acquiring entity and consultants) who were involved in the release of funds from the VNB Escrow Account and to determine how the amounts were disbursed, who knew of the disbursements and when they knew about them, and if there were any amounts that the Trustee would be able to locate and recover for the benefit of the Estate. The Trustee's preliminary Investigation consisted of case background discussions by MODL with the Trustee's accountant and development of parameters for the accountant's assistance. At the Trustee's request, a representative for the the Trustee's accountant, Verdolino & Lowey, P.C. (the "Trustee's Accountant"), accompanied MODL to the Debtor's former headquarters located at 1600 Oak Street, Myrtle Beach, South Carolina (the "Myrtle Beach Office") to, among other things, conduct a preliminary review of the Debtor's records and assist and advise MODL regarding the preservation of those records. While at the Myrtle Beach Office, MODL worked with the Trustee's Accountant to assess, secure, arrange for the transportation of and imaging of the Debtor's computer system, as well as to secure the Debtor's on-line accounting records and flight back-up records. MODL also assisted the Trustee's Accountant to obtain passwords for the Debtor's bank accounts and to change the master administrator for the Debtor's Quickbooks records. Based on information gathered from the on-site records, as well as pleadings filed with the Court, discussions with interested parties and complaints filed with the DOT, MODL identified a preliminary list of individuals and corporate entities for Rule 2004 examinations and prepared, filed and attended to service of a Motion for Authority to Conduct Rule 2004 Examinations. Upon issuance of a response deadline by the Court, MODL also attended to service of the response deadline on all affected parties and prepared and filed a certificate of service, as well as a supplemental certificate of service. MODL attended to multiple inquiries from Rule 2004 examination parties and their counsel and, at the Trustee's direction, MODL prepared and filed a Statement Regarding (I) Chapter 7 Trustee's Motion For Authority to Conduct Rule 2004 Examinations and (II) Response Filed by Hank L. Torbert in order to clarify the relief requested in the 2004 Motion and to address the response filed by Mr. Torbert. MODL also prepared for, and participated in, a hearing on the Rule 2004 examination motion, which was allowed by this Court. Upon approval, MODL began

preparation of Rule 2004 examination subpoenas and development of a strategy for the outline and scope of depositions and requests for document production. At approximately the same time, Merrick filed a Motion for Authority to Conduct 2004 Examinations and MODL spent considerable time assisting the Trustee with the identification of potential concerns for contemporaneous examinations by Merrick. On the Trustee's behalf, MODL also prepared for, and participated in, a hearing on Merrick's 2004 motion.

Eventually, after extensive negotiations, an agreement was reached by the Trustee, JetPay, Merrick, Amex and VNB regarding the release by VNB of the funds in the Direct Air Accounts, as well as the form of notice to be provided to Charter Participants and other interested parties and creditors as to the release by VNB of funds held and maintained by VNB. On behalf of the Trustee, Trustee's special counsel, David J. Reier, Esq. and the firm of Posternak Blankstein & Lund, LLP ("Posternak Law Firm"), prepared and filed a Motion of Chapter 7 Trustee For Orders Approving: (1) The Proposed Form and Scope of Notice and (2) Stipulation Compromising and Settling Certain Claims to Funds Held by Valley National Bank in Certain Depository Accounts (the "VNB Account Turnover Motion"). MODL attended to numerous claimant telephone calls and electronic mails, as well as objections filed by claimants with the Court, in response to the VNB Account Turnover Motion and notice. At the Trustee's direction, MODL worked with Posternak Law Firm on the preparation of the Trustee's Response to Objections to the VNB Account Turnover Motion. MODL prepared for, and participated in, a hearing on the VNB Account Turnover Motion, which was allowed by this Court. Pursuant to the agreement set forth in the VNB Account Turnover Motion, VNB agreed to make the following disbursements:

(A)     the sum of $25,000 to VNB (the "VNB Payment");

(B)     the sum of $250,000 to the Trustee (the "Trustee Payment");

(C)     90% of the balance remaining after (i) and (ii) (the "Remaining Balance") to Merrick (Merrick Payment"); and

(D)     10% of the Remaining Balance to Amex ("Amex Payment").

The Trustee Payment represents the sum of the $100,000 and two $75,000 payments set forth above in connection with the Motion to Approve VNB Agreement.

Pursuant to the Motion to Approve VNB Agreement, the Trustee undertook primary responsibility for investigation of the Debtor's operations and dissipation of funds from its depository accounts at VNB that created the shortfall. Once the Motion to Approve VNB Agreement and the VNB Account Turnover Motion were approved by this Court, MODL assisted the Trustee with the formulation and development of parameters and ongoing strategies to move the Investigation forward and MODL began to compile issues, case materials and possible causes of action. During the course of the Investigation, MODL identified persons to be interviewed and/or deposed and determined interview logistics, conducted numerous calls with the Trustee's litigation team, counsel for Merrick, the Trustee's Accountant, and the DOT. Due to the Trustee's Accountant's significant experience in forensic accounting/computing, they were

able to assist the Trustee and MODL with technical analysis of the Debtor's records. MODL also conferred with representatives for the DOT regarding the DOT's investigation of the Debtor, including, among other things, the DOT's interviews of former employees and others involved in Direct Air. MODL also reviewed the roles and extent of the involvement of Merrick, JetPay and Ober, Kaler, Grimes & Shriver, P.C., the Debtor's pre-petition counsel ("Ober Kaler"), in the Debtor's operations. To assist with the Investigation, MODL also reviewed a Chapter 11 bankruptcy case with similarities to the Debtor's case, conducted extensive research of cases and court decisions related to charter carriers to determine applicability to the Debtor's case, research regarding potential fraud schemes, research of other businesses and/or affiliations that the Debtor's owners were involved with and the reasons for those business failures, and research of equity/capital contributions vs. partner loans. MODL also developed a plan for cooperation in the Investigation between Merrick and the Trustee and developed a strategy regarding joint defense privilege and confidentiality of cooperative investigation efforts. At the Trustee's direction, MODL coordinated the Trustee's efforts for cooperation in the Investigation between JetPay and Amex and, at the Trustee's request, MODL prepared conflict waiver letters for Merrick, JetPay and Amex. During the course of the Investigation, MODL also spent considerable time in connection with a dispute between the Trustee and Ober Kaler resulting from the Trustee's attempts to obtain law firm records. At the Trustee's direction, MODL reviewed and analyzed sections of the Bankruptcy Code regarding turnover of estate property, attorney-client privilege and control of Debtor records after bankruptcy filing. Ultimately, the Trustee's investigation included a review of: (a) approximately sixty (60) boxes of physical files and company books and records retrieved from the Myrtle Beach Office after the Conversion Date; (b) information from hard drives recovered from the Myrtle Beach Office; (d) millions of records from Direct Air's reservation software system; (d) documents produced in response to subpoenas to Judy Tull, Ed Warneck, Kay Ellison, Stanley Marshall Ellison, Robert Keilman, JetPay and VNB; and (e) documents voluntarily provided by other parties. Additionally, MODL traveled to South Carolina and New York to conduct seven (7) examinations pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, as well as conducting over a dozen interviews of relevant persons, entities and government agencies. MODL also conducted follow-up interviews, when necessary. MODL also spent considerable time developing an investigation strategy, as well as investigating allegations of past fraud by Avondale Aviation I, LLC, an entity owned by Hank Torbert, which acquired the Debtor from the Founders (as defined below) ("Avondale"). Additionally, MODL prepared for and conducted interviews of the principal of Avondale (i.e., Hank Torbert), as well as Avondale affiliates. Periodically, with the Trustee's assistance, MODL determined what had been established through discovery and determined areas for further investigation and possible causes of action. At the Trustee's direction, MODL spent extensive time reviewing and summarizing the Trustee's efforts in connection with the Investigation, including preparation of the Trustee's Report on Direct Air's Operations and Shortfall (the "Investigative Report") and compilation of related exhibits. MODL prepared a motion to limit notice and certificate of service in connection with the Investigative Report and attended to e-filing and service of same. As discussed, in detail, in the Investigative Report, the Trustee's Investigation concluded that the shortfall from Direct Air's depository accounts at VNB totaled $30,389,363.79 (the "Shortfall"). Further, as a result of the Investigation, the Trustee directed MODL to initiate adversary proceedings against the five (5) Founders (as defined below under Task Code 0013) of the Debtor, plus the acquiring entity (i.e., Avondale), for recovery of the Shortfall. The Trustee also made an appropriate referral to the Office of the

United States Trustee associated with the loss of the money from the depository accounts at VNB.

At the Trustee's direction, MODL also reviewed and analyzed a complaint brought by Merrick against VNB in the U.S. District Court, District of New Jersey (Civil Docket No. 13-CV-7756-ES-MAH) (the "New Jersey Litigation") seeking to recover losses sustained by Merrick due to VNB's failures to follow its obligations with respect to the VNB Escrow Account. MODL also spent time researching the issue of standing to bring a possible cause of action against VNB on behalf of the Estate in connection with claim viability. MODL continues to monitor and review the docket and case activity in this action.

MODL's fees and expenses related to the Valley National Bank Investigation during the Fee Application Period totaled $335,935.00.

**Chemoil Preference Matter– 0002:**

During the Fee Application Period, and after review of relevant transfer records and identification of potential preference payments, MODL made demand on Chemoil Aviation ("Chemoil") for avoidance and recovery of substantial amounts paid by the Debtor to Chemoil during the 90-day period prior to the Petition Date. Chemoil (via counsel) responded to the Trustee's demand and provided extensive materials in support of Chemoil's defenses. At the Trustee's request, MODL reviewed the transfer materials and prepared a new value analysis. Ultimately, MODL determined that Chemoil asserted a complete new value defense and the Trustee instructed MODL to take no further action in connection with the Chemoil Preference Matter.

MODL's fees and expenses related to the Chemoil Preference Matter during the Fee Application Period totaled $5,336.00.

**Arrow Garnishment Litigation and Related**
**Adversary Proceeding vs. Arrow Energy, Inc. and Sun Trust Bank – 0003:**

Prior to the Petition Date, Arrow Energy, Inc. ("Arrow") filed an action (the "Garnishment Action") in the Circuit Court of Broward County (the "Florida Trial Court") as a domestication of a final judgment Arrow had obtained in the State of Michigan against Aviation Fuel International, Inc. ("AFI") and Sean Wagner. Thereafter, Arrow served a writ of garnishment on the Debtor claiming that the Debtor owed money to AFI, and that Arrow was entitled to such funds by virtue of the garnishment. The court in the Garnishment Action entered a Final Judgment in Garnishment (the "Garnishment Judgment") against the Debtor in the amount of $329,138.97 over the Debtor's objection. The Debtor subsequently appealed the Garnishment Judgment by filing an appeal in the District Court of Appeals, Fourth District, State of Florida (Case No. 4D11-2018) (the "Garnishment Appeal Action"). During the pendency of the Garnishment Appeal Action, Arrow executed on the Garnishment Judgment against the Debtor, and forced the Debtor to pay $200,000.00 to Arrow (the "$200K Transfer"). Additionally, prior to the Petition Date, the Debtor inadvertently sent $104,000.00 to AFI's account at SunTrust Bank ("SunTrust") rather than to Avfuel, the intended recipient (the "$104K Transfer").

SunTrust refused to reverse the $104K Transfer and the funds remain in the SunTrust bank account subject to Arrow's garnishment claim.

During the Fee Application Period, at the Trustee's direction, MODL engaged in discussions with counsel for Arrow in the Garnishment Action, reviewed numerous underlying pleadings, analyzed the Estate's rights in connection with recoveries from the Garnishment Action, and advised the Trustee regarding the appropriate course of action. At the Trustee's direction, MODL filed the necessary motion to have the Trustee retain Robert M. Dees and the law firm of Milam Howard Nicandri Dees & Gillam, P.A. as special counsel to the Trustee ("Florida Special Counsel"), on a contingency basis, for the purpose of continuing prosecution of the Garnishment Appeal Action (the "Florida Special Counsel Motion"). Additionally, the Florida Special Counsel Motion provided that if and when the Garnishment Appeal Action was successful, the Trustee would utilize Florida Special Counsel to continue litigation in the trial court to determine that Arrow's garnishment of monies purportedly due to AFI from the Debtor was improper since the Debtor, in fact, owed nothing to AFI. The Florida Special Counsel Motion also provided that once the Trustee (with Florida Special Counsel's assistance) obtained that determination, the Trustee would utilize Florida Special Counsel to avoid and recover substantial sums paid to or reserved for Arrow in conjunction with Arrow's garnishment action, on fraudulent transfer and possibly other grounds.

During the course of the litigation in Florida, MODL assisted Florida Special Counsel with the review and revision of various pleadings filed by Florida Special Counsel and assisted with the development of strategies for recovery and appeal issues, as well as possible settlement parameters. At the Trustee's direction, MODL also researched case law in connection with the issue of automatic stay in the context of garnishment. After strategizing regarding all viable possibilities, MODL prepared and filed with this Court a Complaint (I) For Declaratory Relief, (II) To Avoid and Recover Fraudulent Transfer, and (III) to Disallow Claims seeking (I) a declaration that Arrow's prosecution of a garnishment action violates the automatic stay, (II) to avoid and recover pre-petition transfers that the Debtor made to Arrow and/or SunTrust, and (III) to disallow any claims that Arrow and/or SunTrust may have against the Estate. MODL researched the issue of service of process on corporations and depository institutions and then attended to service of the complaint and summons and filed a certificate of service with this Court. At the Trustee's direction, MODL also assisted Florida Special Counsel with the preparation and filing of a Motion for Admission of Counsel to Appear Pro Hac Vice (Re: Robert M. Dees) and obtaining Electronic Case Filing credentials in order for Florida Special Counsel to actively participate in the adversary proceeding on behalf of the Trustee.

As a result of the Trustee's litigation, the Trustee recovered $42,000.00 stemming from a supersedeas bond relating to the Garnishment Appeal Action, from which the Estate netted $26,260.08 after payment of Florida Special Counsel's fees and expenses. Additionally, prior to Arrow or SunTrust filing an answer to the adversary complaint, MODL assisted the Trustee in negotiating a settlement agreement with Arrow and SunTrust that resulted in an approximate amount to be paid to the Estate of $30,000.00, from which the Estate will recover $18,000.00 (net of fees and expenses to be paid to Florida Special Counsel). MODL prepared and filed the settlement documents, which were allowed by this Court without a hearing, and also prepared and filed a Notice of Voluntary Dismissal in the adversary proceeding. Subsequent to filing the

settlement pleadings, but prior to approval by this Court, counsel to SunTrust raised issues with the release provisions in the settlement agreement. At the Trustee's direction, MODL considered the issues raised by SunTrust and prepared and filed a Notice of Supplement to Motion to Approve Settlement Agreement and Release of Claims (Re: Arrow Energy, Inc.) and attended to service of same. At this time, MODL is awaiting receipt of the settlement proceeds in the amount of $30,000.00 from Arrow and SunTrust.

MODL's fees and expenses related to the Arrow Garnishment Litigation and Related Adversary Proceeding vs. Arrow Energy, Inc. and Sun Trust Bank during the Fee Application Period totaled $29,058.00.

## Compliance With U.S. Attorney Subpoena – 0004:

During the Fee Application Period, as a result of an independent criminal investigation of the Debtor by the United States Attorney's Office, the Trustee received a Subpoena to Testify Before Grand Jury issued by the Grand Jury for the United States District Court for the District of New Jersey dated June 15, 2012, as well as a second, more inclusive, subpoena dated May 16, 2014. At the Trustee's request, MODL reviewed the subpoenas, corresponded with the United States Attorney's Office regarding the scope of its investigation, conducted research regarding Grand Jury Duces Tecum subpoenas, and advised the Trustee as to compliance issues and strategies. MODL assisted the Trustee with the development of a response strategy regarding privilege and document turnover issues and also conducted document review and discussions with the Trustee's litigation team and Trustee's Accountant. At the Trustee's request, MODL also coordinated with the Trustee's Accountant regarding the scope and format for the production of documents and information in custody of the Accountant. At the Trustee's request, MODL prepared for, and participated in, several conference calls, as well as a meeting with agents for the United States Attorney's Office regarding the scope of the bankruptcy investigation. MODL drafted a response on behalf of the Trustee and attended to the transmittal of same, and had follow-up telephone calls with the United States Attorney's Office regarding same.

MODL's fees and expenses related to Compliance With U.S. Attorney Subpoena during the Fee Application Period totaled $11,029.50.

## Chartis Subpoena Response – 0005:

During the Fee Application Period, MODL also assisted the Trustee with his response to a subpoena issued by Chartis Specialty Insurance Company ("Chartis") in connection with claims made by Merrick against Chartis as a result of chargebacks paid by Merrick to customers' issuing banks for the cancellation of the Debtor's flights and cessation of operations. At the Trustee's direction, MODL reviewed the Chartis subpoena, reviewed and analyzed Federal Rules related to production of documents, reviewed background materials regarding servers and back-up of the Debtor's computers, and reviewed boxed records of the Debtor. Additionally, on behalf of the Trustee, MODL conferred with the Trustee's litigation team to review subpoena response requirements, to develop a structure for the Trustee's response, and to consider issues regarding turnover, reservation of rights and additional potential responses in light of the broad

scope of the Chartis subpoena. At the Trustee's request, MODL also coordinated the production of electronic records by the Trustee's Accountant. MODL drafted a comprehensive response to the subpoena and attended to compilation of exhibits for the response. MODL also coordinated a site visit by Chartis' and Merrick's document review teams and the Trustee at the Trustee's Accountant's office for document review. MODL attended the document review at the Trustee's Accountant's office on the Trustee's behalf and assisted with preliminary review issues.

MODL's fees and expenses related to the Chartis Subpoena Response during the Fee Application Period totaled $8,193.00.

**Adversary Proceeding v. Fairfield Inn – 0006:**

During the Fee Application Period, and after review of relevant bank records and identification of potential preference payments, MODL made demand on Fairfield Inn by Marriott, LP a/k/a Fairfield Inn Broadway ("Fairfield Inn") for avoidance and recovery of $27,245.49. Fairfield Inn did not respond to the Trustee's demand and, at the Trustee's direction, MODL prepared and filed a Complaint to Avoid and Recover Preferential Transfers to commence the adversary proceeding and seeking (a) to avoid and recover certain pre-petition transfers the Debtor made to Fairfield Inn and (b) to disallow any and all claims Fairfield Inn may have against the Estate. Upon issuance of the summons by the Bankruptcy Court, MODL attended to service of the complaint and summons. After Fairfield Inn failed to answer the complaint, MODL developed a strategy with the Trustee regarding default issues and, at the Trustee's direction, MODL prepared and filed an Application for Default and Default Judgment (the "Default Application"). Upon entry of the Notice of Default, MODL attended to service of the Notice of Default, as well as the notice of hearing in connection with the Default Application, and prepared and filed certificates of service for both. At the Trustee's direction, MODL prepared for, and participated in, the hearing on the Default Application. Upon entry of the judgment, MODL attended to service of the judgment and prepared and filed a certificate of same. The Trustee is exploring different avenues to monetize the judgment.

MODL's fees and expenses related to the Fairfield Inn Adversary Proceeding during the Fee Application Period totaled $4,246.50.

**Adversary Proceeding v. The Station – 0007:**

During the Fee Application Period, and after review of relevant bank records and identification of potential preference payments, MODL made demand on The Station, Inc. d/b/a Company Two Fire ("The Station") for avoidance and recovery of $15,100.00. The Station did not respond to the Trustee's demand and, at the Trustee's direction, MODL prepared and filed a Complaint to Avoid and Recover Fraudulent Transfers to commence the adversary proceeding and to seek (a) to avoid and recover a certain pre-petition transfer the Debtor made to The Station; and (b) to disallow any and all claims The Station may have against the Estate. Upon issuance of the summons by the Bankruptcy Court, MODL attended to service of the complaint and summons. The Station's principal contacted MODL informally and asserted defenses to the complaint and provided documents in support of its defenses. MODL reviewed and analyzed The Station's response, including lease materials, and developed a resolution strategy and counteroffer.

MODL engaged in negotiations with The Station's principal on the Trustee's behalf and advised the Trustee regarding settlement. MODL prepared and prosecuted all settlement documents, including a stipulation of settlement, motion for approval of the stipulation and motion to limit notice, which were allowed by this Court without a hearing. Upon approval of the settlement by this Court, MODL prepared and filed a Notice of Voluntary Dismissal to close the adversary proceeding. Ultimately, the Trustee collected $4,000.00 from The Station for the benefit of the Estate and its creditors.

MODL's fees and expenses related to The Station Adversary Proceeding during the Fee Application Period totaled $4,869.50.

### Global Payments – 0008:

During the Fee Application Period, and after review of relevant bank records and identification of potential preference payments, MODL made demand on Global Payments, Inc. ("Global") for avoidance and recovery of $13,742.50. Due to the lack of response by Global, and at the Trustee's direction, MODL prepared a Complaint to Avoid and Recover Preferential Transfers to commence an adversary proceeding and to (a) avoid and recover certain pre-petition transfers the Debtor made to Global and (b) disallow any and all claims Global may have against the Estate. Prior to filing the Global complaint, MODL forwarded the draft complaint to Global, which prompted a response by Global. At the Trustee's direction, MODL reviewed and assessed Global's response and supporting documents. MODL determined that Global asserted a complete ordinary course defense. Upon MODL's recommendation, the Trustee instructed MODL to take no further action in connection with Global.

MODL's fees and expenses related to Global Payments during the Fee Application Period totaled $1,035.00.

### Adversary Proceeding v. Miami Air – 0009:

After making demand and receiving no satisfactory response, during the Fee Application Period, and at the Trustee's direction, MODL prepared and filed a Complaint to Avoid and Recover Preferential Transfers to commence the adversary proceeding and to (a) avoid and recover certain pre-petition transfers the Debtor made to Miami Air International, Inc. a/k/a Miami Airlines ("Miami Air") in the amount of $390,933.84 and (b) disallow any and all claims Miami Air may have against the Estate. Upon issuance of the summons by the Bankruptcy Court, MODL attended to service of the complaint and summons and prepared and filed a certificate of service with the Court. At the Trustee's request, MODL reviewed the answer filed by Miami Air, analyzed asserted defenses, including its "ear marking" defense, and developed a strategy for litigation, timing and deadlines. During the litigation phase of this adversary proceeding, MODL prepared for the Rule 7026(f) conference and conferred with the Trustee to assess Miami Air's defenses and to develop parameters for a potential settlement. MODL participated in the Rule 7026(f) conference and prepared and filed a Rule 7026(f) Conference Report and Certification. At the Trustee's direction, MODL also prepared initial disclosures and discovery requests on behalf of the Trustee, and attended to transmittal of same to Miami Air. Additionally, MODL reviewed and analyzed the initial disclosures provided by Miami Air, as

well as Miami Air's responses to the Trustee's discovery requests. As a result of additional information provided by Miami Air in response to the Trustee's discovery requests, the parties engaged in settlement discussions. In order to provide the Trustee time to review additional documents provided by Miami Air, and to allow the parties to explore settlement, MODL prepared and filed three (3) Assented-to Motions to Extend Deadlines Set Forth in Pretrial Order. MODL engaged in settlement discussions on the Trustee's behalf and evaluated Miami Air's settlement proposal and counter offer. After extensive negotiations, the parties were able to reach terms for settlement. MODL prepared and prosecuted all settlement documents, including a stipulation of settlement, motion for approval and motion to limit notice, which were allowed without a hearing. Upon reaching the terms of settlement, MODL tracked receipt of the settlement proceeds. At the Trustee's direction, MODL also prepared a stipulation of dismissal and reviewed Miami Air's 502(h) claim. Ultimately, the Trustee collected $83,537.94 from Miami Air for the benefit of the Estate and its creditors.

MODL's fees and expenses related to the Miami Air Adversary Proceeding during the Fee Application Period totaled $21,142.50.

### Adversary Proceeding v. Progressive Funding Solutions, LLC – 0010:

After making demand and receiving no satisfactory response, during the Fee Application Period, and at the Trustee's direction, MODL prepared and filed a Complaint to Avoid and Recover Preferential and/or Fraudulent Transfers to commence the adversary proceeding and to (a) avoid and recover certain pre-petition transfers the Debtor made to Progressive Funding Solutions, LLC ("Progressive") in the amount of $20,096.72 and (b) disallow any and all claims Progressive may have against the Estate. Upon issuance of the summons by the Bankruptcy Court, MODL attended to service of the complaint and summons and prepared and filed a certificate of service. After Progressive failed to answer the complaint, MODL developed a strategy with the Trustee regarding default issues and, at the Trustee's direction, MODL prepared and filed an Application for Default and Default Judgment (the "Default Application"). Upon entry of the Notice of Default, MODL attended to service of the Notice of Default on Progressive and prepared and filed a certificate of service. An officer of Progressive contacted MODL informally regarding the default and MODL conferred with the Trustee to develop a strategy for pursuit of a post-judgment demand and collection. The Trustee is exploring different avenues to monetize the judgment.

MODL's fees and expenses related to Progressive during the Fee Application Period totaled $3,262.00.

### Adversary Proceeding v. Quickflight Services – 0011:

After making demand and receiving no satisfactory response, during the Fee Application Period, and at the Trustee's direction, MODL prepared and filed a Complaint to Avoid and Recover Preferential Transfers to commence the adversary proceeding and to (a) avoid and recover certain pre-petition transfers the Debtor made to Quickflight, Inc. ("Quickflight") in the amount of $220,140.00 and (b) disallow any and all claims Quickflight may have against the Estate. MODL attended to service of the complaint and summons and prepared and filed a certificate of

service. At the Trustee's direction, MODL reviewed and analyzed the answer filed by Quickflight and reviewed the pre-trial order issued by this Court and formulated discovery and resolution strategies. MODL also prepared for and participated in a Rule 26(f) Conference and prepared and filed a Report of the Parties' Rule 26(f) Conference. At the Trustee's direction, MODL also prepared initial disclosures, a joint-pretrial stipulation, interrogatories and requests for admission and document production. At the request of Quickflight's counsel, this Court extended the deadline to complete discovery set forth in the pretrial order. In response to that extension, MODL prepared and filed an Assented-to Motion to Extend Deadlines Set Forth in Pretrial Order seeking to extend certain of the other deadlines set forth in the pretrial order and impacted by the extension. MODL attended to service of the motion and also prepared and filed a certificate of service. At the Trustee's direction, MODL reviewed and analyzed Quickflight's discovery responses and calculated Quickflight's new value exposure based on its responses and investigated "course of dealings" between Quickflight and Mary Baldwin, the Debtor's former Director of Finance and Accounting ("Ms. Baldwin"). As a result of Quickflight's discovery responses and expert witness disclosures, the Trustee's belief that Quickflight would supplement its discovery responses and the possibility of a consensual resolution, MODL prepared and filed a Motion to Extend Deadline to File Pretrial Memorandum and attended to the preparation and filing of a certificate of service for same. As the parties continued to review discovery responses and explore the possibility for a settlement, at the Trustee's request, MODL prepared and filed Second and Third Assented-to Motions to Extend Deadline to File Pretrial Memorandum. MODL also prepared and filed certificates of service for both assented-to motions. At the same time, MODL attended to litigation planning, conferred numerous times with Quickflight (via counsel) and conducted case law research as to new value and ordinary course of business defenses asserted by Quickflight to ascertain the difference between the Trustee's and Quickflight's analysis of Quickflight's defenses. As a result, MODL developed and submitted a substantive settlement proposal to Quickflight for consideration.

Additionally, as a result of conversations between MODL and Ms. Baldwin regarding, among other things, the pending litigation with Quickflight, information was provided to MODL by Ms. Baldwin that raised the possibility of fees collected post-petition by Quickflight from the Debtor's customers at the airport which Quickflight was required to remit to the Debtor but, instead deposited those fees (totaling approximately $7,446.74) into its own account and applied those funds to the balance owed by the Debtor to Quickflight. At the Trustee's direction, MODL investigated and analyzed evidence of the post-petition transactions and, as a result, prepared, filed and attended to service of an Assented-to Motion to (I) Amend Complaint and (II) Extend Discovery and Other Deadlines seeking, among other things, to (A) amend the previous complaint to include a count for the post-petition transfers, and (B) amend the pretrial order to extend certain discovery and other deadlines. Upon approval of the Motion to Amend, MODL e-filed and served the Amended Complaint to Avoid and Recover Transfers. At the Trustee's direction, and as a result of the amended complaint, MODL also prepared a Second Request for Production of Documents, Second Set of Interrogatories and Second Set of Request for Admissions. At the Trustee's request, MODL reviewed and analyzed the answer to the amended complaint filed by Quickflight. Additionally, as a result of Quickflight's delayed discovery responses and a motion filed by Quickflight to extend the discovery deadline, at the Trustee's request, MODL prepared and filed a Response to Defendant's Motion to Extend Time to Respond to Second Request for Production of Documents and Second Request for

Interrogatories in order to request extension of certain related deadlines in the event
Quickflight's request for additional time to produce its discovery is allowed and tracked new
case deadlines. A pre-trial conference is scheduled for November 20, 2014 and, in the interim,
MODL will continue to assist the Trustee with litigation and recovery efforts in the Quickflight
Adversary Proceeding.

MODL's fees and expenses related to Quickflight Services Adversary Proceeding during the Fee
Application Period totaled $34,590.50.

**Adversary Proceeding v. Allegheny County Airport Authority – 0012:**

After making demand and receiving no satisfactory response, during the Fee Application Period,
and at the Trustee's direction, MODL prepared and filed a Complaint to Avoid and Recover
Preferential Transfers to commence the adversary proceeding and to seek (a) to avoid and
recover a certain pre-petition transfer the Debtor made to the defendant, Allegheny County
Airport Authority ("Allegheny") in the amount of $60,000.00 and (b) to disallow any and all
claims Allegheny may have against the Estate. Upon issuance of the summons by the
Bankruptcy Court, MODL attended to service of the complaint and summons. Allegheny (via
counsel) contacted Trustee's counsel informally. At the Trustee's direction, MODL engaged in
settlement discussions on the Trustee's behalf and the terms for settlement were reached.
MODL prepared and prosecuted all settlement documents, including a stipulation of settlement,
motion for approval and motion to limit notice, which were allowed by this Court without a
hearing. Upon approval of the settlement by this Court, MODL tracked receipt of the settlement
proceeds, confirmed the filing of an amended proof of claim by Allegheny and prepared and
filed a Notice of Voluntary Dismissal to close the adversary proceeding. Ultimately, the Trustee
collected $60,000.00 from Allegheny for the benefit of the Estate and its creditors.

MODL's fees and expenses related to the Allegheny Adversary Proceeding during the Fee
Application Period totaled $3,375.50.

**Founders – 0013:**

Prior to initiating the Adversary Proceedings against insiders for the return of payments by the
Debtor prior to the Petition Date, MODL assisted the Trustee with a legal investigation into
whether those transfers likely constituted preferences and/or fraudulent transfers. During the
initial stages of the investigation, MODL assisted the Trustee with an investigation into the five
(5) founding members of the Debtor: Robert Keilman, the Debtor's former Chief Financial
Officer and one of the owners ("Mr. Keilman"); Stanley Marshall Ellison, the Debtor's former
Chairman and one of the owners ("Mr. Ellison"); Ed Warneck, the Debtor's former President and
one of the owners ("Mr. Warneck"); Kay Ellison, the Debtor's former Managing Partner and one
of the owners ("Ms. Ellison"); and Judy Tull, the Debtor's former Chief Executive Officer and
one of the owners ("Ms. Tull"; collectively with Mr. Keilman, Mr. Ellison, Mr. Warneck and
Ms. Ellison, the "Founders"). Once the Trustee directed MODL to initiate suit, MODL
segregated time by each lawsuit (as described in Adversary Proceeding matters 0015, 0021,
0022, 0023, and 0024 herein). As a result of the preparation of preliminary injunction
applications vs. all Founders, as well as the combined settlement agreement for Mr. Ellison and

Ms. Ellison, certain time entries in connection with the preliminary injunction applications and the Ellison settlement were difficult to allocate between each Founder and are, therefore, combined under this category. Initially, however, MODL spent time developing a strategy for the insider preference complaints and preliminary injunctions associated with the insider transfer complaints. MODL also spent time compiling the materials necessary to prepare the insider complaints and reviewing insider payment information provided by the Trustee's accountant and developing a demand strategy. To assist with the analysis of the causes of action, MODL prepared a spreadsheet showing all transfers to the Founders by one, two and four-year periods of time and analyzed all payments made by the Debtor to the Founders. MODL conducted extensive research and analysis regarding, among other issues, (1) fraudulent transfer claims vs. Mr. Keilman in connection with repayment of alleged investments, (2) causes of action vs. the Founders for conduct identified in the Trustee's Investigative Report, (3) federal case law regarding elements for civil RICO claims in connection with actual fraud in falsifying Debtor's business records, (4) breach of fiduciary duty and other employer/employee claims for wrongful conduct in the course of their work, (5) successor company's liability for breaching fiduciary duty and other negligence that deepened the insolvency, and (6) the standard for granting preliminary injunctions where inability to pay the judgment in case for irreparable harm. With the Trustee's assistance, MODL considered consolidated vs. separate complaints for each of the Founders and assessed grounds for recovery and collectability and developed resolution strategies. MODL also reviewed the requirements for proposed causes of action vs. the Founders. MODL also reviewed extensive back-up documents for transfers to the Founders in support of the complaints and worked with the Trustee's Accountant to resolve discrepancies found in the payment spreadsheet. MODL's thorough background-work related to the investigation of the Founders potential preferences and fraudulent transfers resulted in the Trustee's subsequent successful and cost-effective litigation. At the Trustee's direction, MODL drafted a template for the Founders complaints and developed a strategy for filing and service logistics for all complaints vs. the Founders. Based on the complaint template, at the Trustee's direction, MODL developed the facts and counts for each of the Founders complaints. Additionally, MODL drafted applications for preliminary injunctions against all Founders and attended to filing and service of all the applications. Upon issuance of hearing notices by this Court, at the Trustee's request, MODL attended to service of the hearing notices and prepared and filed a certificate of service for each. MODL also prepared the Trustee's argument in anticipation of the hearing on all preliminary injunction applications. At the Trustee's request, MODL also attended to receipt of notice for the Trustee via the Court's Electronic Case Filing System (i.e., ECF) in all of the Founders adversary proceedings.

MODL's fees and expenses related to the Founders during the Fee Application Period totaled $20,872.00.

## Adversary Proceeding v. Niagara Falls Aviation, LLC – 0014:

After making demand and receiving no satisfactory response, during the Fee Application Period, and at the Trustee's direction, MODL prepared and filed a Complaint to Avoid and Recover Preferential Transfers and For Turnover of Estate Property to commence the adversary proceeding and to seek to (I) avoid and recover certain pre-petition transfers the Debtor made to Niagara Falls Aviation, LLC ("Niagara Falls") in the amount of $85,000.00 and (II) require

Niagara Falls to (a) deliver to the Trustee property of the Estate currently in Niagara Falls' possession (i.e., fees collected by Niagara Falls from the Debtor's customers at airports which Niagara Falls was required to remit to the Debtor but, instead, deposited those fees (totaling approximately $40,675.00) into its own account and applied those funds to the balance owed by the Debtor to Niagara Falls) and (b) account for such property, and (III) disallow any and all claims Niagara Falls may have against the Estate.  In connection with the complaint, MODL investigated the corporate status of Niagara Falls and reviewed payment back-up information. Upon issuance of the summons by this Court, MODL attended to service of the complaint and summons and prepared and filed a certificate of service.  Prior to filing its answer, Niagara Falls (via counsel), contacted MODL informally to discuss case background, extension of the answer deadline and potential collectability issues.  At the Trustee's direction, MODL reviewed the answer filed by Niagara Falls, analyzed its new value defense and developed a recommendation for the Trustee.  Additionally, on behalf of the Trustee, MODL prepared for, and participated in, the Rule 26(f) Conference and prepared and filed the Rule 7026(f) Conference Report and Certification.  Due to the lack of settlement progress, at the Trustee's direction, MODL also reviewed timing and steps for discovery and prepared initial disclosures, a Request for Production of Documents, and Requests for Admission and Interrogatories.  Upon receipt, MODL reviewed Niagara Falls' initial disclosures.  Through continued negotiations, the parties reached the terms for settlement and MODL prepared and prosecuted all settlement documents, including a tolling agreement, stipulation of settlement, motion for approval and motion to limit notice, which were allowed by this Court without a hearing.  Upon approval of the settlement by this Court, MODL tracked receipt of the settlement proceeds and prepared a Stipulation of Dismissal in connection with the adversary proceeding.  Ultimately, the Trustee collected $32,500.00 from Niagara Falls for the benefit of the Estate and its creditors.

MODL's fees and expenses related to the Niagara Falls Adversary Proceeding during the Fee Application Period totaled $8,879.00.

### Adversary Proceeding v. Robert Keilman – 0015:

During the Fee Application Period, and in preparation of initiating the adversary proceeding against Mr. Keilman, MODL assisted the Trustee with strategy and analyzed payments to and from Mr. Keilman based on the one, two and four-year payment spreadsheet.  At the Trustee's request, MODL prepared and forwarded a demand letter to Mr. Keilman and corresponded with Mr. Keilman's counsel as Mr. Keilman's response to the demand, a settlement offer and a possible 2004 Examination.  MODL also reviewed Mr. Keilman's equity infusion in the Debtor, his investment history, expense reports, airline itineraries, loan documents and financial statements and records obtained from the Monmouth County, New Jersey Registry of Deeds. Based on Mr. Keilman's response and settlement offer, at the Trustee's request, MODL developed preliminary questions for a deposition of Mr. Keilman and worked with the Trustee's litigation team on same.  At the Trustee's direction, MODL prepared a Verified Complaint against Mr. Keilman for his breaches of duty to the Debtor that significantly damaged the Debtor and to avoid and recover certain pre-petition transfers that the Debtor made to Mr. Keilman. MODL considered and assessed a proposal from Mr. Keilman (via counsel) regarding a global settlement, advised the Trustee regarding same and developed a response strategy.  In addition to the complaint, at the Trustee's direction, MODL prepared an Application for Preliminary

Injunction seeking to enjoin Mr. Keilman and his agents from transferring, encumbering, assigning, pledging, dissipating or spending assets other than purchases necessary for living expenses until his obligation to the Estate has been satisfied.  Upon issuance of the summons and hearing notice, MODL attended to service of the complaint and preliminary injunction, as well as the notice of hearing on the preliminary injunction, and prepared and filed certificates of service. At the Trustee's request, MODL prepared for, and participated in, a hearing on the preliminary injunction application at which time the Court approved a temporary restraining order and scheduled an evidentiary hearing on the preliminary injunction application.  At the Trustee's direction, MODL reviewed and analyzed the arguments in Mr. Keilman's Motion to Dismiss and Motion to Withdraw the Reference and researched statutory and case law on the South Carolina fraudulent transfer statute, as well as New Jersey constructive trust law.  MODL also further analyzed Mr. Keilman's settlement offer and advised the Trustee regarding the Trustee's ability to recover from Mr. Keilman's assets.  During the course of extensive settlement negotiations, at the Trustee's direction, MODL prepared and filed an Assented-to Motion to Continue (I) Current Temporary Restraining Order and (II) Hearing on Trustee's Application for Preliminary Injunction, as well as three (3) Assented-to Motions to (I) Extend Deadline to Object to Defendant's Motion to Dismiss and Motion to Withdraw the Reference and (II) Continue Hearing on Defendant's Motion to Dismiss.  MODL also prepared and filed certificates of service and attended to service of each motion to continue.  During negotiations, at the Trustee's direction, MODL drafted parameters for potential settlement, as well as a counter-offer.  In connection with settlement negotiations, MODL also interviewed Kay Ellison and Judy Tull regarding Mr. Keilman's involvement in the Debtor's business operations and loans made by the Debtor to Mr. Keilman.  MODL reviewed and analyzed financial data provided by Mr. Keilman and, at the Trustee's direction, prepared a confidentiality agreement as to restrictions on the use of the financial data.  MODL also analyzed tax claims against Mr. Keilman, the personal liability of Mr. Keilman, and the IRS' enforcement options in connection with the on-going settlement negotiations.  Additionally, MODL assessed additional grounds for opposition to Mr. Keilman's dismissal and referenced motions and, at the Trustee's request, prepared and filed the Trustee's Limited Opposition to Defendant's Motion to Withdraw The Reference  on the basis that a determination of whether to withdraw the reference of this adversary proceeding to the U.S. District Court for the District of Massachusetts should be made after the Court rules on the defendant's Motion to Dismiss.  Ultimately, the parties were able to reach the terms for settlement and, at the Trustee's request, MODL worked with defendant's counsel on the preparation of the stipulation and also prepared an approval motion, motion to limit notice and certificate of service.  The proposed stipulation of settlement provides that, within four business days of the Bankruptcy Court's order approving the stipulation, Mr. Keilman shall pay the Trustee $250,000.00 in full satisfaction of the Trustee's claims against Mr. Keilman in the complaint and arising out of the Investigative Report.  MODL also prepared a Motion to Modify Temporary Restraining Order to permit withdrawal of settlement funds by Mr. Keilman.  The settlement pleadings were filed on October 23, 2014 and remain pending.  Assuming approval, the Trustee will collect $250,000.00 from the Keilman litigation for the benefit of the Estate and its creditors.

MODL's fees and expenses related to the Robert Keilman Adversary Proceeding during the Fee Application Period totaled $48,526.00.

### Ober, Kaler, Grimes & Shriver, P.C. – 0016:

During the Fee Application Period, and after review of relevant bank records, identification of potential preference payments and making demand, at the Trustee's direction, MODL prepared a Complaint to Avoid and Recover Preferential Transfers seeking to (A) avoid and recover certain pre-petition transfers the Debtor made to Ober, Kaler, Grimes & Shriver, P.C. ("Ober Kaler") in the amount of $59,723.35 and (B) disallow any and all claims Ober Kaler may have against the Estate. Prior to the Trustee's filing of the complaint, the parties engaged in settlement discussions and reached settlement. MODL prepared and prosecuted all settlement documents, including a stipulation of settlement, motion for approval, motion to limit notice and tolling agreement, which were allowed by this Court without a hearing. Upon approval of the settlement, MODL tracked receipt of the settlement proceeds. Ultimately, the Trustee collected $12,000.00 from Ober Kaler for the benefit of the Estate and its creditors.

MODL's fees and expenses related to the Ober Kaler Adversary Proceeding during the Fee Application Period totaled $5,387.00.

### Wyvern Hotel, LLC – 0017:

During the Fee Application Period, and after review of relevant bank records, identification of potential preference payments and making demand, at the Trustee's direction, MODL prepared a Complaint to Avoid and Recover Preferential Transfers seeking to (A) avoid and recover certain pre-petition transfers the Debtor made to Wyvern Hotel, LLC ("Wyvern") in the amount of $8,500.00 and (B) disallow any and all claims Wyvern may have against the Estate. Prior to the Trustee's filing of the complaint, the parties engaged in settlement discussions and reached settlement. MODL prepared and prosecuted all settlement documents, including a stipulation of settlement, motion for approval, and motion to limit notice, which were allowed by this Court without a hearing. MODL also prepared a tolling agreement due to the impending statute of limitations for the Trustee to bring claims. Upon approval of the settlement by this Court, MODL tracked receipt of the settlement proceeds. Ultimately, the Trustee collected $2,125.00 from Wyvern for the benefit of the Estate and its creditors.

MODL's fees and expenses related to the Wyvern Adversary Proceeding during the Fee Application Period totaled $2,158.50.

### Adversary Proceeding v. The Port Authority of New York & New Jersey – 0018:

During the Fee Application Period, and after review of relevant bank records, identification of potential preference payments and making demand, at the Trustee's direction, MODL prepared a Complaint to Avoid and Recover Preferential Transfers seeking to (A) avoid and recover certain pre-petition transfers the Debtor made to The Port Authority of New York and New Jersey (the "Port Authority") in the amount of $35,000.00 and (B) disallow any and all claims the Port Authority may have against the Estate. Prior to filing the complaint, and at the Trustee's direction, the parties engaged in settlement discussions and reached settlement. MODL prepared and prosecuted all settlement documents, including a stipulation of settlement, motion for approval, and motion to limit notice, which were allowed by this Court without a hearing. Upon

approval of the settlement by this Court, MODL tracked receipt of the settlement proceeds. Ultimately, the Trustee collected $25,500.00 from the Port Authority for the benefit of the Estate and its creditors.

MODL's fees and expenses related to the Port Authority Adversary Proceeding during the Fee Application Period totaled $2,268.00.

## Adversary Proceeding v. Merrick Bank Declaratory Judgment – 0019:

During the Fee Application Period, Merrick filed a Complaint for Declaratory Judgment against the Trustee seeking a declaration that prosecution by Merrick of certain claims belonging to Merrick against VNB in the New Jersey Litigation would not violate the automatic stay applicable to the Estate. Upon receipt and review of the summons and complaint, at the Trustee's direction, MODL prepared and filed an Answer and Counterclaim in which the Trustee (a) denied Merrick's allegation that the claims Merrick brought against VNB are Merrick's claims and (b) further asserted that the issue for the declaratory action is whether the claims brought by Merrick against VNB belong to Merrick or to the Debtor. MODL also attended to service of the Trustee's Answer and Counterclaim. MODL also attended to the preparation and filing of a notice of appearance on behalf of the Trustee in the adversary proceeding. At the Trustee's request, MODL reviewed the Answer to Counterclaims filed by Merrick, as well as the Pre-Trial Order issued by this Court, the Motion of Plaintiff Merrick Bank Corporation For Judgment on the Pleadings (the "Motion for Judgment") and Memorandum of Law. In its Motion for Judgment, Merrick requested that this Court enter judgment in its favor for declaratory relief and enter judgment dismissing the Trustee's counterclaims. MODL conducted research and analysis regarding response strategies and advised the Trustee accordingly. Prior to the deadline for the Trustee's response to the Motion for Judgment, the parties engaged in discussions regarding discovery, prepared for and participated in the Rule 26(f) conference, and discussed the possibility of mediation and settlement. The parties reached terms to fully resolve and dispose of the adversary proceeding. At the Trustee's direction, MODL prepared a Motion for Order Approving Assignment and Settlement Agreement With Merrick Bank Corporation Regarding Claims Against Valley National Bank (the "Motion to Approve Re: Merrick") seeking an order approving an Assignment and Settlement Agreement between the Trustee and Merrick regarding the Estate's claims against VNB for VNB's conduct in connection with the Debtor's depository accounts at VNB. At the Trustee's direction, MODL reviewed and revised the Assignment and Settlement Agreement prepared by Merrick which, in sum, accords the Estate five percent (5%) of any recoveries that Merrick obtains from VNB. MODL also attended to filing and service of the settlement pleadings, as well as the notice of hearing on same. Pending action by this Court on the Motion to Approve Re: Merrick, at the Trustee's direction, and on behalf of the parties, MODL prepared and filed an Assented-to Motion to Continue Deadlines Pending Approval of Settlement Agreement seeking to extend certain deadlines. At the Trustee's request, MODL prepared for, and participated in, the hearing on Motion to Approve Re: Merrick on the Trustee's behalf. After hearing, the Motion to Approve Re: Merrick was allowed by this Court. At the Trustee's direction, MODL tracked dismissal of the adversary proceeding, and MODL continues to monitor the New Jersey Litigation.

MODL's fees and expenses related to the Merrick Bank Declaratory Judgment Adversary
Proceeding during the Fee Application Period totaled $10,704.00.

**Adversary Proceeding v. Aviation Advantage, Inc. – 0020:**

After making demand and receiving no satisfactory response, during the Fee Application Period,
and at the Trustee's direction, MODL prepared and filed a Complaint to Avoid and Recover
Preferential Transfers to commence the adversary proceeding and to seek to (I) avoid and
recover certain pre-petition transfers the Debtor made to Aviation Advantage, Inc. ("AAI") in the
amount of $233,580.00 and (II) disallow any and all claims AAI may have against the Estate. In
connection with preparation of the complaint, MODL reviewed payment back-up information
and researched subsequent transferee liability. Upon issuance of the summons by this Court,
MODL attended to service of the complaint and summons and prepared and filed a certificate of
service with the Court. Subsequent to filing the complaint, MODL conferred with the Trustee
regarding amendments to the complaint and researched aircraft charter status and escrow
requirements in connection with same, as well as ordinary course of business case law. At the
Trustee's direction, MODL prepared and filed an Amended Complaint to Avoid and Recover
Preferential Transfers in the amount of $31,030.00. AAI (via counsel) contacted MODL
informally regarding a potential settlement proposal. MODL assessed the new value defense
asserted by AAI, prepared an updated new value analysis and devised a response strategy. The
parties reached a settlement in principal and in order to document the terms of the settlement, at
the Trustee's direction, MODL prepared and filed a Motion to Extend Defendant's Answer
Deadline seeking to extend by thirty (30) days the deadline by which AAI must file an answer to
the complaint. MODL prepared and prosecuted all settlement documents, including a stipulation
of settlement, motion for approval and motion to limit notice, which were allowed by this Court
without a hearing. Upon approval of the settlement by this Court, MODL tracked receipt of the
settlement proceeds and prepared a Notice of Voluntary Dismissal in connection with the
adversary proceeding. Ultimately, the Trustee collected $15,000.00 from AAI for the benefit of
the Estate and its creditors.

MODL's fees and expenses related to the AAI Adversary Proceeding during the Fee Application
Period totaled $5,589.50.

**Adversary Proceeding v. Judy Tull – 0021:**

After making demand and receiving no satisfactory response, during the Fee Application Period,
and after completion of the Trustee's Investigative Report, MODL prepared and filed one
Verified Complaint against Ms. Tull and Ms. Ellison, both founding members and owners of the
Debtor, for their conduct in connection with the Shortfall, breaches of their duty to the Debtor
and violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act that
significantly damaged the Debtor and to avoid and recover certain pre-petition transfers that the
Debtor made to Ms. Tull and Ms. Ellison (the "Tull/Ellison Complaint"). Additionally, MODL
prepared and filed an Application for Preliminary Injunction against Ms. Tull and Ms. Ellison
seeking to enjoin Ms. Tull and Ms. Ellison, and their agents, from transferring, encumbering,
assigning, pledging , dissipating or spending their assets other than expenses in the ordinary
course of business until their obligations to the Estate have been satisfied. MODL attended to

service of the complaint and the preliminary injunction application, as well as the notice of emergency hearing for the preliminary injunction, and prepared and filed certificates of service with this Court. As a result of service issues, MODL prepared an Affidavit of Acceptance of Service for Ms. Tull's signature in connection with service of the Tull/Ellison Complaint and preliminary injunction application and attended to e-filing same. Additionally, at the Trustee's direction, MODL prepared Motions to Extend Ms. Tull's Answer Deadline and attended to filing and service of same. MODL engaged in settlement discussions with Ms. Tull (via counsel) and reviewed and analyzed a settlement offer, along with supporting financial information provided by Ms. Tull, and considered the implications of settlement on the settlement positions of other Founders. Additionally, MODL conducted an on-line search of the Denton County, Texas Registry of Deeds web-site to determine Ms. Tull's potential assets in order to evaluate Ms. Tull's proposed settlement terms. At the Trustee's direction, MODL prepared and prosecuted all settlement documents in connection with Ms. Tull, including a stipulation of settlement, motion for approval, motion to limit notice and agreement for judgment, which were allowed by this Court without a hearing. Upon approval of the settlement by this Court, MODL tracked receipt of the settlement proceeds and prepared and filed a Notice of Voluntary Dismissal of Adversary Proceeding as to Ms. Tull. Ultimately, the Trustee collected $10,000.00 from Ms. Tull for the benefit of the Estate and its creditors.

MODL's fees and expenses related to the Judy Tull Adversary Proceeding (as well as some overlap of fees incurred in connection with the Kay Ellison and Stanley Marshall Ellison adversary proceedings described below) during the Fee Application Period totaled $6,972.00.

### Adversary Proceeding v. Kay Ellison – 0022:

Upon making demand and receiving no satisfactory response, and upon initiating the adversary proceeding and preparing and filing the Application for Preliminary Injunction against Ms. Ellison, MODL attended to service of the complaint and the preliminary injunction application, as well as the notice of emergency hearing for the preliminary injunction, and prepared and filed certificates of service with the Court. Due to questions regarding service of the complaint and preliminary injunction application, MODL prepared an Affidavit of Acceptance of Service for Ms. Ellison's signature and attended to filing same. MODL reviewed a Motion for Admission Pro Hac Vice filed by counsel to Ms. Ellison and, pending approval, and at the Trustee's direction, prepared a Motion to Extend Ms. Ellison's Answer Deadline and attended to e-filing and service. MODL engaged in settlement discussions with Ms. Ellison (via counsel) and reviewed and analyzed her settlement offer, along with supporting financial information provided by Ms. Ellison, including residential and property ownership information and again considered the implications of settlement on the settlement positions of other Founders. At the Trustee's direction, MODL assessed Ms. Ellison's defenses and reviewed the underlying transfer materials, and prepared a settlement counter-offer. MODL reviewed a motion to further extend answer deadline filed by Ms. Ellison (via counsel), as well as a Motion for Withdrawal of Reference, Motion to Dismiss, and Answer. MODL also devised a response strategy regarding the dismissal/reference motions. After extensive negotiations, the parties reached the terms of a settlement as to Ms. Ellison, in conjunction with her husband, Stanley Marshall Ellison (described further under Adversary Proceeding Task Code 0023) ("Mr. Ellison"; together with Ms. Ellison, the "Ellisons"). At the Trustee's direction, MODL prepared and prosecuted all

settlement documents, including a stipulation of settlement, motion for approval, and motion to limit notice. Pending approval of the settlement, at the Trustee's direction, MODL prepared and filed an Assented-to Motion to Continue (I) Current Temporary Restraining Order and (II) Hearing on Trustee's Application for Preliminary Injunction and attended to service of same and prepared and filed a certificate of service. MODL prepared for, and participated in, a hearing on the Ellisons settlement which was approved by the Court. Upon approval of the settlement, MODL tracked receipt of the settlement proceeds. Ultimately, the Trustee collected the aggregate sum of $92,000.00 from the Ellisons for the benefit of the Estate and its creditors.

MODL's fees and expenses related to the Kay Ellison Adversary Proceeding during the Fee Application Period totaled $10,228.50.

### Adversary Proceeding v. Stanley Marshall Ellison – 0023:

Upon making demand and receiving no satisfactory response, during the Fee Application Period, and after completion of the Trustee's Investigative Report, MODL prepared and filed one Verified Complaint against Mr. Ellison and Mr. Warneck for their breaches of duty that significantly damaged the Debtor and to avoid and recover certain pre-petition transfers that the Debtor made to Mr. Ellison and Mr. Warneck. Additionally, MODL prepared and filed an Application for Preliminary Injunction seeking to enjoin Mr. Ellison and Mr. Warneck, and their agents, from transferring, encumbering, assigning, pledging, dissipating or spending their assets other than expenses in the ordinary course of business until their obligations to the Estate have been satisfied. MODL attended to service of the complaint and the preliminary injunction application, as well as the notice of emergency hearing on the preliminary injunction, and prepared and filed certificates of service with the Court. MODL prepared for, and participated in, a hearing on the preliminary injunction application, which was allowed by the Court. Due to questions regarding service of the complaint and preliminary injunction application, MODL prepared an Affidavit of Acceptance of Service for Mr. Ellison's counsel's signature and attended to the filing of same. MODL reviewed a Motion for Admission Pro Hac Vice filed by counsel to Mr. Ellison and, pending approval, and at the Trustee's direction, prepared an Assented-to Motion to Extend Mr. Ellison's Answer Deadline and attended to filing and service. MODL reviewed a motion to further extend answer deadline filed by Mr. Ellison (via counsel), as well as a Motion for Withdrawal of Reference, Motion to Dismiss, and Answer. The parties engaged in extensive settlement discussions as to the Ellisons and were able to reach the terms of settlement. At the Trustee's direction, MODL prepared and prosecuted all settlement documents, including a stipulation of settlement, motion for approval, and motion to limit notice. Pending approval of the settlement, at the Trustee's direction, MODL prepared and filed an Assented-to Motion to Continue (I) Current Temporary Restraining Order and (II) Hearing on Trustee's Application for Preliminary Injunction. MODL also attended to service and prepared and filed a certificate of service. MODL prepared for, and participated in, a hearing on the Ellisons' settlement pleadings and, upon approval of the settlement by the Court, MODL tracked receipt of the settlement proceeds. As mentioned previously under Adversary Proceeding – Kay Ellison (Task Code 0022), the Trustee collected the aggregate sum of $92,000.00 from the Ellisons for the benefit of the Estate and its creditors.

MODL's fees and expenses related to the Stanley Marshall Ellison Adversary Proceeding (as well as some overlap of fees incurred in connection with the Ed Warneck adversary proceeding described below as related to the preliminary injunction) during the Fee Application Period totaled $1,235.00.

## Adversary Proceeding v. Ed Warneck – 0024:

After making demand and receiving no satisfactory response, and after initiating the adversary proceeding, and preparing and filing the Application for Preliminary Injunction, against Mr. Ellison and Mr. Warneck, MODL attended to service of the complaint and the preliminary injunction application, as well as the notice of emergency hearing for the preliminary injunction, and prepared and filed certificates of service with the Court. Soon after initiating the adversary proceeding against Mr. Warneck, the Trustee was informed by Mr. Warneck that he had filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court – District of South Carolina (Case No. 14-01611-dd) (the "Warneck Bankruptcy Case"), which case is currently pending. At the Trustee's direction, MODL prepared and filed a Suggestion of Bankruptcy with this Court on Mr. Warneck's behalf. Additionally, at the Trustee's request, MODL prepared and filed notices of appearance in the Warneck Bankruptcy Case on behalf of the Trustee and his counsel. Also, on the Trustee's behalf, MODL engaged in discussions with Mr. Warneck's bankruptcy counsel regarding a possible waiver by Mr. Warneck of his discharge as to the Trustee's claims and also a possible agreement as to a resolution of the adversary proceeding. MODL reviewed Mr. Warneck's financial statements and schedules filed in the Warneck Bankruptcy Case to assist with formulation of the grounds for a potential discharge objection and motion for stay relief. At the Trustee's direction, MODL also corresponded with Mr. Warneck's bankruptcy trustee in connection with an extension of Mr. Warneck's discharge objection deadline. MODL assisted the Trustee with the preparation and filing of a proof of claim in the Warneck Bankruptcy Case in order to preserve the Debtor's potential claims against Mr. Warneck. Ultimately, in light of Mr. Warneck's current financial condition and the expectation that it is unlikely to improve in the future, the Trustee instructed MODL to maintain the proof of claim filed in Mr. Warneck's bankruptcy case, but to otherwise abandon efforts to actively pursue claims against Mr. Warneck in the adversary proceeding.

MODL's fees and expenses related to the Ed Warneck Adversary Proceeding (as well as some overlap of fees incurred in connection with the Stanley Marshall Ellison adversary proceeding described above as related to the preliminary injunction) during the Fee Application Period totaled $8,102.50.

## Adversary Proceeding v. Avondale Aviation I, LLC – 0025:

After making demand and receiving no satisfactory response, during the Fee Application Period, and after completion of the Trustee's Investigative Report, and at the Trustee's direction, MODL prepared and filed a Verified Complaint to commence the adversary proceeding and to seek (I) to avoid and recover certain pre-petition transfers the Debtor made to or for the benefit of Avondale Aviation I, LLC, the buyer of the majority interest in the Debtor ("Avondale") in the amount of $107,249.63, (II) to avoid and recover certain fraudulent transfers made by the Debtor to or for the benefit of Avondale, (III) damages as a result of Avondale's breach of fiduciary duty to the

Debtor, (IV) to disallow any claims Avondale may have against the Estate, and (V) to obtain an injunction against transfers of assets of Avondale outside the ordinary course of business until its obligations to the Estate are satisfied.  At the Trustee's direction, MODL also prepared and filed an Application for Preliminary Injunction seeking to enjoin Avondale and its agents from transferring, encumbering, assigning, pledging, dissipating or spending assets other than expenses in the ordinary course of business until its obligations to the Estate have been satisfied.  Upon issuance of the summons by this Court, MODL attended to service of the complaint, summons and preliminary injunction application and prepared and filed a certificate of service.  MODL also prepared and filed a supplemental certificate of service in connection with the notice of emergency hearing on the preliminary injunction application.  MODL also prepared for, and participated in, the emergency hearing on the preliminary injunction motion on the Trustee's behalf.  At the Trustee's request, MODL reviewed the answer filed by Avondale, assessed Avondale's affirmative defenses, developed a strategy regarding additional theories of liability for undercapitalizing the company and veil piercing grounds and considered discovery to request from Avondale.  MODL prepared for, and participated in, the Rule 26(f) conference and prepared and filed the Rule 7026(f) Conference Report and Certification.  During the course of extensive negotiations, but due to the lack of settlement progress, at the Trustee's direction, MODL reviewed timing and steps for discovery, prepared a new value analysis and prepared and served initial disclosures.  Upon receipt, MODL reviewed Avondale's initial disclosures, as well as discovery requests received by the Trustee.  MODL assisted the Trustee with the development of strategy for interrogatory responses and attended to preparation of same on the Trustee's behalf.  At the Trustee's request, MODL prepared and filed a Response to Defendant's Motion to Extend Deadline for the Completion of Discovery, attended to service and prepared and filed a certificate of service.  MODL attended to an asset search for Avondale and Hank Torbert (Avondale's principal) in order to evaluate the merits of the Trustee's claims and collectability and performed research regarding the rules for business judgment.  The parties agreed to the terms of a settlement, and at the Trustee's direction, MODL prepared and filed a Joint Motion to Continue Pretrial Memorandum Deadline to allow the parties sufficient time to document the settlement, which was allowed by the Court.  MODL is in the process of preparing the settlement pleadings.  When finalized, MODL will file the settlement pleadings with the Court and, assuming approval, the Trustee will collect $7,500.00 from Avondale, in installments, for the benefit of the Estate and its creditors.

MODL's fees and expenses related to the Avondale Adversary Proceeding during the Fee Application Period totaled $27,904.00.

## Adversary Proceeding v. Hilton Garden Inn – 0026:

During the Fee Application Period, after making demand and receiving no satisfactory response, and at the Trustee's direction, MODL conducted research as to hotel ownership and prepared and filed a Complaint to Avoid and Recover Preferential Transfers to commence the adversary proceeding and to (a) avoid and recover certain pre-petition transfers the Debtor made to Beechwood Lakeland Hotel, LLC a/k/a Beechwood Lkld Hotel, LLC a/k/a Hilton Garden Inn a/k/a Hilton Garden Inn Lakeland a/k/a Hilton Garden Front Desk ("Hilton") in the amount of $10,107.28 and certain post-petition transfers the Debtor made to Hilton in the amount of $9,260.13 and (b) disallow any and all claims Hilton may have against the Estate.  Upon

issuance of the summons by the Bankruptcy Court, MODL attended to service of the complaint and summons and prepared and filed a certificate of service. As a result of information provided to MODL by Hilton in response to the complaint, MODL and the Trustee considered an amended complaint to include an additional count for antecedent debt. At the Trustee's request, MODL prepared, filed and served an Amended Complaint to Avoid and Recover Preferential Transfers and prepared and filed a certificate of service. At the Trustee's request, MODL reviewed the answer filed by Hilton. MODL conferred with the Trustee to develop a strategy for litigation, timing and deadlines. During the litigation phase of this adversary proceeding, MODL prepared for the Rule 7026(f) Conference and conferred with the Trustee to assess Hilton's defenses and to develop parameters for a potential settlement. MODL participated in the Rule 7026(f) Conference and prepared and filed a Rule 7026(f) Conference Report and Certification. At the Trustee's direction, MODL also prepared initial disclosures and discovery requests on behalf of the Trustee, and attended to transmittal of same to counsel for Hilton. The parties engaged in substantial settlement discussions and reached terms of settlement. In order to allow the parties sufficient time to document the settlement, and at the Trustee's direction, MODL prepared and filed an Assented-to Motion to Extend Deadlines Set Forth in Pretrial Order, which was allowed by the Court. Additionally, MODL attended to service of same. MODL prepared and prosecuted all settlement documents, including a stipulation of settlement, motion for approval, and motion to limit notice, which were allowed by the Court without a hearing. Upon approval of the settlement, MODL tracked receipt of the settlement proceeds and filed a Stipulation of Dismissal in the adversary proceeding. Ultimately, the Trustee collected $14,000.00 from Hilton for the benefit of the Estate and its creditors.

MODL's fees and expenses related to the Hilton Adversary Proceeding during the Fee Application Period totaled $11,753.50.

## Adversary Proceeding v. Orlando/Sanford International Airport – 0028:

During the Fee Application Period, and after review of relevant bank records, identification of potential preference payments and making demand, at the Trustee's direction, MODL prepared a Complaint to Avoid and Recover Preferential Transfers seeking to (A) avoid and recover certain pre-petition transfers the Debtor made to Orlando Sanford International, Inc. a/k/a Orlando Sanford International Airport ("Orlando Sanford") in the amount of $108,309.88 and (B) disallow any and all claims Orlando may have against the Estate. At the Trustee's direction, MODL attended to e-filing and service of the complaint and summons and prepared and filed a certificate of service regarding same. Subsequent to filing the complaint, allegations arose as to possible antecedent debt. MODL conferred with the Trustee and, at the Trustee's request, MODL prepared and filed an amended complaint and attended to service of the amended complaint and summons. MODL also prepared and filed a certificate of service. At the Trustee's direction, MODL reviewed an analysis of defenses and invoices provided by Orlando Sanford (via counsel) and conducted a new value analysis of the invoices. At the Trustee's direction, the parties engaged in settlement discussions and reached settlement. MODL prepared and prosecuted all settlement documents, including a stipulation of settlement, motion for approval, and motion to limit notice, which were allowed by this Court without a hearing. Upon approval of the settlement by this Court, MODL tracked receipt of the settlement proceeds. At the Trustee's request, MODL also prepared a Notice of Voluntary Dismissal and attended to

filing and service of same upon entry of the final order approving the settlement. Ultimately, the Trustee collected $7,500.00 from Orlando Sanford for the benefit of the Estate and its creditors.

MODL's fees and expenses related to the Orlando Sanford Aversary Proceeding during the Fee Application Period totaled $6,400.00.

### Adversary Proceeding v. EIN Management, LLC – 0029:

During the Fee Application Period, and after review of relevant bank records, identification of potential preference payments and making demand, at the Trustee's direction, MODL prepared a Complaint to Avoid and Recover Preferential Transfers and Post-Petition Transfers seeking to (A) avoid and recover certain pre-petition transfers the Debtor made to EIN Management, LLC a/k/a Employers' Innovation Network, LLC ("EIN") in the amount of $173,098.46, (B) avoid and recover certain post-petition transfers the Debtor made to EIN in the amount of $5,750.00, and (C) disallow any and all claims EIN may have against the Estate. At the Trustee's direction, MODL attended to filing and service of the complaint and summons, and prepared and filed a certificate of service. Subsequent to filing the complaint, allegations arose as to possible antecedent debt. MODL conferred with the Trustee and, at the Trustee's request, MODL prepared and filed an amended complaint and attended to service of the amended complaint and summons. MODL also prepared and filed a certificate of service in connection with the amended complaint. EIN (via counsel) contacted the Trustee's counsel informally and the parties engaged in settlement discussions. At the Trustee's direction, MODL reviewed the defenses asserted by EIN and evaluated EIN's settlement proposal. At the Trustee's direction, the parties reached the terms of settlement. To allow the parties time to document the settlement, and at the request of the Trustee, MODL prepared and filed a Motion to Extend Defendant's Answer Deadline and attended to service of same. MODL prepared and prosecuted all settlement documents, including a stipulation of settlement, motion for approval, and motion to limit notice, which were allowed by this Court without a hearing. Upon approval of the settlement by this Court, MODL tracked receipt of the settlement proceeds. At the Trustee's request, MODL also prepared a Stipulation of Dismissal which was not filed as the Bankruptcy Court closed the adversary proceeding upon approval of the settlement. Ultimately, the Trustee collected $5,750.00 from EIN for the benefit of the Estate and its creditors.

MODL's fees and expenses related to the EIN Adversary Proceeding during the Fee Application Period totaled $5,297.50.

### Adversary Proceeding v. TEM Enterprises d/b/a Xtra Airways – 0030:

During the Fee Application Period, and after review of relevant bank records and identification of potential preference payments, MODL made demand on Xtra Airways ("Xtra"). Xtra (via counsel) responded to the demand informally and, at the Trustee's direction, MODL reviewed and analyzed Xtra's response and asserted defenses. MODL and counsel for Xtra engaged in settlement discussions and, at the Trustee's direction, MODL formulated and drafted a settlement proposal. Due to the impending statute of limitations deadline, MODL also drafted a Tolling Agreement and obtained the signature of Xtra (via counsel). Ultimately, Xtra filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy

Court for the District of Nevada commencing Case No. 14-13955-abi (the "Xtra Bankruptcy Case"). MODL has continued to reviewed pleadings filed in the Xtra Bankruptcy Case, as well as the impact of the bankruptcy filing on the statute of limitations. As a result of negotiations, the parties were able to reach the terms of a settlement and, at the Trustee's request, MODL prepared a stipulation of settlement (the "Xtra Stipulation"), motion to approve, motion to limit notice and certificate of service. MODL also attended to filing and service of the settlement pleadings which were allowed by the Court without a hearing. Pursuant to the Xtra Stipulation, the Trustee has been allowed a general unsecured claim in the amount of $65,000.00 in the Xtra Bankruptcy Case in full satisfaction of any and all of the Trustee's claims against Xtra. At the Trustee's request, MODL prepared and filed a proof of claim in the Xtra Bankruptcy Case and will continue to monitor the Xtra Bankruptcy Case, as needed, in connection with any potential distributions to the Trustee.

MODL's fees and expenses related to the Xtra Adversary Proceeding during the Fee Application Period totaled $7,541.00.

### Adversary Proceeding v. Avfuel Corporation – 0031:

During the Fee Application Period, and after review of relevant bank records and identification of potential preference payments, MODL made demand on Avfuel Corporation ("Avfuel"). At the Trustee's direction, MODL prepared a Complaint to Avoid and Recover Preferential Transfers seeking to (a) avoid and recover certain pre-petition transfers the Debtor made to Avfuel, (b) require Avfuel to turn over Estate property to the Trustee and obtain an accounting of Estate property in Avfuel's possession, and (c) disallow any and all claims Avfuel may have against the Estate and attended to service of the complaint on summons. MODL also prepared and filed a certificate of service in connection with service of the complaint and summons. Prior to filing the complaint, MODL engaged in potential settlement discussions with Avfuel (via counsel) and, due to the pending statute of limitations, prepared and finalized a tolling agreement to extend the statute of limitations deadline. In response to receipt of the complaint, Avfuel (via counsel) produced voluminous documents for review, which MODL reviewed at the Trustee's request. MODL reviewed Avfuel's response, assessed ordinary course and contemporaneous defenses, and researched case law and interpretations of contemporaneous and ordinary course defenses and considered matter-specific facts asserted by Avfuel. Based on MODL's assessment of the defenses asserted by Avfuel, MODL developed and drafted a settlement proposal for the Trustee and, with the Trustee's authorization, MODL forwarded the proposed settlement offer to Avfuel. The parties reached settlement and, at the Trustee's direction, MODL prepared a stipulation of settlement, motion to approve, motion to limit notice and certificate of service. MODL also attended to filing and service of the settlement pleadings which are currently pending before the Court. The Trustee is in receipt of the settlement proceeds and, assuming approving, the Trustee will collect $30,000.00 from Avfuel for the benefit of the Estate and its creditors.

MODL's fees and expenses related to the Avfuel Adversary Proceeding during the Fee Application Period totaled $13,477.50.

**Tax Issues – 9150:**

During the Fee Application Period, MODL coordinated with the Trustee's Accountant the issuance of Form W-2s requested by former employees of the Debtor. The Trustee regularly consulted with the Trustee's Accountant about Estate tax issues.

MODL's fees and expenses related to Tax Issues during the Fee Application Period totaled $147.00.

**Asset Recovery – 9250:**

Prior to the pursuit of the Adversary Proceedings described above, and prior to the determination by the Trustee for the necessity of the abandonments and lease rejections described below, MODL assisted the Trustee with all legal issues related to asset recovery. Among other things, MODL assisted the Trustee with issues related to:

1.  Securing and obtaining turnover of funds in the Debtor's bank accounts at various locations;

2.  Securing the Myrtle Beach Office;

3.  Requesting a forwarding order through the United States Postal Service in order to review all of the Debtor's incoming mail; and

4.  Obtaining and analyzing bank statements from various institutions to ensure collection of accounts receivable and to identify potential preference payments.

In addition, during the Fee Application Period, MODL gathered information regarding the Debtor's leased reservation center at 1334 Ritter Avenue, Glen Daniels, West Virginia (the "Reservation Center") and spoke to the landlord of the Reservation Center regarding details of the leased space and to determine assets located therein and the extent of access by the Debtor's former principals. Upon receiving allegations of removal of assets and documents from the Reservation Center, the Trustee instructed MODL to secure the Reservation Center remotely. At the Trustee's request, MODL spoke to and corresponded with the landlord of the Myrtle Beach Office in order to recover assets from the safe located in the Myrtle Beach Office. MODL also responded to requests by counsel to the Debtor's former managers for access to tax records.

During the Fee Application Period, MODL also assisted the Trustee with the evaluation of issues related to pre-petition litigation between the Debtor and Falcon Air Express ("Falcon Air") possibly pending in the Federal District Court of South Carolina and in which the parties had allegedly reached an agreement just days prior to the Petition Date. On the Trustee's behalf, MODL corresponded, and engaged in discussions, with counsel to Falcon Air, reviewed the case docket report and reviewed various pleadings filed in the case to determine the status of the case and whether or not the Debtor's claims against Falcon Air hold any value for the Estate. Ultimately, the Trustee determined there was no value to the Estate in the Falcon Air litigation and instructed MODL to take no further action. Additionally, based on allegations of the

involvement of the same parties, and at the Trustee's request, MODL reviewed the case docket and various pleadings in connection with a bankruptcy case filed by Swift Air to identify any connections with the Debtor's case. At the Trustee's direction, MODL continues to monitor the Chapter 11 bankruptcy case filed by Sky King, Inc. in the United States Bankruptcy Court – Eastern District of California, a creditor of the Debtor, to determine any implications for potential recovery. MODL reviewed various pleadings filed in the case and prepared and filed a timely proof of claim and notices of appearance on behalf of the Trustee and MODL. MODL also conducted an on-line search regarding possible bankruptcy filings by the Debtor's managers.

As previously discussed, prior to the Petition Date, the Debtor was a public charter operator (tour operator) with charter programs serving various points in the United States. The Debtor operated its business primarily from its Myrtle Beach Office. As a public charter operator, the Debtor's operations were governed by, among other things, regulations of the DOT. Among other things, while operating, the Debtor was required to maintain a security agreement, such as a bond, to protect passenger monies deposited for airline travel in the event services were cancelled and incidental passenger expenses reasonably incurred as a result of such cancellations. As a result, on October 12, 2006, the Debtor posted a Public Charter Operator's Surety Bond, Bond No. 41060098 (the "Bond") in the amount of $200,000.00 (the "Bond Amount") to ensure the Debtor's compliance with applicable DOT regulations. Platte River Insurance Company ("Platte River") guaranteed the Bond as the surety, subject to cancellation by the Debtor or Platte River, with notice to the DOT. At the Trustee's direction, MODL reviewed DOT regulations regarding required surety for public charter airlines and reviewed the underlying Bond. MODL engaged in discussions with counsel for Platte River regarding turnover of the Bond to the Estate and, upon reaching the terms of an agreement, at the Trustee's direction, MODL prepared a (A) Stipulation and Release Between Joseph H. Baldiga, Chapter 7 Trustee, and Platte River Insurance Company Regarding Public Charter Operator's Surety Bond (the "Bond Stipulation"), (B) Motion to Approve Stipulation and Release Between Joseph H. Baldiga, Chapter 7 Trustee, and Platte River Insurance Company (Re: Public Charter Operator's Surety Bond) (the "Bond Approval Motion") and (C) Motion to Limit Notice (the "Motion to Limit", collectively with the Bond Stipulation and Bond Approval Motion, the "Bond Turnover Pleadings") and worked with Platte River and the DOT to finalize the Bond Stipulation in a form satisfactory to all parties. MODL also attended to filing and service of the Bond Turnover Pleadings, which were allowed by this Court without a hearing. The Bond Stipulation provided, among other things, that the Bond Amount would be paid to the Estate and would be general property of the Estate; provided however, that if allowed claims asserted under the Bond for monies lost in connection with the Debtor's cancelled flights and ceased operations and for expenses incurred due to those cancellations and the cessation of operations (the "Bond Claims") total at least $175,000,00, then $175,000.00 of the Bond Amount would be payable only to those allowed Bond Claims, while the balance of the Bond Amount (i.e., $25,000.00) would become general property of the Estate to be administered by the Trustee in the normal course of his administration of the Debtor's Estate. If allowed Bond Claims are less than $175,000.00, the Bond Amount comprising the difference between the total amount of allowed Bond Claims and $175,000.00 would also become general property of the Debtor's Estate. The Bond Turnover Pleadings resulted in the recovery of $200,000.00 to be used by the Trustee, pursuant to the terms of the Bond Stipulation, in the administration and reconciliation of any and all claims asserted against the Bond. The

Bond Claims ultimately exceeded the $175,000.00 threshold and, as described in greater detail under category 9290 below, the Trustee distributed (among other funds) the full $175,000.00 to Charter Participants.

MODL's fees and expenses related to Asset Recovery during the Fee Application Period totaled $25,538.00.

## Preference/Fraudulent Conveyance Claims – 9255:

During the Fee Application Period, and at the Trustee's direction, MODL assisted the Trustee in all legal aspects of asset recovery and preference/fraudulent conveyance claims through the proceeding. As discussed previously, MODL secured the Debtor's Myrtle Beach Office and the records and computers located therein and assisted the Trustee in the identification, closure and collection of the Debtor's bank accounts, establishment of a forwarding order through the United States Postal Service for re-direction of the Debtor's mail to the Trustee for monitoring purposes, and began the process of identifying and liquidating assets of the Estate. At the Trustee's direction, and with assistance from the Trustee's Accountant, MODL identified and compiled all of the Debtor's bank records, and began the process of examining preference and fraudulent transfers by analyzing bank records in order to identify all transfers made by the Debtor to creditors and insiders prior to the Petition Date and developed a strategy regarding preference/fraudulent transfer recovery. In addition, MODL conducted research in connection with recovery strategy related to fraudulent transfer grounds and the threshold amount for demands, and investigated potential insiders.

Based on its extensive review and analysis of the Debtor's books and records, MODL spent considerable time identifying those insiders and creditors to receive demand letters, preparing and finalizing demand letters on behalf of the Trustee, and addressed disclosure/relationship issues and service issues for corporate and out-of-state recipients in connection with potential preference demand recipients. In each instance, on the Trustee's behalf, MODL corresponded with various transferees and their respective counsel, reviewed and evaluated responses and underlying transfer materials, granted response deadline extensions, when requested, developed settlement parameters and considered settlement offers and drafted substantive responses and counter-offers to responses and settlement offers, assessed collectability issues and advised the Trustee regarding further action needed, if any. Additionally, based on responses to the demand letters, MODL worked with the Trustee's Accountant for additional back-up information, when necessary. MODL also developed a tracking process and maintained a control chart as to all demands and responses and reviewed proofs of claim filed by preference transferees, as filed. Twelve (12) preference demands were resolved without the need for litigation and resulted in settlements in the aggregate sum of $166,110.00 for the benefit of the Estate and its creditors (as noted below). At the Trustee's direction, MODL drafted templates for the settlement pleadings in connection with the preference settlements, including provisions for proofs of claim and releases. Certain of the non-insider preference recipients were unresponsive and certain others responded informally to the Trustee's demand letter. At the Trustee's direction, MODL considered abandonment of claims for all "No Further Action" preference matters and determined that no further action was needed in connection with certain of the demand letters and identified recipients to receive a second demand letter. MODL drafted and attended to the

transmittal of second demand letters to certain recipients and continued to assess responses and defenses, develop settlement strategies and related review of underlying transfer materials, and engaged in negotiations with transferees.

The following amounts were recovered prior to the initiation of adversary proceedings for the benefit of the Estate and its creditors:

| | |
|---|---|
| Aeromotive Ground Support | $11,500.00 |
| Airport Terminal Services, Inc. | $40,000.00 |
| Garofalo Goerlich Hainbach, P.C. | $2,500.00 |
| Horry County Department of Airports/ | |
| PFC and Myrtle Beach International Airport | $5,000.00 |
| Kalamazoo County Treasurer and | |
| Kalamazoo/Battle Creek Int'l Airport/PFC | $25,000.00 |
| Massachusetts Port Authority | $10,000.00 |
| McNair Law Firm, P.A. | $9,500.00 |
| Niagara Frontier Transportation Authority | $1,610.95 |
| Sheltair Aviation Services | $5,000.00 |
| Springfield Airport Authority | $14,000.00 |
| Swissport Fueling, Inc. and | |
| Swissport North America, Inc. | $25,000.00 |
| Worldwide Flight Services, Inc. | $17,000.00 |

During the course of resolving the avoidance actions on behalf of the Trustee, the statutory deadline for the Trustee to either (a) file a complaint or (b) reach consensual resolution with respect to the avoidance actions was reaching its expiration date. In light of pending settlements, and in order to facilitate settlement discussions and avoid unnecessary costs and expenses for the parties, at the Trustee's direction, MODL conducted research regarding tolling agreements and the procedures for approval of same. At the Trustee's direction, MODL prepared and filed a Motion to (I) Approve Form of Tolling Agreement and (II) Extend Certain Deadlines, as well as Motion to (I) Approve Second Form of Tolling Agreement and (II) Extend Certain Deadlines (the "Motions to Approve Form of Tolling Agreement") seeking to extend the time to file suit against. MODL also prepared the form of tolling agreement in connection with the Motions to Approve Form of Tolling Agreement, attended to service of the Motions to Approve Form of Tolling Agreement and prepared and filed certificates of service. Upon approval of the motions, MODL prepared various tolling agreements for transmittal to opposing counsel and tracked receipt by the Trustee of the executed agreements.

Based on MODL's investigation, and with the Trustee's assistance, MODL developed a plan for the preparation and timing of preference and fraudulent transfer complaints for unresolved matters, including insiders. In preparation of initiating the adversary proceedings, MODL assisted the Trustee with further review of insider transfer documents and developed and drafted complaint grounds for fraudulent transfers and preference counts and drafted an injunction motion. Once the Trustee directed MODL to initiate an adversary proceeding, MODL segregated time by each complaint as described in the adversary proceeding matters discussed above.

With MODL's assistance and thorough background-work related to the investigation of potential preferences and fraudulent transfers, the Trustee has been able to make significant recoveries for the bankruptcy Estate.

MODL's fees and expenses related to Preference and Fraudulent Transfer Analysis during the Fee Application Period totaled $140,816.00.

**Asset Disposition – 9260:**

During the Fee Application Period, MODL assisted the Trustee with securing the assets and records of the Debtor, as well as conducting an assessment of potential ground equipment assets for the Estate. On behalf of the Trustee, MODL prepared for, and traveled to, South Carolina in order to conduct a preliminary review of the Debtor's records and to personally view certain of the Debtor's assets. In addition, a representative from the Trustee's Accountant's office accompanied MODL to South Carolina to assist with retrieval of the Debtor's accounting records and computers. In preparation for the site visit, MODL reviewed the Debtor's schedules, researched the potential for ground equipment assets, corresponded with representatives of various airports at which the Debtor operated in order to locate and identify ground equipment owned and/or leased by the Debtor, as well as to identify leases for airport space. Prior to arriving for the site visit, MODL also coordinated access for Trustee's counsel to the a storage unit rented by the Debtor from Strand Storage Center in Myrtle Beach (the "Myrtle Beach Storage Unit"), as well as the Debtor's locked spaces at Myrtle Beach Airport. At the Trustee's direction, MODL also attended to numerous inquiries from parties interested in a possible sale of ground equipment, office equipment, and/or the Debtor's customer information. At the Trustee's direction, MODL also engaged in discussions with the Debtor's lender regarding an equipment and accounts receivable lien and reviewed loan documents provided by the lender. During the site visit, and on the Trustee's behalf, MODL visited the Myrtle Beach Office, the Myrtle Beach Storage Unit, and the Myrtle Beach International Airport located at 1100 Jetport Road, Myrtle Beach, South Carolina (the "Myrtle Beach Airport"). At the Myrtle Beach Airport, the Trustee's representatives toured various airport spaces leased by the Debtor and personally viewed the Debtor's ground equipment, catering goods and airport assets. Based on their site visit and review of the Debtor's records, the Trustee's representatives took possession of certain of the Debtor's records and assets, including all computers from the Myrtle Beach Office (the "Computers"). Upon returning from the site visit, at the Trustee's direction, MODL assessed the values of all of the Debtor's airport leases, compiled an inventory list of all hard assets, and considered an asset sale in the context of the lender's lien, including, among other things, a sale of customer e-mail addresses, purchase routes, accounts receivable and hard assets. MODL also compiled a list of all accounts receivable and identified connections for possible preference actions. On the Trustee's behalf, MODL also engaged in discussions with lender's counsel regarding, among other things, lien perfection and a possible carve-out agreement. MODL continued to engage in lengthy negotiations with multiple potential buyers, evaluate and consider numerous purchase offers for various assets, consider an asset sale vs. abandonment of all assets and leases, develop acceptable offer parameters and researched the parties submitting offers. At the Trustee's direction, the Trustee's Accountant removed and preserved the hard drives from the Computers, leaving no data on the Computers and no longer necessary for the administration of

the Estate. As a result, at the Trustee's direction, MODL prepared a Notice of Abandonment of Certain Estate Property (Re: Computers) and attended to filing and service of the abandonment. MODL also prepared and filed a supplemental certificate of service in connection with the abandonment and requested a Certificate of No Objection after passage of the response deadline. After considering the possibility of selling some or all of the Debtor's assets with the Bank's consent, after engaging in extensive negotiations with a potential purchaser who declined to move forward with a purchase, limited interest from other potential buyers, the size of the Bank's lien, and the location of the Debtor's assets in multiple states, the Trustee determined that a sale of the Debtor's assets is not a viable option and instructed MODL to prepare a second abandonment notice. Based on the Trustee's request, MODL prepared a Notice of Abandonment of Debtor's Personal Property (Including Ground Equipment, Miscellaneous Office Equipment, and Furnishings and Supplies) providing notice of the Trustee's intention to abandon the Estate's interest in the Debtor's tangible personal property and attended to filing and service of same. After passage of the response deadline, MODL requested and filed a Certificate of No Objection. Additionally, at the Trustee's direction, MODL also prepared a Motion by Chapter 7 Trustee to Reject Any And All Tenancy and/or Use and Occupancy Agreements as of April 11, 2012 (the "Motion to Reject") seeking to reject any and all leases or agreements to which the Debtor may be a party for the tenancy and/or use and occupancy of any real property. MODL attended to filing and service of the Motion to Reject, which was allowed by the Court without a hearing. MODL also assisted the Trustee by preparing, filing and serving a Statement of No Objection in response to a motion for relief filed by Horry County Aiport.

MODL's fees and expenses related to Asset Disposition during the Fee Application Period totaled $25,753.50.

### Case Administration – 9280:

Time spent in this category related mostly to MODL's representation of the Trustee immediately following conversion of the case. At the Trustee's request, MODL reviewed and assessed the Debtor's Schedules, Statement of Financial Affairs and Notice of Post-Petition Creditors, and confirmed the absence of a 401(k) plan.

MODL's fees and expenses related to Case Administration during the Fee Application Period totaled $421.00.

### Claims Administration and Objections – 9290:

A significant portion of MODL's fees and expenses related to claim reconciliation and the Trustee's distribution to Charter Participants of an initial (and perhaps only) dividend of approximately 26% of Charter Participant Claims.

During the Fee Application Period, at the Trustee's direction, MODL prepared and filed a Motion to Establish a Bar Date by Which All Creditors Asserting Chapter 11 Administrative Expense Claims Must File Such Claims and considered issues regarding service of the Administrative Bar Date Motion on all consumer creditors. At the Trustee's direction, MODL attended to service of the Administrative Bar Date Motion and prepared and filed a certificate of

service, as well as a supplemental certificate of service, with the Court. MODL also reviewed administrative claims filed by the Department of Transportation (the "DOT Administrative Request"), Riemer & Braunstein, LLP (the "R&B Administrative Request") and the Port Authority of New York and New Jersey (the "NY Port Authority Administrative Request"). MODL reviewed each administrative request's underlying claim materials and developed response strategies as to whether or not to defer or object. After negotiations between the parties, and at the Trustee's direction, MODL prepared and filed a Joint Motion to (I) Continue Response Deadline and Hearing on the DOT's Chapter 11 Administrative Claim and (II) Defer Determination of the DOT's Chapter 11 Administrative Claim (the "DOT Motion to Continue") seeking to continue, generally, the objection/response deadline and hearing scheduled in connection with the DOT Administrative Request and to defer determination of the DOT's Administrative Request until such time as one or both of the parties request a new response deadline and hearing date. MODL attended to service of the DOT Motion to Continue and prepared and filed a certificate of service regarding same. The DOT Motion to Continue was allowed by this Court without a hearing. After negotiations with Riemer & Braunstein, LLP, counsel to the Debtor, at the Trustee's request, MODL prepared and filed a Stipulation Regarding Application of Riemer & Braunstein, LLP for (I) Compensation and Reimbursement of Expenses as Counsel to the Debtor in the Debtor's Chapter 11 Proceeding and (II) Authorization Allowance in the Amount of (and Payment From) Retainer on an Interim Basis (the "R&B Administrative Request Stipulation"), along with an approval motion. MODL also attended to service of the R&B Administrative Request settlement pleadings and prepared and filed a certificate of service. The R&B Administrative Request Stipulation was also approved by this Court without a hearing. Upon review of the NY Port Authority Administrative Request, and after consideration of an objection within the context of a pending preference demand, at the Trustee's direction, MODL prepared and filed an Objection to Claim No. 1396-1 of the Port Authority of New York and New Jersey (the "Port Authority Objection") on the basis that, among other things, the supporting documentation attached to the claim indicated that all charges were incurred after the Conversion Date. The Trustee requested that the Port Authority claim be disallowed as a Chapter 11 administrative claim and allowed as an unsecured, non-priority claim. MODL attended to service of the Port Authority Objection and hearing notice and prepared and filed a certificate of service. MODL also prepared, filed and served a Report and Hearing Agenda. The claimant did not respond to the Port Authority Objection and, therefore, the Port Authority Objection was allowed, as requested by the Trustee, without a hearing.

During the Fee Application Period, due to the extensive number of creditors, professional service providers, landlords, and consumer creditors, MODL oversaw the creation of a master service list, including compilation of contact information for governmental agencies specific to the Debtor's case (i.e., the Transportation Security Administration and Department of Transportation) and attended to maintenance and periodic updates. MODL also responded to an extensive number of telephone calls and inquiries from creditors, counsel to creditors and Charter Participants regarding claim and priority issues, timeline for distribution, filing deadlines and abandonment issues, as well as requests for proofs of claim and instructions for completion of same. MODL also received numerous proofs of claim from Riemer & Braunstein that were received by Riemer & Braunstein from creditors. MODL reviewed the claims register maintained by the Bankruptcy Court and, after confirming that the claims had not already been filed with the Bankruptcy Court, forwarded those claims needing to be filed to the Bankruptcy

Court for filing. MODL also periodically reviewed the Bankruptcy Court's claims register in connection with preference recoveries to determine if claims were filed by various potential preference defendants.

During the Fee Application Period, MODL also advised the Trustee regarding all legal issues related to claims. As previously discussed, prior to the Petition Date, the Debtor was a public charter operator (tour operator) with charter programs serving various points in the United States. Two days prior to the Petition Date, the Debtor ceased operation of its tour programs, stopped accepting all flight reservations and terminated reservation capabilities on its web-site. The Debtor never resumed operations. By the time of these actions, the Debtor had previously accepted flight reservations (and payment) from thousands of Charter Participants, who were then unable to fly with the Debtor, and who were left with claims for the monies lost in connection with the Debtor's cancelled flights and ceased operations and for expenses incurred due to the cancellations and the cessation of operations. Since the Petition Date, thousands of Charter Participants have asserted claims in multiple forums for the monies lost in connection with the Debtor's cancelled flights: (i) claims have been asserted against the Bond (i.e., the Bond Claims); (ii) claims have been asserted against VNB and the VNB Account (the "VNB Claims"); and (iii) claims have been filed in this bankruptcy case in the form of proofs of claim (the "Filed Claims"; collectively with the Bond Claims and the VNB Claims, the "Claims"). While a large number of the Charter Participants were reimbursed via their credit or debit cards, a vast number of Charter Participant were not reimbursed (the "Unreimbursed Charter Participants"). As discussed previously, funds totaling $250,000.00 were available for payment to Unreimbursed Charter Participants on account of their claims, consisting of (a) a portion ($175,000.00) of the proceeds of the bond (the "Bond") guaranteed by Platte River and (b) a portion ($75,000.00) of funds that were in certain accounts maintained by VNB.

Pursuant to the Bond Stipulation, the Bond Amount was turned over to the Estate by Platte River, along with any and all claims asserted pursuant to the Bond, and Platte River also agreed to provide the Trustee all information relating to any and all Bond Claims received by Platte River on an on-going basis through January 15, 2013 for the purpose of reviewing and evaluating all Bond Claims. At the Trustee's direction, MODL coordinated with Platte River (directly and via Platte River's counsel) regarding production of the Bond Claims and, upon receipt, reviewed and assessed the information and developed parameters for a comprehensive review of the Bond Claims. Additionally, MODL identified information missing from Platte River's claim information and worked with Platte River directly to address the missing information. Due to the high volume of Claims asserted, MODL coordinated the creation of a master datatable for tracking all Claims (the "Claim Master Datatable"). MODL also received information from VNB as to the VNB Claims and obtained copies of all Filed Claims from the Bankruptcy Court and attended to the integration of the Bond Claims, VNB Claims and Filed Claims into the Claim Master Datatable. The total number of Claims asserted is approximately 6,000, consisting of approximately 2,300 Platte River Claims, 1,800 VNB Claims and 1,800 Filed Claims, in an aggregate total amount of approximately $2,832,000.

During the initial stage of the Claims assessment, MODL determined extensive discrepancies as to the types and priority of claims asserted by Charter Participants. Together with the Trustee's assistance, MODL considered alternative methods of assessing and tracking the Claims and, at

the Trustee's direction, MODL prepared and filed a Motion for Order (I) Approving Charter
Participant Claim Reconciliation Process, Including Form of Notice to Charter Participants, (II)
Disallowing Certain Charter Participant Claims, and (III) Extending Claim Bar Date for Charter
Participants (the "Claim Reconciliation Motion"), as well as a Motion to Limit Notice. Among
other things, the Claim Reconciliation Motion sought approval of the process for reconciliation
of all Claims asserted by Charter Participants. The Claim Reconciliation Motion also sought
approval of a form of notice that the Trustee intended to mail to all Charter Participants who had
already asserted a Claim that, once completed and returned to the Trustee, would result in more
consistent Claims and which would supersede any and all Claims previously asserted (the
"Claim Notice"). MODL also drafted the proposed Claim Notice and attended to service of the
Claim Reconciliation Motion and related pleadings. MODL also attended to service of the
hearing notice for the Claim Reconciliation Motion and prepared and filed a certificate of service
documenting same. At the Trustee's direction, MODL reviewed and assessed a response and
limited objection to the Claim Reconciliation Motion filed by Merrick and engaged in extensive
discussions with Merrick and the DOT (via counsel) regarding the proposed Claim Notice. At
the Trustee's direction, MODL revised the Claim Notice and proposed order to reflect changes
proposed by Merrick and the DOT and prepared, filed and served a supplemental Claim
Reconciliation Motion, as well as a certificate of service. MODL prepared for, and participated
in, a hearing on the Claim Reconciliation Motion. At the hearing on the Claim Reconciliation
Motion, the Court directed the Trustee to further revise the proposed Claim Notice and proposed
Order to incorporate certain revisions discussed at the hearing. As a result, MODL prepared and
filed a second supplement to the Claim Reconciliation Motion, including the revised Claim
Notice, revised proposed Order and certificate of service, and attended to service of same.

Upon approval of the Claim Reconciliation Motion, MODL developed a strategy for timing and
service of the Claim Notice on all Charter Participants and located missing addresses for certain
Charter Participants. Due to the high volume of duplicative claims on the Claim Master
Datatable (i.e., Charter Participants who asserted claims in more than one forum), the Trustee
directed MODL to oversee the creation of a second database for the purpose of mailing the
Court-approved Claim Notice to all Charter Participant claimants and to record the completed
Claim Notices once they were returned to the Trustee (the "Claim Notice Database"). The Claim
Notice Database allowed the Trustee to be as cost-effective as possible by not mailing the Claim
Notice to duplicate addresses, to claimants without contact information or to non-consumer
claimants. At the Trustee's direction, MODL oversaw service of the Court-approved Claim
Notice to all Charter Participants and prepared and filed a certificate of service with the Court.
Ultimately, the Claim Notice was mailed to approximately 4,539 Charter Participants. Once the
Claim Notice had been served, the Trustee and MODL spent considerable time tracking
completed Claim Notices received from Charter Participants via first-class mail, electronic mail
and facsimile transmission, responding to incomplete Claim Notices, responding to inquiries via
telephone calls, electronic mails and faxes from Charter Participants requesting confirmation of
the Trustee's receipt of the completed Claim Notice and inquiries regarding a possible
distribution. After passage of the deadline to submit completed Claim Notices, with the
Trustee's assistance, MODL considered issues associated with completed late-filed Claim
Notices, larger, unsupported Claims and the determination of a threshold for review. The
Trustee received approximately 1,922 completed Claim Notices in the aggregate amount of
$944,754.06. In order to ensure that as many Charter Participants as possible are able to

participate in any proposed distribution, the Trustee continued to receive and accept completed Claim Notices after the deadline to submit Claim Notices. In addition, upon review of the completed Claim Notices, the Trustee identified four (4) objectionable claims. At the Trustee's direction, MODL began developing the grounds and strategy for approval by the Court of a proposed distribution to Charter Participant claimants. MODL prepared and filed a Motion of Chapter 7 Trustee For Order (I) Approving Proposed Interim Distribution to Charter Participant Claimants, (II) Resolving and Disallowing Certain Objectionable Charter Participant Claims and (III) Extending Deadline For Submission of Completed Claim Forms (the "Distribution Motion") seeking, among other things, (a) approval of the Trustee's proposed interim distribution for all claims asserted by Charter Participants against the Estate, (b) approving the Trustee's treatment and/or disallowance of certain objectionable Charter Participant claims and (c) extending the deadline for submission of the Claim Notice. MODL attended to the filing and service of the Distribution Motion, as well as a motion to limit notice, certificate of service and supplemental certificate of service. MODL also attended to service of the hearing notice on for the Distribution Motion.

On the Trustee's behalf, MODL discussed potential distribution issues with the Office of the United States Trustee, as well as counsel for Merrick and JetPay. At the Trustee's request, MODL reviewed and assessed an objection to the Distribution Motion filed by a creditor, as well as a limited objection filed by Merrick, and continued to respond to numerous inquiries from Charter Participant claimants regarding the proposed distribution. Subsequent to filing the Distribution Motion, Merrick (via counsel) requested a sampling of the claims included in the proposed distribution to assess its theory of "double dipping" by Charter Participant claimants. MODL provided the requested sample to counsel for Merrick and Merrick subsequently identified certain Charter Participants listed on the proposed distribution as apparently having already received a credit card chargeback from Merrick and further asserted that those claims should be disallowed. At the Trustee's request, MODL reviewed the information provided by Merrick, as well as the Charter Participant's corresponding claim. The Trustee personally "tested" the information provided by Merrick by calling approximately one-third of the Charter Participants identified by Merrick as "double dippers." All but one claimant indicated that no chargeback or reversal had been received on their credit card or debit card account. One claimant indicated that the credit card charge had been suspended. Based on the Trustee's finding, the Trustee directed MODL to prepare and file a Supplement to Motion of Chapter 7 Trustee For Order (I) Approving Revised Proposed Interim Distribution to Charter Participant Claimants, (II) Disallowing The Charter Participant Claim of Jean Buonvicino, (III) Allowing The Charter Participant Claims of Dennis Jerome Parker and Lois Satagaj and (IV) Extending Deadline for Submission of Completed Claims (the "Distribution Motion Supplement') seeking, among other things, approval of a revised proposed interim distribution to Charter Participant claimants, disallowance of additional objectionable Charter Participant claim, allowance of two (2) late claims, and extension of the deadline for submission of the completed Claim Notice. MODL also prepared and filed a motion to limit notice and attended to service of the Distribution Motion Supplement and prepared and filed a certificate of service. Upon receipt of a hearing notice, MODL also attended to service of the hearing notice and prepared and filed a certificate of service. On the Trustee's behalf, MODL prepared for, and participated in, a hearing on the Distribution Motion, which was allowed by the Court. Upon approval of the Distribution Motion, MODL developed a process for the transfer of claim information into the

Trustee's Case Management System (TCMS) in anticipation of the distribution and attended to issuance of the interim distribution checks. At the Trustee's request, MODL also drafted a transmittal letter to Charter Participant claimants enclosing the initial distribution checks and continued to respond to numerous inquiries from claimants and address issues related to returned mail/uncashed checks and corresponded with claimants regarding issuance of replacement checks.

In order to determine which Charter Participants received chargebacks/creditors from their credit card companies, MODL assisted the Trustee in gathering information regarding chargebacks to Charter Participants by credit card companies. The only transaction cards Charter Participants were able to use to purchase tickets from the Debtor were those issued by Amex, Visa, MasterCard and Discover. In order to determine those Charter Participants that were reimbursed by their credit card company, and to identify the potential "double dipping" claims, MODL requested and received information from Amex regarding credit card chargebacks issued by Amex which MODL integrated into the Claim Master Datatable. JetPay processed all of the credit and debit card transactions for Visa, MasterCard and Discover. All such transactions were funded by Merrick. Amex itself processed and funded all Amex transactions.

In order to determine which Charter Participants received chargebacks/credits from their credit card companies, MODL attempted to obtain credit card chargeback information from the credit card companies. As a result, at the Trustee's direction, MODL prepared and filed a Motion for Authority to Conduct Rule 2004 Examinations seeking authority to conduct examinations of the persons most knowledgeable at Visa, Mastercard, Discover, and any and all relevant debit card or credit card-issuing banks as noted in the motion, along with a Motion to Limit Notice. The motion did not identify the specific credit-card issuing banks that provided chargeback credits because it was necessary for Visa, Mastercard and Discover to first identify by name the banks that provided those chargeback credits. MODL also prepared subpoenas for the credit card companies and performed on-line searches regarding current addresses for the relevant credit card companies in anticipation of issuance of the subpoenas. The motion was allowed with the condition that the Trustee file and serve a further motion for authority to conduct Rule 2004 examinations on those yet unidentified debit card and credit card issuing banks when their identities were determined. Ultimately, the Trustee changed strategy and pursued service of the Claim Notice on Charter Participants as described above. MODL's efforts allowed the Trustee to reconcile claims and make a distribution to Charter Participants of $250,000.00, approximately 26% of Charter Participant's allowed claims.

All interim distribution checks have been cashed by Charter Participants with the exception of five (5) checks. At the Trustee's direction, MODL investigated the circumstances of the uncashed checks and, as a result, MODL determined that uncashed funds are available for distribution to additional charter participant claimants that did not participate in the interim distribution. MODL assisted the Trustee with the development of a strategy for the uncashed funds and, at the Trustee's direction, MODL prepared a Motion for Order (I) Allowing Certain Additional Charter Participant Claims and (II) Approving Proposed Distribution of Remaining Charter Participant Claim Funds to Certain Additional Charter Participant Claimants (the "Redistribution Motion") seeking (I) allowance of certain additional Charter Participant claims and (II) approving the Trustee's proposed distribution of remaining Charter Participant claim

funds for claims asserted by additional claimants against the Estate and who did not receive payment in connection with the Trustee's interim distribution. MODL will continue to work with the Trustee to finalize the Redistribution Motion.

MODL's fees and expenses related to Claims Administration and Objections during the Fee Application Period totaled $150,059.00.

### Employment Applications – 9310:

During the Fee Application Period, MODL prepared and filed an application for an order approving the retention of MODL as counsel to the Trustee, together with an attorney's affidavit. MODL prepared, filed and served a supplemental and second supplemental attorney's affidavit in connection with its retention application. MODL also attended to service of the Court's notice of hearing regarding the retention application and prepared and filed a certificate of service and supplemental certificate of service. MODL also prepared an application for authority to employ the Trustee's Accountant (i.e., Craig R. Jalbert and Verdolino & Lowey, P.C.). After determining the scope of engagement, as well as the terms of employment, MODL also prepared and filed an application, as amended, and supporting affidavit for the Trustee to employ Florida Special Counsel (i.e., Robert M. Dees, Esq. and the firm of Milam, Howard, Nicandri, Des & Gillam, P.A.) for the reasons stated previously under Task Code 0003. In addition, at the Trustee's direction, MODL prepared and filed an application and supporting affidavit for the Trustee to employ Posternak Law Firm (i.e., David J. Reier, Esq. and the firm of Posternak Blankstein & Lund, LLP) as special counsel for the limited purpose of obtaining the release of escrow proceeds from VNB as discussed previously under Task Code 0001.

MODL's fees and expense related to Employment Applications during the Fee Application Period totaled $8,773.00.

### Fee Applications – 9311:

MODL has prepared the within Interim Fee Application. MODL has also coordinated with the Trustee's accountant regarding the preparation and filing of its interim fee application. MODL will also appear at any hearing necessary on the within Fee Application.

MODL also coordinated with the Trustee's Florida Special Counsel regarding the preparation of its Fee Application and, at the Trustee's direction, prepared and filed a statement of no objection to Florida Special Counsel's fee application.

MODL's fees and expenses related to Fee Applications during the Fee Application Period totaled $36,972.50.

**Fee/Employment Objection – 9320:**

During the Fee Application Period, MODL reviewed the fee applications of the Trustee's Accountant and the Trustee's Florida Special Counsel.

MODL's fees and expenses related to Fee/Employment Objections during the Fee Application Period totaled $419.50.